UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>  Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>  Defendant. | Civil Action No. 05-11652-WGY |

### AMENDED COMPLAINT
**Jury Trial Demanded**

Plaintiff John D. Cerqueira, by his attorneys, alleges as follows:

### Introduction

1. On December 28, 2003, defendant American Airlines removed plaintiff John D. Cerqueira from an American Airlines flight and refused to provide him any further transportation services because defendant mistakenly believed that Mr. Cerqueira was of Arab, Middle Eastern, or South Asian descent. American Airlines had no legitimate non-discriminatory reason to justify its treatment of Mr. Cerqueira; rather, it based its actions on Mr. Cerqueira's perceived race, color, national origin, ethnicity, or ancestry. Because of American Airlines' discriminatory acts, Mr. Cerqueira was denied the right to make and enforce a contract, subjected to unlawful discrimination by a recipient of federal financial assistance, and denied equal treatment in a place of public accommodation. Mr. Cerqueira brings this action under 42 U.S.C. § 1981, Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), and M.G.L. c. 272, § 98. Mr. Cerqueira seeks declaratory relief, compensatory and punitive damages, and injunctive relief to prevent future unlawful discrimination by American Airlines.

**Jurisdiction and Venue**

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and 1343.

3. The events giving rise to the claims alleged in this Complaint occurred at Boston Logan Airport. Venue therefore lies in this Court pursuant to 28 U.S.C. § 1391(b)(2).

**Parties**

4. Plaintiff John D. Cerqueira is a citizen of the United States and a resident of the State of Florida. He is of Portuguese national origin and his color and physical appearance is similar to that commonly associated with individuals of Arab, Middle Eastern, or South Asian descent.

5. Defendant American Airlines, Inc., is an air carrier engaged in the business of transporting passengers. American Airlines is a Delaware corporation with headquarters at 4333 Amon Carter Blvd., Fort Worth, Texas 76155. American Airlines maintains a business presence at Logan Airport in Boston, Massachusetts. American Airlines is a recipient of federal financial assistance.

**Facts**

6. Mr. Cerqueira is a frequent flier and has accumulated over 370,000 miles in American Airlines' frequent flyer program. Mr. Cerqueira's work requires frequent air travel and many of the routes he flies are served by American Airlines.

7. On or about June 12, 2003, Mr. Cerqueira purchased on-line a round-trip ticket on American Airlines for travel in late December 2003, between Fort Lauderdale, Florida, and

Boston, Massachusetts. Mr. Cerqueira was going to Massachusetts to visit his family for the holidays.

8. On December 24, 2003, Mr. Cerqueira flew from Fort Lauderdale, Florida to Boston, Massachusetts on American Airlines flight 2224 without incident.

9. On December 28, 2003, Mr. Cerqueira arrived early at Logan Airport for his return trip to Florida on American Airlines flight 2237. He checked one bag curbside, received his boarding pass, and proceeded to the gate.

10. At the gate, Mr. Cerqueira requested a seat in an exit row or bulkhead so that he would have more leg room. Mr. Cerqueira did not request any particular seat. American Airlines personnel at the gate honored Mr. Cerqueira's request and assigned Mr. Cerqueira seat number 20F, which was a window seat in an exit row.

11. American Airlines boarded the passengers for flight 2237 by group number. Mr. Cerqueira was assigned to "Group 1" for boarding purposes. Mr. Cerqueira boarded the aircraft when his assigned group was called. He was among the first coach passengers to board.

12. Once seated on the airplane, Mr. Cerqueira took out his laptop computer and worked for a short time. Approximately 10 minutes after Mr. Cerqueira boarded the airplane, two men boarded the plane and sat next to him in seat numbers 20D and 20E.

13. Mr. Cerqueira did not know the men seated in 20D and 20E, and he did not speak to them.

14. The men in seat numbers 20D and 20E were speaking to each other, partly in English and partly in a foreign language. The two men had a color and physical appearance similar to that of Mr. Cerqueira.

15. When the announcement was made to turn off all electronic devices, Mr. Cerqueira stowed his laptop computer and fell asleep.

16. An American Airlines flight attendant woke Mr. Cerqueira and asked for his boarding pass. The flight attendant also asked the men seated in 20D and 20E for their boarding passes. Mr. Cerqueira was unable to immediately locate his boarding pass, but handed the flight attendant the American Airlines receipt for his itinerary, which the flight attendant indicated was sufficient.

17. Soon after the flight attendant left with Mr. Cerqueira's receipt and the boarding passes of the men seated in 20D and 20E, three or four troopers from the Massachusetts State Police boarded the plane and demanded that Mr. Cerqueira and the two men seated next to him immediately deplane with their carry-on luggage. Neither the police nor any representative of American Airlines told Mr. Cerqueira why he was being removed from the plane. Mr. Cerqueira had not made any comments or engaged in any behavior that was unusual, suspicious, or out of the ordinary.

18. Mr. Cerqueira and the other two passengers were questioned by the troopers on the ramp immediately outside of the airplane. Mr. Cerqueira surrendered his driver's license and the other two men surrendered their passports.

19. Mr. Cerqueira informed the troopers that he did not know, and was not traveling with, the other two men.

20. After initial questioning on the ramp, Mr. Cerqueira and the men who had been seated in 20D and 20E were escorted through the airport to a small room near the security screening area. They were held in the small room for approximately one hour, then Mr. Cerqueira was removed and further questioned by the police in the main hallway of the terminal.

21. When Mr. Cerqueira was questioned, the trooper repeatedly demanded to know Mr. Cerqueira's "nationality." Believing that the trooper was inquiring as to his citizenship, Mr. Cerqueira told the trooper repeatedly that he is a United States citizen. As the trooper became increasingly hostile, Mr. Cerqueira realized that the trooper wanted to know Mr. Cerqueira's national origin or ancestry. Mr. Cerqueira informed the trooper that he is of Portuguese descent.

22. Eventually, Mr. Cerqueira convinced the trooper that he was a stranger to the other men seated in his row and that he had been seated next to them by American Airlines.

23. Mr. Cerqueira and the other two men were released by the police and escorted to the American Airlines ticket counter. The trooper who accompanied them to the ticket counter told the ticket agent that they had been removed from a flight for questioning, but were now free to go. Mr. Cerqueira had still not been informed of the reason he had been removed from the plane, detained, and questioned.

24. A ticket agent at the American Airlines counter told Mr. Cerqueira that there was a seat available for him on an American Airlines flight from Boston to Fort Lauderdale departing in the early afternoon, but that she needed to ask a supervisor about the situation. On information and belief, the ticket agent was Dalila MacLeod.

25. The ticket counter supervisor arrived and spoke first to the men who had been seated in 20D and 20E. On information and belief, the ticket counter supervisor was Nicole Traer. Ms. Traer told these two men that American Airlines was denying them service and that she was refunding the cost of the Boston to Florida portion of their tickets. When they asked how they were to get back to Florida, Ms. Traer told them that they were on their own. When they asked why American Airlines would not serve them, Ms. Traer replied that it was based on something they had said while on the plane.

26. When Mr. Cerqueira was called to the ticket counter, Ms. Traer told Mr. Cerqueira that he was being denied service and that she was refunding the cost of the return portion of his ticket. When Mr. Cerqueira asked why he was being denied service, Ms. Traer told him that it was because of what Mr. Cerqueira had said on the plane, as documented in the file. She refused to provide Mr. Cerqueira with any further information and told him that he could contact customer service for more information. American Airlines refused to assist Mr. Cerqueira in making travel arrangements and American Airlines provided no indication as to how long the denial of service would last.

27. Unable to receive any further information or assistance from American Airlines personnel at Logan Airport, Mr. Cerqueira sent the following electronic message to American Airlines:

> Today I was scheduled to fly on flight 2237 from Boston to Fort Lauderdale. I was denied service after being escorted off the plane by several police officers. At a loss of much valuable time and money and after considerable embarrassment, I have had to make other arrangements to fly home to Florida. The supervisor in Boston, Nicole, said I was denied service because of something I said on the plane and, when I asked her what I was being accused of saying, she said for me to contact customer service online for more information. Please provide me further information and as much information as you are able to regarding the file for this incident. Also please comment on what the short, medium, and long-term implications are for me to travel on American Airlines or any other airline.

28. Mr. Cerqueira received an "auto-response" indicating that someone would respond to his message at a later time.

29. Mr. Cerqueira was unable to find a reasonably priced ticket on any other airline for travel from Boston to Fort Lauderdale on December 28, 2003. Mr. Cerqueira was able to purchase a ticket for a December 29, 2003, flight on U.S. Airways connecting through Philadelphia. Mr. Cerqueira arrived at his home in Florida about 30 hours later than he would

have arrived had American Airlines not refused to serve him, at increased cost, and with considerable inconvenience and emotional trauma.

30. On January 6, 2004, American Airlines sent Mr. Cerqueira the following response to his inquiry of December 28, 2003:

> One of the most difficult decisions our personnel must make is to refuse passage to one of our customers. Nevertheless, we do have that obligation and that authority when there are manifestations of behavior, which could become troublesome during flight. We have fully reviewed the decision not to let you board your flight to Fort Lauderdale. Our investigation has revealed that our personnel perceived certain aspects of your behavior, which could have made other customers uncomfortable on board the aircraft. It was for this reason that you were not permitted to travel. It was also noted in the record that our personnel authorized a refund of the Boston – Fort Lauderdale segment of your ticket. There is no indication that you will be denied boarding in the future. We welcome all customer feedback. Should you wish to contact us again, please do so via http://www.aa.com/customerrelations/, and we'll be back with you as soon as possible.

31. No government or law enforcement agency or personnel requested that Mr. Cerqueira be removed from flight 2237, nor did any government or law enforcement agency or personnel suggest that Mr. Cerqueira posed a threat to safety or security.

32. On information and belief, John Ehlers was the captain of American Airlines flight 2237 on December 28, 2003. Capt. Ehlers made the decision to have Mr. Cerqueira removed from the flight.

33. On information and belief, Capt. Ehlers based his decision to have Mr. Cerqueira removed from flight 2237 at least in part on information and/or opinions communicated to him by a flight attendant who was a member of the crew for American Airlines flight 2237 on December 28, 2003. On information and belief, the flight attendant was Sally Walling.

34. At the time Capt. Ehlers made the decision to have Mr. Cerqueira removed from the flight, Capt. Ehlers was an agent and employee of American Airlines and was acting within the scope of his employment.

35. At the time Ms. Walling provided Capt. Ehlers information and/or opinions about Mr. Cerqueira, Ms. Walling was an agent and employee of American Airlines and was acting within the scope of her employment.

36. No government or law enforcement agency or personnel requested that Mr. Cerqueira be denied transportation services after he was released from questioning following his removal from flight 2237, nor did any government or law enforcement agency or personnel suggest that Mr. Cerqueira posed a threat to safety or security.

37. Nicole Traer, an American Airlines ticket counter supervisor, made the decision to deny service to Mr. Cerqueira after he was released from questioning following his removal from flight 2237.

38. On information and belief, Ms. Traer based her decision to deny service to Mr. Cerqueira at least in part on information and/or opinions communicated to her by Dalila MacLeod.

39. At the time Ms. Traer made the decision to deny service to Mr. Cerqueira, Ms. Traer was an agent and employee of American Airlines and was acting within the scope of her employment.

40. At the time Ms. MacLeod provided Ms. Traer information and/or opinions about Mr. Cerqueira, Ms. MacLeod was an agent and employee of American Airlines and was acting within the scope of her employment.

41.  Mr. Cerqueira did not engage in any behavior or make any comments that could justify American Airlines' decision to have Mr. Cerqueira removed from flight 2237. Mr. Cerqueira did not engage in any behavior or make any comments that could justify American Airlines' decision to deny Mr. Cerqueira any further transportation services after he had been questioned by the Massachusetts State Police and the police had informed American Airlines that Mr. Cerqueira posed no threat. American Airlines had no legitimate non-discriminatory reason to believe that Mr. Cerqueira posed a security risk.

42.  American Airlines caused Mr. Cerqueira to be removed from flight 2237 and questioned by the Massachusetts State Police because it mistakenly believed that Mr. Cerqueira was of Arab, Middle Eastern, or South Asian descent.

43.  American Airlines caused Mr. Cerqueira to be denied air transportation services after he was cleared by the police because it mistakenly believed that Mr. Cerqueira was of Arab, Middle Eastern, or South Asian descent.

44.  Defendant's discriminatory acts were intentional and proximately caused Mr. Cerqueira to suffer emotional distress and financial loss. As a result of the incidents of December 23, 2003, Mr. Cerqueira has endured fear, humiliation, embarrassment, mental pain, suffering, inconvenience, and financial injury, including lost business profits.

45.  Defendant's actions were intentional, malicious, willful, wanton, and callous, and showed reckless disregard for Mr. Cerqueira's civil rights.

46.  On October 14, 2004, Mr. Cerqueira filed a complaint of discrimination with the Massachusetts Commission Against Discrimination (MCAD) charging American Airlines with discrimination in a place of public accommodation on the basis of race, color, national origin, or ancestry. MCAD investigated Mr. Cerqueira's

complaint and, on May 3, 2005, issued a decision concluding that Mr. Cerqueira had established a prima facie case of discrimination and finding probable cause to credit the allegations in Mr. Cerqueira's complaint.

### Count I: 42 U.S.C. § 1981

47. Mr. Cerqueira repeats and realleges each and every allegation contained in paragraphs 1 through 46 of this Complaint, as if fully set forth herein.

48. Defendant engaged in intentional discrimination based on Mr. Cerqueira's perceived race, color, ethnicity, or ancestry, and caused Mr. Cerqueira to suffer deprivation of his right to make and enforce contracts.

49. Defendant's actions violated 42 U.S.C. § 1981.

### Count II: Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d)

50. Mr. Cerqueira repeats and realleges each and every allegation contained in paragraphs 1 through 46 of this Complaint, as if fully set forth herein.

51. Defendant American Airlines is a recipient of federal financial assistance. Defendant engaged in intentional discrimination based on Mr. Cerqueira's perceived race, color, or national origin.

52. Defendant's actions violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

### Count III: M.G.L. c. 272, § 98

53. Mr. Cerqueira repeats and realleges each and every allegation contained in paragraphs 1 through 46 of this Complaint, as if fully set forth herein.

54. American Airlines flight 2237, from which Mr. Cerqueira was removed, and other American Airlines' flights to which Mr. Cerqueira was denied admission, are places of public accommodation as defined in M.G.L. c. 272, § 92A.

55. On December 28, 2003, defendant denied Mr. Cerqueira access to American Airlines flight 2237 and any other American Airlines flight.

56. Defendant's actions were based on Mr. Cerqueira's perceived race, color, national origin, or ancestry.

57. Defendant's actions violated M.G.L. c. 272, § 98.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Cerqueira respectfully requests that this Court:

(a) Declare that defendant's actions described above constitute discrimination on the basis of race, color, national origin, ethnicity, or ancestry, and violate 42 U.S.C. § 1981, 42 U.S.C. § 2000d, and M.G.L. c. 272, § 98;

(b) Enter a permanent injunction directing defendant American Airlines to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(c) Award plaintiff damages in an amount to be determined at trial to compensate him for being deprived of his right to travel as a passenger in air transportation regardless of his perceived race, color, national origin, ethnicity, or ancestry, including damages for fear, humiliation, embarrassment, mental pain, suffering, inconvenience, and financial injury, including lost business profits;

(d) Award plaintiff punitive damages in an amount to be determined at trial that would punish defendant for its malicious, willful, wanton, callous, and reckless conduct and effectively deter defendant from engaging in similar conduct in the future;

(e) Award plaintiff prejudgment interest;

(f) Award plaintiff reasonable attorneys' fees and the costs incurred in this action; and

(g) Award plaintiff such other relief as the Court deems just and proper.

## Jury Trial Demand

Plaintiff demands a trial by jury for all issues triable by jury.

Respectfully submitted,

JOHN D. CERQUEIRA
By his attorneys,

David S. Godkin, BBO #196530
Erica Abate Recht, BBO #641452
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
617-307-6100

Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Dated: September 14, 2005