## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOHN D. CERQUEIRA,

               Plaintiff,

v.

AMERICAN AIRLINES, INC.,

               Defendant.

Civil Action No. 05-11652-WGY

## PLAINTIFF JOHN D. CERQUEIRA'S MEMORANDUM IN OPPOSITION TO AMERICAN AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiff John D. Cerqueira brought this case under three civil rights statutes after defendant American Airlines, Inc. (AA) twice discriminated against him. Because AA's personnel mistakenly believed that Mr. Cerqueira was from the Middle East, AA caused Mr. Cerqueira to be removed from an AA flight, detained, and interrogated by the Massachusetts State Police. After Mr. Cerqueira was released from questioning and cleared for further travel, AA again refused to serve him.

The primary issue in this case is whether AA's treatment of Mr. Cerqueira was motivated by discrimination. In AA's memorandum in support of its motion for summary judgment (AA Mem.), AA argues that no reasonable factfinder could conclude that AA discriminated intentionally against Mr. Cerqueira because AA's decisionmakers did not know what Mr. Cerqueira looks like. AA Mem. 6-7. AA's argument is without merit. AA is liable for discrimination even if its decisionmakers lacked discriminatory intent, if the decisionmakers acted on information supplied by an individual motivated by bias. Moreover, even if AA's argument was not flawed as a matter of law, AA would not be entitled to summary judgment because its theory rests on disputed facts.

AA next argues that Mr. Cerqueira's claims should be dismissed because he lacks sufficient direct evidence of discrimination. AA Mem. 5-8. This argument fails because it is well-settled that intentional discrimination may be proved with indirect evidence using the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and refined in *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Under *McDonnell Douglas*, Mr. Cerqueira is entitled to summary judgment on the issue of liability because AA has failed to meet its burden of production at the second stage of the burden shifting framework. *See* Plaintiff's Memorandum in Support of His Motion for Partial Summary Judgment (Pl. Mem.). Even if AA had met its burden to articulate nondiscriminatory reasons sufficient to justify its removal of Mr. Cerqueira from flight 2237—AA has articulated no reason for its refusal to rebook Mr. Cerqueira after he was cleared for travel—AA would not be entitled to summary judgment because there is a genuine dispute as to whether AA's proffered reason is a pretext for discrimination.

AA also argues that, absent a showing that its treatment of Mr. Cerqueira was arbitrary and capricious, AA is shielded from liability because 49 U.S.C. § 44902(b) allows AA to refuse to transport passengers whom it considers "inimical to safety." Section 44902(b) is inapposite. As this Court noted in *Alshrafi v. American Airlines, Inc.*, 321 F. Supp. 2d 150, 162 (D. Mass. 2004), actions motivated by unlawful discrimination "are necessarily arbitrary and capricious, and therefore beyond the scope of the discretion granted by Section 44902."

Additionally, AA argues that Mr. Cerqueira's state-law discrimination claim is preempted by the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1). This Court rejected that argument in *Alshrafi*. 321 F. Supp. 2d at 163.

2

Finally, AA asserts that its receipt of federal financial assistance is insufficient to bring it within the coverage of Title VI and that there is no respondeat superior liability for violations of M.G.L. c. 272 § 98.  As explained below, these arguments are not well-founded.

## FACTS

AA filed a statement of facts in support of its motion for summary judgment.  Many of those facts are either disputed or immaterial, as described in the response to AA's statement of facts that accompanies this memorandum.  In addition, on September 22, 2006, Mr. Cerqueira filed a statement of undisputed facts in support of his motion for partial summary judgment.  This memorandum will refer to all three documents.[1]

## ARGUMENT

**I.      AA Is Not Entitled to Summary Judgment Based on the Assertion That its Decisionmakers Did Not Know That Mr. Cerqueira Has a Middle Eastern Appearance.**

AA argues that Mr. Cerqueira cannot prove that AA intended to discriminate against him because, according to AA, "none of the people making decisions about the plaintiff's travel status on December 28, 2003 had any information about the plaintiff's appearance," and, "[i]n consequence, there cannot have been any intent to discriminate."  AA Mem. 6.  AA is wrong as a matter of law and fact.

---

[1]Mr. Cerqueira will cite AA's statement of facts (Doc. No. 17) as "AA SOF ¶ __" and his response as "Pl. Resp. to AA SOF ¶ __."  Mr. Cerqueira will cite the facts in his own statement of undisputed facts (Doc. No. 22) as "Pl. Fact __."

**A.    Even If AA's Decisionmakers Knew Nothing of Mr. Cerqueira's Appearance, AA Is Liable for Discrimination If Its Decisionmakers Acted on Information Provided by Someone Who Did.**

A defendant is liable for unlawful discrimination even if its decisionmaker was not biased, if the decisionmaker acted on biased information provided by another. *Cariglia v. Hertz Equip. Rental Corp.*, 363 F.3d 77, 83 (1st Cir. 2004) (finding "merit under First Circuit precedent and persuasive case law from other circuits" for the proposition that "liability can attach if neutral decisionmakers . . . rely on information that is inaccurate, misleading, or incomplete because of another employee's discriminatory animus"); *see also EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484-88 (10th Cir. 2006) (explaining that a defendant may be liable even though the decisionmaker lacked discriminatory intent, if the decisionmaker acted on information supplied by a biased subordinate) (citing numerous cases endorsing the theory); *Zades v. Lowe's Home Cts., Inc.*, No. 03-30269-MAP, 2006 WL 2563456, *10 (D. Mass. Sept. 6, 2006) (holding that discriminatory motive may be shown where a neutral decisionmaker "acts on biased information without conducting his own independent investigation"); *Harlow v. Potter*, 353 F. Supp. 2d 109, 116-18 (D. Me. 2005) (explaining that a defendant is liable for discrimination if the decisionmaker who took the adverse action relied on information tainted by another's discriminatory animus "even if the decisionmaker lacked discriminatory intent") (citing numerous cases). Indeed, were it not for this rule, a defendant could always escape responsibility for wilful discrimination simply by placing ultimate decisionmaking authority in the hands of a corporate official insulated from personal knowledge of the protected characteristics of the affected individual.

John Ehlers was the captain of AA flight 2237 on December 28, 2003, and Capt. Ehlers made the decision to have Mr. Cerqueira removed from the flight.[2] Capt. Ehlers based his decision on four concerns communicated to him by flight attendant Sally Walling. Pl. Fact 30 & 35. Ms. Walling told Capt. Ehlers that Mr. Cerqueira 1) requested a seat change in an insistent manner; 2) was the first coach passenger to board; 3) used the lavatory after boarding; and 4) was sleeping while other passengers boarded. Pl. Facts 31-34. Because Capt. Ehlers was induced to act based on the information provided by Ms. Walling, AA is liable for discrimination if Ms. Walling's report was motivated by discrimination, even if Capt. Ehlers lacked discriminatory animus.

Craig Marquis was the manager on duty at AA's System Operations Control (SOC) on the morning of December 28, 2003, and Mr. Marquis made the decision to deny service to Mr. Cerqueira after he was released from questioning by the State Police. Pl. Fact 44. Mr. Marquis cannot remember what he knew about Mr. Cerqueira on December 28, 2003, or the basis of his decision to bar Mr. Cerqueira from rebooking on AA, but Capt. Ehlers testified that he reported Ms. Walling's concerns to SOC. Pl. Facts 35 & 45. Thus, to the extent Mr. Marquis's decision was based on a report that Ms. Walling would not have made but for Mr. Cerqueira's Middle Eastern appearance, AA is liable for discrimination because Ms. Walling's discriminatory animus impermissibly tainted the decisionmaking process, even if Mr. Marquis had no knowledge of Mr. Cerqueira's appearance.

---

[2]Although AA now claims that the decision to remove Mr. Cerqueira for questioning "was made by [System Operations Control] in consultation with Captain Ehlers and the Massachusetts State Police in Boston" (AA SOF ¶ 27), AA admitted in its Answer that Capt. Ehlers made the decision. Ans. ¶¶ 32-33. Because AA's admission was made in a pleading, it is a judicial admission that binds AA. *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.") (quotation omitted); *United States v. Belculfine*, 527 F.2d 941, 944 (1st. Cir. 1975) ("[J]udicial admissions are conclusive on the party making them.").

**B.    There is a Fact Dispute as to Whether Capt. Ehlers or Mr. Marquis Had Knowledge of Mr. Cerqueira's Appearance.**

Even if AA were not relying on a flawed legal theory, AA would not be entitled to summary judgment because there is an issue of fact as to whether AA's decisionmakers had knowledge of Mr. Cerqueira's appearance. AA claims that, at the time he decided to have Mr. Cerqueira removed from the airplane, Capt. Ehlers had no knowledge of Mr. Cerqueira's appearance. AA SOF ¶ 26. AA's claim is contradicted by, among other things, AA Customer Service Manager Ynes Flores's testimony that, before Mr. Cerqueira was removed, Capt. Ehlers pointed out the passengers seated in the exit row and instructed Mr. Flores to ask them for their boarding passes, and flight attendant Lois Sargent's testimony that Capt. Ehlers came out and looked at the passengers in the exit row. Pl. Resp. to AA SOF ¶ 26. Moreover, Capt. Ehlers knew that Ms. Walling perceived Mr. Cerqueira to be traveling with the men seated next to him, one of whom had a heavy accent and had conversed with Capt. Ehlers in the terminal before the flight. Pl. Facts 26-27. Similarly, AA's claim that Mr. Marquis "had no knowledge of the plaintiff's appearance" at the time of the incident (AA SOF ¶ 28), is contradicted by Mr. Marquis's testimony that he cannot remember what he knew about Mr. Cerqueira on December 28, 2003 (Pl. Resp. to AA SOF ¶ 28).

**II.    Mr. Cerqueira May Prove His Claims With Indirect Evidence Using the *McDonnell Douglas* Framework.**

AA claims that it is entitled to summary judgment because Mr. Cerqueira has no evidence of racial animus "beyond his own subjective belief" that AA discriminated against him. AA Mem. 7. AA's argument, apparently based on the theory that Mr. Cerqueira must prove discrimination with direct evidence, fails as a matter of law. Mr. Cerqueira may prove his claim with indirect evidence using the *McDonnell Douglas* framework.

Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. Once the plaintiff establishes a *prima facie* case, a presumption of illegal discrimination is created, and the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged acts. If the defendant fails to carry its burden, the plaintiff is entitled to judgment as a matter of law. If the defendant meets its burden of production, the plaintiff must prove that the reasons offered by the defendant are a pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (discussing burden shifting framework articulated in *McDonnell Douglas* and subsequent decisions).

A.    **Mr. Cerqueira Should Prevail at the Second Stage of the Burden Shifting Framework Because AA Has Failed to Articulate Legitimate Nondiscriminatory Reasons Sufficient to Justify its Actions**.

As explained in Mr. Cerqueira's memorandum in support of his motion for partial summary judgment, Mr. Cerqueira has established a *prima facie* case of discrimination, and AA has failed to articulate legitimate nondiscriminatory reasons sufficient to rebut the inference of discrimination. First, with regard to its decision to remove Mr. Cerqueira from flight 2237, AA has not met its burden because the four aspects of Mr. Cerqueira's behavior alleged to have motivated the removal decision are common among airline passengers and do not ordinarily result in a denial of service.[3] Second, with regard to its refusal to rebook Mr. Cerqueira after his release from questioning, AA has articulated *no reason* for its decision.[4] Because AA has failed to meet its burden on the second stage

_____

[3]Although AA asserts in its statement of facts that it decided to remove Mr. Cerqueira from flight 2237 "[b]ased on the information available" (AA SOF ¶ 27), AA has made a judicial admission that Capt. Ehlers decided to have Mr. Cerqueira removed from the flight based on information and opinions communicated to Capt. Ehlers by Ms. Walling (Ans. ¶¶ 32 & 33).

[4]AA asserts only that "[g]iven the circumstances and information available as well as the communication from the State Police, Systems Operations made the determination that AA

7

of the burden shifting analysis, Mr. Cerqueira is entitled to summary judgment on the issue of liability, and there is no need for Mr. Cerqueira to show that AA's explanations are a pretext for discrimination.

> **B.    Even If AA Had Met its Burden of Production with Respect to the Removal Decision, AA Would Not Be Entitled to Summary Judgment Because There Is Ample Evidence That AA's Proffered Explanation Is a Pretext for Discrimination.**

AA has proffered no explanation for its refusal to rebook Mr. Cerqueira after he was released from questioning and cleared for travel; thus, AA has not met its burden of production at the second stage, and the burden cannot shift back to Mr. Cerqueira to show that AA's nonexistent explanation is pretextual.  With regard to its decision to remove Mr. Cerqueira from flight 2237, AA's explanation is insufficient to defeat the inference of discrimination.  Even if AA's explanation was adequate to meet its burden of production at the second stage, Mr. Cerqueira could easily demonstrate that there is a genuine dispute as to whether AA's proffered reason for removing Mr. Cerqueira from flight 2237 is a pretext for discrimination.  *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55-56 (1st Cir. 2000) (finding that pretext may be shown "in a number of ways").

First, Mr. Cerqueira could show pretext using the same analysis he used to show that AA's proffered reason for his removal is inadequate to satisfy AA's burden at the second stage. Specifically, it is implausible that Mr. Cerqueira was removed from the flight solely because he engaged in four common passenger activities that do not ordinarily result in removal, and AA has

---

would not rebook the three passengers removed from the flight, including the plaintiff, for further travel that day."  AA SOF ¶ 32.  In fact, AA has admitted that Mr. Marquis made the decision that Mr. Cerqueira would not be rebooked on AA, and Mr. Marquis does not recall the basis for the decision.  Pl. Fact 45.

not even attempted to explain *how* those four aspects of Mr. Cerqueira's behavior could indicate a security threat. *See Reeves*, 530 U.S. at 143 (holding that pretext may be demonstrated "by showing that the [defendant]'s proffered explanation is unworthy of credence"); *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998) (holding that pretext may be shown by "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant]'s proffered legitimate reasons") (citations omitted).

Second, there is direct evidence that Mr. Cerqueira's behavior would not have resulted in any action by AA but for the perception that he was Middle Eastern and traveling with the two Middle Eastern men seated next to him. Pl. Facts 26-28; *see* Pl. Mem. 11-12. Indeed, AA's assertions about Mr. Ashmil and Mr. Rokah are immaterial to AA's claim that it removed Mr. Cerqueira for nondiscriminatory reasons, because those assertions have nothing to do with Mr. Cerqueira's behavior.[5] *See* AA SOF ¶¶ 12, 14-16, 19-21. Those allegations do, however, support Mr. Cerqueira's claim that AA discriminated against him because he was perceived to be Middle Eastern. Pl. Facts 26-28; *see* Pl. Mem. 11-12.

Third, AA would not be entitled to summary judgment even if the burden shifted back to Mr. Cerqueira because facts are in dispute. *See* Pl. Resp. to AA SOF ¶¶ 7-8, 11-13, 19, 21-24, 26-28, 30, 32. Although Mr. Cerqueira's motion for partial summary judgment relies on the facts viewed

---

[5]AA's statement of facts contains additional allegations immaterial to AA's defense. For example, AA's assertions regarding events that occurred after Mr. Cerqueira's removal are immaterial because they could not have motivated the removal decision. Pl. Resp. to AA SOF ¶¶ 29-31. Similarly, AA's claim that Mr. Cerqueira laughed in response to comments made by Mr. Ashmil and Mr. Rokah to Ms. Sargent is immaterial because Capt. Ehlers did not base his decision to remove Mr. Cerqueira on anything reported by Ms. Sargent. Pl. Resp. to AA SOF ¶ 19. Moreover, Mr. Cerqueira denies that he laughed or otherwise reacted to any conversation that may have occurred between the men seated next to him and Ms. Sargent. *Id.*

in the light most favorable to AA, for purposes of AA's motion for summary judgment, the facts must be viewed in favor of Mr. Cerqueira, the nonmoving party. *Pac. Ins. Co. v. Eaton Vance Mgmt.*, 369 F.3d 584, 588 (1st Cir. 2004). Accordingly, AA cannot rely on Ms. Walling's characterization of Mr. Cerqueira's demeanor and tone as "hostile and insistent," because Mr. Cerqueira denies that he made his request for a seat change in such a manner. Pl. Resp. to AA SOF ¶ 9. Similarly, AA cannot rely on Ms. Walling's mistaken assumption that Mr. Cerqueira boarded out of turn, because AA has made a judicial admission that Mr. Cerqueira boarded when his assigned group was called. Ans. ¶ 11. Further, AA cannot rely on Ms. Walling's claim that she found it "unusual" for Mr. Cerqueira to be sleeping before the flight departed, because Ms. Walling admitted at deposition that such behavior is not unusual. Pl. Resp. to AA SOF ¶ 13; Pl. Fact 34.

Fourth, Mr. Cerqueira could show pretext based on AA's shifting explanations for its decision to remove Mr. Cerqueira from flight 2237. *Dominguez-Cruz v. Suttle Caribe, Inc*., 202 F.3d 424, 432 (1st Cir.2000) (holding that pretext may be inferred where defendant gave "different and arguably inconsistent explanations" for the adverse action). At various times, AA and its employees have asserted that Mr. Cerqueira was removed from flight 2237 because of: 1) unspecified "security issues" (Pl. Fact 47); 2) suspicious behavior in the airport towards the Captain and suspicious behavior observed on board by flight attendant Walling (Pl. Fact 48); 3) unspecified statements allegedly made on the plane (Pl. Fact 53); 4) unspecified behavior that "could have made other customers uncomfortable" (Pl. Fact 56); and 5) unresolved issues concerning his seat assignment (*see* Flores Dep. 16:5-15 (attached as Exh. 5 to Doc. No. 22), quoting AA's answer to interrogatory no. 4).

Finally, Mr. Cerqueira could show a genuine dispute as to whether AA's proffered reason is a pretext for discrimination by showing that, since September 11, 2001, AA repeatedly has engaged in a pattern of unlawful discrimination against passengers perceived to be of Arab, Middle Eastern, or South Asian descent, by causing such passengers to be removed from flights, denied boarding, or refused service.  Pl. Fact 60; *see Cummings v. Standard Register Co.*, 265 F.3d 56, 63 (1st Cir. 2001) ("[E]vidence of a discriminatory 'atmosphere' may sometimes be relevant to showing the corporate state-of-mind at the time" of the incident) (citations omitted).

## III.    Because Decisions Motivated by Discrimination Are Necessarily Arbitrary and Capricious, 49 U.S.C. § 44902(b) Cannot Shield AA from Liability.

The parties agree that to establish AA's liability under each of his three causes of action, Mr. Cerqueira must show that AA intentionally discriminated against him.  AA Mem. 5; Pl. Mem. 7. AA concedes that "decisions resting on intentional discrimination are arbitrary and capricious."  AA Mem. 9.  Nevertheless, AA invokes 49 U.S.C. § 44902(b), a statute affording airlines discretion to refuse to transport a passenger who may be "inimical to safety," as long as the airline's decision is not arbitrary and capricious.  Because Mr. Cerqueira must prove intentional discrimination, 49 U.S.C. § 44902(b) is inapposite.  As this Court held in *Alshrafi*:

> Although Section 44902 certainly extends broad discretion to air carriers to make safety decisions, the statute does not grant them a license to discriminate.  Nor does it permit air carriers to exercise their discretion arbitrarily or capriciously.  Indeed, actions motivated by racial or religious animus are necessarily arbitrary and capricious, and therefore beyond the scope of the discretion granted by Section 44902.

321 F. Supp. 2d at 162 (citations omitted).

IV.    **Mr. Cerqueira's State-Law Discrimination Claim Is Not Preempted by the Airline Deregulation Act.**

The ADA preempts state laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). As this Court stated in *Alshrafi*, racial discrimination has "'nothing whatsoever to do with any legitimate or quasi-legitimate industry-wide practice of affording airline service' under the [ADA]'s express preemption provision." 321 F. Supp. 2d at 162 (quoting *Doricent v. American Airlines, Inc.*, Civ. A. No. 91-12084Y, 1993 WL 437670, *5 (D. Mass. Oct. 19, 1993)). Accordingly, state-law claims based on such illegitimate conduct would not "impair the [ADA]'s purpose to promote 'maximum reliance on competitive forces.'" *Id*. (quoting *Morales v. Trans World Airlines*, 504 U.S. 374, 378-79 (1992)).

Nonetheless, AA asserts that Mr. Cerqueira's claim under M.G.L. c. 272 § 98 is preempted because AA's actions—removing Mr. Cerqueira from flight 2237 and refusing to rebook him on another AA flight—were motivated by safety concerns, not by discrimination. According to AA, *Alshrafi* stands for the proposition that the ADA preempts discrimination claims where the airline's real motivation for the conduct at issue was safety. AA is wrong.

In the context of deciding whether a case could be removed based on complete preemption, *Alshrafi* held that the ADA does not preempt state-law race discrimination claims. 321 F. Supp. 2d at 162-63. After stating that conclusion, the Court discussed *Huggar v. Northwest Airlines, Inc.*, No. 98 C 594, 1999 WL 59841 (N.D. Ill. Jan. 27, 1999). In *Huggar*, the district court first determined that defendant Northwest Airlines's actions were based on safety concerns and not on discrimination, and then dismissed the plaintiff's ordinary tort claims based on preemption. As explained in *Alshrafi*, although the court in *Huggar* listed the state-law discrimination claim among the claims

12

preempted by the ADA, the discrimination claim had already been disposed of under the district court's finding that the airline had not acted out of racial animus, but in reaction to the plaintiff's threatening behavior. *Alshrafi*, 321 F. Supp. 2d at 163 (discussing *Huggar*, 1999 WL 59841, at *6, *9-*10).

Here, if AA proves that its actions were motivated by safety concerns and not discrimination, AA will win on the merits, and the question of preemption will be moot. If Mr. Cerqueira prevails, then, under the analysis in *Alshrafi* and cases cited in that opinion, the ADA does not preempt his claims.

## V.    AA Is Subject to Title VI Because AA Receives Federal Financial Assistance as a Whole.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides that

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

As used in Title VI, the term "program or activity" means "all of the operations of . . . an entire corporation . . . if assistance is extended to such corporation . . . as a whole." 42 U.S.C. § 2000d-4a(3)(A)(i). In its Answer, AA admits that it is a corporation that receives federal financial assistance (Ans. ¶ 5), and in response to an interrogatory, AA made clear that it receives federal financial assistance as a whole. Pl. Fact 5. Nonetheless, AA now argues, without citation to any fact in the record, that "Title VI does not apply to AA because AA does not receive federal financial assistance as 42 U.S.C. § 2000d-1 defines that term." AA Mem. 7. AA's argument is unavailing.

First, 42 U.S.C. § 2000d-1 does not define "federal financial assistance"; rather, it provides enforcement authority to federal agencies that extend such assistance. Second, the cases AA cites

were brought under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, not under Title VI, and they are

not persuasive.  AA Mem. 7 (citing *Shotz v. American Airlines, Inc.*, 420 F.3d 1332 (11th Cir. 2005)

and *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1209 (9th Cir. 1984)).  In *Shotz*, the Eleventh

Circuit held that funds provided the airlines under the Air Transportation Safety and System

Stabilization Act, 49 U.S.C. § 40101, did not constitute "federal financial assistance" within the

meaning of the Rehabilitation Act.  *But cf. Alasady v. Northwest Airlines Corp.*, No. Civ. 02-3669,

2003 WL 1565944, *12 (D. Minn. Mar. 3, 2003) (noting that receipt of Stabilization Act funds

subjects an airline to Title VI).  Here, the record does not reflect the sources of AA's federal

financial assistance because AA's judicial admission that AA receives such assistance made

discovery on the issue unnecessary.  *See Schott Motorcycle Supply*, 976 F.2d at 61 ("A party's

assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the

course of the proceeding.") (quotation omitted); *Belculfine*, 527 F.2d at 944 ("[J]udicial admissions

are conclusive on the party making them.").    Indeed, Mr. Cerqueira served the following

interrogatory on AA:

> If you contend that American Airlines does not receive federal financial assistance
> as a whole, identify and describe the source and purpose of any federal financial
> assistance received by American Airlines during the five years preceding December
> 28, 2003.

AA responded, in relevant part: "American states that it has not advanced any such contention."  Def.

Resp. to Interr. No. 18 (attached as Exh. 4 to Doc. No. 22).  Finally, the Ninth Circuit's decision in

*Jacobson* is similarly inapposite.  *Jacobson* held that purely compensatory payments from the federal

government to an airline for carrying mail did not subject the airline to the Rehabilitation Act.  742

F.2d at 1209-10.

14

**VI.     Respondeat Superior Applies to Civil Actions to Enforce M.G.L. c. 272 § 98.**

AA claims that it cannot be held liable under M.G.L. c. 272 § 98 for discrimination committed by its employees acting within the scope of their employment, because § 98 is a criminal statute and "[r]espondeat superior does not apply to the actions of employees who violate criminal statutes."  AA Mem. 8.  AA has failed to recognize that although § 98 can be enforced through criminal prosecution, § 98 can also be enforced through civil actions by private parties.  Specifically, § 98 provides that "any person aggrieved" by discrimination in a place of public accommodation may recover "such damages as are enumerated in section five of chapter one hundred and fifty-one B."

Indeed, § 98 is primarily enforced through M.G.L. c. 151B §§ 5 and 9.  The Massachusetts Commission Against Discrimination (MCAD), a civil agency authorized to enforce the statute, may impose civil penalties for violations of § 98.  Chapter 151B § 9 provides that any person aggrieved by any "unlawful practice within the jurisdiction of the commission, may . . . bring a civil action for damages or injunctive relief or both in the superior or probate court for the county in which the alleged unlawful practice occurred," and the court "may award the petitioner actual and punitive damages."

In support of its theory that respondeat superior does not apply because § 98 is a criminal statute, AA relies solely on *Jones v. City of Boston*, 738 F. Supp. 604 (D. Mass. 1990).  The entire discussion of the issue in *Jones* consists of the following:

> Count VIII is brought under Massachusetts General Laws c. 272, § 98, a criminal statute which enforces civil rights laws.  Copley Operating is not liable for a criminal act of its employee.  Summary judgment is granted to Copley Operating on that count.

15

*Id.* at 606.  Because the court in *Jones* did not recognize that § 98 may be enforced in civil actions,

*Jones* is not persuasive.

## CONCLUSION

AA's motion for summary judgment should be denied.

**JOHN D. CERQUEIRA**

By his attorneys,

*/s/ Michael T. Kirkpatrick*

_____

Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC  20009
(202) 588-1000
mkirkpatrick@citizen.org

David S. Godkin (BBO #196530)
Darleen F. Cantelo (BBO #661733)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA  02210
Dated: October 18, 2006                           (617) 307-6100

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 18, 2006.

*/s/ Michael T. Kirkpatrick*

_____

Michael T. Kirkpatrick