UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>                Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>                Defendant. | Civil Action No. 05-11652-WGY |

**PLAINTIFF JOHN D. CERQUEIRA'S RESPONSE TO AMERICAN AIRLINES, INC.'S STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 56.1 and Rule 56 of the Federal Rules of Civil Procedure, plaintiff John D. Cerqueira submits this response to American Airlines, Inc.'s (AA) statement of facts in support of AA's motion for summary judgment (Doc. No. 17). All documents cited herein are either pleadings on file with the Court or exhibits attached to plaintiff's statement of undisputed facts in support of his motion for partial summary judgment (Doc. No. 22).

| <u>Fact No.</u> | <u>Plaintiff's Response</u> |
|---|---|
| 1. | Undisputed. |
| 2. | Undisputed. |
| 3. | Incomplete. Mr. Cerqueira requested that his seat be changed to an exit row *or bulkhead* so that he would have more leg room. Mr. Cerqueira did not request any particular seat. Cerqueira Dep. 30:24-31:22. |
| 4. | Undisputed. |
| 5. | Undisputed. |
| 6. | Undisputed. |

7. Disputed in part. Mr. Cerqueira admits that: 1) he approached Ms. Walling at the gate counter and requested that his seat be changed to an exit row or bulkhead; 2) Ms. Walling told Mr. Cerqueira that she could not help him and asked him to sit down and wait; and 3) Mr. Cerqueira complied with Ms. Walling's instructions. Cerqueira Dep. 30:24-31:22; Walling Dep. 18:12-16. Mr. Cerqueira denies that Ms. Walling explained clearly that the reason she could not help him was because she was a flight attendant and not a gate agent. Cerqueira Dep. 32:3-13, 37:5-10.

8. Disputed. Ms. Walling admits that Mr. Cerqueira followed her instructions when she told him to sit down in the seats near the gate counter. Walling Dep. 18:12-19.

9. Disputed. Mr. Cerqueira did not make his request for a seat change in an insistent or hostile manner. Pl. Resp. to Interr. No. 2 (incorporating by reference CRQ 0037). During her deposition in this case, Ms. Walling characterized Mr. Cerqueira's request for a seat change as "hostile and insistent." But according to another flight attendant, at the time of the incident, Ms. Walling characterized Mr. Cerqueira's request for a seat change as merely "annoying." Sargent Dep. 14:16-21.

10. Undisputed.

11.   Disputed in part. Mr. Cerqueira boarded the aircraft when his assigned group was called, and he was among the first coach passengers to board. Ans. ¶ 11.[1] Mr. Cerqueira was in the lavatory for less than five minutes. Cerqueira Dep. 41:2; Walling Dep. 17:8.

12.   Disputed in part and immaterial. According to Ms. Walling, two passengers reported that they were uncomfortable because the passenger with the ponytail—not Mr. Cerqueira—had wished other passengers a "happy new year." Walling Dep. 24:12-22. Indeed, the passengers could not have been referring to Mr. Cerqueira because Mr. Cerqueira did not speak to anyone on board the airplane until he was awakened and asked for his boarding pass sometime later. Cerqueira Dep. 44:15-21. Wishing fellow passengers a "happy new year" on December 28th cannot be properly characterized as "saying uneasy things." This fact is immaterial because it has nothing to do with Mr. Cerqueira's behavior.

13.   Disputed in part. Although Ms. Walling initially testified that she felt it was unusual for passengers to be resting with their eyes closed while other passengers were boarding, Ms. Walling later admitted that it is not uncommon for passengers to sit back and close their eyes. Walling Dep. 34:6-9.

14.   Immaterial. This fact has nothing to do with Mr. Cerqueira's behavior.

---

[1] Because this admission was made in AA's Answer (Doc. No. 5), it is a judicial admission that binds AA. *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.") (quotation omitted); *United States v. Belculfine*, 527 F.2d 941, 944 (1st. Cir. 1975) ("[J]udicial admissions are conclusive on the party making them.").

15.    Immaterial. This fact has nothing to do with Mr. Cerqueira's behavior.

16.    Immaterial. This fact has nothing to do with Mr. Cerqueira's behavior.

17.    Undisputed.

18.    Undisputed.

19.    Disputed in part and immaterial. Mr. Cerqueira did not pay attention to any conversation that may have occurred between the men seated next to him and the flight attendant giving the exit row briefing, and Mr. Cerqueira did not laugh or otherwise react to any conversation that may have occurred between the flight attendant and the men seated next to him. Cerqueira Dep. 45:1-20; Pl. Resp. to Interr. No. 2 (incorporating by reference CRQ 0038 n.1). This allegation is immaterial because Capt. Ehlers did not base his decision to remove Mr. Cerqueira on anything reported by Ms. Sargent. Capt. Ehlers decided to have Mr. Cerqueira removed from the flight based on information and opinions communicated to Capt. Ehlers by flight attendant Sally Walling. Ans. ¶ 33; Ehlers Dep. 22:15-19.

20.    Immaterial. This fact has nothing to do with Mr. Cerqueira's behavior.

21.    Disputed in part and immaterial. Ms. Walling recalls that two passengers claimed that the passenger with the ponytail—not Mr. Cerqueira—had wished other passengers a "happy new year." This fact is immaterial because it has nothing to do with Mr. Cerqueira's behavior. Indeed, the passengers could not have been referring to Mr. Cerqueira, because Mr. Cerqueira did not speak to anyone on board the airplane until he was awakened and asked for his boarding pass

sometime later.  Cerqueira Dep. 44:15-21.  Wishing fellow passengers a "happy new year" on December 28th cannot be properly characterized as "making odd remarks," and Ms. Walling does not recall hearing of any other allegedly "odd remarks" made by the gentlemen in seats 20D and E.  Walling Dep. 25:12-17.  According to Capt. Ehlers, Ms. Walling told him that passengers were concerned about some things that were said, but what was allegedly said was never relayed to Capt. Ehlers, and Capt. Ehlers did not know the basis for the passengers' concern.  Ehlers Dep. 23:4-11, 33:1-4.

22.   Disputed.  Neither Ms. Walling nor Capt. Ehlers observed "unusual behavior exhibited by several passengers."  Capt. Ehlers testified that he did not observe any unusual or suspicious behavior on the part of Mr. Cerqueira either before or after Mr. Cerqueira boarded the plane.  Ehlers Dep. 19:21-20:6.  The only allegedly unusual behavior observed by Capt. Ehlers was a single remark made to Capt. Ehlers by a man with a ponytail in the terminal before boarding.  Ehlers Dep. 16:3-20.  That remark is immaterial because it has nothing to do with Mr. Cerqueira's behavior.  Capt. Ehlers decided to have Mr. Cerqueira removed from the flight based on information and opinions communicated to Capt. Ehlers by flight attendant Sally Walling.  Ans. ¶ 33; Ehlers Dep. 22:15-19.  Ms. Walling did not share her observations about Mr. Cerqueira until after Capt. Ehlers inquired about the passenger with the ponytail.  Walling Dep. 23:18-23, 26:24-27:9; Ehlers Dep. 22:20-21.  Ms. Walling shared her observations about Mr. Cerqueira because Ms. Walling perceived Mr. Cerqueira to be traveling with the other two men in

|   |   |
|---|---|
|   | the exit row.  Ehlers 21:15-22:2.  Ms. Walling did not witness Mr. Cerqueira talking with those men or interacting with them in any way.  Walling Dep. 31:2-4.  Ms. Walling thought that Mr. Cerqueira was traveling with the other two men because they looked similar because they were "dark" and had dark hair.  Walling Dep. 31:14-24.  Ms. Walling did not observe any unusual behavior on the part of Mr. Cerqueira.  Mr. Cerqueira's behavior was common passenger behavior.  Walling Dep. 8:6-8, 14:4-7, 34:6-14; Ehlers Dep. 25:23-26:2. |
| 23. | Disputed in part.  A single comment was made to Capt. Ehlers, and it was made in the terminal by a passenger with a ponytail, not by Mr. Cerqueira.  Ehlers Dep. 16:3-15.  No comment was made to Capt. Ehlers during the boarding process.  Ehlers Dep. 17:3-5, 19:11-13.  Ms. Walling noted that the man with the ponytail was seated in the same row as—but not necessarily next to—Mr. Cerqueira.  Although Ms. Walling may have told Capt. Ehlers that Mr. Cerqueira had boarded the airplane when first class was boarding and that Mr. Cerqueira was the first passenger into coach (Ehlers Dep. 22:21-23:1), AA has made a judicial admission that Mr. Cerqueira boarded the aircraft when his assigned group was called.  Ans. ¶ 11.  Ms. Walling admits that she was on the aircraft before the passengers began to board and that she could not hear the boarding announcements (Walling 12:5-7, 13:5-7, 13:13-18), and Capt. Ehlers testified that flight attendants are required to be on board the airplane before passenger boarding begins.  Ehlers Dep. 26:24-27:2. |

24. Disputed. There was nothing unusual about Mr. Cerqueira's behavior. Capt. Ehlers testified that he contacted the gate agent, the ground security coordinator, and System Operations Control, to relay Ms. Walling's concerns. Ehlers Dep. 22:15-19, 29:15-30:1, 31:5-32:5.

25. Undisputed.

26. Disputed. Although Capt. Ehlers claims not to have looked at the passengers in seats 20D, E, and F, Customer Service Manager Ynes Flores testified that Capt. Ehlers pointed out the passengers seated in the exit row and instructed Mr. Flores to ask them for their boarding passes. Flores Dep. 11:5-9, 11:23-24, 22:5-9. Similarly, Ms. Sargent testified that Capt. Ehlers came out and looked at the passengers in the exit row. Sargent Dep. 16:10-11. Further, Capt. Ehlers had knowledge of Mr. Cerqueira's perceived race or national origin because the flight attendants thought, based solely on the appearance of Mr. Cerqueira and the two men seated next to him, that the three men were together. Ehlers Dep. 21:15-22:2. Ms. Walling thought that the three men looked similar because they were "dark" and had dark hair. Walling Dep. 31:14-24. Ms. Milenkovic thought that the man with the ponytail was Middle Eastern and had a heavy accent, and she noticed that the three men all had dark hair. Milenkovic Dep. 10:10-13, 18:3-9, 18:16-20. Ms. Milenkovic admits that since September 11th, she pays close attention to whether a passenger has an accent. Milenkovic Dep. 19:2-8. Ms. Sargent thought the three men were foreign nationals because of their appearance, and she believed that a review of the passenger manifest had revealed that two of them

|   |   |
|---|---|
|   | had Israeli passports but Arabic names.  Sargent Dep. 11:22-12:3, 13:12-18, 31:6-32:2. |
| 27. | Disputed.  AA has made a judicial admission that Capt. Ehlers made the decision to have Mr. Cerqueira removed from the flight.  Ans. ¶ 32.  Capt. Ehlers based his decision to have Mr. Cerqueira removed from the flight on information and opinions communicated to Capt. Ehlers by flight attendant Sally Walling.  Ans. ¶ 33; Ehlers Dep. 22:15-19.  Ms. Walling told Capt. Ehlers that Mr. Cerqueira 1) requested a seat change in an insistent manner; 2) was the first coach passenger to board; 3) used the lavatory after boarding; and 4) was sleeping while other passengers boarded.  Ehlers Dep. 80:8-17, 22:21-23:3, 25:15-19. |
| 28. | Disputed.  Neither Mr. Marquis not Ms. Cobbs can remember the details of what they knew about Mr. Cerqueira on December 28, 2003.  Marquis Dep. 10:1-25, 12:15-14:5; Cobbs Dep. 14:10-15:24, 33:19-34:14, 43:8-25. |
| 29. | Immaterial and incomplete.  Because Mr. Cerqueira had already been removed from the flight, this allegation is immaterial because it could not have been a basis for the decision to remove Mr. Cerqueira.  It is further immaterial because it has nothing to do with Mr. Cerqueira's behavior.  Moreover, Capt. Ehlers admits that the passenger's allegation regarding a prohibited object was false.  Ehlers Dep. 43:10-12. |
| 30. | Disputed and immaterial.  There is no evidence that the State Police did anything based on Mr. Cerqueria having used the lavatory.  Mr. Cerqueira was in the lavatory for approximately four to five minutes, not for a "lengthy period." |

|     | |
| --- | --- |
|     | Cerqueira Dep. 40:16-41:2; Walling Dep. 17:6-8.  The First Officer checked the lavatory and reported that he did not find anything.  Ehlers Dep. 44:3-14.  Capt. Ehlers testified that he believes the false allegation about a prohibited object was a "factor" in the decision to deplane all the passengers and rescreen the luggage.  Ehlers Dep. 45:3-5.  The fact that a decision was made to deplane all the passengers and rescreen the luggage is immaterial because the decision was made after Mr. Cerqueira had been removed from the flight. |
| 31. | Immaterial.  Any information provided to Capt. Ehlers after Mr. Cerqueira was removed is immaterial because it could not have been a basis for Capt Ehler's decision to have Mr. Cerqueira removed from the flight, and Capt. Ehlers was not involved in the decision to deny service to Mr. Cerqueira after his release from police questioning.  Ehlers Dep. 64:1-5. |
| 32. | Disputed.  Craig Marquis was the manager on duty at AA's System Operations Control (SOC) on the morning of December 28, 2003.  Marquis Dep. 7:10-13, 9:13-14, 18:3-4.  Mr. Marquis made the decision to deny service to Mr. Cerqueira after he was released from questioning by the State Police.  Def. Resp. to Interr. No. 2.  Mr. Marquis has no recollection of his actions on December 28, 2003, with respect to any of the incidents involving Mr. Cerqueira.  Marquis Dep. 10:1-25, 12:15-14:5.  Mr. Marquis does not recall making the decision that the three passengers removed from the airplane for questioning would not be rebooked on a later AA flight, and he does not recall the basis for the decision to deny service to those passengers.  Marquis Dep. 13:11-17.  At the time Mr. Cerqueira was denied |

        service, he was offered no information regarding how long he would be barred from travel on AA.  Nine days later, on January 6, 2004, AA sent Mr. Cerqueira an e-mail stating that "[t]here is no indication that you will be denied boarding in the future."  Ans. ¶ 30.

33.      Undisputed.

34.      Incomplete.  *See* Plaintiff John D. Cerqueira's Statement of Undisputed Facts in Support of His Motion for Partial Summary Judgment (Doc. No. 22).

        **JOHN D. CERQUEIRA**

        By his attorneys,

        */s/ Michael T. Kirkpatrick*
        _____
        Michael T. Kirkpatrick
        Public Citizen Litigation Group
        1600 20th Street NW
        Washington, DC  20009
        (202) 588-1000
        mkirkpatrick@citizen.org

        David S. Godkin (BBO #196530)
        Darleen F. Cantelo (BBO #661733)
        Birnbaum & Godkin, LLP
        280 Summer Street
        Boston, MA  02210
Dated: October 18, 2006        617-307-6100

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 18, 2006.

        */s/ Michael T. Kirkpatrick*
        _____
        Michael T. Kirkpatrick