UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>                Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>                Defendant. | Civil Action No. 05-11652-WGY |

PLAINTIFF JOHN D. CERQUEIRA'S REPLY TO
AMERICAN AIRLINES'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff John D. Cerqueira moved for partial summary judgment on the ground that he had established a *prima facie* case of discrimination under each of his three causes of action, and American Airlines, Inc. (AA) had failed to rebut the resulting presumption of discrimination. In its opposition, AA makes a baseless claim that Mr. Cerqueira's motion is untimely; erroneously asserts that it is not subject to Title VI or M.G.L. c. 272 § 98; attacks Mr. Cerqueira's *prima facie* case using flawed legal theories; fails to meet its burden of production at the second stage of the *McDonnell Douglas* burden-shifting framework; and advances immunity and preemption arguments that have been rejected by this Court. Because AA's legal theories do not undermine Mr. Cerqueira's *prima facie* case, and because AA remains unable to articulate nondiscriminatory reasons that, if believed, would justify its actions, Mr. Cerqueira is entitled to partial summary judgment on the issue of liability.

1.      **Plaintiff's Motion for Partial Summary Judgment Is Timely.**

Pursuant to the Court's electronic order entered December 20, 2005, dispositive motions were due by October 1, 2006. *See* Electronic Order entered Dec. 20, 2005. Mr. Cerqueira filed his motion for partial summary judgment on September 22, 2006. Doc. No. 20. Thus, Mr. Cerqueira's motion is timely.

AA claims that the Court adopted the deadlines proposed by the parties in their joint statement pursuant to Local Rule 16.1(d). *See* Doc. No. 8. The Court did not adopt the parties' proposed schedule, but instead set the case for final pretrial conference and trial (*see* Docket Text of Dec. 19, 2005), and set deadlines for completing discovery and filing dispositive motions (*see* Electronic Order entered Dec. 20, 2005). Even if the Court had adopted the parties' proposed schedule, Mr. Cerqueira's motion would be timely because the parties suggested that dispositive motions be filed by October 9, 2006. Doc. No. 8, § II(G). AA's assertion, without citation, that "the parties agreed to a deadline for summary judgment motions of August 22, 2006" (AA's Opp. 1) is baseless.

2.      **AA Is Subject to Title VI Because AA Receives Federal Financial Assistance as a Whole.**

AA claims that it "does not receive federal financial assistance as that term is defined in 42 U.S.C. § 2000d-1." AA Opp. 5. AA's claim is a non sequitur because 42 U.S.C. § 2000d-1 does not define the term. Moreover, AA has made a judicial admission that it receives federal financial assistance. Ans. ¶ 5.[1] Further, AA confirmed, in its response to plaintiff's statement of undisputed

---

[1] *See Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.") (quotation omitted); *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975) ("[J]udicial admissions are conclusive on the party

facts, that AA "is not advancing the contention that it does not receive federal financial assistance within the context of this litigation." AA Resp. to Pl. Fact 5. Indeed, in response to an interrogatory served by Mr. Cerqueira, AA did not identify and describe the source and purpose of the federal financial assistance it receives, because AA stated unequivocally that it does not contend that it does not receive federal financial assistance as a whole. *See* Def. Resp. to Interr. No. 18 (attached as Exh. 4 to Doc. No. 22).

AA confuses claims under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, with Mr. Cerqueira's claim under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d. AA cites two cases as authority for its assertion that "receipt of federal funds pursuant to the Stabilization Act is not 'federal financial assistance' for purposes of the Rehabilitation Act." AA Opp. 5 (citing *Shotz v. American Airlines, Inc.*, 420 F.3d 1332 (11th Cir. 2005) and *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1209 (9th Cir. 1984)). *Shotz* and *Jacobson* did not involve claims under Title VI. Indeed, *Jacobson* involved neither Title VI nor the Stabilization Act, but held that receipt of compensation for carrying mail did not subject the airline to the Rehabilitation Act. 742 F.2d at 1209-10. In contrast, at least one court has found that receipt of Stabilization Act funds subjects an airline to Title VI. *Alasady v. Northwest Airlines Corp.*, No. Civ. 02-3669, 2003 WL 1565944, at *12 (D. Minn. Mar. 3, 2003).

3.     **Respondeat Superior Applies to Civil Actions to Enforce M.G.L. c. 272 § 98.**

AA claims that it "cannot be held liable under a theory of respondeat superior for the actions of employees who violate criminal statutes that enforce civil rights laws like Chapter 272 § 98." AA Opp. 6 (citing *Jones v. City of Boston*, 738 F. Supp. 604, 606 (D. Mass. 1990)). AA, like the court

---

making them.").

in *Jones*, fails to recognize that although § 98 can be enforced through criminal prosecution, it can also be enforced through civil actions by private parties. Specifically, § 98 provides that "any person aggrieved" by discrimination in a place of public accommodation may recover damages. Indeed, § 98 is primarily enforced through M.G.L. c. 151B §§ 5 and 9. The Massachusetts Commission Against Discrimination (MCAD), a civil agency authorized to enforce the statute, may impose civil penalties for violations of § 98, and Chapter 151B § 9 provides that any person aggrieved by any "unlawful practice within the jurisdiction of the commission, may . . . bring a civil action for damages or injunctive relief or both in the superior or probate court for the county in which the alleged unlawful practice occurred." The statute also provides that the court "may award the petitioner actual and punitive damages." Thus, because § 98 provides for civil liability, AA may be held liable for the discriminatory acts of its employees under the doctrine of respondeat superior. *See College-Town, Div. of Interco, Inc. v. MCAD*, 508 N.E.2d 587, 593 (Mass. 1987) (holding employer liable under M.G.L. c 151B § 4 for sexual harassment committed by its employee because "[i]t is clear that the Legislature intended that an employer be liable for discrimination committed by those on whom it confers authority"); *Sarvis v. Boston Safe Deposit & Trust Co.*, 711 N.E.2d 911, 921 (Mass. App. Ct. 1999) ("We think it doubtful that the Legislature would have intended to create a unique exception to the tort principle of respondeat superior for a statute enacted as a necessity to remedy the violation of civil rights by private persons. . . . We conclude that the Legislature intended corporations to be vicariously liable under the [Massachusetts Civil Rights Act] for civil rights violations committed by their agents acting in the scope of their employment."); *Carpenter v. Yellow Cab Co.*, 2001 WL 1602758, at *2 (MCAD Feb. 23, 2001) (finding that "[a] public carrier has a non-delegable duty to protect its passengers from unlawful discrimination," and holding taxi

company "liable for any acts of discrimination by its taxi drivers that violate M.G.L. c. 272 § 98 ");

*Wilder v. Diamond Cab Co.,* 2001 WL 1602757, at *3 (MCAD Feb. 23, 2001) (same).

**4.      AA Errs by Asserting That Mr. Cerqueira Has Failed to Establish a *Prima Facie* Case of Discrimination.**

In its opposition, AA asserts that it need not "articulate a legitimate, non-discriminatory reason for its actions" because "the record lacks any evidence from which a reasonable factfinder could conclude that American or its employees intended to discriminate against the plaintiff." AA Opp. 6.  AA bases this assertion on two theories; both lack merit.

First, AA claims that its decisionmakers lacked personal knowledge of Mr. Cerqueira's appearance, and, therefore, their decisions could not have been motivated by discrimination.  AA Opp. 7.  AA is wrong as a matter of law.[2]  As plaintiff explained in his opening memorandum, it is well-settled that a decisionmaker need not be biased if the decisionmaker acted on biased information provided by another.  Pl. Mem. 15-16 (citing *Cariglia v. Hertz Equip. Rental Corp.*, 363 F.3d 77, 83 (1st Cir. 2004); *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484-88 (10th Cir. 2006); *Zades v. Lowe's Home Ctrs., Inc.*, 446 F. Supp. 2d 29, 40 (D. Mass. 2006); *Harlow v. Potter*, 353 F. Supp. 2d 109, 116-18 (D. Me. 2005)).  AA's opposition does not address this principle. Instead, AA cites *Al'Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp. 2d 841, 848 (S.D. Ohio 2003), and other cases where airlines were found immune from liability pursuant to 49 U.S.C. § 44902(b) because their decisions to deny service were not arbitrary or capricious.  Because actions

---

[2]For purposes of Mr. Cerqueira's motion for partial summary judgment, the Court must accept AA's claim that its decisionmakers lacked knowledge of Mr. Cerqueira's protected characteristics.  Pl. Mem. 15 n.4.  For purposes of his opposition to AA's motion for summary judgment, Mr. Cerqueira has shown that there is a fact dispute as to whether AA's decisionmakers had knowledge of Mr. Cerqueira's appearance.  Pl. Opp. 6.

motivated by unlawful discrimination "are necessarily arbitrary and capricious, and therefore beyond the scope of the discretion granted by Section 44902," *Alshrafi v. American Airlines, Inc.*, 321 F. Supp. 2d 150, 162 (D. Mass. 2004), those cases are inapposite.

Second, AA claims that Mr. Cerqueira cannot establish a *prima facie* case because "the flight attendants have not testified that they believed plaintiff to be of any particular racial, ethnic or religious background." AA Opp. 7. AA misses the point. Mr. Cerqueira has established, with competent summary judgment evidence, that his color and physical appearance are similar to those commonly associated with individuals of Arab, Middle Eastern, or South Asian descent (Pl. Fact 4); the two men seated next to him had a similar color and physical appearance (Pl. Fact 18); and only Mr. Cerqueira and the two men seated next to him were escorted from flight 2237, questioned by the police, and denied further service (Pl. Facts 37, 39-40, 52-53). These facts alone are sufficient to establish that Mr. Cerqueira is part of a group protected from unlawful discrimination under each of his three causes of action.

Although Mr. Cerqueira can establish a *prima facie* case without showing that the flight attendants believed that he was a member of a particular minority group, there is substantial evidence that the flight attendants became concerned about the behavior of Mr. Cerqueira and the two other men in his row *because* the flight attendants thought the three men were together and from the Middle East. The three flight attendants thought that Mr. Cerqueira was traveling with Mr. Ashmil and Mr. Rokah because the three men looked similar. Pl. Facts 26-28. Ms. Walling thought they looked similar because they were "dark" and had dark hair. Pl. Fact 26. Ms. Milenkovic noticed that the three men all had dark hair; she thought that the man with the ponytail, either Mr. Ashmil or Mr. Rokah, was Middle Eastern; and she noticed that he had a heavy accent. Pl. Fact 27. Ms. Sargent

thought the three men were foreigners because of their appearance. Pl. Fact 28. She also believed that a review of the passenger manifest had revealed that Mr. Ashmil and Mr. Rokah had Arabic names. *Id.* Indeed, in their written reports from the day of the incidents, the flight attendants specifically noted that Mr. Ashmil and Mr. Rokah spoke with a "heavy accent," and had foreign passports and "Arabic names." Pl. Facts 27-28.

**5.    AA Has Failed to Articulate Legitimate Nondiscriminatory Reasons Sufficient to Justify its Actions.**

Because Mr. Cerqueira has established a *prima facie* case of discrimination, a presumption of illegal discrimination is created and the burden of production has shifted to AA to articulate a legitimate nondiscriminatory reason for the challenged acts. As set forth below, AA's asserted reasons for removing Mr. Cerqueira from flight 2237, and for refusing to rebook him, are insufficient as a matter of law, and Mr. Cerqueira is entitled to summary judgment. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1015 (1st Cir. 1979).[3]

**A.    AA's Asserted Reasons for Removing Mr. Cerqueira from Flight 2237 Are Insufficient to Rebut the Inference of Discrimination.**

AA addresses its reasons for removing Mr. Cerqueira from flight 2237 in a single paragraph of its 14-page opposition. AA Opp. 10. AA asserts that Mr. Cerqueira was removed from flight 2237 because

> [t]he evidence shows he approached a uniformed crew member and acted hostilely toward her, that he boarded at a time when he presumably should not have been on the plane, that he proceeded immediately to a lavatory upon boarding the flight when lavatory facilities were available to him in close proximity in the airport, that he

---

[3]If the Court determines that AA has proffered admissible evidence sufficient to meet AA's burden of production, the case must go to the jury to determine whether AA's proffered reasons for its actions are pretext and the real reason was discriminatory. *See Dow v. Donovan*, 150 F. Supp. 2d 249, 264-66 (D. Mass. 2001).

> remained in the lavatory for an unusual period of time, and that he reacted in a laughing manner to inappropriate comments and behavior by his seatmates during an important exit row safety briefing.

*Id.* AA's assertions, even if taken as true for purposes of plaintiff's motion, are insufficient to satisfy its burden to produce reasons "which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the [adverse] action." *Hicks*, 509 U.S. at 507 (emphasis in original); *see also Simmons v. American Airlines*, 34 Fed. Appx. 573, 575-76 (9th Cir. 2002) ("The burden-shifting structure devised by the Supreme Court . . . does not give American carte blanche to proffer any explanation, regardless of its plausibility, for its actions to shift the burden back to [plaintiff].").

AA asserts that Mr. Cerqueira's "actions were sufficient to raise security concerns about him" (AA Opp. 10), but AA does not even attempt to explain *how* the behaviors listed above indicate a "security concern." Conclusory assertions of "security concerns" cannot satisfy AA's burden. *Loeb*, 600 F.2d at 1012 n.5 (requiring that defendant articulate its reasons "with some specificity"); *see also Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 251 (1st Cir. 2000) ("A mere scintilla of evidence will not rise to a triable issue of fact.") (citation omitted).

It is not plausible that AA's allegations about Mr. Cerqueira indicated a security threat. For example, AA has made a judicial admission that Mr. Cerqueira boarded when his assigned group was called. Ans. ¶ 11. Given that Mr. Cerqueira did not board out of turn, it is implausible that he was removed from the flight based on Ms. Walling's speculation that he may have boarded early. Ms. Walling admitted at deposition that she was on the aircraft before Mr. Cerqueira boarded and she did not hear the boarding announcements. Pl. Fact 32. Similarly, it is implausible that Mr. Cerqueira's use of the lavatory raised security concerns, because the First Officer checked the

8

lavatory after Mr. Cerqueira used it and found nothing amiss. Ehlers Dep. 44:3-14 (attached as Exh. 10 to Doc. No. 22). Moreover, it is implausible that any of Ms. Walling's observations about Mr. Cerqueira indicated a security threat, because Ms. Walling was not sufficiently concerned about Mr. Cerqueira to report her observations to the Captain. Rather, she reported her concerns only after the Captain inquired about one of the other men seated in Mr. Cerqueira's row. Pl. Fact 25.

Significantly, AA does not dispute that each element of Mr. Cerqueira's behavior does not typically result in a denial of service. *See* AA Resp. to Pl. Facts 31-33. Rather, AA asserts that, "when coupled with unusual behavior of his seatmates, the totality of the circumstances merited further investigation." AA Opp. 10. This amounts to an admission that Mr. Cerqueira's behavior, standing alone, would not have resulted in his removal from flight 2237, and that Mr. Cerqueira was removed from the flight because he was perceived to be traveling with the men seated next to him. That perception could only have arisen because of Mr. Cerqueira's physical characteristics, because there was no other indicia that the three men were together. Mr. Cerqueira was not seen with Mr. Ashmil or Mr. Rokah in the gate area before the flight, he did not board at the same time as Mr. Ashmil and Mr. Rokah, and he did not speak to them. Pl. Fact 17 & 26.

> **B.    AA Has Failed to Articulate Any Reason for its Refusal to Serve Mr. Cerqueira After He Was Released from Questioning and Cleared for Travel.**

AA asserts that it did not rebook Mr. Cerqueira after he was released from questioning and cleared for travel by the police, because

> [a]t the time that plaintiff was released from questioning by the state police, American still had security concerns about plaintiff and the other two passengers traveling in the exit row. These concerns included, but were not limited to, concerns about their behavior prior to and after boarding and reports from a passenger that one of them had a box cutter removed at the security checkpoint. Though [Craig Marquis] may not have a present recollection as to the specific factors that he took into

consideration in denying service on December 28, 2003, the record evidence
demonstrates that the denial was based on "Security Concerns."

AA Opp. 11. These reasons are insufficient to satisfy AA's burden of production.

It is undisputed that AA's decisionmaker, Craig Marquis, cannot recall the reasons for his decision. Pl. Fact 45. Such silence in the face of Mr. Cerqueira's *prima facie* case requires the court to "enter judgment for the plaintiff because no issue of fact remains in the case." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Because Mr. Marquis cannot articulate why he barred Mr. Cerqueira from booking another AA flight, AA's assertion that Mr. Cerqueira was denied rebooking for the same reasons he was removed from flight 2237, or that he was denied rebooking because of a false rumor about a box cutter, is pure speculation. Similarly, AA cannot satisfy its burden by pointing to a computer entry indicating that the denial of service was due to "security concerns," because such conclusory statements are insufficient to shift the burden back to plaintiff. *See, e.g., IMPACT v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (holding that where plaintiff established a *prima facie* case, conclusory statement that defendant selected the best qualified applicant was insufficient to satisfy defendant's rebuttal burden); *Simmons*, 34 Fed. Appx. at 576 (holding that "American did not satisfy its burden of articulating a legitimate, non-discriminatory reason for removing [plaintiff]" from a flight, because American's evidence was insufficient to justify its claim that it removed plaintiff for safety reasons).

**6.  Mr. Cerqueira's Claims Are Not Barred by 49 U.S.C. § 44902(b), and His State-Law Discrimination Claim Is Not Preempted by 49 U.S.C. § 41713(b)(1).**

AA argues that 49 U.S.C. § 44902(b) allows AA to "refuse service to passengers deemed 'inimical to safety' unless the reasons for refusing service are arbitrary and capricious." AA Opp. 11. Because each of Mr. Cerqueira's causes of action requires him to prove discrimination, 49 U.S.C.

§ 44902(b) is inapposite. As this Court noted in *Alshrafi*, 321 F. Supp. 2d at 162, actions motivated by unlawful discrimination "are necessarily arbitrary and capricious, and therefore beyond the scope of the discretion granted by Section 44902."

Similarly, AA argues that Mr. Cerqueira's state-law discrimination claim is preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1). This Court rejected that argument in *Alshrafi*, 321 F. Supp. 2d at 163, and Mr. Cerqueira has addressed AA's argument in detail in his opposition to AA's motion for summary judgment. *See* Pl. Opp. 12-13.

## Conclusion

Because Mr. Cerqueira has established a *prima facie* case of discrimination, and AA has failed to articulate legitimate nondiscriminatory reasons that could justify its actions, Mr. Cerqueira is entitled to summary judgment on the issue of liability.

**JOHN D. CERQUEIRA**
By his attorneys,

*/s/ Michael T. Kirkpatrick*
_____
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC  20009
(202) 588-1000
mkirkpatrick@citizen.org

David S. Godkin (BBO #196530)
Darleen F. Cantelo (BBO #661733)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA  02210

Dated: November 1, 2006        617-307-6100

11

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 1, 2006.

>  */s/ Michael T. Kirkpatrick*
>  _____
>  Michael T. Kirkpatrick