UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>             Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>             Defendant. | Civil Action No. 05-11652-WGY |

**PLAINTIFF'S FIFTH MOTION *IN LIMINE* TO EXCLUDE ANY REFERENCE TO FACTS OR CIRCUMSTANCES THAT AROSE WITH REGARD TO FLIGHT 2237 AFTER MR. CERQUEIRA WAS REMOVED**

American Airlines (AA) is expected to seek to offer evidence regarding incidents that occurred with respect to flight 2237 *after* AA had decided to have Mr. Cerqueira removed from the flight for questioning by the state police. Such evidence should be excluded because it is not relevant to any issue in this case. Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."). Even if such evidence had some marginal relevance, it should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403.

Specifically, AA will seek to offer evidence regarding the following incidents alleged to have occurred after Mr. Cerqueira, Mr. Ashmil, and Mr. Rokah were removed from flight 2237:

    1)    A passenger made a false claim that the removed passenger who had a ponytail—not Mr. Cerqueira—had surrendered a box-cutter at the security check point;

    2)    All passengers and luggage were removed from the aircraft and rescreened;

    3)    Dogs were brought onto the aircraft, and the aircraft was searched; and

        4)        The flight attendants originally assigned to flight 2237 were replaced.

*See* Incident Report prepared by Capt. Ehlers (attached as Exh. 1).  None of these allegations is relevant to the issue of whether AA's decision to remove Mr. Cerqueira from flight 2237 was motivated by discrimination, because these allegations relate only to events that occurred after that decision was made.  Similarly, these allegations are irrelevant to the issue of whether AA's decision to bar Mr. Cerqueira from booking another flight was motivated by discrimination, because AA's decisionmaker has already testified that he does not recall the reason for his decision.  *See* Marquis Dep. 13:11-23 (attached as Exh. 2).  Thus, the Court should exclude this evidence pursuant to Federal Rules of Evidence 402 or 403.  *See Simmons v. American Airlines*, 34 Fed. Appx. 573, 575 n.1 (9th Cir. 2002) (noting that trial court had properly recognized that AA's attempt to use a post-removal comment "was a red herring because the comment was made after [plaintiff] had already been removed from the aircraft").

                **JOHN D. CERQUEIRA**
                By his attorneys,

                */s/ Michael T. Kirkpatrick*
                _____
                Michael T. Kirkpatrick
                Public Citizen Litigation Group
                1600 20th Street NW
                Washington, DC  20009
                (202) 588-1000
                mkirkpatrick@citizen.org

                David S. Godkin (BBO #196530)
                Darleen F. Cantelo (BBO #661733)
                Birnbaum & Godkin, LLP
                280 Summer Street
                Boston, MA  02210
Dated: November 17, 2006      617-307-6100

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 17, 2006.

              */s/ Michael T. Kirkpatrick*
              _____
              Michael T. Kirkpatrick

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 14, 2006, at 1:00 pm, I conferred by telephone with Amy Cashore Mariani, counsel for defendant, and attempted in good faith to resolve or narrow the issue presented in this motion, but the parties were unable to resolve the issue or narrow the areas of disagreement.

              */s/ Michael T. Kirkpatrick*
              _____
              Michael T. Kirkpatrick

**Exhibit 1**

to

**PLAINTIFF'S FIFTH MOTION *IN LIMINE* TO EXCLUDE ANY REFERENCE TO FACTS OR CIRCUMSTANCES THAT AROSE WITH REGARD TO FLIGHT 2237 AFTER MR. CERQUEIRA WAS REMOVED**

Incident Report prepared by Capt. Ehlers

06/01/2004

# Detail Note

Event ID: 03122856

Page 1 of 1

## Secured Note

Created: 6/1/2004 17:32   Randy Engberg          Updated: 6/1/2004 17:35   Randy Engberg

```
OF-25 Debrief 20031229109
Pilot: EHLERS, JOHN
```

One Line Summary:  Security Concerns With Passengers
Event Description:
Flight Attendants became concerned about behavior of 2-3 of our passengers sitting in exit row. Concerns were related to comments made and how they were made. One of these passengers spent an inordinate amount of time in aft lav immediately during boarding. Two of these passengers seemed extremely interested in duties of the #2 and #4 Flight Attendant. As the entire crew became more concerned, I became aware that one of these passengers was indeed a passenger with whom I had what I would call an 'odd exchange of words' in the terminal before departure. He wanted to know whether I was the Captain going to FLL, and when I confirmed that I was; this gentleman said, "Good luck....You are taking me.....I am going with you". As I think about the exchange, it does not look that odd in print. However in person.........it felt and looked very odd and out of place. It became clear that Flight Attendants were uncomfortable with our departing, and that is when I called for an agent and the GSC, even though we were about to push and agent had left. Passengers checked luggage was removed for re-screening and State Police and I conferred and passengers in question were removed for questioning along with their carry on bags. State Police became concerned with at least one individuals passport and questioning continued at secure TSA location away from gate. Tension level was rising among the 126 other passengers. State Police, TSA, and I decided to have aircraft emptied of passengers and all bags. Aircraft was re-searched, including dogs. Passengers were held in a secure location and re-screened before it was decided that we would re-board and continue on to FLL. During this three hour process, Flight Attendants observed body movements and heard things said that caused even more concern and they elected not to work the trip, if it depart. Also, of particula
r note is that during this 'process' a passenger informed us that one of the passengers we had concerns about had had a box cutter taken from him at security. This, I understand through TSA management, was false. Although a passenger had voluntarily surrendered a box cutter and switch blade earlier which she may have witnessed. I had lengthy debriefs with local AA management, State Police, TSA management, and Air Marshalls who were called to our gate to investigate. State Police conducted lengthy interviews with the passengers that my crew had concerns about including other passengers who witnessed some of the suspicious behavior that has been addressed. Everyone involved with this situation did a very professional job. First Officer, Flight Attendants, Agents, ramp personnel, Flight Service and Agent supervisors, TSA, State Police, and the Air Marshalls all helped to deal with a situation that became more complex and tense for a great many people. I would like to get the status of the passengers who we did not transport. Whether they took a later flight, no flight, etc. I would like to know whether the authorities found anything that pertains to our security concerns. And, will passengers be allowed to fly AA again if no 'problems' were found?

AA 0035

**Exhibit 2**

to

**PLAINTIFF'S FIFTH MOTION *IN LIMINE* TO EXCLUDE ANY REFERENCE TO FACTS OR CIRCUMSTANCES THAT AROSE WITH REGARD TO FLIGHT 2237 AFTER MR. CERQUEIRA WAS REMOVED**

Marquis Deposition Transcript page 13

[13]

1  Q  Did you communicate with the pilot to that
2  flight -- it was Captain John Ehlers -- did you
3  communicate with him on that day?
4  A  I do not recall.
5  Q  Who made the decision to deplane all the
6  passengers and re-screen them?
7  A  I do not recall.
8  Q  Who made the decision to have dogs brought onto
9  the plane?
10  A  I do not recall.
11  Q  Were you involved in making the decision that
12  the three passengers removed for questioning would not be
13  rebooked on the later American Airlines flight that day?
14  A  I do not recall.
15  Q  Do you know the basis for the decision not to
16  rebook those passengers on a later flight?
17  A  I do not recall.
18  Q  Do you recall anybody that you received
19  information from on that date about this incident?
20  A  I do not recall.
21  Q  Do you recall anybody that you provided
22  information to on that date about this incident?
23  A  No.
24  Q  Do you know when the decision was made to deny
25  further service to these three passengers?

[14]

1  A  No.
2  Q  Do you know how the decision not to rebook these
3  passengers was communicated to American Airlines'
4  personnel in Boston?
5  A  I do not recall.
6  Q  Do you know whether the three individuals
7  removed from the flight are barred from further travel on
8  American Airlines?
9  A  Other than from the deposition or other from the
10  paperwork?  It was stated in the paperwork that they as
11  of January 6th, is that correct, 2004, they allowed that
12  person to travel; is that correct?
13  Q  Okay.  There are documents, yes, that --
14  A  I remember reading that in the document, --
15  Q  In preparation --
16  A  -- that's all the information I know.
17  Q  Okay.  Other than any review of documents you
18  did in preparation for this deposition, do you have any
19  knowledge about whether these individuals -- how long the
20  denial of service lasted?
21     MR. FITZHUGH:  Objection, form.  Why don't
22  you ask for each particular person?
23     MR. KIRKPATRICK:  Okay.
24  Q  With regard to Mr. Cerqueira, do you know how
25  long he was barred from travel on American Airlines?

[15]

1  A  Other from that documentation, I do not.
2  Q  With regard to the other passengers removed from
3  that flight, and the first one who is apparently in the
4  aisle seat, Oren Ashmil, do you know how long he was
5  barred from travel on American Airlines?
6  A  No.
7  Q  What about for Vittorio Daniel Rokah, who was in
8  the middle seat?
9  A  No.
10  Q  Before preparing for today's deposition, did
11  anybody from American Airlines contact you after
12  December 28, 2003 to discuss this incident?
13  A  Alec did.
14  Q  That would be Alec Bramlett?
15  A  That's correct.
16  Q  Do you recall when that was?
17  A  I do not.  I was on shift; he called, asked me
18  if I recalled; I did not.
19  Q  Do you have any -- do you have any --
20  A  Can I look at this?
21     MR. FITZHUGH:  No.  That's for the
22  stenographer, just for some names.
23  Q  Did you prepare any documents or reports the day
24  of the incident regarding the incident?
25  A  I do not recall.

[16]

1  Q  In preparation for this deposition, did you see
2  any documents that you had a hand in preparing?
3  A  Other than the ones that were in the file, no.
4  Q  Okay.  Let's take a look at some documents,
5  because I'm not privy to what was in the file that you
6  looked at.  But I'd like to just take a look at a series
7  of documents and, first, if you can tell me whether it's
8  one of the documents you reviewed in preparation for the
9  deposition, that would be helpful.
10     First, I'm going to show you what was
11  previously marked as Exhibit 12, and this is a passenger
12  name record for John Cerqueira.  And it's five pages, so
13  if you want to take a moment to familiarize yourself with
14  it.
15  A  I have seen this PNR.
16  Q  When did you see it first?
17  A  I saw this PNR a couple of weeks ago when I was
18  giving information on a case for Michael.
19  Q  To prepare for the deposition?
20  A  That's correct.
21  Q  On December 28, 2003, did you add any
22  information to the detail notes for the event with this
23  ID number?
24  A  No, I don't do that.
25  Q  Did you instruct Rhonda Cobbs to add any