UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>                    Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>                    Defendant. | Civil Action No. 05-11652-WGY |

**PLAINTIFF'S SIXTH MOTION *IN LIMINE* TO EXCLUDE ANY
REFERENCE TO POLICIES, PROTOCOLS, OR TRAINING
MATERIALS THAT HAVE NOT BEEN PRODUCED IN DISCOVERY,
INCLUDING THOSE WITHHELD PENDING A DETERMINATION
OF WHETHER THEY CONTAIN SENSITIVE SECURITY INFORMATION**

Defendant American Airlines (AA) may seek to introduce evidence that its employees acted in conformity with AA policies and training regarding refusal of service to ticketed passengers, including an AA policy that forbids the use of race or ethnicity as a basis for denial of service decisions. During discovery, plaintiff John D. Cerqueira requested that AA identify, describe, and produce such materials, but AA refused to do so pending a determination of whether the information is "Sensitive Security Information" (SSI) subject to the provisions of 49 C.F.R. § 1520. Because AA has not complied with plaintiff's discovery requests, AA should be precluded from referencing any policies, protocols, and training materials that it has not produced.

The relevant interrogatories are as follows:

Interrogatory No. 11:

If the decisions to remove Mr. Cerqueira from flight 2237 and to refuse service to Mr. Cerqueira after his release from questioning were made pursuant to any policy, procedure, manual, or guideline, whether written or unwritten, identify and state the substance of the policy, procedure, manual, or guideline.

Interrogatory No. 14:

State whether you have provided any of the American Airlines personnel involved in the incidents on which the Complaint is based any training, instruction, or written materials concerning the circumstances under which a passenger may be removed from a flight, denied boarding, or refused service, and, if so, identify and state the substance of the training, instruction, or written materials.

Interrogatory No. 15:

State whether you have provided any of the American Airlines personnel involved in the incidents on which the Complaint is based any training, instruction, or written materials concerning whether a passenger's race, color, national origin, ethnicity, or ancestry may be considered in determining whether a passenger should be removed from a flight, denied boarding, or refused service, and, if so, identify and state the substance of the training, instruction, or written materials.

Request for Production of Documents Nos. 4(c), 4(d), 6, & 7, sought the corresponding documents. In response, AA stated generally that "perceived security concerns are dealt with on an *ad hoc* basis," and that "it has, and did have in effect during the relevant time period, a strict policy that forbids unlawful discrimination of any kind against any passenger." AA's Supplemental Answers to Interrogatories (attached as Exh. 1). AA refused to answer further, or to produce related documents, on the basis that the information sought "would in part involve the disclosure of Sensitive Security Information ('SSI'), which is subject to the provisions of 49 CFR § 1520[,]" and that "[n]o such disclosure can be made in the absence of special authorization from the Department of Homeland Security," which "AA is in the process of seeking." *Id.*

SSI may be withheld only if *the government* determines that disclosure would be detrimental to transportation safety or security. *See* 49 C.F.R. §§ 15.5(a)(3) & 1520.5(a)(3). Thus, it is AA's burden to submit the requested information to the government to determine whether it may be disclosed in this litigation and under what conditions, if any. Unless and until AA receives

permission to release the requested information, AA should not be allowed to reference it at trial. In addition to the written discovery that may involve SSI, many of AA's witnesses refused to answer questions posed during their depositions on the basis that the answers might involve SSI. AA should not be allowed to elicit testimony on those issues unless and until it receives permission to release the requested information.

          **JOHN D. CERQUEIRA**
          By his attorneys,

          */s/ Michael T. Kirkpatrick*
          _____
          Michael T. Kirkpatrick
          Public Citizen Litigation Group
          1600 20th Street NW
          Washington, DC  20009
          (202) 588-1000
          mkirkpatrick@citizen.org

          David S. Godkin (BBO #196530)
          Darleen F. Cantelo (BBO #661733)
          Birnbaum & Godkin, LLP
          280 Summer Street
          Boston, MA  02210
Dated: November 17, 2006      617-307-6100

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 17, 2006.

          */s/ Michael T. Kirkpatrick*
          _____
          Michael T. Kirkpatrick

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 14, 2006, at 1:00 pm, I conferred by telephone with Amy Cashore Mariani, counsel for defendant, and attempted in good faith to resolve or narrow the issue presented in this motion, but the parties were unable to resolve the issue or narrow the areas of disagreement.

*/s/ Michael T. Kirkpatrick*
_____
Michael T. Kirkpatrick

**Exhibit 1**

to

**PLAINTIFF'S SIXTH MOTION *IN LIMINE* TO EXCLUDE ANY REFERENCE TO POLICIES, PROTOCOLS, OR TRAINING MATERIALS THAT HAVE NOT BEEN PRODUCED IN DISCOVERY INCLUDING THOSE WITHHELD PENDING A DETERMINATION OF WHETHER THEY CONTAIN SENSITIVE SECURITY INFORMATION**

Def.'s Supp. Answers to Interrogatories

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>　　　Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>　　　Defendant. | CIVIL ACTION NO.: 05-11652 WGY |

## AMERICAN AIRLINES, INC.'S SUPPLEMENTAL ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Fed.R.Civ.P 33, defendant American Airlines, Inc. ("American" or "American Airlines") provides its supplemental responses as follows to the interrogatories propounded by the plaintiff, John D. Cerqueira.

## GENERAL OBJECTIONS

I.　　American objects to any interrogatory request insofar as it seeks materials or information covered by one or more of the following:

　　(a)　　attorney-client privilege;
　　(b)　　attorney's work product and mental impressions of the attorney;
　　(c)　　materials prepared in anticipation of or for litigation; and
　　(d)　　materials prepared for, at the request of, or by an expert.

II.　　American objects to any interrogatory that is burdensome, oppressive, seeks information which is already known by the party, or which is not calculated to lead to the discovery of admissible evidence.

III.　　American objects to any interrogatory which seeks the home address, telephone number or wages of any employee, representative, or agent of the defendant, and the defendant will not reveal such information for fear of violating the privacy of such persons who are not parties to this litigation.

IV.　　American also objects to any interrogatory to the extent that it seeks, or a response would call for, the disclosure of Sensitive Security Information that it is prohibited by federal law from disclosing, per 49 CFR § 1520. Any and all subsequent responses are given subject to this objection, and with notice that no such disclosure will be made in any of the ensuing responses.

The foregoing General Objections shall apply to all requests, whether or not any reference is made to such objections in the defendant's response.

## RESPONSES TO INTERROGATORIES

INTERROGATORY NO. 9:

Identify all investigations conducted, reports made, or statements obtained, concerning the incidents on which the Complaint is based, and identify the person(s) involved and all related documents.

**Response:** All such documents were attached to American's Automatic Disclosures, or will be provided in response to the plaintiff's Rule 34 request.

**Supplemental Response:** All such documents were attached to American's Automatic Disclosures and/or have been provided in response to the plaintiff's Rule 34 request.

INTERROGATORY NO. 11:

If the decisions to remove Mr. Cerqueira from flight 2237 and to refuse service to Mr. Cerqueira after his release from questioning were made pursuant to any policy, procedure, manual, or guideline, whether written or unwritten, identify and state the substance of the policy, procedure, manual, or guideline.

**Objection:** American objects to this interrogatory on the basis that the information sought therein would in part involve the disclosure of Sensitive Security Information ("SSI"), which is subject to the provisions of 49 CFR § 1520. No such disclosure can be made in the absence of special authorization from the Department of Homeland Security.

**Response:** Subject to and without waiver of the foregoing objection, American states generally that perceived security concerns are dealt with on an *ad hoc* basis and that the particular action taken, and people or departments involved, depends on the circumstances of the situation. In a particular situation, a security concern may be dealt with solely by airport personnel or may also involve flight crew members, law enforcement authorities, security personnel, or AA headquarters personnel. As a general proposition, if American determines that a passenger is a security risk and/ or should be denied boarding, the accepted procedure is to deny boarding or to otherwise effectively address the perceived risk so as to protect the safety of American's passengers and crew members.

**Supplemental Response:** Subject to and without waiver of the foregoing objection, American states generally that perceived security concerns are dealt with on an *ad hoc* basis and that the particular action taken, and people or departments involved, depends on the circumstances of the situation. In a particular situation, a security concern may be dealt with solely by airport personnel or may also involve flight crew members, law enforcement authorities, security personnel, or AA headquarters personnel. As a general proposition, if American determines that a passenger is a security risk and/ or should be denied boarding, the accepted procedure is to

deny boarding or to otherwise effectively address the perceived risk so as to protect the safety of American's passengers and crew members. Further answering, AA is in the process of seeking authorization from the Department of Homeland Security to disclose certain information, under protection of a confidentiality order. Finally, AA refers the plaintiff to copies of communications provided by AA to its pilots and flight attendants subsequent to September 11, 2001, which have been provided to the plaintiff in connection with AA's Automatic Disclosures and/or responses to requests for production of documents.

INTERROGATORY NO. 12:

State whether any of the American Airlines personnel involved in the incidents on which the Complaint is based have been involved in other incidents in which a customer was removed from a flight, denied boarding, or refused service, and, if so, describe each incident and identify the persons involved.

**Objection:** American objects to this request as being unduly broad and needlessly burdensome, as well as irrelevant. The data sought is not limited to a particular time frame. Thus, a response would require that a commercial airline that serves a world wide market attempt to determine every such instance where one of its staff named above was "involved" in a situation where a passenger was denied or refused boarding. American's passenger division is the largest scheduled passenger airline in the world. American provides scheduled jet service to destinations throughout North America, the Caribbean, Latin America, Europe and the Pacific, serving 172 cities with a fleet of 840 aircraft. On an average day, American will complete 2,600 (two thousand, six hundred) flights. On any given day, 4 or 5 passengers are denied boarding for various reasons, including but not limited to behavior, illness, improper or insufficient identification and other lawful reasons. Thus, answering this interrogatory is not feasible. American also objects to this interrogatory as being unduly vague, in that it seeks to have American determine the meaning of its personnel who were "involved" in "the incidents on which the Complaint is based," as well as "involved in" other "incidents" which are not clearly defined.

**Supplemental Response:** Subject to and without waiver of the foregoing objection, American states that it is unaware of any situations other than Flight 2237 on December 28, 2003 in which any of the flight personnel on that flight have been involved removing a passenger from an American flight, deny them boarding on a flight, or refusing them service for any reason related to security other than intoxication or presumed drug use.

Captain Ehlers authorized the removal of a passenger whose suspected drug use did result in behavior considered by the flight attendants on board to be a risk to their safety. The flight occurred in approximately October of 2002. The passenger watched the flight attendants' activity closely, took his belt off, and coiled his belt up in his hands. Captain Ehlers contacted the appropriate agencies and personnel, and the State Police removed the passenger to the jetbridge for questioning, at which point the passenger assaulted a police officer ran into the terminal, and was tackled by numerous police officers. He was taken to a patrol car on the ramp, escaped, and ran around the tarmac for several minutes before being subdued and placed into a police car.

3

INTERROGATORY NO. 13:

State whether any of the American Airlines personnel involved in the incidents on which the Complaint is based have been the subject of a discrimination complaint by an American Airlines customer, and, if so, describe each complaint and identify the persons involved.

**Objection:** American objects to this interrogatory as being unduly broad and needlessly burdensome, as well as irrelevant. The data sought is not limited to a particular time frame. Thus, a response would require that a commercial airline serving a worldwide market attempt to determine every such instance where one of its staff named above was "the subject of a discrimination complaint" in all places where American does business. American also objects to this interrogatory as being unduly vague, in that it seeks to have American determine the meaning of its personnel who were "involved" in the "incidents on which the Complaint is based... ."

**Response:** Subject to and without waiver of the foregoing objection, American states that it believes none of its employees mentioned in the above interrogatory responses have been named as a Respondent or a Defendant in any other administrative or legal proceeding alleging unlawful discrimination by a passenger. Those employees are: Nicole Traer, Ynes Flores, John Ehlers, Donald M. Ball, Sally Walling, Lois Sargent, Amy Milenkovich, Craig Marquis, and Rhonda Cobbs.

**Supplemental Response:** Subject to and without waiver of the foregoing objection, American states that it believes none of its employees mentioned in the above interrogatory responses have been named as a Respondent or a Defendant in any other administrative or legal proceeding alleging unlawful discrimination by a passenger. Those employees are: Nicole Traer, Ynes Flores, John Ehlers, Donald M. Ball, Sally Walling, Lois Sargent, Amy Milenkovich, Craig Marquis, and Rhonda Cobbs. Further answering, after a reasonably diligent and thorough inquiry, American is unaware of any complaints of discrimination made against any of the foregoing individuals.

INTERROGATORY NO. 14:

State whether you have provided any of the American Airlines personnel involved in the incidents on which the Complaint is based any training, instruction, or written materials concerning the circumstances under which a passenger may be removed from a flight, denied boarding, or refused service, and, if so, identify and state the substance of the training, instruction, or written materials.

**Objection:** American objects to this interrogatory on the basis that the information sought therein would in part involve the disclosure of Sensitive Security Information ("SSI"), which is subject to the provisions of 49 CFR § 1520. No such disclosure can be made in the absence of special authorization from the Department of Homeland Security. American also objects to this interrogatory as being unduly vague, in that it seeks to have American determine the meaning of its personnel who were "involved" in "the incidents on which the Complaint is based... ."

**Response:** Subject to and without waiver of the foregoing objection, American states

4

generally that perceived security concerns are dealt with on an *ad hoc* basis and that the particular action taken, and people or departments involved, depends on the circumstances of the situation. In a particular situation, a security concern may be dealt with solely by airport personnel or may also involve flight crew members, law enforcement authorities, security personnel, or AA headquarters personnel. As a general proposition, if American determines that a passenger is a security risk and/ or should be denied boarding, the accepted procedure is to deny boarding or to otherwise effectively address the perceived risk so as to protect the safety of American's passengers and crew members.

**Supplemental Response:** Subject to and without waiver of the foregoing objection, American states generally that perceived security concerns are dealt with on an *ad hoc* basis and that the particular action taken, and people or departments involved, depends on the circumstances of the situation. In a particular situation, a security concern may be dealt with solely by airport personnel or may also involve flight crew members, law enforcement authorities, security personnel, or AA headquarters personnel. As a general proposition, if American determines that a passenger is a security risk and/ or should be denied boarding, the accepted procedure is to deny boarding or to otherwise effectively address the perceived risk so as to protect the safety of American's passengers and crew members. Further answering, AA is in the process of seeking authorization from the Department of Homeland Security to disclose certain information, under protection of a confidentiality order. Finally, AA refers the plaintiff to copies of communications provided by AA to its pilots and flight attendants subsequent to September 11, 2001, which have been provided to the plaintiff in connection with AA's Automatic Disclosures and/or responses to requests for production of documents.

INTERROGATORY NO. 15:

State whether you have provided any of the American Airlines personnel involved in the incidents on which the Complaint is based any training, instruction, or written materials concerning whether a passenger's race, color, national origin, ethnicity, or ancestry may be considered in determining whether a passenger should be removed from a flight, denied boarding, or refused service, and, if so, identify and state the substance of the training, instruction, or written materials.

**Objection:** American objects to this interrogatory on the basis that the information sought therein would in part involve the disclosure of Sensitive Security Information ("SSI"), which is subject to the provisions of 49 CFR § 1520. No such disclosure can be made in the absence of special authorization from the Department of Homeland Security.

**Response:** Subject to and without waiver of the foregoing objection, American states that it has, and did have in effect during the relevant time period, a strict policy that forbids unlawful discrimination of any kind against any passenger.

**Supplemental Response:** Subject to and without waiver of the foregoing objection, American states generally that it has, and did have in effect during the relevant time period, a strict policy that forbids unlawful discrimination of any kind against any passenger. Further answering, AA is in the process of seeking authorization from the Department of Homeland Security to disclose certain information, under protection of a confidentiality order. Finally, AA refers the plaintiff

to copies of communications provided by AA to its pilots and flight attendants subsequent to September 11, 2001, which have been provided to the plaintiff in connection with AA's Automatic Disclosures and/or responses to requests for production of documents.

INTERROGATORY NO. 17:

State whether, during the last five years, you have taken disciplinary action against any employee for considering a passenger's race, color, national origin, ethnicity, or ancestry in determining whether a passenger should be removed from a flight, denied boarding, or refused service, and, if so, describe each incident and identify the persons involved.

**Objection:** American objects to this interrogatory as being unduly broad and needlessly burdensome, as well as irrelevant. The data sought is not limited to the Boston station, and thus seeks this information from a commercial airline with thousands of employees serving a worldwide market.

**Response:** Subject to and without waiver of the foregoing objection, American answers as follows: no disciplinary action was taken against any of its employees arising out of any such incident at Logan Airport in the past five years.

**Supplemental Response:** Subject to and without waiver of the foregoing objection, American answers as follows: no disciplinary action was taken against any of its employees arising out of any such incident at Logan Airport in the past five years. Further answering, American is unaware of any cases during the past five years in which it has disciplined an employee for removing a passenger from a flight, denying the boarding, or refusing them service on the basis of their race, color, national origin, ethnicity, or ancestry.

I hereby certify under the pains and penalties of perjury this /3 th day of April 2006, that based upon information I have obtained in response to reasonably thorough and diligent inquiries that I have made upon the agents and employees of American Airlines, Inc., the foregoing responses are true and correct to the best of my knowledge, information and belief.

Alec Bramlett, Senior Attorney
American Airlines, Inc.

Dated: April 13, 2006

Notary Public
My Commission Expires

ANN MARIE GIBSON
Notary Public, State of Texas
My Commission Expires
August 10, 2008

Objections Submitted by:

6

Michael A. Fitzhugh, (BBO 169700)
Amy Cashore Mariani, (BBO #630160)
**FITZHUGH, PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330

7