UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

JOHN D. CERQUEIRA,          )
                            )
     Plaintiff,             )
                            )
     v.                     )
                            )          CIVIL ACTION NO.: 05-11652 WGY
AMERICAN AIRLINES, INC.,    )
                            )
     Defendant.             )
_____)

## DEFENDANT'S AMENDED MOTION IN LIMINE TO EXCLUDE DEPOSITION TESTIMONY OF BARRY BLUMENTHAL AND RICHARD FAULK

Defendant American Airlines, Inc. ("AA") moves in limine to exclude portions of the deposition testimony of plaintiff's treating physician, Barry Blumenthal ("Blumenthal"), and plaintiff's treating psychiatrist, Richard Faulk ("Faulk") because it exceeds that which is reflected in their treatment notes. Neither has been disclosed as an expert witness and neither has proffered expert disclosures in accordance with Fed.R.Civ.P. 26(b)(2). Therefore, such opinion testimony should be excluded. *See, e.g., Gonzalez v. Executive Airlines, Inc.*, 236 F.R.D. 73, 78 (D.Puerto Rico 2006); *Garcia v. City of Springfield Police Department*, 230 F.R.D. 247, 249-50 (D.Mass. 2005). *See also* Fed.R.Civ.P. 26(b)(2).

Blumenthal testified at deposition that he diagnosed plaintiff with post-traumatic stress disorder, and that there is a recognized treatment methodology for post-traumatic stress disorder. (Deposition of Barry Blumenthal, hereinafter "Blumenthal Deposition," attached hereto as Exhibit 1, pp. 7, 18-19, 21). Blumenthal further testified, however, that he is not a licensed psychiatrist or psychologist and that he would validate the conclusions of a psychiatrist or psychologist over his own on such issues. (Blumenthal Deposition, p. 34-35). Blumenthal also

testified that he treated plaintiff primarily for physical ailments, though he provided him with a psychiatric referral.  (Blumenthal Deposition 7:1-8, 16:3-25, 23:4-20).

At deposition, Faulk was asked to describe his experiences in treating patients with post-traumatic stress and anxiety disorders (Deposition of Richard Faulk, hereinafter "Faulk Deposition," attached hereto as Exhibit 2, pp. 9-11).  This series of questions addressed neither his treatment of nor observations regarding plaintiff and should be excluded.  Similarly, Faulk was asked to opine regarding whether anxiety disorder comes with physical symptomology.  Again, this question and the response thereto have no bearing on Faulk's treatment of or observations regarding plaintiff. (Faulk Deposition p. 21).  Faulk was further asked if it was "unusual" for a patient to wait a year before seeking treatment for a psychological condition.  This too is not related to Faulk's treatment of or observations regarding plaintiff.   (Faulk Deposition p. 23).

Because the testimony described above fails to fall within the treating physician exception to the expert disclosure rules, the deposition testimony of Blumenthal and Faulk described above should be excluded at trial.


Respectfully submitted,

Dated: November 29, 2006                **AMERICAN AIRLINES, INC.**
                                        By its Attorneys,


                                        __/s/ Amy Cashore Mariani _____
                                        Michael A. Fitzhugh, (BBO 169700)
                                        Amy Cashore Mariani, (BBO #630160)
                                        **FITZHUGH, PARKER & ALVARO LLP**
                                        155 Federal Street, Suite 1700
                                        Boston, MA 02110-1727
                                        (617) 695-2330


2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 29, 2006.

_/s/ Amy Cashore Mariani_____
Amy Cashore Mariani

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that counsel have conferred regarding the confidentiality of the exhibits attached hereto, and that Plaintiff's counsel, David Godkin, assents to the filing of, but not the substance of, this amended motion in limine, and also assents to the electronic filing of the exhibits attached hereto.

_/s/ Amy Cashore Mariani_____
Amy Cashore Mariani

1

1          UNITED STATES DISTRICT COURT

2             DISTRICT OF MASSACHUSETTS

3          Civil Action No.:  05-11652-WGY

4

5

6

7

8

9    JOHN D. CERQUEIRA,

10          Plaintiff,

11    vs.

12    AMERICAN AIRLINES, INC.

13          Defendant.

14    _____/

15

16        VIDEOTAPED DEPOSITION OF BARRY BLUMENTHAL, DO
                        A WITNESS
17                       TAKEN BY
                      THE PLAINTIFF

18

19

20    DATE:  WEDNESDAY, JULY 26, 2006

21    TIME:  9:00 A.M. - 9:38 A.M.

22

23                              CERTIFIED COPY

24

25

7

1      Q.    And you have been Mr. Cerquiera's primary care

2  physician since January of 2004, is that right?

3      A.    I'd like to refer to the record, if I may.

4  Our first meeting was on 1/2/04.

5      Q.    And the file that you have in front of you, is

6  that your -- your medical records concerning your

7  treatment of Mr. Cerqueira?

8      A.    Yes, it is.

9      Q.    And in approximately January 15th of 2004, you

10  diagnosed Mr. Cerqueira as suffering from post-traumatic

11  stress disorder or PTSD, is that correct?

12          MS. MARIANI:   Objection.

13          THE WITNESS:   Yes.   That's correct.

14

15

16

17

18          REDACTED

19

20

21

22

23

24

25

CONFIDENTIAL
84761e23-239e-11db-8a8e-000e2e34ab2d

14

1

2    BY MR. GODKIN:

3        Q.   And what did you do with Mr. Cerqueira on

4    January 15th that led you to give him this diagnosis?

5             MS. MARIANI:  Objection.

6             THE WITNESS:  Mr. Cerqueira presented with

7        some other complaints, other physical complaints

8        that we took care of, and if my memory serves me

9        correct, it was after we finished dealing with his

10       physical problems, he had taken me aside and told

11       me about an event that had occurred sometime in the

12       recent past where he was put off an airplane.

13            MS. MARIANI:  Move to strike.

14

15

16

17

18

19                    **REDACTED**

20

21

22

23

24

25

16

1             MS. MARIANI:  Move to strike.

2   BY MR. GODKIN:

3        Q.   Did you devise a -- a treatment plan for

4   Mr. Cerqueira as a result of your diagnosis?

5             MS. MARIANI:  Objection.

6             THE WITNESS:  As -- My role as a family

7        physician, I can deal with psychiatric disorders,

8        but at the current time, prefer to have

9        consultation prior to initiating treatment, to make

10       sure that the diagnosis is accurate and correct.

11            MS. MARIANI:  Move to strike.

12  BY MR. GODKIN:

13       Q.   And when you say a consultation, what -- What

14  do you mean?

15       A.   Would be within appropriate subspecial --

16  subspecialist who I would feel would be more experienced

17  and better qualified to assign a diagnosis to a patient

18  other than myself.

19       Q.   And what type of subspecialist are you

20  referring to?

21       A.   This -- In this case, it would either be a

22  psychiatrist or psychologist.

23       Q.   Did you take any steps to refer Mr. Cerqueira

24  to a psychiatrist or a psychologist?

25       A.   Yes, we wrote him a referral for -- I -- If I

CONFIDENTIAL

18

1        Q.    Is there -- In your knowledge and experience,

2   Dr. Blumenthal, is there a recognized course of

3   treatment for post-traumatic stress disorder?

4             MS. MARIANI:  Objection.

5             THE WITNESS:  Yes.

6   BY MR. GODKIN:

7        Q.    What is it?

8        A.    It would depend on the severity.  It could be

9   anything from counseling to counseling with medication,

10  to medication --

11            MS. MARIANI:  Move to strike.

12       A.    (Continuing) -- only.

13  BY MR. GODKIN:

14       Q.    Is post-traumatic stress disorder a -- a

15  curable condition?

16            MS. MARIANI:  Objection.

17            THE WITNESS:  I don't know that anything is

18        curable.  I know that it's treatable.

19            MS. MARIANI:  Move to strike.

20  BY MR. GODKIN:

21       Q.    Based on your experience as a physician for

22  many years, do you have any view on how post-traumatic

23  stress disorder can affect a patient's daily life?

24            MS. MARIANI:  Objection.

25            THE WITNESS:  Yes, I do.

CONFIDENTIAL

84761e23-239e-11db-8a8e-000e2e34ab2d

19

1   BY MR. GODKIN:

2        Q.   What is your view on that?

3             MS. MARIANI:   Objection.

4             THE WITNESS:   That can run the gamut from loss

5   of simple ability to do simple things to putting

6   somebody in bed and afraid to -- to come out in the

7   world.

8

9

10

11

12

13

14

15

16             REDACTED

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

1

2

3    **REDACTED**

4

5

6

7

8       Q.    Did you have any further discussion with him

9    about any symptoms that he was suffering, at the date of

10   that visit?

11      A.    The discussion regarding his post-traumatic

12   stress disorder was kept to a limit because I had felt

13   that since I had been subpoenaed for deposition, that it

14   would be inappropriate to talk about it any further, and

15   I treated him for his chief complaint that day.

16      MS. MARIANI:  Move to strike.

17

18

19

20   **REDACTED**

21

22

23

24

25

CONFIDENTIAL
84761e23-239e-11db-8a0e-00e2e34ab2d

23

1

**REDACTED**

2

3

4      Q.   And is it fair to say, Doctor, that the

5  records contained in Exhibit 4, demonstrate that he did

6  not mention to you on January 2nd, 2004, complaints

7  relating to an incident occurring on an American

8  Airlines flight in December of 2003?

9      A.   That's correct.

10      Q.   And is it fair to say, Doctor, that you

11  treated him at that time for cold symptoms, including

12  shortness of breath?

13      A.   Correct.

14      Q.   During the course of your normal examination,

15  Doctor, do you inquire as to psychiatric or

16  psychological issues that a patient might be having?

17      A.   Unless a patient complains of something

18  specifically neurological or psychiatrically, besides

19  good morning, how are you, how're you doing, the answer

20  would be no.

21

22                   **REDACTED**

23

24

25

CONFIDENTIAL
84761e23-239e-11db-8a8e-000e2e34ab2d

34

1

2

3

4

5

6

7

8

9

10                    REDACTED

11

12

13

14

15

16

17

18        Q.   Sir, what is your understanding of the

19   diagnostic criteria under the DSM-IV for post-traumatic

20   stress disorder?

21        A.   I'm not sure I understand your question.

22        Q.   Are you familiar with the diagnostic criteria

23   contained in the DSM-IV for post-traumatic stress

24   disorder?

25        A.   Yes, I am.

CONFIDENTIAL

35

1    Q.    And what is your understanding of his

2    diagnostic criteria?

3    A.    The diagnostic criteria, it -- It has to fit

4    many different categories as far as the abilities to do

5    activities of daily living, the ability to function in

6    normal relationships, the ability not to have -- The

7    ability to possibly have flashbacks and put yourself in

8    a similar situation, panic disorder, according --

9    Anything that paralyzes you from living, what we would

10    call a normal life, which may also include profound

11    depression.

12    Q.    Do you have any understanding as to whether or

13    not a life-threatening event is required for a diagnosis

14    of post-traumatic stress disorder?

15    A.    I think it could be included; I don't know if

16    it's necessary to complete it.

17    Q.    Would you agree with me, sir, that you are not

18    a licensed psychiatrist?

19    A.    Yes, I do.

20    Q.    And would you agree with me, sir, that you're

21    not a licensed psychologist?

22    A.    Yes, I do.

23    Q.    And would you agree with me, sir, that your

24    work experience does not have any specialized training

25    for psychiatric or psychological care of patients?

CONFIDENTIAL

84761e23-239e-11db-8a8e-000e2e34ab2d

36

1      A.    No, I would not agree with that.

2      Q.    And why would you disagree with that

3   statement?

4      A.    Because in order to obtain board

5   certification, I have had to do many months of

6   psychiatric training, and family physicians are allowed

7   to handle simple affective disorders and anxiety

8   disorders with medications up to a certain period of

9   months before seeking psychiatric or psychological

10  consultation.

11     Q.    Fair to say, sir, that the practice of

12  psychiatry is not part of your practice?

13     A.    I don't know how to answer that question.

14     Q.    Is it fair to say, sir, that you do not

15  describe your practice as a psychiatric practice?

16     A.    That is correct.

17     Q.    And is it fair to say, sir, that you would

18  rely on the expertise of psychiatrists or psychologists

19  in providing diagnoses for patients with psychiatric or

20  psychological illnesses?

21     A.    On occasion.

22     Q.    Fair to state it, the reason for your referral

23  of an individual to a psychiatrist or psychologist is

24  because you believe that -- that a psychiatrist or

25  psychologist may have better expertise to assist a

CONFIDENTIAL

84761e23-239e-11db-8a8e-000e2e34ab2d

37

1    patient and to formulate a diagnosis?

2         A.    That is fair.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REDACTED

CONFIDENTIAL

Everman & Everman, Inc.
1101 North Olive Avenue, West Palm Beach, FL 33401

84761e23-239e-11db-8a8e-000e2e34ab2d

1                              CERTIFICATE OF OATH

2       STATE OF FLORIDA       )

3                              )SS:

4       COUNTY OF PALM BEACH)

5              I, JANET M. WILLITZ, RPR, RMR, Notary Public
        in and for the State of Florida at Large, certify that
6       the witness, BARRY BLUMENTHAL, DO, personally appeared
        before me on July 26, 2006, and was duly sworn.

7
               WITNESS my hand and official seal this 4th day
8       of August, 2006.

9                              _____
                               JANET M. WILLITZ, RPR, RMR
10      Janet M Willitz        Notary Public, State of Florida
        My Commission DD182865
        Expires March 15, 2007

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              REPORTER'S VIDEOTAPED DEPOSITION CERTIFICATE

 2    STATE OF FLORIDA      )

 3                          )SS:

 4    COUNTY OF PALM BEACH)

 5

 6              I, JANET M. WILLITZ, Registered Professional
      Reporter, Registered Merit Reporter, certify that I was
      authorized to and did stenographically report the
 7    videotaped deposition of BARRY BLUMENTHAL, DO, the
      witness herein; that a review of the transcript was not
 8    requested; that the foregoing pages, number from page 1
      to 40 are a true and complete record of my stenographic
 9    notes of the deposition by said witness; and that this
      computer-assisted transcript was prepared by me and/or
10    under my supervision.

11              I further certify that I am not a relative,
      employee, attorney or counsel of any of the parties, nor
12    am I a relative or employee of any of the parties'
      attorney or counsel connected with the action.

13

14              DATED this 4th day of August, 2006.

15

16              JANET M. WILLITZ, RPR, RMR

17

18

19

20

21

22

23

24

25
```

1

1      UNITED STATES DISTRICT COURT

2        DISTRICT OF MASSACHUSETTS

3      Civil Action No.:  05-11652-WGY

4

5

6

7

8

9   JOHN D. CERQUEIRA,

10         Plaintiff,

11   vs.

12   AMERICAN AIRLINES, INC.

13         Defendant.

14   _____/

15

16   VIDEOTAPED DEPOSITION OF RICHARD FAULK, MD
                    A WITNESS
17                   TAKEN BY
               THE PLAINTIFF

18

19

20   DATE:  WEDNESDAY, JULY 26, 2006

21   TIME:  1:18 P.M. - 2:41 P.M.

22

23                          **CERTIFIED COPY**

24

25

84761e24-239e-11db-8a8e-000e2e34ab2d

1    Exhibit 1, and identify it for the jury?

2        A.    Yes, this is my curriculum vitae.

3        Q.    Is Exhibit Number 1 an up to date and accurate

4    version of your CV?

5        A.    Yes, it is.

6            MS. MARIANI:    Please note for the record our

7        objection on the evidentiary basis to the

8        admissibility of Exhibit 1.

9    BY MR. GODKIN:

10        Q.    Dr. Faulk, have you ever treated patients with

11    post-traumatic stress disorder?

12        A.    Yes, I have.

13        Q.    Have you ever treated patients with anxiety

14    disorder?

15        A.    Yes.

16        Q.    About how many patients have you treated for

17    post-traumatic stress disorder?

18        A.    I wouldn't be able to estimate that.    I don't

19    keep exact records of the types of disorders to know how

20    many of each type of patient problem I've seen, so ---

21        Q.    What is a post-traumatic stress disorder?

22        A.    Well, post-traumatic stress disorder is an

23    anxiety disorder that has a number of different

24    features, the primary of which though is experiencing a

25    significant trauma, which is one that is potentially

10

1  life-threatening or of -- of the nature that it would

2  involve serious bodily harm.

3      Q.   Is a post-traumatic stress disorder a subset

4  of anxiety disorder?

5      A.   In general, yes, it would be considered a

6  subset of anxiety disorders.  It's a type of -- of

7  traumatically induced anxiety disorder.

8      Q.   And how would you define anxiety disorder?

9      A.   Well, anxiety disorder is a broader category

10 that -- that includes a variety of different types of

11 symptoms or different -- different forms that have some

12 distinctions.

13      It's difficult in some patients though to --

14 to provide a diagnosis of one specific anxiety disorder,

15 so many patients will have a more general syndrome that

16 includes sometimes symptoms from several anxiety

17 disorders, but having a nature, a common symptom cluster

18 of fears, feelings of angst, sometimes leading to

19 heightened -- a heightened level of awareness, in the

20 sense that one could be overstimulated when they're

21 anxious.

22      MS. MARIANI:  Move to strike.

23 BY MR. GODKIN:

24      Q.   Is there a recognized treatment for anxiety

25 disorder?

Everman & Everman, Inc.
1101 North Olive Avenue, West Palm Beach, FL 33401

84761e24-239e-11db-8a8e-000e2e34ab2d

11

1        MS. MARIANI:  Objection.

2        THE WITNESS:  Well, the treatment varies

3    depending on -- on the patient's individual needs,

4    but yes, there are different treatments that are

5    recognized for treating anxiety disorders.

6  BY MR. GODKIN:

7    Q.   And what are those --

8        MS. MARIANI:  Objection.

9  BY MR. GODKIN:

10    Q.   -- treatments?

11    A.   The treatments for anxiety disorder include

12  psychotherapy, which was a type of counseling that one

13  meets with a therapist on a one on one basis to -- And

14  review the symptoms, to work on strategies to reduce

15  them, and then secondly, another type of treatment is

16  medication.  Those are the two most commonly used

17  treatments for anxiety.

18

19

20                   REDACTED

21

22

23

24

25

84761e24-239e-11db-8a8e-000e2e34ab2d

1

2

3

4

**REDACTED**

5

6

7

8

9

10      Q.   Did -- Strike that.  To -- to the best of your

11   knowledge and experience, Dr. Faulk, does the anxiety

12   disorder sometimes come with physical symptomatology?

13           MS. MARIANI:  Objection.

14           THE WITNESS:  Yes, sometimes it does.

15   BY MR. GODKIN:

16      Q.   What kinds of physical symptoms can be

17   suffered by patients with an anxiety disorder?

18      A.   Well, it -- It can be a variety of physical

19   symptoms, and there's -- There's really quite a spectrum

20   of physical symptoms that people can have from stomach

21   problems to tiredness to sleep pattern changes, to

22   changes in weight and appetite, to symptoms such as

23   shortness of breath or palpitations.  I mean, there are

24   many different symptoms that -- that can be caused by

25   anxiety.

CONFIDENTIAL

84761e24-239e-11db-8a8e-000e2e34ab2d

1

2

3

4

5

6

7    REDACTED

8

9

10

11

12

13

14

15

16

17

18    Q.  Based upon your experience, was it unusual

19    that Mr. Cerqueira had waited a little over a year

20    before seeking psychiatric care?

21         MS. MARIANI:  Objection.

22         THE WITNESS:  Unfortunately, it's -- It's not

23    unusual.  Many patients suffer from anxiety or

24    other emotional symptoms for long periods of time,

25    sometimes more than a year or several years before

CONFIDENTIAL
84761e24-239e-11db-8a8e-000e2e34ab2d

```
1                    CERTIFICATE OF OATH

2    STATE OF FLORIDA      )

3                         )SS:

4    COUNTY OF PALM BEACH)

5            I, JANET M. WILLITZ, RPR, RMR, Notary Public
     in and for the State of Florida at Large, certify that
6    the witness, RICHARD FAULK, MD, personally appeared
     before me on July 26, 2006 and was duly sworn.

7
             WITNESS my hand and official seal this 4th day
8    of August, 2006.

9
                         JANET M. WILLITZ, RPR, RMR
10                       Notary Public, State of Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Janet M Willitz
My Commission DD182865
Expires March 15, 2007

67

1              REPORTER'S VIDEOTAPED DEPOSITION CERTIFICATE

2     STATE OF FLORIDA      )

3                           )SS:

4     COUNTY OF PALM BEACH)

5

6              I, JANET M. WILLITZ, Registered Professional
      Reporter, Registered Merit Reporter, certify that I was
      authorized to and did stenographically report the
7     videotaped deposition of RICHARD FAULK, MD, the witness
      herein; that a review of the transcript was not
8     requested; that the foregoing pages, number from page 1
      to 67 are a true and complete record of my stenographic
9     notes of the deposition by said witness; and that this
      computer-assisted transcript was prepared by me and/or
10    under my supervision.

11             I further certify that I am not a relative,
      employee, attorney or counsel of any of the parties, nor
12    am I a relative or employee of any of the parties'
      attorney or counsel connected with the action.

13

14             DATED this 4th day of August, 2006.

15                   Janet M. Willitz

16             JANET M. WILLITZ, RPR, RMR

17

18

19

20

21

22

23

24

25