UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
JOHN D. CERQUEIRA,                      )
                                        )
    Plaintiff,                          )
                                        )
    v.                                  )
                                        )    CIVIL ACTION NO.: 05-11652 WGY
AMERICAN AIRLINES, INC.,                )
                                        )
    Defendant.                          )
_____)

### OPPOSITION TO PLAINTIFF'S FIRST MOTION IN LIMINE REGARDING JUDICIAL ADMISSION RELATED TO PLAINTIFF'S FAILURE TO BOARD FLIGHT 2237 AT THE PROPER TIME

Defendant, American Airlines, Inc. ("American"), hereby opposes Plaintiff's First Motion *In Limine* to Preclude Defendant from Contradicting Its Judicial Admission That Plaintiff Boarded When His Assigned Group Was Called (hereinafter "Plaintiff's Motion") on the grounds that a pleading cannot stand as a judicial admission against an alternative pleading in the same case, on the grounds that the admission in question was made based on an oversight of counsel and is not supported by sworn testimony in the instant action, and on the grounds that Plaintiff may not seek to admit a pleading as evidence at trial to contradict sworn testimony and documents proffered by the Defendant.  As is more fully set forth below, American asks that Plaintiff's Motion be denied, and American be granted the Court's relief from the consequences of the judicial admission in question.

### I.    AN ALTERNATIVE PLEADING MAY BE CONSTRUED AGAINST A JUDICIAL ADMISSION.

Plaintiff has argued that "a party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Schott Motorcycle Supply, Inc. v. American Honda Motor Company, Inc.*, 976 F.2d 58, 61 (1st Cir.1992), quoting

*Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2[d] Cir.1985). However, the plaintiff has improperly applied the conditions of *Schott* to the facts at hand. "To be sure, a pleading should not be construed as a judicial admission against an alternative or hypothetical pleading in the same case." *Id* at 61-62, also citing *McCalden v. California Library Association*, 955 F.2d 1214, 1219 (9th Cir.1990); *Garman v. Griffen*, 666 F.2d 1156, 1159 (8th Cir.1981); *see also* Fed.R.Civ.P. 8(e)(2)(allowing alternative and hypothetical pleadings); *Glenwood Farms, Inc. v. Garve Ivey*, 2005 WL 2716497, 12 (D.Me. 2005). The testimony on record and admissions made by American in its December 28, 2004 Position Statement to the Massachusetts Commission Against Discrimination (hereinafter "Position Statement"), clearly show that American has repeatedly held that the Plaintiff boarded Flight 2237 out of turn. For instance, American stated in its Position Statement that "[d]espite the fact that Mr. Cerqueira was a coach passenger, he boarded [the plane] immediately after the first announcement, disobeying the clear instructions from the gate agent that boarding at that time was limited to those seated in Business Class." *See* Position Statement, attached hereto as Exhibit 1, at pg. 3, ¶1. American also fully incorporated and reiterated the admissions made in its Position Statement into its Answers to Plaintiff's First Set of Interrogatories. *See* American's Answers to Plaintiff's First Set of Interrogatories, attached hereto as Exhibit 2. Even if American were to take Plaintiff at his word that he boarded when his assigned group was called, the evidence clearly shows that Plaintiff was one of the very first passengers to get on the plane, a fact that could rouse the suspicion of a flight attendant without having heard the boarding announcements at the gate. Flight Attendant Walling testified at her deposition that Plaintiff boarded the plane when "first class had just barely begun to board," even though Plaintiff was assigned a seat on the coach section, and that "he was not supposed to be on [the] airplane at that time." *See* Deposition of

Sally Walling, attached as Exhibit D to American's Statement of Facts in Support of its Motion for Summary Judgment, at 12:22-13:2. Even the Plaintiff concedes that he "may have been the first passenger in coach." *See* Deposition of John D. Cerqueira, attached as Exhibit B to American's Statement of Facts in Support of its Motion for Summary Judgment, at 40:2-3. The fact that Mr. Cerqueira was one of the first passengers to board the plane has been restated in support of American's Motion for Summary Judgment and its Opposition to Plaintiff's Motion for Partial Summary Judgment. *See* American's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment at ¶ 11; American's Statement of Undisputed Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment at ¶ 8. Given that American has contented from the inception of this action before the Massachusetts Commission Against Discrimination that Plaintiff improperly boarded the plane, and based upon sworn testimony and subsequent submissions to the Court and through discovery, it is clear that alternative evidence exists that would relieve American from the admission made in its Answer to the Complaint.

## II.    THE COURT HAS BROAD DISCRETION TO RELIEVE A PARTY FROM THE CONSEQUENSES OF A JUDICIAL ADMISSION.

Plaintiff has cited to *United States v. Belculfine*, a criminal case relating to the mailing of an explosive, in an attempt to show that a judicial admission is binding on the party that makes it. *See United States v. Belculfine,* 527 F.2d 941, 944 (1st Cir.1975). However, Plaintiff has again failed to properly apply the case law at hand. *U.S. v. Belculfine* provides that "considerations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admission in the appropriate cases." *Id*, citing Wigmore on Evidence P2590, *see also United States v. Cline,* 388 F.2d 294, 296 (4th Cir.1968). Considering that the evidence of the case and alternative pleadings support American's contention that the Plaintiff boarded Flight 2237 at an inappropriate time, the

3

admission made in American's Answer to the Complaint is revealed to have been caused by an inadvertency of counsel rather than a voluntary admission of fact. In *U.S. v. Cline*, a party was granted relief from the Court related to its ability to question a special master despite that party's procedural deficiencies. *U.S. v. Cline* at 296. Due to an error of counsel, American seeks the Court's relief from its admission in order to balance the pleadings of the case with the evidence provided.

### III.    PLEADINGS ARE NOT ADMISSIBLE AS TRIAL EVIDENCE.

Even if the Court finds that American's judicial admission is binding, case law clearly shows that a party may not seek to enter pleadings into evidence at trial. That pleadings shall not be evidence on the trial (M.G.L. c. 231 §87) has been embraced by the case law of this Court. *See Avemco Insurance Company v. Aerotech, Ltd. et al,* 677 F. Supp. 35, 39 (D.Mass. 1987), *Gaines v. General Motors Corporation*, 789 F. Supp. 38, 40 FN1 (D.Mass. 1991). Whereas American has established through deposition testimony and other case submissions, including the testimony of the Plaintiff, that Mr. Cerqueira boarded American Flight 2237 inappropriately, Plaintiff cannot now seek to admit the Defendant's Answer to the Complaint as evidence to the contrary.

WHEREFORE, American Airlines, Inc. respectfully requests that this Court deny the Plaintiff's Motion *In Limine*, grant American relief from its judicial admission, made in error by counsel, allow American to admit evidence in support of its contention that the Plaintiff boarded Flight 2237 out of turn, and grant any other relief as the Court deems proper.

Respectfully submitted,
**AMERICAN AIRLINES, INC.**
By its Attorneys,


_____*/s/ Amy Cashore Mariani*_____
Michael A. Fitzhugh, (BBO 169700)
Amy Cashore Mariani, (BBO #630160)
**FITZHUGH, PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330




## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 30, 2006.


_*/s/ Amy Cashore Mariani*_____
Amy Cashore Mariani

**FITZHUGH, PARKER & ᴀLVARO LLP**
**ATTORNEYS AT LAW**

**155 FEDERAL STREET**
**SUITE 1700**
**BOSTON, MA 02110-1727**
**TELEPHONE: (617) 695-2330**
**FAX: (617) 695-2335**
WWW.FITZHUGHLAW.COM

MICHAEL A. FITZH       ⫯
WILLIAM L. PARKER
FERDINAND  ALVARO, JR. •
—————
FRANK CAMPBELL JR.  *
JOSEPH M. CODEGA ○*
FREDERICK E. DASHIELL *
LUCY ELANDJIAN *
BRADLEY F. GANDRUP JR. *•
ANNE-MARIE H. GERBER +

ROBERT P. LA HAIT
ADERONKE O. LIPEDE
AMY CASHORE MARIANI *
SUSAN M. MORRISON
MARK A. NEWCITY △
JEFFREY A. NOVINS •
EDWARD P. O'LEARY †
JEFFREY F. RICHARDSON▼*
KIMBERLY K. STOLL
ELLEN R. TANOWITZ • *
DAVID JON VOLKIN

**RHODE ISLAND OFFICE**

**571 PONTIAC AVENUE**
**CRANSTON, RI 02910**
**TELEPHONE (401) 941-3220**
**FAX (401) 941-3055**

**CONNECTICUT OFFICE**

**100 CONSTITUTION PLAZA**
**SUITE 600**
**HARTFORD, CT 06103**
**TELEPHONE: (860) 549-6803**
**FAX: (860) 728-0546**

* OF COUNSEL

UNLESS DESIGNATED OTHERWISE, OUR ATTORNEYS ARE ADMITTED ONLY IN MASSACHUSETTS

| | | | |
|---|---|---|---|
| * | ALSO ADMITTED IN CALIFORNIA | † | ALSO ADMITTED IN NEW HAMPSHIRE |
| △ | ALSO ADMITTED IN CONNECTICUT | ○ | ONLY ADMITTED IN RHODE ISLAND |
| • | ALSO ADMITTED IN NEW YORK | ▼ | ALSO ADMITTED IN RHODE ISLAND |

December 28, 2004

Ms. Jessica Thrall
Investigator
Massachusetts Commission Against Discrimination
One Ashburton Place
Boston. MA 02108

Re:  Re: John D. Cerqueira v. American Airlines, Inc., et al.; Docket No.: 04 BPA 02993.

Dear Ms. Thrall:

The Respondents, American Airlines, Inc. ("American") and its Captain, designated in the Charge as "J. Doe 1," its flight attendant, designated in the Charge as "John Doe 2," its ticket agent, designated in the Charge as " Delilah Doe," and its ticket counter supervisor,  designated in the Charge as "Nicole Doe," hereby submit this Position Statement in response to the claims alleged by the Complainant, John D. Cerqueira.

For reasons of maintaining security and protecting the Captain and other American Airlines employees from unwarranted and needless publicity, American will not disclose their identities in this Position Statement. However, it will do so in the future if adequate safeguards are imposed by virtue of a mutually agreeable Confidentiality Order that will prevent public disclosure of the Captain's identity and that of the other American employees involved. Therefore, for the purposes of this Position Statement, the pilot of Flight 2237 (the Respondent named as "J. Doe 1") will be referred to herein as "the Captain."

## SUMMARY OF THE RESPONDENTS' POSITION STATEMENT AND DEFENSES

Mr. Cerqueira charges that he was subjected to unlawful discrimination in a place of public accommodation based on his actual or perceived race, color, religious creed and/or

**FITZHUGH, PARKER & ALVARO LLP**                    Ms. J. Thrall, 12/28/04    (2)

ancestry, in violation of M.G.L. 272 § 98.[1]  His claim is premised on an incident in which he was removed from American's flight number 2237 from Boston to Fort Lauderdale on December 28, 2003. As will be demonstrated below, the Respondents' treatment of Mr. Cerqueira was based on legitimate safety concerns, and was not the result of any unlawful discrimination.

Also germane to this proceeding is that the Commission lacks jurisdiction over the instant controversy because these particular allegations of violation of M.G.L. 272 § 98 are preempted by the Airline Deregulation Act ("ADA"). 49 U.S.C. §§ 41713(b).  In addition, the actions of American's employees fell within the provisions of the Federal Aviation Act, 49 U.S.C. § 44902, which affords an airline and its employees the discretion to refuse transport of a passenger who is or may be inimical to airline safety. Without in any way waiving their rights to raise and more fully brief the jurisdictional issue and any other available defenses, the Respondents hereby present the facts that have been obtained through investigation of Mr. Cerqueira's charges.

## STATEMENT OF FACTS

The Charge asserts that on June 12, 2003, Mr. Cerqueira had obtained a round trip ticket from Fort Lauderdale to Boston aboard American's flight number 2237, and flew to Boston without incident on December 24, 2003.  Mr. Cerqueira states that on December 28, 2003, he was removed from his return flight to Fort Lauderdale and not permitted to reboard another American Airlines flight on that day. Mr. Cerqueira concedes that the following day, he was accommodated on another American Airlines flight to Fort Lauderdale, and arrived there the same day. Respondents do not deny that Mr. Cerqueira was denied boarding on his originally scheduled return to Fort Lauderdale on flight 2237. However, Mr. Cerqueira was denied boarding not because of his race or other protected characteristic, but because of the Captain's legitimate belief, based his own observations and upon information communicated to the Captain by his flight crew, that Mr. Cerqueira may have posed a security risk to the passengers and crew.

On December 28, 2003, the following events occurred which culminated in American's decision to remove Mr. Cerqueira, as well as the other passengers seated in his row, from its flight. Mr. Cerqueira arrived very early at the gate for his flight to Fort Lauderdale, Florida. He approached a flight attendant, who was at the counter checking in for the flight, and requested in a very insistent manner that his seat be changed to an exit row. She advised him that he would have to wait for the gate agent. Mr. Cerqueira remained near the counter while waiting for the gate agent, and stared at the flight attendant in a manner that made her feel uncomfortable.  She told another flight attendant that his actions and demeanor had made her feel uneasy and nervous. Mr. Cerqueira was later assigned seat 20F.

---

[1] The Commission is authorized to enforce this statute pursuant to M.G.L. c. 151B, § 5. *Ekhator v. Stop & Shop Supermarket Co.*, 24 MDLR 147 (2002).

Despite the fact that Mr. Cerqueira was a coach passenger, he boarded immediately after the first announcement, disobeying the clear instructions from the gate agent that boarding at that time was limited to those seated in Business Class. Once on board, the flight attendant from whom he had previously requested the seat change observed that he immediately went to the rear lavatory. Both these behaviors struck this flight attendant as a possible security concern. There was no reason for Mr. Cerqueira to board early, prior to his assigned seating group. Moreover, it was odd that he immediately headed for the airplane lavatory once he boarded, as he had been at the gate early enough to accommodate usual physiological needs.

The two men seated next to Mr. Cerqueira in seats 20D and 20E also exhibited unusual behavior. One of them approached the Captain, both before and during boarding, to ask whether he was their captain. When this passenger approached prior to boarding, he also made the comments "Good luck.. You are taking me.. I am going with you." These remarks seemed peculiar and out of place to the Captain. The other passenger was observed loudly wishing a "Happy New Year" to everyone around him. A flight attendant also observed the passengers in seats 20D-F to be giggling or joking during the safety briefing.

When security entered the plane to investigate, the passengers near Mr. Cerqueira's row appeared anxious, watchful and curious about what was going on. However, Mr. Cerqueira and his row-mates appeared to be deeply sleeping. Several of the flight attendants believed the men were merely feigning sleep, as there was a level of commotion going on that was not conducive to sleep.

Before the aircraft left the gate, the Captain conferred with the flight attendants about the behavior of the three passengers in row 20, seats D through F. Based on this conversation, the Captain understood that the flight crew was very uncomfortable with departing with these passengers on board. After discussing the conduct of the two men seated with Mr. Cerqueira, the Captain asked the flight attendant who spoke to Mr. Cerqueira at the gate whether she had noticed anything else that seemed suspicious. She mentioned her confrontation with Mr. Cerqueira at the gate, the fact that he boarded before he was supposed to, and the fact that all three passengers seemed to be sleeping deeply despite the commotion in the cabin.

At that point, the Captain determined that the three passengers should be removed from the flight to be questioned by authorities. He contacted the gate personnel, and American Airlines System Operation Control ("SOC"). Air marshals and TSA personnel were also called to the gate to investigate. Either the gate personnel or the SOC personnel then contacted the state police. The entire aircraft was then evacuated and searched by state troopers and canine officers. All passengers were re-screened prior to reboarding the flight, and checked luggage was removed for re-screening as well. Due to this incident, the flight was delayed for 172 minutes. The flight crew was sufficiently concerned that they elected not to work, and a new flight crew was called to replace them.

Mr. Cerqueira was then interviewed by the state police. As part of the investigation, the police also interviewed other passengers who had witnessed the suspicious behavior of the men sitting in row 20D-F, some of whom had previously expressed these concerns to the flight crew.

During this process, a passenger related that one of the detained men had surrendered a box cutter at security. After debriefing by TSA management, the Captain understood this to be false.

Although Mr. Cerqueira was denied service on American for the day, his Boston to Fort Lauderdale flight was fully refunded. The following day, he flew home to Fort Lauderdale on another airline.

## LEGAL ANALYSIS

A place of public accommodation has an obligation to treat each member of the public equally, except for good cause. *Smith v. Suburban Restaurants, Inc.,* 374 Mass. 528 (1978). In this case, American and its decision makers clearly had good cause, and a legitimate, non-discriminatory reason for removing Mr. Cerqueira from its plane. Both the Captain, members of the flight crew, and other passengers perceived specific behaviors of the men in row 20D-F to be suspicious. Furthermore, Mr. Cerqueira admits that American told him that he was removed from the flight due to his behavior. American's employees made no comments to him about his race or any other protected characteristics.

There is no evidence that the Respondents targeted the Complainant due to his actual or perceived race, color, religious creed and/or ancestry. In determining whether there has been a violation of the statute, the complainant must prove by a preponderance of the evidence that he was denied full and equal accommodations, advantages, facilities and privileges due to his protected class. *Francklin Etienne v. Chaet's Vac-Video-TV, Inc.,* No. 98-BPA-0347 (MCAD) (July 31, 2003), 2003 WL 22056881,*3. Mr. Cerqueira has failed to meet his burden of proof in that regard. Importantly, he has presented no evidence that he was treated differently from patrons of a different race or protected class who were engaged in similar activity at the same time, at the same place. *See Thomas L. Cummings v. Safeguard Security and Galleria Mall*, No. 90-BPA-00 (MCAD) (June 07, 2002) 2002 WL 31318598, *3, in which the MCAD found *prima facie* discrimination based on the evidence presented by an African-American man that white mall patrons were not subjected to searches by security for similar activity.

To recover under M.G.L. 272 §98, passengers and other patrons must show that they were treated differently by the Respondents on the basis of their protected class characteristics, and not their behavior. *Scott v. Macy's East*, 2002 WL 31439745 (D.Mass.) is on point. In *Scott*, the African-American plaintiff was spotted by store security engaging in rapid shopping and other behavior that the security personnel found to be suspicious. The plaintiff offered no evidence, other than his own subjective belief and an employee statement indicating that two "black" men were suspected of credit card fraud, that his race played a role in his treatment inside the store. The District Court found the plaintiff's evidence insufficient to substantiate a violation of M.G.L. 272 § 98. In the present case, Mr. Cerqueira has offered nothing more than his own subjective belief to support his claim that his removal from American's flight was motivated by discrimination, and not by a legitimate concern regarding his behavior.

## FEDERAL PREEMPTION OF MR. CERQUEIRA'S CLAIMS

Mr. Cerqueira's claims cannot be heard by the MCAD because they are preempted by a comprehensive federal statute regulating this industry, the Airline Deregulation Act ("ADA"), 49 U.S.C. §§ 41713(b). In 1978, Congress sought to deregulate the airline industry, and enacted the ADA with the express purpose of providing "efficiency, innovation, low prices and to determine the variety, quality, and price of air transportation services." H.R. CONF. REP. NO. 95-1779. P. 53 (1978) U.S. CODE CONG. & ADMIN. NEWS 1978, 3737. To prevent the States from frustrating this goal, Congress included an express preemption provision. This provision provides that a state:

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier.

42 U.S.C. 41713(b). This provision was intended to prevent states from interfering with airline services including "flight frequency and timing, liability limits, reservations and boarding practices, insurance, smoking rules, meal service" and the like. 44 Fed Reg. 9948, 9950-9951 (1979) (emphasis supplied). In interpreting the language of the ADA, the Supreme Court has held that all "state enforcement actions having a connection with or reference to airline rates, routes or services are preempted." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374. 384, 112 S.Ct. 2031 (1992) (emphasis supplied). *See also, American Airlines, Inc. v. Wolens,* 504 U.S. 219,115 S.Ct. 817 (1995).

Here, Mr. Cerqueira's claim involves the services he was provided, and specifically challenges the Respondents' boarding practices and the judgments made in denying him passage on Flight 2237. Thus the ADA preempts Mr. Cerqueira's Chapter 272 § 98 claims against American.

## THE FEDERAL AVIATION ACT BARS MR. CERQUEIRA'S CLAIM

Furthermore, even if the Commission does not find that Mr. Cerqueira's claims are preempted, the Captain's actions are protected by the provisions of the Federal Aviation Act, 49 U.S.C. § 44902, which posits that an airline may be held liable for refusing to carry a passenger only if its decision was "capricious and arbitrary," *See, e.g., Williams v. Trans World Airlines,* 509 F.2d 942, 948 (2d Cir.1975), where the New York Court of Appeals held that absent a showing of such arbitrariness a claim for wrongful exclusion may not be submitted to a jury. The Captain's decision here was made in circumstances acknowledged in *Adamsons v. American Airlines, Inc.*, 444 NE.2d 21, 24 (N.Y. 1982), which are "[t]hat an airline usually must make such decisions on the spur of the moment, shortly before takeoff, without the benefit of complete and accurate information." *Id.* That court correctly noted that "[t]he law endows the airline with discretion in accepting or rejecting a passenger, based upon considerations of safety and problems inherent to air travel, and that such discretion, if exercised in good faith and for a rational reason, must be accepted." *Id.* [emphasis supplied]. In addition, courts deciding these cases have explicitly recognized that "[i]n the present case, it should not be forgotten that the

**FITZHUGH, PARKER & ALVARO LLP**                      Ms. J. Thrall, 12/28/04   (6)

decisions at issue were made in an atmosphere pervaded by the fears and uncertainties arising from the events of September 11, 2001." *Dasrath v. Continental Airlines, Inc.*, 228 F.Supp.2d 521, 529 (D.N.J. 2002).

In the instant case, the application of the above legal principles requires that Mr. Cerqueiera's claim be dismissed if the Captain's decision was based in whole or in part on legitimate concerns that Mr. Cerqueiera presented a safety or security risk. From the facts demonstrated above, it is evident that Mr. Cerqueira cannot show that the Captain's actions were either arbitrary and capricious, nor that they were not motivated in whole or in part by legitimate concerns over safety and security.

## CONCLUSION

There is no basis to sustain the charges that Mr. Cerqueira was subjected to any unlawful discrimination by the Respondents. Ample evidence has been offered by American that the complainant was removed due to concerns by its employees and other passengers about his behavior, not his race or other protected class characteristic.[2] In contrast, Mr. Cerqueira has not met his burden of showing some evidence or facts to support his allegations against the Respondents.

Moreover, the MCAD lacks subject matter jurisdiction over this controversy by virtue of the provisions of the Airline Deregulation Act, and for this reason alone, Mr. Cerqueira's case must be dismissed. The Respondents reserve their right to supplement this Position Statement in the event additional information becomes available to them.

---

[2] It should further be noted that the claim for religious discrimination cannot be sustained, based purely upon the fact that at no time were any of the Respondents able to acquire knowledge of Mr. Cerqueira's religious beliefs. The claim based upon his national origin is similarly impaired and should be dismissed for this reason as well.

**FITZHUGH, PARKER & ALVARO LLP**                    Ms. J. Thrall, 12/28/04   (7)

Based upon information known to me or made known to me as a result of an investigation of the incidents set forth in the Complainant's Charge, and having been authorized to act upon behalf of all Respondents, I swear under the pains and penalties of perjury that the facts set forth above are true and accurate to the best of my knowledge and belief.

Alec Bramlett, Esq.
Staff Attorney
American Airlines, Inc.

Dated: December 28, 2004

Notary Public
My Commission Expires 8/10/2008

ANN MARIE GIBSON
Notary Public, State of Texas
My Commission Expires
August 10, 2008

Submitted by:

Michael A. Fitzhugh, (BBO 169700)
Anne-Marie H. Gerber, (BBO #649337)
**FITZHUGH, PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 0211-1727
(617) 695-2330

cc:  David S. Godkin, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>     Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO.: 05-11652 WGY<br>)<br>)<br>)<br>)<br>) |

## AMERICAN AIRLINES, INC.'S ANSWERS TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

     Pursuant to Fed.R.Civ.P 33, defendant American Airlines, Inc. ("American" or "American Airlines") responds as follows to the interrogatories propounded by the plaintiff, John D. Cerqueira.

## GENERAL OBJECTIONS

     I.    American objects to any interrogatory request insofar as it seeks materials or information covered by one or more of the following:

     (a)    attorney-client privilege;
     (b)    attorney's work product and mental impressions of the attorney;
     (c)    materials prepared in anticipation of or for litigation; and
     (d)    materials prepared for, at the request of, or by an expert.

     II.    American objects to any interrogatory that is burdensome, oppressive, seeks information which is already known by the party, or which is not calculated to lead to the discovery of admissible evidence.

     III.    American objects to any interrogatory which seeks the home address, telephone number or wages of any employee, representative, or agent of the defendant, and the defendant will not reveal such information for fear of violating the privacy of such persons who are not parties to this litigation.

     IV.    American also objects to any interrogatory to the extent that it seeks, or a response would call for, the disclosure of Sensitive Security Information that it is prohibited by federal law from disclosing, per 49 CFR § 1520. Any and all subsequent responses are given subject to this objection, and with notice that no such disclosure will be made in any of the ensuing responses.

The foregoing General Objections shall apply to all requests, whether or not any reference is made to such objections in the defendant's response.

## RESPONSES TO INTERROGATORIES

INTERROGATORY NO. 1:

Identify the person(s) who made the decision to have John D. Cerqueira removed from American Airlines flight 2237 on December 28, 2003, state the basis for the decision, and identify any other person(s) who participated in making the decision and describe their participation.

**Response:**    Under the Federal Aviation Act, 49 U.S.C. § 44902, which affords an airline and its employees the discretion to refuse transport of a passenger who is or may be inimical to airline safety, Captain John Ehlers made an assessment that certain behavior exhibited by Mr. Cerqueira and other passengers who appeared to be traveling with him might pose a security risk. Captain Ehlers notified American Airlines' Ground Security Coordinator of these concerns, and thereafter all passengers were removed for re-screening, as was all baggage. Members of federal and state law enforcement agencies, including the Massachusetts State Police, then conducted interviews of some of the passengers, including Mr. Cerqueira. The State Police officers who were involved with the situation then notified Captain Ehlers that they were making the decision to "take this out of his hands," and detain Mr. Cerqueira for further questioning. Thus, the plaintiff was initially "removed" from the flight along with all of the other passengers as a result of Captain Ehlers' decision, but was subsequently not able to re-board the flight by virtue of the actions of the Massachusetts State Police. American Airlines also incorporates herein as a part of its response to this interrogatory the facts set forth in its December 28, 2004 Position Statement to the Massachusetts Commission Against Discrimination, as well as its Automatic Disclosures and documents attached thereto.

INTERROGATORY NO. 2:

Identify the person(s) who made the decision to refuse service to John D. Cerqueira after he was released from questioning following his removal from American Airlines flight 2237 on December 28, 2003, state the basis for the decision, and identify any other person(s) who participated in making the decision and describe their participation.

**Response:**    On information and belief, Mr. Craig Marquis made this decision based upon information that he obtained from law enforcement officers involved with the incident, and other American Airlines personnel.

INTERROGATORY NO. 3:

If you have ever stated that Mr. Cerqueira was removed from flight 2237 or refused service for any reason(s) other than those set forth in response to Interrogatory Nos. 1 and 2, state each such reason and identify by whom and to whom the reason was communicated.

**Response:** Not applicable.

INTERROGATORY NO. 4:

Identify all American Airlines personnel who communicated with Mr. Cerqueira on or after December 28, 2003, and state the substance of the communications.

**Response:** Flight Attendant Sally Walling had a conversation with Mr. Cerqueira in the gate area prior the flight being boarded, when Mr. Cerqueira asked her if she would change his seat assignment to an exit row. She informed him that a gate agent would be coming along who could accommodate his request. Ms. Walling also subsequently spoke to Mr. Cerqueira after he had boarded the flight, and the substance of the conversation was to advise Mr. Cerqueira to raise his seat back and follow other general safety instructions that are given prior to all departures. Flight Attendant Lois Sargent discussed with him and the others seated alongside him in the exit row the responsibilities for being seated there, including being able to physically manage opening the door in case of an emergency. Mr. Ynes Flores, a Customer Service Manager, subsequently asked Mr. Cerqueira and those seated alongside him to accompany him off of the plane in order to resolve some issues concerning their seat assignments. In addition, Ms. Nicole Traer, at that time a Customer Service Manager, later discussed with Mr. Cerqueira the fact that he would not be allowed passage on a subsequent American Airlines flight that day. American Airlines also incorporates herein as a part of its response to this interrogatory the facts set forth in its December 28, 2004 Position Statement to the Massachusetts Commission Against Discrimination, as well as its Automatic Disclosures and documents attached thereto.

INTERROGATORY NO. 5:

Identify each person who, on December 28, 2003, communicated information about Mr. Cerqueira to the person(s) who made the decision to have Mr. Cerqueira removed from American Airlines flight 2237, and state the substance of the communication.

**Response:** Sally Walling, Amy Mikenkovic, Lois Sargent and Captain Ehlers communicated their observations of Mr. Cerqueira and resulting concerns to the law enforcement agencies mentioned in the response to Interrogatory Number 1, above. The identity of the Massachusetts State Police officer(s) that made the decision to detain Mr. Cerqueira has not been determined at this time, but discovery is continuing and American will supplement its responses accordingly if further information becomes known. Captain Ehlers also had other communications with additional personnel of American's Systems Operations Control and personnel stationed at Logan, the substance of which were his concerns and observations as expressed in the above response to Interrogatory 1. American Airlines also incorporates herein as a part of its response

3

to this interrogatory the facts set forth in its December 28, 2004 Position Statement to the Massachusetts Commission Against Discrimination, as well as its Automatic Disclosures and documents attached thereto.


INTERROGATORY NO. 6:

Identify each person who, on December 28, 2003, communicated information about Mr. Cerqueira to the person(s) who made the decision to refuse service to Mr. Cerqueira after he was released from questioning, and state the substance of the communication.

**Response:**    Ms. Rhonda Cobbs communicated information that is described in the above response to Interrogatory 1.


INTERROGATORY NO. 7:

If you contend that you are not liable to plaintiff because plaintiff's injuries were caused, in whole or in part, by any person(s) other than American Airlines, identify the person(s) and state the basis of your contention.

**Objection:**    American objects to responding to this interrogatory as it is without knowledge or belief that plaintiff sustained any "injuries" as a result of being refused service by American.

**Response:**    Subject to and without waiver of the foregoing objection, American answers as follows: If the plaintiff was "injured," American is unaware of any person or entity that caused or contributed to his "injuries."


INTERROGATORY NO. 8:

Identify all persons who witnessed or participated in the incidents on which the Complaint is based, and any other persons whom you believe have knowledge of relevant facts, and identify the issues on which you believe they have knowledge.

**Objection:**    American objects to this interrogatory as compound, vague and unduly burdensome.

**Response:**    Subject to and without waiver of the foregoing objection, Sally Walling, Amy Milenkovic, Captain John Ehlers, First Officer Donald M. Ball and Lois Sargent all have knowledge of the plaintiff's unusual behavior both before and after boarding. American Airlines also incorporates herein as a part of its response to this interrogatory its prior responses hereto, the facts set forth in its December 28, 2004 Position Statement to the Massachusetts Commission Against Discrimination, as well as its Automatic Disclosures and documents attached thereto.

4

INTERROGATORY NO. 9:

Identify all investigations conducted, reports made, or statements obtained, concerning the incidents on which the Complaint is based, and identify the person(s) involved and all related documents.

**Response:**    All such documents were attached to American's Automatic Disclosures, or will be provided in response to the plaintiff's Rule 34 request.


INTERROGATORY NO. 10:

If you contend that any person(s) communicated to Mr. Cerqueira the reason(s) why he was removed from flight 2237, or the reason(s) why he was refused service after his release from questioning, identify the person(s) and state the substance of each communication.

**Response:**  Mr. Ynes Flores communicated to Mr. Cerqueira the basis for his being initially asked to disembark from Flight 2237.  American is informed and believes that Ms. Nicole Traer later explained to Mr. Cerqueira that he was being refused service because his behavior and that of persons with whom he appeared to be traveling caused concerns among the passengers and crew of flight 2237.


INTERROGATORY NO. 11:

If the decisions to remove Mr. Cerqueira from flight 2237 and to refuse service to Mr. Cerqueira after his release from questioning were made pursuant to any policy, procedure, manual, or guideline, whether written or unwritten, identify and state the substance of the policy, procedure, manual, or guideline.

**Objection:**    American objects to this interrogatory on the basis that the information sought therein would in part involve the disclosure of Sensitive Security Information ("SSI"), which is subject to the provisions of 49 CFR § 1520. No such disclosure can be made in the absence of special authorization from the Department of Homeland Security.

**Response:**    Subject to and without waiver of the foregoing objection, American states generally that perceived security concerns are dealt with on an *ad hoc* basis and that the particular action taken, and people or departments involved, depends on the circumstances of the situation. In a particular situation, a security concern may be dealt with solely by airport personnel or may also involve flight crew members, law enforcement authorities, security personnel, or AA headquarters personnel.  As a general proposition, if American determines that a passenger is a security risk and/ or should be denied boarding, the accepted procedure is to deny boarding or to otherwise effectively address the perceived risk so as to protect the safety of American's passengers and crew members.

5

INTERROGATORY NO. 12:

State whether any of the American Airlines personnel involved in the incidents on which the Complaint is based have been involved in other incidents in which a customer was removed from a flight, denied boarding, or refused service, and, if so, describe each incident and identify the persons involved.

**Objection:** American objects to this request as being unduly broad and needlessly burdensome, as well as irrelevant. The data sought is not limited to a particular time frame. Thus, a response would require that a commercial airline that serves a world wide market attempt to determine every such instance where one of its staff named above was "involved" in a situation where a passenger was denied or refused boarding. American's passenger division is the largest scheduled passenger airline in the world. American provides scheduled jet service to destinations throughout North America, the Caribbean, Latin America, Europe and the Pacific, serving 172 cities with a fleet of 840 aircraft. On an average day, American will complete 2,600 (two thousand, six hundred) flights. On any given day, 4 or 5 passengers are denied boarding for various reasons, including but not limited to behavior, illness, improper or insufficient identification and other lawful reasons. Thus, answering this interrogatory is not feasible. American also objects to this interrogatory as being unduly vague, in that it seeks to have American determine the meaning of its personnel who were "involved" in "the incidents on which the Complaint is based," as well as "involved in" other "incidents" which are not clearly defined.

INTERROGATORY NO. 13:

State whether any of the American Airlines personnel involved in the incidents on which the Complaint is based have been the subject of a discrimination complaint by an American Airlines customer, and, if so, describe each complaint and identify the persons involved.

**Objection:** American objects to this interrogatory as being unduly broad and needlessly burdensome, as well as irrelevant. The data sought is not limited to a particular time frame. Thus, a response would require that a commercial airline serving a worldwide market attempt to determine every such instance where one of its staff named above was "the subject of a discrimination complaint" in all places where American does business. American also objects to this interrogatory as being unduly vague, in that it seeks to have American determine the meaning of its personnel who were "involved" in the "incidents on which the Complaint is based... ."

**Response:** Subject to and without waiver of the foregoing objection, American states that it believes none of its employees mentioned in the above interrogatory responses have been named as a Respondent or a Defendant in any other administrative or legal proceeding alleging unlawful discrimination by a passenger. Those employees are: Nicole Traer, Ynes Flores, John Ehlers, Donald M. Ball, Sally Walling, Lois Sargent, Amy Milenkovich, Craig Marquis, and Rhonda Cobbs.

INTERROGATORY NO. 14:

State whether you have provided any of the American Airlines personnel involved in the incidents on which the Complaint is based any training, instruction, or written materials concerning the circumstances under which a passenger may be removed from a flight, denied boarding, or refused service, and, if so, identify and state the substance of the training, instruction, or written materials.

**Objection:**    American objects to this interrogatory on the basis that the information sought therein would in part involve the disclosure of Sensitive Security Information ("SSI"), which is subject to the provisions of 49 CFR § 1520. No such disclosure can be made in the absence of special authorization from the Department of Homeland Security.   American also objects to this interrogatory as being unduly vague, in that it seeks to have American determine the meaning of its personnel who were "involved" in "the incidents on which the Complaint is based... ."

**Response:**    Subject to and without waiver of the foregoing objection, American states generally that perceived security concerns are dealt with on an *ad hoc* basis and that the particular action taken, and people or departments involved, depends on the circumstances of the situation. In a particular situation, a security concern may be dealt with solely by airport personnel or may also involve flight crew members, law enforcement authorities, security personnel, or AA headquarters personnel.  As a general proposition, if American determines that a passenger is a security risk and/ or should be denied boarding, the accepted procedure is to deny boarding or to otherwise effectively address the perceived risk so as to protect the safety of American's passengers and crew members.

INTERROGATORY NO. 15:

State whether you have provided any of the American Airlines personnel involved in the incidents on which the Complaint is based any training, instruction, or written materials concerning whether a passenger's race, color, national origin, ethnicity, or ancestry may be considered in determining whether a passenger should be removed from a flight, denied boarding, or refused service, and, if so, identify and state the substance of the training, instruction, or written materials.

**Objection:**    American objects to this interrogatory on the basis that the information sought therein would in part involve the disclosure of Sensitive Security Information ("SSI"), which is subject to the provisions of 49 CFR § 1520. No such disclosure can be made in the absence of special authorization from the Department of Homeland Security.

**Response:** Subject to and without waiver of the foregoing objection, American states that it has, and did have in effect during the relevant time period, a strict policy that forbids unlawful discrimination of any kind against any passenger.

7

INTERROGATORY NO. 16:

Identify by name, date, and forum, every lawsuit, administrative complaint, charge, or enforcement action brought against American Airlines during the last five years which involved an allegation that a passenger's race, color, national origin, ethnicity, or ancestry was a motivating factor for a decision to have the passenger removed from a flight, denied boarding, or refused service.

**Objection:**  American objects to this interrogatory as being unduly broad and needlessly burdensome, as well as irrelevant. The data sought seeks this information from a commercial airline with thousands of employees serving a worldwide market. American further objects to this interrogatory because much of this information is a matter of public record, and is therefore equally available to the plaintiff.

INTERROGATORY NO. 17:

State whether, during the last five years, you have taken disciplinary action against any employee for considering a passenger's race, color, national origin, ethnicity, or ancestry in determining whether a passenger should be removed from a flight, denied boarding, or refused service, and, if so, describe each incident and identify the persons involved.

**Objection:**  American objects to this interrogatory as being unduly broad and needlessly burdensome, as well as irrelevant. The data sought is not limited to the Boston station, and thus seeks this information from a commercial airline with thousands of employees serving a worldwide market.

INTERROGATORY NO. 18:

If you contend that American Airlines does not receive federal financial assistance as a whole, identify and describe the source and purpose of any federal financial assistance received by American Airlines during the five years preceding December 28, 2003.

**Objection:** American objects to this interrogatory as being vague and seeking information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**Response:**  Subject to and without waiver of the foregoing objection, American states that it has not advanced any such contention.

INTERROGATORY NO. 19:

Identify each person whom American Airlines expects to call as an expert witness at trial.

**Response:**    American has not designated an expert witness to testify at this time. Discovery is continuing, and American will promptly supplement this answer in the event that it designates any expert.


INTERROGATORY NO. 20:

With regard to each person identified in response to the previous interrogatory, state:

(a)    The subject matter on which the expert is expected to testify;
(b)    The substance of the facts and opinions to which the expert is expected to testify; and
(c)    The summary of the grounds for each opinion.

**Response:**    Please see American's response to Interrogatory No. 19.


I hereby certify under the pains and penalties of perjury this 14th day of February, 2006, that based upon information I have obtained in response to reasonably thorough and diligent inquiries that I have made upon the agents and employees of American Airlines, Inc., the foregoing responses are true and correct to the best of my knowledge, information and belief.

_____
Alec Bramlett, Senior Attorney
American Airlines, Inc.

Dated: February 14, 2006

_____
Notary Public
My Commission Expires 5/9/10 8

Objections Submitted by:

_____
Michael A. Fitzhugh, (BBO 169700)
Anne-Marie H. Gerber, (BBO #649337)
**FITZHUGH, PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330

9

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the forgoing to be served upon opposing counsel of record set forth below, by electronic mail and first class mail postage prepaid, this _15th_ day of February 2006.

David S. Godkin, Esq.
Erica Abate Recht, Esq.
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02110

Michael T. Kirkpatrick, Esq.
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009

_____
Anne Marie Gerber, Esq.