UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN D. CERQUEIRA,

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,

    Defendant.

Civil Action No: 05-11652-WGY

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE*
TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT, DOUGLAS LAIRD**

Plaintiff John D. Cerqueira opposes American Airlines, Inc.'s (AA) motion *in limine* to exclude the testimony of Douglas Laird, the plaintiff's expert. As set forth more fully below, Mr. Laird's testimony meets the standards for reliability, any opinions that Mr. Laird intends to offer are proper under Fed. R. Evid. 702 and 704(a), and Mr. Laird's report does not offer the other opinions that AA seeks to exclude.

**I.    MR. LAIRD'S TESTIMONY MEETS THE STANDARDS SET FORTH IN *KUMHO TIRE*.**

AA's sole argument for seeking to exclude the testimony of Mr. Laird for not meeting the requirements under *Kumho Tire* is that Mr. Laird has not consulted with a U.S. flag carrier since September 11, 2001 and has not worked for a carrier since 1995. *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 147 (1999). This explanation fails for two reasons and Mr. Laird's testimony should not be excluded on this basis.

First, Mr. Laird has considerable experience in aviation security, including a forty-two year security career up to and including the present, meeting the requirements of Fed. R. Evid.

702 and *Kumho Tire*. *See* Mr. Laird's Report and Curriculum Vitae, attached hereto as Exhibit A. Mr. Laird had a twenty-two year career with the U.S. Secret Service. *See* Curriculum Vitae. Prior to 1995, Mr. Laird served as the Security Director for Northwest Airlines. *Id.* Now, the President of his own consulting firm, Mr. Laird regularly consults with international aviation industry and governments on issues involving security. *Id.* Between 1997 and 2002 Mr. Laird was also the Vice President of a company that provided counterterrorism and aviation security advice to public and private sector clients. *Id.* Mr. Laird is a member of a number of professional organizations devoted to security, has been called upon to comment on aviation security matters by various television shows, newspapers, and magazines, and has been published a number of times. *Id.* Additionally, Mr. Laird has been designated an aviation security expert by the Federal Aviation Administration (FAA) and has worked with the FAA on a variety of projects. Laird Report, p. 2. With this experience and expertise, under the guidelines of *Kumho Tire*, Mr. Laird is qualified to testify as an aviation security expert, and his testimony will assist the jury to understand and determine the issues in this case.

Second, under AA's rationale for excluding the testimony of Mr. Laird, AA would have to first establish that material changes in aviation security have taken place since 1995 (or 2001) and that Mr. Laird has no experience with those changes. AA's motion assumes that following the events of September 11, 2001 there have been changes in aviation security training, protocol or procedures that are material to the issues in this case, but AA has failed to establish that such changes in training, protocol or procedure have taken place. Therefore, that Mr. Laird has not specifically consulted a U.S. flag carrier since 2001 and has not been employed by a carrier since 1995 is inapposite to his expertise on aviation security issues. As his report establishes, Mr. Laird has continued to work as an expert in the field of aviation security since 2001, and has he

2

has the requisite expertise. *See, e.g., United States v. Vargas*, No. 04-10126RWZ, 2005 WL 2740602, at *1 (D. Mass. Oct. 24, 2005) (officer of Homeland Security was qualified to testify about fingerprint evidence where he had worked as an FBI agent for over twenty years, completed at least two fingerprint courses, and had passed fingerprint comparison tests in past five years).

Also, to the extent that AA attempts to discredit Mr. Laird's opinion arguing that he relies on non-authoritative publications, this argument fails. Mr. Laird reviewed the entire case file in connection with the preparation of his expert report, as well as additional materials related to applicable security standards and government aviation regulations. The deposition testimony cited by AA shows only that Mr. Laird did not know, one way or another, if *some* of the publications he reviewed are read by other aviation security professionals. However, Mr. Laird reviewed other publications which he testified that he did, in fact, know were relied upon by aviation security professionals. (Laird Depo., attached to AA's motion *in limine*, p. 51). Since Mr. Laird's opinion is based on his extensive career in aviation security, as well as the publications listed in his expert report, his testimony should not be excluded.

## II. MR. LAIRD'S OPINIONS AS TO THE ULTIMATE ISSUE ARE PROPER UNDER FEDERAL RULE OF EVIDENCE 702 AND 704(a).

AA's argument that Mr. Laird's testimony should be excluded because he intends to opine that Mr. Cerqueira's removal from flight 2237 on December 28, 2003 stemmed from racial profiling is erroneous. Mr. Laird is qualified as an expert in aviation security by his knowledge, skill, experience, training, and education and Mr. Laird's knowledge will assist the jury in determining materials facts at issue in this case. Fed. R. Evid. 702. Furthermore, since Mr. Laird's opinion is based on sufficient facts and is the product of reliable principles that Mr. Laird has applied to the facts in this case, Mr. Laird can testify as to his opinion. Fed. R. Evid. 702.

Finally, Mr. Laird is expressly permitted by Fed. R. Evid. 704(a) to give his opinion on the "ultimate issue" that Mr. Cerqueira's removal from flight 2237 and AA's refusal to rebook him was the result of racial profiling. *See Peckham v. Continental Casualty Ins. Co.*, 895 F.2d 830, 837-838 (D. Mass. 1990) (an objection on "the ultimate issue" is directly contradicted by Fed. R. Evid. 704(a)).

### III. MR. LAIRD'S REPORT DOES NOT OFFER THE REMAINING OPINION THAT AA SEEKS TO EXCLUDE.

To the extent that AA seeks to exclude Mr. Laird's opinion that AA employees did not follow AA's procedures and protocols, Mr. Laird has not offered this opinion in his report. *See* Laird Report. As AA itself concedes, Mr. Laird has not reviewed AA's protocols and procedures. Instead, Mr. Laird's opinion is based on the philosophy of the In-Flight Security Coordinator program that is mandated by the FAA. *See* Laird Report, p. 4. In utilizing that philosophy, and reviewing the factual record extensively, Mr. Laird's report lists a number of things that could have been done to prevent the series of events resulting from what he has opined was the racial profiling of Mr. Cerqueira. *See* Laird Report, pp. 4-5. While Mr. Laird notes that AA has a published policy on the prohibition of racial profiling and a denied boarding process, nowhere in his report does Mr. Laird put forth any opinion that AA's employees failed to follow AA's protocols and procedures. Therefore, AA's motion to prevent Mr. Laird from opining that AA employees failed to follow its own procedures and protocols can be denied as moot.

4

## CONLUSION

For the aforementioned reasons, Plaintiff John D. Cerqueira respectfully requests that this Court deny Defendant American Airlines, Inc.'s Motion *In Limine* to Exclude Testimony of Plaintiff's Expert, Douglas Laird.

>Respectfully submitted,
>
>**JOHN D. CERQUEIRA,**
>By his attorneys,
>
>/s/ Darleen F. Cantelo
>David S. Godkin, BBO #196530
>Darleen F. Cantelo, BBO #661733
>Birnbaum & Godkin, LLP
>280 Summer Street
>Boston, MA 02210
>617-307-6100
>
>Michael T. Kirkpatrick, Esq.
>Public Citizen Litigation Group
>1600 20th Street, NW
>Washington, DC 20009
>(202) 588-1000

Date:   December 4, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 4, 2006.

>/s/ Darleen F. Cantelo
>Darleen F. Cantelo

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 14, 2006, at 1:00 pm, I conferred by telephone with Amy Cashore Mariani, counsel for defendant, and attempted in good faith to resolve or narrow the issue presented in this motion, but the parties were unable to resolve the issue or narrow the areas of disagreement.

/s/ Darleen F. Cantelo
Darleen F. Cantelo

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN D. CERQUEIRA,

       Plaintiff,

v.

AMERICAN AIRLINES, INC.,

       Defendant.

Civil Action No. 05-11652-WGY

### PLAINTIFF'S DISCLOSURE OF EXPERT TESTIMONY
### PURSUANT TO FED. R. CIV. P. 26(a)(2)

Pursuant to Fed. R. Civ. P. 26(a)(2) and LR 26.4(a), Plaintiff John D. Cerqueira submits this expert disclosure.

#### Plaintiff John D. Cerqueira's Expert Witness

1.     Douglas R. Laird, CPP
        Laird & Associates, Inc.
        2618 Edgerock Road
        Reno, Nevada 89509-5765
        (775) 770-0136

Mr. Laird's report is attached to this disclosure as Exhibit A. The report and its attachments contain the information required by Fed. R. Civ. P. 26(a)(2)(B). Plaintiff reserves the right to supplement this disclosure pursuant to Fed. R. Civ. P. 26(e)(1).

Dated: June 26, 2006

JOHN D. CERQUEIRA
By his attorneys,

*/s/ Michael T. Kirkpatrick*
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

David S. Godkin (BBO #196530)
Erica Abate Recht (BBO #641452)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
617-307-6100

---

**CERTIFICATE OF SERVICE**

I, Michael T. Kirkpatrick, hereby certify that a true and correct copy of the foregoing document was delivered to all counsel of record on June 26, 2006, by first class mail and electronic transmission.

_____
Michael T. Kirkpatrick

---



# Laird & Associates, Inc.

LairdAssoc.com

## Introduction

At the request of Michael T. Kirkpatrick, Esq., Public Citizen Litigation Group, 1600 Twentieth Street, NW, Washington, DC 20009 I was retained to review the circumstances surrounding the denial of service to John D. Cerqueira by American Airlines, Inc. on Flight #2237 from Boston (BOS) to Fort Lauderdale (FLL) and American Airlines refusal to provide transportation on a later flight to Fort Lauderdale. Following is my report with findings and conclusion based upon documents available to me as of this date. As additional work may be done in this matter, any conclusions and opinions expressed herein will be amended or supplemented as required.

## Materials Reviewed

On June 20, 2006 I received, via UPS, copies of documents related to the case of John D. Cerqueira v. American Airlines, Inc. CA No. 05-11652-WGY which Mr. Kirkpatrick requested that I review. A copy of Mr. Kirkpatrick's letter of transmittal that itemizes the materials provided is attached to this report and titled Attachment 1.

Additional materials related to applicable security standards and government aviation regulations were also reviewed and are as follows:

1. International Standards and Recommended Practices – Security, Annex 17, Fifth Edition, Montreal, 1992
2. The White House Commission on Aviation Safety and Security, GPO, Washington, DC, May 1990
3. The 9/11 Commission Report, W. W. Norton & Company, New York, 2004
4. Aviation And Airport Security, Kathleen M. Sweet, Esq., Pearson Prentice Hall, Upper Saddle River, New Jersey, 2004
5. Combating Air Terrorism, Rodney Wallis, Brassey's US, Washington, DC, 1993
6. The Naked Crowd, Jeffrey Rosen, Random House, New York, NY, 2004
7. The Culture of Fear, Barry Glassner, Basic Books, New York, NY, 1999
8. America the Vulnerable, Stephen Flynn, HarperCollins, New York, NY, 2004
9. How Safe Are Our Skies, Rodney Wallis, Praeger, Westport, CN, 2003
10. Disinformation, Richard Miniter, Regnery Publishing, Washington, DC, 2005

## Summary of Event

Mr. John D. Cerqueira, Aventura, FL, flew on an American Airlines flight from Fort Lauderdale, FL to Boston on December 24, 2003. On December 28, 2003 he arrived at Boston's Logan Airport at approximately 5:15 A.M. to fly on American Airlines flight #2237 to Fort Lauderdale, FL. He arrived early as Transportation Security Administration (TSA) advises an early arrival to allow time for security screening. He checked luggage curbside and proceeded to the departure gate after clearing TSA screening without incident. When he saw an American Airlines staff member at the gate podium he addressed her and asked if he could be reassigned a bulk-head or exit row seat. Flight Attendant Sally Walling, the person at the podium advised Mr. Cerqueira that he'd have to wait for a gate agent to request a seat change.

Mr. Cerqueira ultimately was assigned an exit row seat, 20F, and boarded the aircraft when his "group" was called by the gate agent. Upon reaching his assigned seat Mr. Cerqueira stowed his carry-on items and proceeded to a lavatory at the rear of the aircraft. After his lavatory visit he returned to his assigned seat and worked on his laptop computer until all passengers were advised by the crew to turn off all electrical items in preparation for departure. Mr. Cerqueira, having arisen at 3:00AM to travel to the airport, then fell asleep.

2618 Edgerock Road · Reno, NV 89509-5765 · USA · Tele:*1.775.770.0136 · Mobile:*1.202.415.2324
Douglas.R.Laird@LairdAssoc.com

Exhibit A

**Laird & Associates, Inc.**

LairdAssoc.com

FA Walling advised Captain Ehlers that she was alarmed by suspicious activity by the individual in seat 20F, Mr. Cerqueira, both before the flight was boarded and after he boarded the flight. She claimed that he had "stared" at her after he'd insisted she reassign his seat while at the podium, that he'd boarded out of sequence, that he'd gone to the aft lavatory and stayed in the lavatory a "long time" and that prior to push-back he was "feigning" sleep.

American Airlines Customer Service Manager Ynes Flores was summoned to the aircraft, it is not clear by whom, and requested the boarding passes from Mr. Cerqueira and the individuals seated in 20D and 20E. It appears that the assumption was made by the American Airlines flight crew that Mr. Cerqueira and the individuals seated in 20D and 20E were traveling together. Mr. Flores provided the documents to Captain Ehlers and departed the aircraft.

Mr. Cerqueira was subsequently removed from the aircraft by Massachusetts State Troopers and questioned by law enforcement authorities. After it was determined that he was not traveling with the passengers seated in 20D and 20E, he was cleared for travel and escorted to the American Airlines ticket counter.

Mr. Cerqueira attempted to get rebooked on a later American Airlines flight to Fort Lauderdale. At the ticket counter Ms. Nicole Traer, then an American Airlines customer service agent, advised him that she was refunding his ticket and that he could not fly on American Airlines as those were the instructions she had received from System Operations Control, Dallas, TX. The next day Mr. Cerqueira flew to Fort Lauderdale on another carrier without incident.

## Qualifications

A copy of my curriculum vitae which describes my forty-two year security career is attached to this report as Attachment 2. The C.V. provides an overview of my duties and responsibilities as security director for a U. S. Flag Carrier.

Since departing Northwest Airlines in May of 1995 I have provided security consultation to most of the international aviation community, to include: Airports – Domestic and International; Airlines – U. S. Flag and International; Governments – U. S. and Foreign; Manufacturers – U. S. and Foreign; Security Providers – U. S. and Foreign; Service Providers – U. S. and Foreign, and Universities.

I have been designated an aviation security subject matter expert by the Federal Aviation Administration and worked on a variety of projects for the FAA the most significant being:

1. Vulnerability Assessments of the airports at Miami and Jacksonville, FL to assist the FAA to identify a VA model suitable for use by all U. S. airports.

2. Develop aviation security system architecture and define the aviation security concept of operations as an integral part of and essential element of the system architecture.

3. Survey thirty (30) existing or planned domestic Category X through CAT III airport terminal designs to determine if generic terminal configuration types or groupings exist for the purpose of employing enhancements in checked baggage transport and security screening and checkpoint design configurations. Additionally, samplings of existing and planned foreign airport terminal design layouts were surveyed to assess their security screening concepts and techniques to determine applicability to U.S. security needs. In total, thirty-five airports were visited and surveyed, including Frankfurt, Germany; Schiphol Airport, Amsterdam, the Netherlands; London (Gatwick), U.K.; Hong Kong, Hong Kong and Tokyo (Narita), Japan.

2618 Edgerock Road · Reno, NV 89509-5765 · USA · Tele:*1.775.770.0136 · Mobile:*1.202.415.2324
Douglas.R.Laird@LairdAssoc.com

# Laird & Associates, Inc.

LairdAssoc.com

During the last four years I have not testified at trial or by deposition.

## Compensation

In a letter of agreement between Laird & Associates, Inc. and the Public Citizen Litigation Group, dated June 19, 2006, Michael T. Kirkpatrick, Esq. has agreed to pay a retainer of $ 2,000 toward the work of Douglas R. Laird at the rate of $ 250 per hour for review and preparation and $ 350 per hour for deposition(s) and testimony in the case of John D. Cerqueira v. American Airlines, Inc., CA No. 05-11652-WGY.

## Publications

I have written about aviation security and been published in the following books, magazines and journals:

### Books

"Airline Security Regulatory Framework", Chapter 18, p. 251-260, <u>Protection, Security, and Safeguards</u>, CRC Press, New York, 2000

### Magazines

"Grounding Terrorists", p. 58-61, <u>Security Management</u>, December 1995
"Fighting Fraud on the Fly", p. 77-80, <u>Security Management</u>, April 1996

### Professional Journals

"Regulation: Perception and Reality", p. 238-241, <u>Journal of Testing and Evaluation</u>, Vol. 22, Number 3, May 1994,

### Professional Review

On two occasions I have been asked by the Committee on Commercial Aviation Security Panel and Passenger Screening, National Materials Advisory Board, Commission on Engineering and Technical Systems, National Research Council, to review their publication "Airline Passenger Security Screening – New Technologies and Implementation Issues", Publication NMAB-482-1, 1! and 2002 and provide comments prior to publication. In both instances I provided written comments.

## Conclusions And Opinions

Based on my review of the materials referenced, as well as my experience and training in security, specializing in aviation security, I have reached the following conclusions and opinions to date with regard to the relevant events of December 28, 2003 and the denial of service to Mr. Cerqueira at Boston Logan Airport:

1. Mr. Cerqueira was a victim of racial profiling;
2. Racial profiling does not make air travel safer;
3. Mr. Cerqueira behavior did not indicate a security threat;
4. Because the situation was mishandled an innocuous series of events was allowed to turn in to a security incident;

2618 Edgerock Road · Reno, NV 89509-5765 · USA · Tele:*1.775.770.0136 · Mobile:*1.202.415.2324
Douglas.R.Laird@LairdAssoc.com

# Laird & Associates, Inc.

LairdAssoc.com

     5. The refusal to allow Mr. Cerqueira to travel on American Airlines after he was questioned was not justified.

## Discussion

While security director at Northwest Airlines I oversaw a Federal Aviation Administration mandated profiling system that had to be carried out on our flights departing certain airports in Europe and the Pacific which was administered by a contract company. On numerous occasions I observed the "profile" training and watched the process being carried out at foreign airports. The profile training consisted of two weeks of classroom instruction and one month of on-the-job observation/training, and only experienced screeners were allowed to take the class. There were many false-positives and very few positives, none of which were direct aviation security issues. Therefore, Northwest Airlines Security Department developed what became known as CAPPS (Computer Assisted Pre-passenger Screening) and following the TWA#800 crash the CAPPS program was mandated by the FAA for use by all U.S. Flag carriers. On 9/11 CAPPS identified ten (10) of the hijackers. Ethnicity is not a factor in the CAPPS program.

Mr. Cerqueira was a victim of racial profiling in that none of the activities noted in the depositions as suspicious were of a security interest.

None of the following "behaviors" reported as abnormal are indicative of a security threat. Specifically:

- Being "insistent"
- "Staring"
- Being "first to board"
- Going to the lavatory
- Sleeping while other passengers are being boarded
- Passengers in 20D and 20E being boisterous
- "Suspicious" behavior, not further defined
- "Strange questions" to Captain by passenger(s) 20D and 20E

The documents I have reviewed do not show that any of the American Airline staff involved in this event had received any meaningful training in behavioral profiling.

I have not seen the American Airlines policy or training program for In-Flight Security Coordinators (pilots) but know the philosophy of the In-Flight Security Coordinator program as mandated by the Federal Aviation Administration. Although the Captain has ultimate command of the aircraft it is the Ground Security Coordinator that supervises the security process until the boarding of the aircraft has been completed and the GSC advises the In-Flight Security Coordinator that the "flight is secure" and the aircraft is cleared to pushback from the gate. American Airlines Chief Pilot and the Vice President of Flight made the role of the In-Flight Security Coordinator quite clear in messages to the pilot group.

The Captain did not take control of the developing situation and thus allowed an innocuous series of events to escalate in to a security incident. A number of things could have been done to have prevented this series of events turning into an incident. For example:

- The TSA's "No-Fly" list could have been checked;
- The Passenger Name Records (PNR) of Cerqueira, Rokah and Ashmil could have been checked which would have shown that they were not traveling together;

2618 Edgerock Road · Reno, NV 89509-5765 · USA · Tele:*1.775.770.0136 · Mobile:*1.202.415.2324
Douglas.R.Laird@LairdAssoc.com



# Laird & Associates, Inc.

LairdAssoc.com

- Checking with knowledgeable ground staff would have shown that exit-row seats are assigned by station personnel;
- A computer check would have shown that Mr. Cerqueira was an elite member of the American Airlines Frequent Flyer Program;
- The GSC could have been summoned to the aircraft sooner and thus have had time to sort out the facts and provide input to the Captain;
- The Captain could have independently verified the available facts, discussed the situation with the GSC and attempted to calm down the flight attendants;
- If additional questioning was needed the three passengers in the exit row could have been escorted from the aircraft by ground personnel and thus avoided the State Troopers from boarding the aircraft and alarming the other passengers;
- The SOC and CCRO should have provided guidance to the Captain as how to deal with the situation;
- SOC should have advised Captain to call CCRO for guidance had he not already done so.

To the extent American Airlines did any investigation of Mr. Cerqueira following his removal from the aircraft it would show that American Airlines was not justified in refusing to rebook Mr. Cerqueira after he was released from questioning by the Massachusetts State Police. A simple review of the facts available to American Airlines combined with the findings of the State Police would show that Mr. Cerqueira was not a security threat.

## Conclusion

In summation, it is my opinion that FA Walling's concerns were a result of racial profiling that lead her to believe that there was a security threat. She reported this to Captain Ehlers who as the In-Flight Security Coordinator failed to thoroughly investigate and coordinate with the ground security coordinator and gain control of the event. The SOC made a decision to deny travel on American Airlines to Mr. Cerqueira with no basis in fact and made no record of how the decision was reached. Mr. Cerqueira was never a security threat to the flight and should have been rebooked by American Airlines and allowed to continue to Fort Lauderdale, FL.

Although American Airlines has a published policy on the prohibition of racial profiling and a denied boarding process the depositions I reviewed showed that the staff and crew had little understanding of the policy and its intent.

The breakdown in communication between the In-Flight Security Coordinator and the Ground Security Coordinator and the lack of an agreed upon definite chain-of-command lead to an incident that was not called for by the circumstances.

If any additional information has become available, please forward it to my office so that it may be reviewed and my report updated accordingly.

Douglas R. Laird, CPP

June 23, 2006

Attachments

1) Letter of Transmittal, Michael T. Kirkpatrick, June 19, 2006
2) Curriculum Vitae of Douglas R. Laird

2618 Edgerock Road · Reno, NV 89509-5765 · USA · Tele:*1.775.770.0136 · Mobile:*1.202.415.2324
Douglas.R.Laird@LairdAssoc.com

**PUBLIC CITIZEN LITIGATION GROUP**
1600 TWENTIETH STREET, NW
WASHINGTON, DC 20009
(202) 588-1000
(202) 588-7795 (fax)

MICHAEL T. KIRKPATRICK
Direct Dial: (202) 588-7728
E-mail: mkirkpatrick@citizen.org

June 19, 2006

Douglas R. Laird
Laird & Associates, Inc.
2618 Edgerock Road
Reno, NV 89509-5765

    Re:   *John D. Cerqueira v. American Airlines, Inc.*, CA No. 05-11652-WGY

Dear Doug:

    Please find enclosed a check payable to Laird & Associates in the amount of $2,000.00. I have also enclosed a tabbed binder containing the following documents:

1) Amended Complaint
2) Defendant's Answer
3) Protective Order
4) Plaintiff's Initial Disclosure
5) Plaintiff's Responses to Interrogatories
6) Plaintiff's Responses to Requests for Production
7) Documents Bates Nos. CRQ 0001-0133
8) Defendant's Automatic Disclosures
9) Defendant's Supplemental Automatic Disclosures
10) Defendant's Answers to Interrogatories
11) Defendant's Supplemental Answers to Interrogatories
12) Defendant's Responses to Requests for Production
13) Documents Bates Nos. AA 0001-0038
14) Transcript of Deposition of Sally Walling
15) Transcript of Deposition of Lois Sargent
16) Transcript of Deposition of Amy Milenkovic
17) Transcript of Deposition of Donald M. Ball
18) Transcript of Deposition of Ynes F. Flores
19) Transcript of Deposition of Nicole Traer
20) Transcript of Deposition of John M. Ehlers

Attachment 1

21) Index describing Deposition Exhibit Nos. 1-17 and attaching Exhibit No. 6 (the other deposition exhibits are among the documents already included in the binder or are subject to protective order)
22) Transcript of Deposition of John D. Cerqueira
23) Cerqueira Deposition Exhibit Tab Nos. 1, 2, and 3.

The binder does not contain documents bearing Bates Nos. CRQ 0134-0445 because they are relevant only to damages. I have not enclosed documents bearing Bates Nos. AA 0039-0098 because defendant produced them subject to the protective order.

Please note that the transcripts of the depositions of the American Airlines employees refer to deposition Exhibits 1 through 17. Deposition Exhibit Nos. 2 and 6 are not Bates numbered and can be found in your binder behind Tabs 10 and 21, respectively. The other deposition exhibits correspond to the following Bates Nos. and are found behind Tab 7 or 13 or have been withheld because of the protective order:

| Deposition Exhibit No. | Bates Nos. |
| --- | --- |
| 1 | AA 0018-20 |
| 2 | No Bates No. (Tab 10 in binder) |
| 3 | CRQ 0029-35 |
| 4 | AA 0047-48 (withheld) |
| 5 | AA 0012-14 |
| 6 | No Bates No. (Tab 21 in binder) |
| 7 | AA 0043-46 (withheld) |
| 8 | AA 0031 |
| 9 | AA 0015-17 |
| 10 | AA 0056-57 (withheld) |
| 11 | AA 0022 |
| 12 | AA 0023-27 |
| 13 | AA 0028 |
| 14 | AA 0021 |
| 15 | AA 0009-11 |
| 16 | AA 0035 |
| 17 | AA 0097-98 (withheld) |

The Cerqueira deposition used a binder of exhibits tabbed with Nos. 1 through 24. Cerqueira deposition exhibits 1, 2, and 3 are in your binder behind Tab 23. The other Cerqueira deposition exhibits correspond to Bates Nos. or Tabs in your binder as follows:

| Cerqueira Deposition Exhibit No. | Bates Nos. |
| --- | --- |
| 4 | AA 0037 |
| 5 | CRQ 0008 |
| 6 | AA 0004-8 |
| 7 | AA 0001-3 |
| 8 | AA 0009-11 |

2

| | |
|---|---|
| 9 | CRQ 0021-28 |
| 10 | CRQ 0029-35 |
| 11 | CRQ 0036-40 |
| 12 | Same as your Tab 1 |
| 13 | Same as your Tab 5 |
| 14 | Same as your Tab 10 |
| 15 | AA 0012-14 |
| 16 | AA 0015-17 |
| 17 | AA 0018-20 |
| 18 | AA 0035 |
| 19 | AA 0023-27 |
| 20 | AA 0021 |
| 21 | CRQ 0009-10 |
| 22-24 | withheld because relevant only to damages |

Please call me with any questions.

Sincerely,

Michael T. Kirkpatrick

Enclosures

cc:  David S. Godkin (w/o enc.)
     Erica Abate Recht (w/o enc.)

3



# Laird & Associates, Inc.

LairdAssoc.com

## Douglas R. Laird

Mr. Laird, President, Laird & Associates, Inc. is an expert in aviation security. He devotes the majority of his time consulting with the international aviation industry and governments, specializing in operational and technical issues involving security. He has published articles on aviation security in international venues, including Security Management Magazine and ASTM's Journal of Testing and Evaluation and provided editorial review to the National Research Council's National Materials Advisory Board. He was a contributing author of Protection, Security, and Safeguards by CRC Press and is a frequent presenter and/or panel member at international aviation security conferences.

Mr. Laird founded Laird & Associates, Inc., in 1995 and between 1997 and 2002 was the Vice President of BGI International Consulting Services, Inc., Washington, DC., a company providing counterterrorism and aviation security advice to a variety of public and private sector international clients. Prior to 1995 he had a successful career as the Security Director for Northwest Airlines, Inc., where he was responsible for the overall planning, direction, and management of security for an airline serving 240 cities in 22 countries on four continents. His duties included coordinating the implementation of U. S. Federal Aviation Administration regulations and host country rules at all locations served by the carrier. He supervised the audit of those procedures and was instrumental in developing contingency/disaster plans for Northwest Airlines, the world's fourth largest carrier with more than 46,000 employees, and coordinated consequence management activities at disaster sites. While at Northwest Airlines he conceptualized the original CAPPS program, which is now used by all U. S. Flag Carriers, and presented CAPPS to the Federal Aviation Administration for initial approval and funding.

Mr. Laird enjoyed a distinguished twenty-year career with the U. S. Secret Service. During his career he served in a supervisory capacity in the Protective Intelligence Division, supporting all Secret Service Protective Divisions, as well as visiting Heads-of-State. Mr. Laird's protective assignments included the Vice Presidential Detail (two administrations) and Dr. Kissinger during his shuttle-diplomacy days.

The American Society of Industrial Security (ASIS) recognized Mr. Laird as a **Certified Protection Professional (CPP)** in 1983. He is a member of a number of professional organizations devoted to security, including the International Association of Professional Security Consultants (IAPSC), the American Society for Industrial Security (ASIS) and the American Association of Airport Executives (AAAE). He chairs the Airlines/Airport Subcommittee of the ASIS Transportation Council and has chaired the Air Transport Association of America (ATA) security committee. He is an alumnus of the U. S. Department of State's Overseas Security Advisory Council (OSAC) Executive Board.

Mr. Laird has served as a technical advisor to the President of the National Safe Skies Alliance (NSSA) and has advised various working groups of the U. S. General Accounting Office and the Inspector General for the U. S. Department of Transportation. He has served as a subject matter expert on aviation security matters to corporations, including: Abacus Technology Corporation, Bechtel, Experian; Galaxy Scientific; Lockheed Martin; Science Applications International Corporation; Raytheon; and TASC.

Mr. Laird is called upon to comment on aviation security matters by The New Hour with Jim Lehrer, NBC's DateLine; CNN, Fox News, Good Morning America, The BBC, National Public Radio's All Things Considered and Talk of the Nation, The New York Times, The Wall Street Journal, The Washington Post and other leading newspapers and magazines.

The George Washington University, Washington, DC awarded Mr. Laird a Master's of Science degree in 1975 and in 1964 he was awarded a Bachelor's of Science degree from Minnesota State University, Mankato, Minnesota. Mr. Laird served in the U. S. Marine Corps and was released from active duty in 1968 as a Captain.

2618 Edgerock Road - Reno, NV 89509-5765 · USA · Tele:*1.775.770.0136 · Mobile:*1.202.415.2324
Douglas.R.Laird@LairdAssoc.com

Attachment 2