UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
JOHN D. CERQUEIRA,                            )
                                              )
          Plaintiff,                          )
                                              )
     v.                                       )
                                              )   CIVIL ACTION NO.: 05-11652 WGY
AMERICAN AIRLINES, INC.,                      )
                                              )
          Defendant.                          )
_____)

**AMERICAN AIRLINES' MOTION FOR RECONSIDERATION OF THE COURT'S RULING ON ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF DEPARTMENT OF TRANSPORTATION PROCEEDINGS AND CONSENT ORDER ENTERED INTO BETWEEN AMERICAN AIRLINES, INC. AND THE DEPARTMENT OF TRANSPORTATION IN CONNECTION THEREWITH**

Defendant American Airlines, Inc., ("American") moves this Court to reconsider its ruling allowing the plaintiff to refer to the existence of the Consent Order issued by the Department of Transportation ("DOT").[1] Otherwise, American will be unfairly prejudiced and the jury will be confused by this document, which has no probative value particularly given how the plaintiff is presenting his case at trial. A brief review of the DOT action and wording of the ensuing Consent Order will demonstrate why.

The DOT brought an action alleging that American had unlawfully removed or denied boarding to passengers belonging to a protected class on eleven occasions subsequent to September 11, 2001. American settled the matter, and as evidenced by the Consent Order's very terms, because both parties agreed that it was to avoid the expense and uncertainty of litigation (*Id.* at page 3).

---

[1] The Consent Order was issued by the DOT on February 27, 2004 and is a public record, entered in DOT Docket No. OST 2003-15046. A copy is attached hereto as "Exhibit A."

Under the terms of the Consent Order, American made no admission of liability, and no final judgment adjudicating American's liability, or lack thereof, was ever rendered. More importantly, the Consent Order includes the following language:

> 6. This order makes no findings of violations with respect to any individual incident of alleged civil rights violations and the findings herein shall have no effect in any proceeding not before the Department of Transportation.

*Id.* at p. 5.

Mr. Cerqueira seeks to have it do just that – have a (prejudicial) effect in the proceeding not before the DOT – to wit, his suit before this Court. American fears that the very mention of the existence of the Consent Order and the allegedly unlawful activity that it purports to remedy will unfairly prejudice American. While the Court has indicated that a limiting instruction will be given, that instruction may be insufficient to remove the inevitable perception in jurors' minds that American possesses discriminatory animus upon hearing about the existence of the Consent Order.[2] Thus, the prejudicial nature of any discussion about the Consent Order far outweighs any alleged probative value. *See* Fed.R.Evid. 403.

## ARGUMENT

### A. Any "Notice" Provided by the Consent Order to American is Immaterial to the Issues in the Instant Case, and the Document Has No Probative Value.

The Court informed the parties that it would give the jury a limiting instruction providing that the Consent Order would not be admitted for the truth of the matters asserted therein, but only to establish that the DOT complaint exists and that American

---

[2] The jurors may perceive American's voluntary entry into a Consent Order as an admission of liability.

2

was "on notice" that the DOT instituted a complaint. In all candor, even after reviewing a transcript of the Court's discussion of the issue, American respectfully suggests that there is basis for issue of "notice" to be inserted into this case, for the reasons below.[3]

### 1. The Circumstances Attendant to Each of the Claims Discussed in the Consent Order Are Vastly Different from Those Involving the Plaintiff.

To the extent that American was placed on notice of the government's concerns about individual passengers' rights that is not probative of the facts in dispute here. Rather, the only "notice" provided American was that the DOT received complaints that after September 11, 2001, eleven passengers belonging to a protected class complained to the DOT because they *believed* that they were removed from flights or denied air travel because of their membership in a protected class. These passengers' beliefs have never been substantiated. There has been no trial on the merits to adjudicate whether these passengers' subjective beliefs have any basis in fact. The DOT received some complaints from passengers in a protected class who believed they were victims of discrimination. The Consent Order and the underlying Complaint filed against AA by the DOT are simply conclusory allegations that American engaged in the conduct alleged. As will be discussed *infra*, the DOT's position is contrary to the prevailing law and will likely confuse the jury, as well as unfairly prejudice American Airlines.

---

[3] Undersigned counsel obtained an unofficial transcription of the proceedings where the Court discussed the notice issue, and it reads in part as follows:

> The fact of the enforcement action, not for the truth but for notice to American Airlines, is admissible.
>
> . . . .
>
> Now, the complaint is more detailed factually, but I will give a charge that this is not for the truth of anything, it's just for the fact of the existence of the complaint and that, notice to American Airlines that the authorities made this complaint.

3

>    2.   **The Claims That Were the Subject of the Consent Order Should Not Be Injected Into the Trial of This Action, Because They are Too Remote in Time to Have Any Relationship to Mr. Cerqueira's and Their Mere Knowledge Would Likely Cause Juror Confusion and Unfair Prejudice to American.**

"Even relevant evidence should be excluded . . . if its probative value is substantially outweighed by the danger of unfair prejudice and the prejudicial effect cannot be addressed by a limiting instruction." *United States v. Balthazard,* 360 F.3d 309, 313 (1st Cir.2004). The circumstances surrounding the claims underlying the DOT Consent Order are so vastly different from those relating to the plaintiff's claims of December 28, 2003 as to render the claims discussed in the Consent Order irrelevant. Each of the complaints discussed in the Consent Order was received by the DOT during the period between September 11, 2001 and December 31, 2001. (*See* Exhibit A, p. 1).

The period immediately following the September 11, 2001 attacks was one of unprecedented security concerns and tension in the airline industry and the entire country was on heightened security alert. The plaintiff was denied air travel on December 28, 2003, more than two years after September 11, 2001. On that basis alone, the circumstances attendant in the two scenarios are vastly different, and the plaintiff's attempt to "shoe horn" his claims into one bearing some relationship to the unadjudicated claims underlying the Consent Order is merely an attempt to shore up a tenuous case by implying to the jury that what happened to him was somehow driven by the traumatic aftermath of 09/11 and its effect upon airline employees.

Even more compelling, however, is that it is fundamentally improper for the issues and individualized claims that were presented in the DOT action to be commingled in any judicial proceeding, whether the instant case or any other. Even if some of those

11 individuals who were denied service brought subsequent claims, which some did, it would be improper for the Consent Order to be allowed into evidence because its terms and underlying purpose would not warrant it; thus, it is all the more improper for Mr. Cerqueira to attempt to use it as a sword here against American where it has no probative value to this case, but presents a very real likelihood of causing it unfair prejudice, as is discussed more fully below.

### B. The Unfair Prejudice and Likely Juror Confusion of the Consent Order Cannot Be Rectified by a Curative Instruction.

The Consent Order's discussion of the governing legal principles demonstrates the likelihood of unfair prejudice to American, as well as causing juror confusion. One example is this excerpt on page 2 when discussing denial of service decisions made by a captain:

> In addition, American asserts that the pilot-in-command must make that decision based upon the facts and circumstances presented to him or her at that time, taking into account the time constraints under which the decision must be made and the general security climate in which the events unfold. According to American, the circumstances that play a part in the pilot-in-command's decision include the heightened actual dangers arising from increased risk of terrorist acts, the catastrophic consequences in the case of air travel of any failure to detect such acts in advance, and the necessity that pilots-in-command must make safety decisions on short notice without the opportunity to make an extensive investigation. American opines that the pilot-in-command may rely without further inquiry upon the representations of other crew members or other responsible authorities with respect to safety and security.

Even though the foregoing is a substantially accurate summary of the governing

legal principles for these cases as expressed by numerous courts,[4] in response to this passage, the DOT stated in footnote number 2 on that same page 2:

> The Enforcement Office strongly disagrees with this position. It is the Enforcement Office's position that a pilot-in-command's failure to inquire independently into the reasons for such action is inconsistent with carriers' legal obligations.

Thus, the very wording of the Consent Order demonstrates that the parties had vastly differing views of the applicable law. First of all, the jury in the instant case should receive the law from this Court – not the DOT's Enforcement Division. A corollary to this point is that the effect of a pronouncement from "the government" as to what the law is (as stated in the Consent Order) will likely carry undue weight and wield excessive influence on the jury. There is a substantial likelihood that this document would usurp this Court's function of being the sole authority to instruct on the law.

Equally if not more important is that the DOT's view is contrary to the well-established legal principles that govern the instant case, and which would be the substance of this Court's instructions to the jury. There is no curative instruction that would remedy the confusion to the jury and unfair prejudice that would befall American if the Consent Order is allowed into evidence. An example is this passage from *Williams*:

> Nor did Congress intend that, before refusing passage to such an applicant, an air carrier, faced with such a problem, be required, as the appellant asserts, to make a thorough inquiry into the intelligence received, its sources and an investigation of the personal history of the applicant.

*Williams,* 509 F.2d at 948. Thus, the DOT's recitation of the law in the Consent Order is

---

[4] *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F.Supp.2d 841, 847 (S.D. Ohio 2003); *Ruta v. Delta Airlines, Inc.*, 322 F.Supp.2d 391, 397 (S.D.N.Y. 2004); *Williams v. Trans World Airlines*, 509 F.2d 942 (2d Cir.1975); *Dasrath v. Continental Airlines, Inc.*, No. 02-2683, sl. op. at 23 (D. N.J. filed 12/27/06).

at odds with the judicial statements of the law, and will serve only to confuse the jury, as well as unfairly prejudice American by proffering the existence of a more onerous set of standards or procedures that someone in Captain Ehlers' position should have to utilize.

### C. The DOT Consent Order Should Not Be Proffered to Show A Pattern or Practice of Unlawful Discrimination by American, As Plaintiff Has Not Alleged or Laid a Foundation for the Introduction of Such Evidence.

The plaintiff has claimed throughout this litigation that American unlawfully discriminated against him on the basis of his perceived membership in a protected class. However, he has not presented his case as premised upon his incident as being indicative of a practice by American that is systemic to the corporation, but rather as one involving intentional acts of discrimination committed by particular AA employees. Yet, in the eleventh hour, the plaintiff cites to Federal Rule of Evidence 404(b) in his opposition to American's *motion in limine* as grounds for the admission of the Consent Order.

Mr. Cerqueira has neither pled nor established that American engaged in a pattern or practice of unlawful discrimination towards passengers who belong to a protected class. The plaintiff has not laid a foundation for the introduction of the Consent Order or the nature of the allegations that it is intended to address. Although the allegations addressed in the Consent Order are similar in nature to the plaintiff's claims, the mere fact that the DOT brought a complaint and the parties entered into a Consent Order does not support plaintiff's newly-asserted theory that American engages in the "routine practice" of unlawful discrimination as the term is used in Federal Rule of Evidence 406.

7

Illustrative of a court's proper exclusion of such material is *Kinan v. City of Brockton,* 876 F.2d 1029 (1st Cir.1989),[5] where the First Circuit affirmed the allowance of defendant's motion for judgment as a matter of law, ruling that the district court's exclusion of agreements for judgment in two lawsuits alleging similar claims was correct, and opined "whatever remote relevancy the cases had on custom or practice was outweighed by the potential for prejudice. Fed.R.Evid. 403." *Id.* at 1034-1035.

In upholding the district court's exclusion of the proposed evidence, the *Kinan* court held that "introducing evidence of the two other cases would inevitably result in trying those cases, or at least portions of them, before the jury. The merits of the two other cases would become inextricably intertwined with the case at bar. The result would be confusion [of the jury] . . . [Additionally], both cases were settled prior to verdict." *Id.* at 1035. The court continued: "[t]he cases were decided on the basis of negotiations, not findings of fact. *The considerations leading to a settlement are many and varied; at times they have little to do with the basic facts of a case*. These two cases, therefore, cannot be used to prove custom or practice." *Id.* (emphasis supplied).

As in *Kinan*, the Consent Order merely recites the terms of the American's settlement with the DOT. A consent decree is no more than a settlement that contains an injunction. *In re Masters Mates & Pilots Pension Plan and IRAP Litigation v. Riley,* 957 F.2d 1020, 1025 (2d Cir.1992). The fact that American entered into a settlement under the limited conditions recited in the Consent Order has no probative value to the instant case.

---

[5] In *Kinan*, the plaintiff alleging civil rights violations during his arrest and detention, sought to introduce agreements for judgment entered in two prior cases filed against one of the defendant police officers against whom he had filed claims. These agreements for judgment were entered in cases alleging that the defendant police office used excessive force during arrests.

The *Kinan* ruling bears a striking similarity to the instant case in that Mr. Cerqueira seeks to utilize a Consent Order, a mere settlement and <u>not</u> a judgment on the merits, to establish that American condones a pattern or practice of unlawful discrimination against passengers who belong to a protected class. As in *Kinan,* the prejudice of allowing reference to the Consent Order far outweighs any perceived relevance.

### D. In the Alternative, to Minimize Potential Jury Confusion The Consent Order Should Be Heavily Redacted.

If the Court is still inclined to allow the plaintiff to make mention of the Consent Order, American moves that there be limitations to the scope of the material to which plaintiff can cite. Specifically, American moves that the Consent Order be redacted and that the plaintiff be limited to divulging to the jury that: 1) the DOT investigated complaints of alleged discrimination; 2) those complaints were not resolved by way of a finding; and 3) American voluntarily agreed to abide by certain conditions suggested by the DOT.

### CONCLUSION

The introduction of the Consent Order will severely and unfairly prejudice American. This Court to reconsider its denial of American's motion *in limine* regarding the introduction of the Consent Order, and follow the ruling in *Kinan, supra*. Both juror confusion and unfair prejudice would result from its very introduction, and neither could be cured with a limiting instruction.

In the event the Court will not reconsider its prior ruling and grant the relief requested herein, American moves the Court to consider redacting the Consent Order and

limiting plaintiff's discussion of its contents to the following:  1) the DOT investigated complaints of alleged discrimination; 2) those complaints were not resolved by way of a finding; and 3) American voluntarily agreed to abide by certain conditions suggested by the DOT.

>Respectfully submitted,
>
>**AMERICAN AIRLINES, INC.**
>By its Attorneys,
>
>
>/s/ *Michael A. Fitzhugh*_____
>Michael A. Fitzhugh, (BBO 169700)
>Amy Cashore Mariani, (BBO #630160)
>**FITZHUGH, PARKER & ALVARO LLP**
>155 Federal Street, Suite 1700
>Boston, MA 02110-1727
>(617) 695-2330


Certificate of Service

I hereby certify that I caused a copy of the forgoing to be served upon opposing counsel of record set forth below this 8th day of January 2007.

David S. Godkin, Esq.
Erica Abate Recht, Esq.
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02110

Michael T. Kirkpatrick, Esq.
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009

>_____
>Michael P. McGarry