UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

F I L E
Clerk's Off
USDC, Mass
Date _____
By _____
Deputy

)
JOHN D. CERQUEIRA,                    )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )
                                      )    CIVIL ACTION NO.: 05-11652 WGY
AMERICAN AIRLINES, INC.,              )
                                      )
        Defendant.                    )
_____       )

## AMERICAN AIRLINES, INC.'S MOTION FOR JUDGMENT
## AS A MATTER OF LAW AT THE CLOSE OF PLAINTIFF'S CASE

The defendant, American Airlines, Inc. ("AA" or "American") moves this Court to enter judgment as a matter of law in its favor at the close of plaintiff's case pursuant to Fed.R.Civ.P. 50(a)(1). The basis of American's motion is that no reasonable factfinder could find in Mr. Cerqueira's favor, because he has failed to establish that AA and its employees intentionally discriminated against him on December 28, 2003. The plaintiff also failed to demonstrate that AA's actions were arbitrary and capricious. Additionally, the Airline Deregulation Act precludes plaintiff's state law claim, as Congress did not intend to bestow passengers with the right to sue airlines for decisions arising out of the airlines' legitimate business interests, such as the safety of their passengers.

### TESTIMONY ELICITED DURING THE PLAINTIFF'S CASE

#### Plaintiff's Testimony

The plaintiff testified that on December 28, 2003, he was scheduled to fly from Boston to Fort Lauderdale, Florida on American Airlines Flight 2237. He arrived at the gate at 5:00 a.m. and proceeded through security. He approached a female AA employee when she approached the gate area seeking to have his seat reassigned to either an exit row or a bulkhead seat. She informed him that she could not help him.

The plaintiff testified that he boarded the plane with other passengers from Group 1, the group to which he was assigned. He proceeded to his seat, placed his laptop computer on the seat and went to the lavatory. The other passengers in his row arrived about ten minutes after he did. Once they were seated they started speaking quite loudly and drew the attention of the other passengers. He noted that they spoke English and a foreign language. A flight attendant began the safety briefing, which he didn't remember because he fell asleep.

He remembers being awakened by an AA employee asking for his boarding pass. Soon thereafter, the state police boarded the plane and asked the plaintiff and the two exit row passengers to get their belongings and leave the plane. He and the exit row passengers were escorted to a small room where they were questioned for approximately two hours. The three men were kept in the same room and were questioned by various police officers.

The plaintiff was taken to an area near the security section where he was questioned alone. An individual who appeared to be a "state officer" then asked him repeatedly to identify his nationality. The plaintiff testified that he felt verbally threatened by the officer's demeanor. At the conclusion of his questioning, the officer escorted the plaintiff and the two exit row

2

passengers to the ticket counter and left. They spoke with the ticket agent who told them that there were seats available on an afternoon flight but she would have to speak with her supervisor. An AA supervisor approached and informed the plaintiff and the two exit row passengers that their money was being refunded. When the plaintiff asked her for an explanation, she informed him that the decision was based on information in the file from the captain, flight attendants, other passengers, Transportation and Safety Administration personnel and the police. She also informed him that he could get more information by contacting AA though its website. The plaintiff believes there was no rational reason for AA's refusal to transport him. The plaintiff also believes he was denied air transport because he has a similar complexion to the exit row passengers and AA must have perceived him to be of Middle Eastern ancestry. The plaintiff admitted that no AA employee ever questioned him about his race or national origin.

### Captain Ehlers And Ms. Sargent

Captain Ehlers testified that he had a strange encounter with a passenger while he was in the terminal. The passenger, after confirming that Captain Ehlers was the Captain of Flight 2237, stated "[t]hat's good. I'm going with you. We're going to have a good trip today." Captain Ehlers found the encounter odd because it was the first time in his 20-year career that a passenger stopped him while he was in uniform in a terminal. The same passenger approached Captain Ehlers again while he was in the cockpit and made similar statements. Flight Attendant Walling spoke with Captain Ehlers about her concerns that the plaintiff had boarded the plane with the first class passengers, and went directly to the bathroom and remained in there for at least four to six minutes. Based upon Ms. Walling's report of this incident, Captain Ehlers asked First Officer Donald Ball to check the aircraft's rear lavatories, which he did.

Thereafter, another flight attendant, Ms. Lois Sargent, had two separate encounters with the row 20 passengers that caused her concerns, and which she reported first to Ms. Walling and then to Captain Ehlers. The first was that some or all of the three passengers seated in that exit row were making inappropriate remarks during her first safety briefing, and then subsequently summoned her back after her briefing by ringing the "call button." Upon her arrival in response, one of them asked her "what should I do with the door after I've opened it." Mr. Cerquiera appeared to be amused during her first exit row briefing, and was actually laughing during the second event when Ms. Sargent was asked about the handling of the door.

Captain Ehlers testified that during or shortly after the exit row briefing incident, two other passengers approached Flight Attendant Sally Walling and voiced concerns to her about statements made by the passengers in exit row 20. At about this same time, Captain Ehlers called Ms. Walling and inquired about the passenger in seat 20D, the passenger who had spoken to him in the terminal and again while he was in the cockpit. Ms. Walling, having heard the concerns of two separate passengers and Flight Attendant Sargent, told Captain Ehlers that she had to speak with him and proceeded to the front of the aircraft. Ms. Walling also noted that the three exit row passengers seemed to be feigning sleep as she walked past them to report to Captain Ehlers. Ultimately, Captain Ehlers convened a meeting at the front of the aircraft with all of the Flight Attendants and obtained these facts. Captain Ehlers called the gate agent to have the jet bridge brought back to the aircraft and he radioed the Ground Security Coordinator. He departed from the aircraft and called Mr. Craig Marquis at American's Systems Operations department in Dallas, discussing both flight attendants' concerns and his encounter with one of the exit row passengers. Eventually, personnel on the ground decided that the plaintiff and the other two exit row passengers should be removed for questioning, and this was a decision that

4

Captain Ehlers embraced fully.    Captain Ehlers had no knowledge about Mr. Cerqueira's ethnicity until he saw him being escorted from the plane.  Mr. Cerqueira and the other two men were removed from the airplane, and after a brief conversation with law enforcement personnel, were taken away for further questioning; this was not Captain Ehlers' decision, but rather was told to him by one officer as "these people aren't going with you today. It's out of your hands now."

Captain Ehlers then decided that in the interest of security, all of the passengers and luggage should be removed from the plane so that the plane would be searched again and that all checked luggage would be re-screened before the passengers would be allowed to re-board the plane.  This was done, as was a search of the aircraft by a K-9 unit bomb-sniffing dog.

**Craig Marquis**

Mr. Craig Marquis, AA's Systems Operations Control Manager on Duty ("Manager on Duty"), is based in Arlington, Texas.  Mr. Marquis is responsible for many aspects of AA's operations including security concerns.  There is no set procedure for deciding whether to rebook a passenger.  While Mr. Marquis does not recall the specific reasons he denied rebooking to Mr. Cerqueira, it is his practice to form his decision after consulting with the pilot, crew members, passenger services, ground security and law enforcement.    He would review all of the information provided and utilize his training and experience in evaluating whether a passenger should be rebooked on an AA flight.  The Manager on Duty's decision is put into the computer system.  Mr. Marquis had no knowledge or information about the plaintiff's ethnicity at the time he made the decision not to rebook the plaintiff on another AA flight on December 28, 2003.

## ARGUMENT

### A.    AA Should Be Granted Judgment As A Matter Of Law Because No Reasonable Jury Could Find In Plaintiff's Favor.

The plaintiff failed to establish a *prima facie* case for any of his claims, and therefore AA moves this Court to enter judgment as a matter of law in its favor. The plaintiff has alleged that AA discriminated against him on the basis of his race in violation of 42 U.S.C., § 1981, 42 U.S.C., § 2000d and G.L. c. 272, § 98. Under each of the aforementioned statutes, the plaintiff must establish that AA intended to discriminate against him on the basis of his race. *See Springer v. Seaman,* 821 F.2d 871, 880 (1st Cir.1987); *Goodman v. Bowdoin College,* 380 F.3d 33, 43 (1st Cir.2004); and *Scott v. Macy's East, Inc.,* 2002 WL 31439745 (D.Mass.), respectively. The plaintiff has not established that AA, through its policies or actions of its employees, intended to discriminate against him on the basis of his actual or perceived race, ethnicity, national origin or color when it denied him air transport on December 28, 2003. The evidence established by the plaintiff's case in chief established that Captain Ehlers did not see the plaintiff prior to his being escorted off the airplane, nor did he otherwise obtain information relating to his ethnicity. The plaintiff does not dispute either proposition. Similarly, Craig Marquis had no knowledge about the plaintiff's race, color, ethnic background or national origin when he decided to deny rebooking of the plaintiff on another AA flight that day.

Thus, in spite of the fact that there is no evidence that the two decision makers had any basis upon which they could have unlawfully discriminated against Mr. Cerqueira, he contends that there is a causal relationship between his perceived ethnicity and AA's denying him air transport. A mere juxtaposition of the fact of one's race with an instance of discrimination is insufficient to state a claim. *See Scott v. Macy's East, Inc.,* 2002 WL 31429745 *6 (D.Mass. 2002). That Captain Ehlers and Craig Marquis lacked any knowledge about the plaintiff's

6

ethnicity, coupled with the security concerns of the flight attendants and two passengers, precludes a factfinder from rendering a verdict in the plaintiff's favor because there is no evidence that the decision makers knew anything about his ethnicity or physical appearance prior to making their respective decisions. An intent to discriminate cannot be inferred where a decision maker has no information relevant to the plaintiff's appearance or ancestry. "A judgment as a matter of law may be granted only if the evidence, viewed from the perspective most favorable to the [non-moving party], is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ as to the outcome." *Baron v. Hickey,* 292 F.Supp.2d 248, 250 (1st Cir.2003) quoting *Gibson v. City of Cranston,* 37 F.3d 731, 735 (1st Cir.1994). As reasonable minds could not differ on the paucity of evidence adduced in the plaintiff's case, this Court should enter judgment as a matter of law in AA's favor.

**B.     The Plaintiff Incorrectly Contends That Even If Captain Ehlers' Decision to Remove Him from Flight 2237 For Further Questioning Was A Result of Biased Information, Then The Decision is Arbitrary and Capricious and Subjects American to Liability.**

The plaintiff asserts that Captain Ehlers made a decision to deny him air transport on December 28, 2003, and that the decision was based on representations he received from a flight attendant with a racial bias; and the bias of the flight attendant somehow "flows through" to Captain Ehlers, even though he had no information relating to Mr. Cerqueira's race or ethnicity. Neither contention is accurate. Although Mr. Cerqueira attempts to distort the former point, it has been incontrovertibly established that Captain Ehlers merely decided to have Mr. Cerqueira subjected to further questioning - not to "deny" him transport. The evidence has established beyond peradventure that any "denial" of transport at that juncture was the result of actions by the State Police. With respect to the latter point, there is no basis for proffering the contention

7

that any of the Flight Attendants' information was inaccurate or recounted to Captain Ehlers as a result of, or subject to the taint of, unlawful bias.

Mr. Cerqueira's theory is that if he can establish as a matter of fact that the information was tainted with bias, any decision arising therefrom is also biased and by definition, arbitrary and capricious. The plaintiff asserts that the result is the same even if Captain Ehlers lacked discriminatory animus. Factually and legally, this is insupportable.

In seeking legal doctrine to support his case, the plaintiff has improperly superimposed a theory reserved for cases alleging employment discrimination, which has no bearing in the instant case. In the employment discrimination context, the so-called "cat's paw" doctrine refers to a situation in which a biased subordinate, who lacks decision -making power, uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action. *EEOC v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F.3d 476, 484 (10th Cir.2006).[1] The "cat's paw" or subordinate bias cases bear no relevance to the facts in the instant action and in fact stand in stark contrast to these facts.[2] In employment discrimination cases, a decision-maker can avoid corporate liability for an adverse employment action on an employee within a protected class by conducting an investigation, independent of the biased subordinate's representations. *EEOC v. BCI, supra*, 450 F.3d at 488. Whereas, in the airline security context, even if a captain's decision to deny air travel to a passenger is based on "an exaggerated or even

---

[1] The plaintiff cites three cases alleging employment discrimination that focus on the question of whether a subordinate employee sufficiently influenced the adverse employment decision relating to a fellow employee as to render the employer liable for the subordinate's having effectuated their own discriminatory animus. The plaintiff cites no authority that the "cat's paw" or "subordinate bias" cases are even remotely relevant in the airline security arena.

[2] "[T]here is only one situation in which the prejudices of an employee . . . are imputed to the employee who has formal authority of the plaintiff's job. That is where the subordinate, by concealing relevant information from the decision-making employee or feeding false information to him, is able to influence the decision. In such a case, the discriminatory motive of the other employee, not the autonomous judgment of the non-discriminating decision-maker, is the real cause of the adverse employment action." *Cariglia v. Hertz Equipment Rental Corporation*, 363 F.3d 77, 86-87 (1st Cir.2004).

8

false representation . . . , the Captain [is under no] obligation to leave the cockpit and investigate the truthfulness of the [flight attendant's] statements." *Al-Qudhai'een v. America West Airlines, Inc.,* 267 F.Supp.2d 841, 847 (S.D. Ohio 2003).[3]

In *Al-Qudhai'een*, the plaintiff alleged in his civil rights complaint that the Captain knew that he and Mr. Al-Shalawi were Arab and that their ethnicity prompted the Captain's decision to have them removed for questioning. In granting the defendants' motion for summary judgment, the *Al-Qudhai'een* Court found that the Captain's decision to have the passengers removed for questioning was based on all of the information provided to him by the flight attendants, and that he was entitled to rely on that information, despite any exaggeration or false representations. *Id.* at 848. "This deference to an airline's judgment is understandable in light of the fact that the airline must often make such decisions on the spur of the moment, shortly before the plane takes off, and therefore without the benefit of complete and accurate information." *Ruta v. Delta Airlines, Inc.,* 322 F.Supp.2d 391, 397 (S.D.N.Y. 2004).

---

[3] The contentions in *Al-Qudhai'een* are strikingly similar to those in the case at bar and the facts in *Al-Qudhai'een* were far more favorable to Mr. Al-Qudhai'een that they are in the instant action because the pilots were aware of the Middle Eastern ethnicity of Mr. Al-Qudhai'een and Mr. Al-Shalawi. Mr. Al-Qudhai'een and Mr. Al-Shalawi were citizens of Saudi Arabia and were doctoral students who resided in Arizona. On November 19, 1999, the plaintiffs boarded America West Flight 90 to Washington, D.C. Mr. Al-Qudhai'een first caught a flight attendant's attention when he asked her if Mr. Al-Shalawi could change seats and occupy the empty seat next to him, the flight attendant told him to wait until the plane was airborne. Mr. Al-Qudhai'een ignored this directive and got up and asked Mr. Al-Shalawi to sit next to him, which Mr. Al-Shalawi did. It is undisputed that Mr. Al-Shalawi did nothing that the flight attendants considered unusual for the entire flight. Mr. Al-Qudhai'een then decided to use the first class bathroom as there was a line for the coach class bathroom. A flight attendant and a passenger observed Mr. Al-Qudhai'een approach the cockpit door and pull on its handle. Once he returned to his seat after using the bathroom, it was searched by one of the flight attendants and nothing was found. The area under Mr. Al-Shalawi's former seat was also searched and nothing was found. Upon returning to his seat, Mr. Al-Qudhai'een asked a series of unusual questions about the flight's destination and whether, once they stopped in Columbus, they would be on the same plane for the trip to Washington. Mr. Al-Qudhai'eeen posed these same questions to two different flight attendants. The flight attendants decided to notify the Captain about each of Mr. Al-Qudhai'een's unusual actions. One of the flight attendants also informed the Captain that the plaintiffs were Arab. The plaintiffs believe that this knowledge formed the basis for the Captain's decision to have them removed for questioning. Upon arrival in Columbus, security personnel boarded the plane, handcuffed the plaintiffs and led them off the plane for questioning. After four hours of questioning, plaintiffs were released and America West provided them an upgrade to first class for their flight to Washington, D.C.

9

The Court in *Al-Qudhai'een* granted the defendants' summary judgment motions because it found that the Captain's decision was based on the totality of the circumstances known to him at the time he made the decision to have the plaintiffs removed for questioning. The Court found that the Captain's decision was based on the flight attendants' report of Mr. Al-Qudhai'een's unusual behavior as described in detail in footnote 3, *supra*. In examining a captain's decision to refuse air travel to a passenger, it must be remembered that "[s]uch a refusal cannot give rise to a claim for damages under either federal or [state] law *unless* the carrier's decision was arbitrary and capricious." *Williams v. Trans World Airlines*, 509 F.2d. 942, 948 (2d Cir.1975) (emphasis supplied). Additionally, it is the Captain's perception that is determinative, because the Captain made the final removal decision. *Dasrath v. Continental Airlines, Inc.*, No. 02-2683, slip op. at 29 (D. N.J. filed 12/27/06).

Thus, the "cat's paw" or subordinate bias employment discrimination cases stand in stark contrast to the airline security cases. The former cases require an independent investigation by the employee decision-maker to avoid corporate liability; the latter vests an airplane's captain with discretion to deny air travel to a passenger based on all of the facts known to the Captain at the time he makes his decision. The Captain can rely on the exaggerated or false representations of flight attendants without being required to conduct an independent investigation into the veracity thereof.[4] The determination of whether the decision was rational does not change if

---

[4] In *Williams v. Trans World Airlines*, 509 F.2d 942 (2d Cir.1975), Mr. Williams, an African American, sued TWA for denying him air transport after it received an FBI Wanted Bulletin indicating that Mr. Williams had: escaped an indictment for kidnapping; was armed and dangerous; his arrival in America might incite a demonstration; and that he was schizophrenic. TWA's president made the decision to deny Mr. Williams air transport and he subsequently filed suit alleging that the decision was racially motivated. The district court entered judgment for TWA and Mr. Williams appealed stating that the FBI Bulletin was false and stemmed from the racial prejudice of the individuals providing the information to the FBI. Mr. Williams argued that TWA should have conducted a thorough investigation into the representations from the FBI prior to denying him air travel. The Second Circuit Court of Appeals, in upholding the district court's ruling, held that TWA was entitled to accept the representations from the FBI regarding Williams at face value. *Id.* at 948. The Court also opined that even if it was subsequently discovered that some of the FBI statements were exaggerated or wrong, that discovery would not serve

10

those representations are later found to be exaggerated, inaccurate or false. *Williams,* 509 F.2d at 949.

### 1. A Reasonable Factfinder Could Not Conclude From The Testimony Elicited In Plaintiff's Case That AA Intended to Discriminate Against The Plaintiff.

As indicated above, the statutes under which the plaintiff asserts causes of action require him to prove that AA intended to discriminate against him on the basis of his ethnicity when it denied him air transport on December 28, 2003. The evidence introduced in plaintiff's case established that none of the AA employees who made decisions about the plaintiff's travel status on December 28, 2003 had any information about his appearance, his actual or perceived ethnicity, race, or religion. Captain Ehlers testified that he did not observe the plaintiff until he was escorted from the plane. The flight attendants who observed the plaintiff and the exit row passengers shared their concerns with Captain Ehlers. The evidence adduced in the plaintiff's case in chief showed that the decision to remove the plaintiff from the plane and to later deny him air transport was based solely on security concerns. Craig Marquis made the decision to deny the plaintiff the opportunity to rebook a flight with AA on December 28, 2003. Mr. Marquis never saw the plaintiff or his likeness and had no information relating to his ethnicity or physical characteristics.

### 2. Plaintiff's Burden of Proof For A Claim Pursuant to 42 U.S.C. § 1981.

To succeed on a claim brought pursuant to 42 U.S.C., § 1981, the plaintiff must prove by a preponderance of the evidence that AA's employees intended to discriminate against him when they prevented him from traveling with AA on December 28, 2003. *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 391 (1982); *Springer v. Seaman*, 821

---

as a basis for asserting a claim against TWA which acted properly pursuant to 49 U.S.C., § 1511 [the precursor to 49 U.S.C., § 44902(b)]. *Id.* at 949.

11

F.2d 871, 880 (1st Cir.1987) (proof of racial animus necessary element of any Section 1981 claim). *See also Jones v. City of Boston*, 738 F.Supp. 604, 605-06 (D.Mass. 1990). Specifically, the plaintiff must prove that he is a member of a racial minority, that he was discriminated against on the basis of his race, and that the discrimination implicated statutorily protected activities. *Garrett v. Tandy Corp.*, 295 F.3d 94, 98 (1st Cir.2002). The plaintiff testified that he is of Portuguese origin, but that his color and physical appearance are similar to those individuals who are of Arab, Middle Eastern, or South Asian ancestry. The plaintiff believes that AA mistook him for an individual of either Arab, Middle Eastern or South Asian ancestry.

Even if the jury found that the plaintiff has the physical appearance of a member of a racial minority group and that the denial of air travel is an activity covered by 42 U.S.C., § 1981, it could not conclude that AA discriminated against the plaintiff on the basis of his perceived ethnicity or ancestry. The plaintiff has not offered any evidence that he was denied air travel because of his race, ethnicity, whether actual or perceived, and he did not introduce a witness to substantiate that assertion. In fact, Captain Ehlers and Craig Marquis both testified that they knew nothing about the plaintiff's actual or perceived race or ethnicity.

Mr. Cerqueira asserts, and apparently ardently believes, that AA's employees assumed that he was "Middle Eastern" because he "looked like" the other passengers in the exit row and that his perceived ethnicity was the motivating factor for the alleged discrimination. However, a plaintiff's subjective beliefs do not constitute evidence of racial animus. *Scott v. Macy's East, Inc.*, 2002 WL 3149745, *5, (plaintiff's own subjective belief that he was victim of racial profiling, sole admissible "evidence" offered in support of his allegations, insufficient to prove intent to discriminate), *citing Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir.1989). Plaintiff's subjective belief that he was subjected to intentional discrimination is

12

unsupported by the evidence elicited in his case in chief and reasonable minds could not differ about entering a judgment for AA. In both the *Al-Qudhai'een* and *Williams* cases, discussed *supra*, each of the plaintiffs' claims that unlawful race discrimination was the determining factor in their denial of air transport were similarly unavailing. *See also Dasrath v. Continental Airlines, Inc.,* No. 02-2683, slip op. at 33 (D. N.J. filed 12/27/06).[5] Thus, AA moves this Court to enter judgment as a matter of law in its favor on plaintiff's claim pursuant to 42 U.S.C., § 1981.

### 3. Plaintiff Failed to Establish A *Prima Facie* Case Pursuant to 42 U.S.C. § 2000d.

A plaintiff alleging discrimination under 42 U.S.C. §2000d must prove that the defendant intended to discriminate to prevail on his claim. *Alexander v. Sandoval*, 532 U.S. 275, 280 121 S.Ct. 1511 (2001). The Supreme Court has repeatedly affirmed the principal that Title VI applies only to cases of intentional discrimination. *Id.*, *citing Alexander v. Choate*, 469 U.S. 287, 293 (1985); *Guardians Association v. Civil Service Commission of New York City*, 463 U.S. 582, 610-11 (1983); *Regents of University of California v. Bakke*, 438 U.S. 265 (1978).

The plaintiff must establish that AA discriminated against him based on his protected class status, that the discrimination was intentional and was a substantial or motivating factor in its decisions. *Goodman v. Bowdoin College*, 380 F.3d 33, 43 (1st Cir.2004), citing *Tolbert v. Queens College*, 242 F.3d 58, 69 (2nd Cir.2001). *See also Ali v. University of Massachusetts Medical Center*, 76 Fed. Appx. 342, *1 (1st Cir.2003). As discussed *supra*, the plaintiff has not produced any evidence that AA intended to discriminate against him and his unsubstantiated

---

[5] In *Dasrath*, the United States District Court for the District of New Jersey granted summary judgment for the defendant airline on plaintiff's claim that his race was a motivating factor in his denial of air transport. The Captain received reports from flight attendants that three passengers exhibited unusual behavior and gave them cause for concern. Upon receiving each of the flight attendant's reports, the Captain decided to have the plaintiffs removed from the flight. The Court found that in reviewing the totality of the circumstances, the Captain's actions were based solely on security concerns and that had the plaintiff been a Caucasian, he still would have been removed from the flight. *Id.* at 32.

13

subjective assessment of AA's motivation is insufficient to meet his burden of proof. *See Scott v.*
*Macy's East, Inc., supra,* 2002 WL 3149745, \*5. Reasonable minds cannot differ where, as
here, there is a total lack of evidence to support the plaintiff's claim. This Court should enter
judgment as a matter of law in AA's favor on plaintiff's claims under 42 U.S.C. §2000d.

### 4. Plaintiff Did Not Establish A *Prima Facie* Case of Discrimination Pursuant to M.G.L. c. 272 § 98.

The same paucity of evidence relating to an intent to discriminate on the basis of race
precludes the plaintiff from prevailing on his claims asserted under M.G.L. c. 272 § 98 because
he has not introduced any evidence that AA's employees intended to discriminate against him
when they denied him service on December 28, 2003. *See, e.g., Jones*, 738 F.Supp. at 605-606;
*Scott*, 2002 WL 31439745, \*8. Instead, the plaintiff testified about his unsubstantiated belief that
his perceived ethnicity was the motivating factor for AA's actions, conveniently ignoring the
other circumstances that led to Captain Ehlers' decision.

Under the burden-shifting framework first discussed in *McDonnell Douglas Corporation
v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), the plaintiff bears the initial burden of establishing
that AA discriminated against him on the basis of his ethnicity by articulating a prima facie case
of discrimination. AA then met its burden of production by proffering evidence that it denied the
plaintiff air travel on December 28, 2003 because of legitimate security concerns as testified to
by Captain Ehlers and Mr. Marquis. The burden then shifts back to the plaintiff to establish that
that reason articulated by AA was not the real reason but was a pretext for discrimination. *Id.* at
805. The plaintiff has failed to prove that AA's proffered reason for denying him air travel was a
pretext for discrimination and this Court should enter judgment as a matter of law in AA's favor.

The United States District Court for the District of New Jersey in deciding *Dasrath*
determined that Mr. Dasrath had established a *prima facie* case of discrimination under the

14

familiar burden-shifting framework first articulated in *McDonnell Douglas Corporation v.*

*Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). The *Dasrath* court reasoned as follows:

> [U]nquestionably, Mr. Dasrath had established a *prima facie* case under
> the McDonnell Douglas inquiry. He is a member of a racial minority. He
> was a lawful passenger on Flight 1218, and he was removed from the
> flight when white passengers were not removed. Continental has
> proffered a compelling non-race reason for the removal – a perceived
> threat to the security of the passengers.
>
> The ultimate question becomes whether Mr. Dasrath has presented
> sufficient evidence that would permit a reasonable jury to infer that
> Continental's proffered reason was not the real reason and that a
> motivating factor in Mr. Dasrath's removal was his race. This inquiry is
> complicated by the fact that the inquiry is not solely about what happened;
> the inquiry is what Captain Hamp reasonably believed had happened.

*Dasrath v. Continental Airlines, Inc., supra*, slip op. at 27.

Assuming, *arguendo*, that Mr. Cerqueira has established a *prima facie* case of race
discrimination, he then must establish that American's legitimate, non-discriminatory reason for
denying him air travel is a pretext for racial animus. Mr. Cerqueira cannot prove that
American's proffered reason was pretext because the determination is based on what Captain
Ehlers reasonably believed, not what actually happened. Captain Ehlers based his decision on all
of the information he received from Flight Attendants Sargent and Walling. While AA
recognizes that the *Dasrath* Court decided that case on a motion for summary judgment, the
analysis is helpful in determining whether Mr. Cerqueira met the threshold level of evidence
necessary to avoid having his claims succumb to a motion for judgment as a matter of law.

## C.    The Plaintiff Did Not Establish That the Actions of Any AA Employee Were Arbitrary And Capricious.

AA established that its actions taken on December 28, 2003 were the result of legitimate safety concerns. The plaintiff and the exit row passengers were observed by members of the flight crew to act suspiciously and these observations were shared with Captain Ehlers. The plaintiff has not offered any evidence that AA intended to discriminate against him and he failed to rebut the claim that none of the persons making the decision to deny him service had any information regarding his actual or perceived race or ethnicity. Additionally, security concerns are a legitimate concern in air travel and do not constitute arbitrary and capricious behavior. Pursuant to 49 U.S.C. § 44902(b), Congress granted airlines the right to refuse to transport passengers whom the airlines deem "inimical to safety." Courts addressing this issue have consistently held that airlines are to be afforded broad discretion in deciding which passengers may be inimical to safety. *Smith v. Comair, Inc.*, 134 F.2d 254, 259 (4th Cir.1998); *Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2nd Cir.1975); *Adamsons v. American Airlines, Inc.*, 444 N.E.2d 21, 24 (N.Y. 1982). Specifically, airlines are merely required to act rationally and reasonably under the circumstances in exercising their discretion regarding denial of service decisions. *Williams*, 509 F.2d at 948. When an airline decides to refuse air transport to a passenger it deems "inimical to safety" that decision is protected as long as it has a rational basis in safety. *Dasrath v. Continental Airlines, Inc.,* 228 F.Supp.2d 531, 538 (D.N.J. 2002). There is no case that requires perfection or anything approaching it.

Decisions that are based on intentional discrimination are necessarily arbitrary and capricious. *See Williams*, 509 F.2d at 948. *See also Alshrafi v. American Airlines, Inc.,* 321 F.Supp.2d 150, 162 (D.Mass. 2004); *Bayaa v. United Air Lines, Inc.*, 249 F. Supp.2d 1198, 1205 (C.D. Cal. 2002)*; Dasrath* 228 F.Supp.2d at 538-39, n. 12 (D.N.J. 2002); *Newman v. American*

16

*Airlines, Inc.*, 176 F.3d 1128, 1132 (9th Cir.1999); *Cordero v. Cia Mexicana de Aviacion, S.A.*, 681 F.2d 669, 670-73 (9th Cir.1982); *Schaeffer v. Cavallero*, 54 F.Supp.2d 350, 351-52 (S.D.N.Y. 1999). Conversely, decisions that do not have a basis in intentional discrimination but are instead grounded in legitimate safety concerns must be presumed rational and reasonable. *Dasrath*, 228 F.Supp.2d. at 538-39. The objective assessment of a carrier's decision must take into account all the circumstances surrounding the decisions, including the (perhaps limited) facts known at the time, the time constraints under which the decision is made; and, not least, the general security climate in which the events unfold. *Id.* at 539. Moreover, airlines have no duty to investigate a passenger's status before making decisions regarding whether they will or will not transport them on a particular flight. *Id.* at n. 9. *See also Sedigh v. Delta Airlines, Inc.*, 850 F.Supp. 197, 201-02 (E.D.N.Y. 1994); *Zervigon v. Piedmont Aviation, Inc.*, 558 F.Supp. 1305, 1306 (S.D.N.Y. 1983); *Norman v. Trans World Airlines, Inc.*, 2000 WL 1480367, at *3-4 (S.D.N.Y. 2000); *Huggar v. Northwest Airlines, Inc.*, No. 98 C 594, 1999 WL 59841, at *5-6 (N.D. Ill. Jan. 27, 1999); *Rubin v. United Air Lines, Inc.*, 117 Cal. Rptr. 2d 109, 119 (Ct. App. 2002); *O'Carroll v. American Airlines, Inc.*, 863 F.2d 11, 12 (5th Cir.1989).

The plaintiff in the instant action contends that Captain Ehlers' failure to independently verify information reported to him by one or more of the flight attendants demonstrates an intent to discriminate. In *Norman* cited *supra*, the judge deciding summary judgment rejected similar assertions by a plaintiff. *Norman*, 2000 WL 1480367 at *3-4. Specifically, the judge concluded that the sincerity of the flight attendant's conclusions did not matter in deciding whether the decision to remove the plaintiff in that case was arbitrary and capricious. *Id. See also Christel v. AMR Corporation*, 222 F.Supp.2d 335, 340 (E.D.N.Y. 2000).

One of the principal reasons cited by courts for applying the arbitrary and capricious standard in denial of services cases is the time constraints associated with making critical security decisions. *Ruta v. Delta Airlines, Inc.*, 322 F.Supp.2d 391, 397 (S.D.N.Y. 2004). In the case of *Ruta v. Delta Airlines, Inc.*, the court granted summary judgment to Delta Airlines where a passenger was removed from a flight before it departed because she appeared intoxicated and her loud and disruptive behavior. *Id.* In its decision, the court found that airlines' decisions should be given deference, and thus held only to the arbitrary and capricious standard, because decisions regarding denial of service are made "on the spur of the moment, shortly before the plane takes off, and therefore without the benefit of complete and accurate information." *Id.* The court further found that the captain of an aircraft should be entitled to rely upon, without further inquiry, information provided to him by the flight attendants. *Id.*

Moreover, the legislative history of 49 U.S.C. §44902(b) supports the aforementioned court findings requiring that decisions on denial of service be reviewed under the arbitrary and capricious standard. The hearings conducted before Congress in 1961 in connection with 49 U.S.C. §44902(b) demonstrate that Congress intended denial of service decisions to be reviewed under the standard of subjective good faith. *Crimes Aboard Aircraft in Air Commerce: Hearing on S. 2268, S. 2370, S. 2373 and S. 2374 Before the Senate Committee on Commerce*, 87th Cong. 48, 62-64 (1961).

In short, both 49 U.S.C. §44902(b) and the cases decided thereunder require that the plaintiff prove AA intended to discriminate against him, thereby acting in an arbitrary and capricious manner. Because the plaintiff has failed to establish that any of the AA employees involved in the decision to deny him service on December 28, 2003 intended to discriminate

18

against him, 49 U.S.C. §44902(b) shields AA from liability. This court should enter judgment as a matter of law in AA's favor pursuant to 49 U.S.C. §44902(b).

## D. The Airline Deregulation Act Preempts The Plaintiff's State Law Claim.

The plaintiff failed in his case in chief to proffer evidence that would lead a reasonable jury to conclude that AA intended to discriminate against him on the basis of his race. As previously stated, the plaintiff's proffer consists of his unsupported, subjective testimony that since he has the physical appearance of an individual from the Middle East or South Asia, that misconception formed the basis for AA's actions. Plaintiff made no effort to rebut the testimony of Captain Ehlers and Craig Marquis that the sole basis for the decision to deny him air travel was security. The evidence presented in the plaintiff's case in chief lacks any evidence of an intention to discriminate, and indeed contains ample evidence that not only were AA's employees concerned about the safety of Flight 2237, but that the State Police had the same concerns, as was evidenced by the State Police requesting that all passengers be re-screened, all luggage be searched, and that dogs search the aircraft before it departed.

In light of the foregoing evidence, the Airline Deregulation Act ("ADA"), 49 U.S.C. §41713(b) preempts the plaintiff's state law claims under M.G.L. c. 272 § 98. Where the decision to deny services to a passenger rests soundly in security concerns, preemption exists. *Alshrafi*, 321 F.Supp.2d at 163. *Huggar*, 1999 WL 59841, at *9. The ADA, and the decisions rendered by the United States Supreme Court thereon, define the term services broadly to ensure that airlines can run their legitimate business operations without interference or regulation by the states. *Cf. American Airlines, Inc. v. Wolens*, 513 U.S. 219, 219-20 (1995). In *American Airlines, Inc. v. Wolens*, the United States Supreme Court held that the ADA preempts claims not only that are essential to air travel, but that it also may preempt those services that are related to

19

it. *Id.* Security undoubtedly constitutes a service essential to air travel. *See, e.g., Huggar*, 1999 WL 59841 at *6, 9-10. In fact, an airline's paramount legitimate business concern is safety.

The *Huggar* case, discussed extensively by this Court in its ruling in *Alshrafi*, demonstrates clearly that where an airline has legitimate security concerns deriving from a passenger's unusual behavior, and where there is no evidence of intent to discriminate, that passenger's claims of discrimination are related to services as that term is defined in 49 U.S.C. § 41713(b). *Alshrafi*, 321 F.Supp.2d at 163; *Huggar*, 1999 WL 59841 at *6, 9-10. Because the plaintiff's claims under M.G.L. c. 272 § 98 relate to services as that term is defined under 49 U.S.C. §41713(b), the ADA preempts those claims and authorizes the entry of judgment as a matter of law for AA on plaintiff's state law claim.

## CONCLUSION

For the reasons set forth herein, American Airlines requests that this Court enter judgment as a matter of law in its favor at the close of the plaintiff's case.

> Respectfully submitted,
> **AMERICAN AIRLINES, INC.**
> By its Attorneys,
>
>
> Michael A. Fitzhugh, (BBO 169700)
> Amy Cashore Mariani, (BBO #630160)
> **FITZHUGH, PARKER & ALVARO LLP**
> 155 Federal Street, Suite 1700
> Boston, MA 02110-1727
> (617) 695-2330

## Certificate of Service

I hereby certify that I caused a copy of the forgoing to be served upon opposing counsel of record set forth below, via hand delivery this 10th day of January 2007.

David S. Godkin, Esq.
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02110

Michael T. Kirkpatrick, Esq.
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009

Michael A. Fitzhugh