UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN D. CERQUEIRA,

        Plaintiff,

v.

AMERICAN AIRLINES, INC.,

        Defendant.

Civil Action No: 05-11652-WGY

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JOHN D. CERQUEIRA'S MOTION FOR ATTORNEYS' FEES AND COSTS

Pursuant to 42 U.S.C. § 1988, Mass. Gen. Laws ch. 151B, §9, and Fed. R. Civ. P. 54(d)(2), Plaintiff John D. Cerqueira respectfully submits this Memorandum in Support of his Motion for Attorneys' Fees and Costs.

### INTRODUCTION

Mr. Cerqueira prevailed at his trial on his claims under 42 U.S.C. § 1981 and Mass. Gen. Laws ch. 272 § 98 against American Airlines, Inc. ("AA"), and proved that AA discriminated against him on the basis of his perceived race, national origin and/or ethnicity. 42 U.S.C. § 1988 and Mass. Gen. Laws ch. 151B, §9 provide that, as a prevailing plaintiff, Mr. Cerqueira is entitled to reasonable attorneys' fees and costs. Mr. Cerqueira seeks an award of $524,544.75 in fees, enhanced in any amount the Court deems appropriate, and $19,299.06 in costs[1].

In submitting this Motion, Mr. Cerqueira's counsel has exercised careful billing judgment and is requesting compensation for less than the actual number of hours actually spent on this

---

[1] The costs that Mr. Cerqueira seeks with this motion are in addition to the taxable costs that are set forth in Mr. Cerqueira's Bill of Costs, filed separately. The Plaintiff will file a Supplemental Motion seeking fees and costs incurred in connection with post-trial motions, the fee petition, and any appeal.

case. After thoroughly reviewing all the time charges recorded to this matter, counsel has eliminated charges that are excessive and/or duplicative.

Mr. Cerqueira also requests the Court to enhance the requested fees. Under federal law, the Court can enhance the lodestar because of the results obtained, the relief actually achieved, and the societal importance of the right which has been vindicated. *See Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 338 (1st Cir. 1997). Massachusetts law also permits the Court to enhance the basic fee award in exceptional cases. *See Fontaine v. Ebtec Corp.*, 415 Mass. 309, 326 (1993); *Stratos v. Dept. of Public Welfare*, 387 Mass. 312, 321 (1982). "In limited circumstances, statutory fee awards may be enhanced to compensate for the risk of nonpayment." *Fontaine*, 415 Mass. at 324.

To the best of the knowledge of Mr. Cerqueira's counsel, this case is the first post-September 11th case alleging racial profiling by an airline to go to trial. Mr. Cerqueira defied the odds by bringing the case. As he testified at trial, he had difficulty finding counsel willing to take the case, and his counsel accepted enormous risk by taking the case and taking it to trial. For a case of such significance, it proceeded quickly from complaint to trial in only 17 months, including preparation for a six-day trial over the holidays. The result was an unqualified victory: a $400,000 verdict in favor of Mr. Cerqueira, including a substantial punitive damage award. There is no question that this is a case of substantial societal importance. The jury verdict resulted in national publicity, such that the case will deter other airlines from engaging in unlawful racial profiling based on the perceived race or national origin of passengers.

In support of this Motion, the Plaintiff submits the following: (1) Declaration of David S. Godkin; (2) Declaration of Michael T. Kirkpatrick; (3) Affidavit of Joseph F. Savage, Jr.; (4) Affidavit of Scott P. Lewis; (5) Declaration of Howard Friedman; (6) Declaration of Brian

Wolfman; (7) Declaration of Benjamin Blustein; (8) Declaration of Robert S. Libman; and (9) Declaration of Joseph M. Sellers.

## ARGUMENT

The Civil Rights Attorneys Fees Awards Act of 1976 permits a prevailing party in a civil rights action to recover "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. An award of fees in favor of the prevailing civil rights plaintiff is "virtually obligatory." *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 124 (1st Cir. 2004), citing *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001). The Act recognizes that "successful civil rights plaintiffs serve the public interest and a fee award is therefore appropriate whether or not necessary." *Lipsett v. Blanco*, 975 F.2d 934, 940 n. 2 (1st Cir. 1992). Additionally, fee assessments in civil rights cases are likely to encourage more thoughtful actions by defendants. *See id.* citing *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

As a prevailing plaintiff, Mr. Cerqueira is also entitled to an award of attorneys' fees under M.G.L. c. 151B, § 9. "In a case of mixed Federal-State law claims depending on the same facts, if State law permits a more generous recovery than does Federal law, the plaintiff is entitled to seek recovery based on State law." *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324 n.13 (1993) citing *Freeman v. Packaging Mach. Co.*, 865 F.2d 1331, 1350 (1st Cir. 1988). Since "State and Federal antidiscrimination laws prohibit similar conduct, attorney's fees available in both should, for the most part, be calculated in a similar manner." *Fontaine*, 415 Mass. at 325. Therefore, when calculating an award for attorneys' fees under State law, "[a] fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee under State law as well as Federal law." *Id.* at 326.

3

It is undisputed that Mr. Cerqueira is the prevailing party in this lawsuit, having achieved a jury verdict of $400,000, including $270,000 in punitive damages. *See Farrar v. Hobby*, 506 U.S. 103, 111, 113 (1992); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-93 (1989); *Bogan v. City of Boston*, 432 F. Supp. 2d 222, 228 (D. Mass. 2006) ("Plaintiffs clearly fall under definition of prevailing parties as they received a jury verdict in their favor . . . and received damages. . . ").

"The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *see also Coutin*, 124 F.3d at 338 ("the preeminent consideration in the fee adjustment process" is the "results obtained," meaning the combination of the plaintiff's success on each of his claims, the relief actually achieved, and the societal importance of the right vindicated). Moreover, where "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" that "encompass[es] all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; *see also Fontaine*, 415 Mass. at 325; *Stratos*, 387 Mass. at 321.

## I.    The Fee Award

The First Circuit applies the "lodestar method" in determining reasonable attorneys' fees. *See Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984); *see also Fontaine*, 415 Mass. at 324. Under this paradigm, the number of hours reasonably expended is multiplied by the applicable hourly market rate to determine the lodestar figure. *See Hensley*, 461 U.S. at 433; *Grendel's Den*, 749 F.2d at 951; *Edge v. Norfolk Financial Corp.*, 2005 WL 2323193 (D. Mass. Aug. 29, 2005). The Court calculates time spent by counsel, subtracts duplicative or excessive hours, and then applies prevailing rates in the community while taking into consideration the

attorneys' qualifications, experience, and specialized competence. *See Gay Officers Action League*, 247 F.3d at 295. Prior to a request for attorneys' fees, counsel is expected to exercise "billing judgment" and "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Once the lodestar figure is determined, the court may adjust the figure upward or downward to account for unusual circumstances. *See Coutin*, 124 F.3d at 337.

### A.    Hours Reasonably Expended

In determining the lodestar figure, the Court must first determine the number of hours reasonably expended on the litigation. *See Hensley*, 461 U.S. at 433. The Court should review counsel's billing records and subtract any duplicative, unproductive, excessive, or otherwise unnecessary hours. *See Grendel's Den*, 749 F.2d at 950. The billing records submitted should be contemporaneously recorded and should contain the amount of time each lawyer spent on the matter and a description of the work performed. *Id.*; *McDonough v. City of Quincy*, 353 F. Supp. 2d 179, 183-184 (D. Mass. 2005) (citations omitted).

The hours for which Mr. Cerqueira is seeking compensation in this matter are attached to the Godkin Declaration as Exhibits A and B, and the Kirkpatrick Declaration as Exhibit 1. Mr. Cerqueira requests compensation for approximately 1,700 hours spent on this case from inception[2] through the conclusion of the trial.[3] All of the time entries were contemporaneously recorded and copied from actual time records generated by time keeping software. Godkin Decl., ¶¶ 16,17; Kirkpatrick Dec., ¶ 13. The hours are summarized as follows:

---

[2] This includes work related to the filing of the complaint on behalf of Mr. Cerqueira with the Massachusetts Commission Against Discrimination. Any work related to any administrative proceedings that is a prerequisite to filing civil rights actions is compensable. *See Dixon v. Int'l Brot. of Police Officers*, 434 F. Supp. 2d 73, 79-80 (D. Mass. 2006) *citing North Carolina Dep't of Transp. V. Crest Street Cmty. Council, Inc.*, 479 U.S. 6, 10 (1986).

[3] Mr. Cerqueira will file a Supplemental Motion to take into account work performed after the trial, including responding to post-trial motions, the fee petition, and any appeal.

| Individual | Requested Hours |
|---|---|
| Michael T. Kirkpatrick | 802.55 |
| David S. Godkin | 317.75 |
| Darleen Cantelo | 258.25 |
| Erica Abate Recht | 200 |
| David Becker | 42.50 |
| Jessica Edgerton | 41 |
| G. Brian Vogler | 15.50 |
| Dawn Perlman | 15 |
| Kimberly Nuzum | 6.5 |
| Philip Longo | 6 |
| Adina Rosenbaum | 4.8 |
| Allison Zieve | 2.8 |
| Brian Wolfman | 1.4 |
| **TOTAL** | 1714.05 |

These hours represent the time actually spent by Testa, Hurwitz & Thibeault, LLP ("Testa Hurwitz"), Birnbaum & Godkin, LLP and the Public Citizen Litigation Group attorneys and paralegals on this case. Counsel has exercised billing judgment and has eliminated numerous time entries and pared down the remaining time entries.[4] *See* Godkin Decl., ¶ 16; Kirkpatrick Decl., ¶13; *see also* Wolfman Decl., ¶ 5-8.

### The Hours are Reasonable Considering the Complexity of this Case.

Mr. Cerqueira's attorneys zealously litigated this unique civil rights case in a succinct and economical fashion as shown by the fact that this case proceeded from complaint to trial in 17 months. While the Complaint originally named a number of AA employees as defendants, Mr. Cerqueira agreed to drop the individual defendants upon receiving AA's stipulation that all AA employees were acting within the scope of their responsibilities. Mr. Cerqueira served one set of document requests and interrogatories, and took eleven depositions, including the AA employees

---

[4] The hours have not been designated between "core" and "non-core" work, as this Court has held that distinction is not necessary given the presumption of reasonableness in the lodestar figure. *See Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 219, 225 (D. Mass. 2004); *System Management v. Loiselle*, 154 F. Supp. 2d 195, 209 (D. Mass. 2001).

involved in the incident and Mr. Cerqueira's two doctors for use at trial. AA took two additional depositions.

Throughout the case, Mr. Cerqueira's attorneys were careful not to duplicate efforts. For example, only one attorney attended each deposition in this case on behalf of Mr. Cerqueira. Mr. Kirkpatrick defended Mr. Cerqueira's deposition, and traveled alone to Texas to take the depositions of Mr. Marquis and Ms. Cobbs, and to Nevada to defend the deposition of Mr. Laird (Plaintiff's security expert). Mr. Godkin traveled alone to Florida to take the depositions of Dr. Blumenthal and Dr. Faulk for use at trial. All of the other depositions taken in this case were taken by Ms. Abate Recht, a senior associate with Birnbaum & Godkin, LLP. Also, to conserve costs, Mr. Cerqueira opted not to take depositions of AA's psychiatric expert, Dr. Kelly, or AA's security expert, Mr. Beardslee. Godkin Decl., ¶ 14; Kirkpatrick Decl., ¶ 14.

Moreover, Mr. Cerqueira's litigation of this case was particularly economical in light of the complex legal issues involved and the thorough cross-motions for summary judgment and numerous motions in limine. *See* Savage Aff., ¶ 11; Friedman Decl., ¶ 9; Lewis Aff., ¶ 8. As such, Mr. Cerqueira's request for compensation of approximately 1,700 hours through trial is reasonable. *See Dixon*, 434 F. Supp. 2d 73, 84 (D. Mass. 2006) (holding 1,587 hours reasonable in discrimination case).

### All Time Charges Relate to a Common Core of Facts or Related Legal Theories.

Mr. Cerqueira is requesting compensation for the time relating to his claims that prevailed at trial. Under § 1988, a prevailing plaintiff is entitled to fees for hours spent on his successful civil rights claims. The Supreme Court has explained this principle as follows:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a

7

> whole . . . Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Hensley,* 461 U.S. at 435; *see also Krewson v. Finn,* 107 F.3d 84, 85 (1st Cir. 1997). In this case it undisputed that the common core of facts is identical for each of Mr. Cerqueira's claims under § 1981, Title VI, and M.G.L. c. 272, § 98. The core set of facts relates to incidents that occurred within a two to three hour time span on December 28, 2003 and the injuries Mr. Cerqueira suffered as a result of the incidents. Additionally, the legal theories related to each of Mr. Cerqueira's claims are similar and overlapping. The only difference between each of the causes of action is the third element of each: whether a contract had been formed, whether AA receives federal financial assistance[5], and whether an aircraft and terminal are places of public accommodation.

### There is Little "Duplication" in the Time Charges, and Any "Duplicative" Entries are Justified.

As previously noted, counsel for Mr. Cerqueira has scrutinized the time charges to ensure that any duplication has been eliminated. The only charges that are arguably duplicative are the presence of more than one attorney at court on various occasions including for the mediation, summary judgment hearing, the final pretrial conference, and the trial. However, each of these appearances is justified. Mr. Godkin and Mr. Kirkpatrick are co-counsel, and Mr. Kirkpatrick is from Washington, D.C. and has been admitted *pro hac vice* for this case. Under the

---

[5] The fact that the Court found it unnecessary to send Mr. Cerqueira's Title VI claim to the jury does not provide reason to reduce the amount of the fee award as no time was spent on the "federal financial assistance" issue, because AA admitted in its answer that it was a recipient of federal financial assistance. Indeed, Mr. Cerqueira was awarded full relief.

8

circumstances, it was appropriate for both Mr. Godkin and Mr. Kirkpatrick to appear in Court at significant events. Additionally, based on the importance and complexity of this litigation, most firms would have had both senior attorneys and an associate participate in the trial. Savage Aff., ¶ 10; Friedman Decl., ¶ 8; Lewis Aff., ¶ 7; Sellers Decl., ¶ 8. Indeed, AA was represented by more than one attorney throughout the litigation and at trial.

### B.     Hourly Rates

Once the Court has determined the hours reasonably expended by Mr. Cerqueira's attorneys, it must determine if the hourly rates requested are reasonable. In awarding attorneys' fees, the applicable hourly rates are based on "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Grendel's Den*, 749 F.2d at 955 (same); *Alfonso v. Aufiero*, 66 F. Supp. 2d 183, 197 (D. Mass. 1999); *Guckenberger v. Boston University*, 8 F. Supp. 2d 91, 103-105 (D. Mass. 1998). Additionally, "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 430 n.4.

The Court should advance congressional intent of awarding attorneys' fees at the market rate when civil rights cases attract skilled private counsel. *See Blum*, 465 U.S. at 893-896; *Riverside v. Rivera*, 477 U.S. 561, 579 (1986). Therefore, the initial analysis for the fee award is counsel's standard hourly rate because "[i]f he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993).

In order to recover attorneys' fees, Mr. Cerqueira must provide the Court with evidence that: (1) establishes his lawyers' skills and experience; and (2) informs the Court of the prevailing market rate in the relevant community for attorneys with such qualifications. *See Parker v. Town of Swansea*, 310 F. Supp. 2d 376, 388 (D. Mass. 2004), citing *Blum* 465 U.S. at 895-896 n.11. Mr. Cerqueira has met this burden by submitting the declarations and affidavits of Messrs. Godkin, Kirkpatrick, Savage, Lewis, Friedman, Wolfman, Blustein, Libman, and Sellers.

Mr. Cerqueira requests an hourly rate of $390 per hour for lead co-counsel David S. Godkin, $375 per hour for lead co-counsel Michael T. Kirkpatrick, $205 per hour for Erica Abate-Recht and other senior associates, $130 per hour for Jessica Edgerton, $150 per hour for Darleen F. Cantelo, and $100 per hour for the paralegal who worked on this matter.

### Mr. Cerqueira is Entitled to Recover Fees at Counsel's Current Standard Billing Rate.

In awarding attorneys' fees, the Court may award fees at counsel's current standard billing rate, as opposed to counsel's historical rate. *See Dixon*, 434 F. Supp. 2d at 85 *citing Missouri v. Jenkins*, 491 U.S. 274, 284-83 (1989) ("'Clearly, compensation received several years after the services were rendered-as it frequently is in complex civil rights litigation-is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed.... [A]n appropriate adjustment for delay in payment-whether by the application of current rather than historic hourly rates or otherwise-is within the contemplation of the [civil rights] statute.'")

The current hourly rates requested by Mr. Cerqueira are reasonable. First, the requested rates are a substantial discount from the rates that Mr. Godkin's former firm, Testa Hurwitz, normally charged clients involved in complex federal litigation for his time in 2004 and 2005. *See* Godkin Decl., ¶¶ 9, 11; Savage Aff., ¶ 8. At Testa Hurwitz, Mr. Godkin's time in 2004 and

10

2005 was billed to clients at $550 per hour. *Id.*. Today, some of Mr. Godkin's former partners with similar experience, practicing at established firms bill in excess of $700 per hour. *See* Godkin Decl., ¶ 9; *see also* Savage Aff., ¶ 6. Mr. Cerqueira has submitted ample evidence that the rates charged by other firms in the Boston area practicing complex federal litigation is substantially higher than $390 per hour. *See* Friedman Decl., ¶¶ 5-7; Lewis Aff., ¶¶ 5,6; Savage Aff., ¶¶ 8,9.

Even though Mr. Godkin's work on this case began while he was still a partner at Testa Hurwitz, Mr. Cerqueira has only requested Mr. Godkin's discounted current rate at Birnbaum & Godkin, LLP. Similarly, the rate requested for Mr. Kirkpatrick's work on this case is a very reasonable discounted rate.[6] In short, the attorneys' fees requested for all attorneys are far less than the standard rates charged by other firms in Boston that practice complex federal litigation and the rates are far less than the standard rates charged by other attorneys with similar litigation experience. *See* Savage Aff., ¶¶ 8,9; Friedman Decl., ¶¶ 5-7; Lewis Aff., ¶¶ 5,6; Blustein Decl., ¶ 6; Libman Decl., ¶ 6; Sellers Decl., ¶ 6.

### The Requested Rates are Reasonable for Civil Rights Practitioners.

The rates at which Mr. Cerqueira has requested compensation are also reasonable by the standard of "civil rights practitioners" given the quality of the representation, the uniqueness of the case, and the excellent results achieved.

i. *Mr. Cerqueira's Legal Team*

**David S. Godkin**

---

[6] The requested fees for Mr. Kirkpatrick's work on this case are based on the *Laffey* matrix. The *Laffey* matrix is used by courts in the District of Columbia to determine prevailing market rates for attorneys, paralegals, and law clerks. Kirkpatrick Decl., ¶ 12. While the requested fees are based on the *Laffey* matrix, attorneys of comparable skill, reputation and experience in the Boston and Washington marketplaces would charge rates well above what is being requested. *See* Savage Decl., ¶ 9; Sellers Decl., ¶ 6.

Mr. Godkin was lead co-counsel for Mr. Cerqueira. Mr. Godkin has been practicing law for over 25 years. After graduating from the University of Vermont and Georgetown University Law Center, Mr. Godkin was an associate at Hale & Dorr for four years. After two years at McCabe/Gordon, Mr. Godkin joined Testa, Hurwitz as an associate in 1987 and became partner in 1989. More recently, Mr. Godkin formed Birnbaum & Godkin, LLP where he continues to represent companies and individuals in civil litigation, including complex commercial and intellectual property disputes and civil rights actions. Additionally, Mr. Godkin has substantial experience as lead counsel in high profile civil rights litigation, and is the co-chair of the Board of Directors of the Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association, and has been a board member since 1989. Godkin Decl. ¶¶ 1, 4-7.

Additionally, Mr. Godkin has tried numerous complex business cases in this Court and elsewhere. Mr. Godkin's experience has contributed to the efficiency with which this matter has been handled. *See Id.*, ¶ 8.

### Michael T. Kirkpatrick and Other PCLG Staff

Mr. Kirkpatrick was also lead co-counsel for Mr. Cerqueira. Mr. Kirkpatrick has been practicing law for over 15 years. His entire career has been devoted to complex federal litigation, mostly in civil rights cases. After graduating *cum laude* from the American University, Washington College of Law, Mr. Kirkpatrick joined the Farm Worker Division of Texas Rural Legal Aid, Inc. (TRLA). While practicing at TRLA, Mr. Kirkpatrick litigated over two dozen cases in federal court. From 1995 to 2004, Mr. Kirkpatrick served as a senior trial attorney with the Civil Rights Division of the U.S. Department of Justice, where he litigated numerous discrimination cases. Mr. Kirkpatrick was lead counsel in the first jury trial in a Title VII case brought by the Department of Justice, and he was lead trial counsel in two complex

pattern-or-practice cases that used the disparate impact theory to challenge the discriminatory use of written cognitive tests in selecting public safety officers. Since 2004, Mr. Kirkpatrick has been an attorney with the Public Citizen Litigation Group (PCLG), a public interest law firm in Washington, D.C. Mr. Kirkpatrick's practice at PCLG covers a range of subjects, including civil rights and constitutional law. Mr. Kirkpatrick has briefed and argued cases before the U.S. Supreme Court. Mr. Kirkpatrick's extensive civil rights experience and overall trial experience have contributed to the efficiency with which this matter has been handled. Kirkpatrick Decl. ¶¶ 1, 4-9.

From time to time, Mr. Kirkpatrick was assisted by other PCLG staff, including attorneys Brian Wolfman, Allison Zieve, and Adina Rosenbaum. Descriptions of their professional backgrounds are attached to the Kirkpatrick Declaration as Exhibits 2, 3, and 4. Mr. Kirkpatrick was also assisted by a PCLG summer law clerk, David Becker, and a PCLG paralegal, Philip Longo. Kirkpatrick Decl. ¶ 11.

### Kim Nuzum, Dawn Perlman and Erica Abate-Recht

Throughout the case, Mr. Godkin and Mr. Kirkpatrick were assisted by senior associates who managed the case on a day-to-day basis to be as cost effective as possible. Godkin Decl., ¶ 11. At Testa Hurwitz, that associate was Kim Nuzum until she left on parental leave, and then Dawn Perlman. Once the case was transferred to Birnbaum & Godkin, LLP, Erica Abate-Recht was the senior associate who managed the case on a day-to-day basis until she left on parental leave. Ms. Abate-Recht has been practicing law for over 8 years. After graduating from Boston University School of Law in 1998, Ms. Abate-Recht joined Testa Hurwitz as an associate. In 2005, Ms. Abate-Recht joined Birnbaum & Godkin, LLP as an associate. Ms. Abate-Recht has

been involved in civil rights cases involving education and fair housing, as well as complex business cases. *Id.*

### Jessica Edgerton, Darleen F. Cantelo and Brian Vogler

Throughout the case, certain tasks were also assigned to more junior associates at Birnbaum & Godkin, LLP including Jessica Edgerton and Darleen Cantelo. After Ms. Edgerton relocated to Chicago, Ms. Cantelo became the junior associate assigned to the case. Ms. Cantelo assisted Mr. Godkin and Mr. Kirkpatrick with summary judgment, trial preparation and trial. Ms. Cantelo is a 2004 graduate of Northeastern University School of Law. *Id.*

Finally, in an effort to be cost effective, certain tasks were delegated to a paralegal at Birnbaum & Godkin, LLP, Brian Vogler. *Id.*

### ii. *The Requested Rates are Reasonable for a Civil Rights Case.*

Numerous attorneys have attested that the requested rates are reasonable for a civil rights case. Scott P. Lewis and Howard Friedman are both attorneys who have received fee awards in civil rights cases and are knowledgeable about civil rights practice in the Boston area. Joseph Savage is a trial attorney who was a former partner at Testa Hurwitz and current partner at Goodwin Procter. Mr. Savage has been counsel in several civil rights cases in which he received fee awards and is knowledgeable about civil rights practice in the Boston area. Robert Libman, Benjamin Blustein, and Joseph Sellers are all lawyers who have practiced civil rights in the Washington, DC area. *See* Lewis Aff., ¶¶ 1-3; Friedman Decl., ¶¶ 1-4; Savage Aff., ¶¶ 1-4; Wolfman Decl., ¶ 1; Libman Decl., ¶¶ 1-4; Blustein Decl., ¶¶ 1-4; Sellers Decl., ¶¶ 1-3.

Also, the requested rates are in line with those awarded by courts in other civil rights cases, adjusted for inflation. *See, e.g.*, Order on Petition for Attorneys' Fees and Costs, *Sarsfield v. City of Marlborough*, No. 03-10319-RWZ (Jan. 26, 2007) (awarding fees at the rate of $450

per hour to lead counsel) (Godkin Decl., Ex. C); *Change the Climate, Inc. v. MBTA, et al.*, C.A. No. 00-10973-REK, 2005 WL 3735100 at *4-5 (D. Mass. 2005) (June 8, 2005) (awarding fees at the rate of $350 per hour to lead counsel and rates of $225 to associates). Indeed, over nine years ago, the court calculated fees for civil rights practitioners in Boston to be over $300 per hour. *See Guckenberger v. Boston University*, 8 F. Supp. 2d 91, 105 (D. Mass. 1998); *see also Bogan*, 432 F. Supp. 2d at 229-30 (awarding lead counsel requested rate of $300 per hour); *Laplante v. Pepe*, 307 F. Supp. 2d 219 (D. Mass. 2004) (awarding fees up to $300 per hour to Palmer & Dodge counsel in civil rights litigation); *Morgan v. Gittens*, 915 F. Supp. 457, 470-71 (D. Mass. 1996).

Given the credentials and experience of Mr. Cerqueira's counsel, the uniqueness and complexity of this litigation, and the superior quality of representation in this case, the hourly rates requested are more than reasonable.

## II.     Enhancement of the Lodestar Figure

Once the lodestar figure is determined, the Court may adjust the figure upward or downward to account for unusual circumstances. *See Coutin*, 124 F.3d at 337. This case presents one of those rare occasions where the lodestar should be enhanced because of complex litigation, superior performance, the result obtained, and the societal importance of the civil rights that have been vindicated. Enhancement in this case will serve the statutory purpose of the Fees Act. *See Lipsett*, 975 F.2d at 942. Enhancement is also appropriate under state law. *See Fontaine*, 415 Mass. at 326; *Snowden v. Chase Manhattan Mortgage Corp.*, No. 030001, 2004 WL 1194656 at *6 (Mass. Super. Apr. 27, 2004) (enhancing basic fee award was supported by plaintiff's weak chance of success and attorney's risk of nonpayment).

This case presented numerous obstacles and special factors that make it the ideal case for an enhancement. As Mr. Cerqueira testified, he had difficulty finding counsel to take the case because of the difficult and controversial issues raised. Mr. Cerqueira obtained his desired outcome in this case. Not only did the jury decide that Mr. Cerqueira's civil rights were violated when AA removed him from flight 2237 and refused to rebook him, but through punitive damages the jury sent AA a message that discrimination, even in a post-September 11th world, will not be tolerated. The jury, concluding that AA acted with reckless disregard of Mr. Cerqueira's civil rights, awarded Mr. Cerqueira $270,000 in punitive damages. In awarding punitive damages, the jury put AA and all airlines on notice that employees need to be trained and behave in such a way that they do not discriminate against persons based solely on their appearance. "To the extent that the award has a deterrent effect on other [airlines], it constitutes a measure of success" and favors an upward departure from the lodestar figure. *Dixon*, 434 F. Supp. 2d at 88-89.

This case also presented significant risk to Mr. Cerqueira's counsel who accepted this case on a *pro bono* basis. Prior to obtaining his current counsel, Mr. Cerqueira brought his case to numerous civil rights attorneys who refused to accept it. This was clearly a risky case for any attorney to pursue and the fee award should reflect an enhancement acknowledging as much. *See Deary v. City of Gloucester*, 789 F. Supp. 61, 67 (D. Mass. 1992) (citations omitted) (court may award enhancement where lodestar figure does not adequately compensate for risk).

Not only did Mr. Cerqueira obtain an excellent outcome in this case through the superior performance of his counsel, but the verdict in this case is of such public importance that a risk-based enhancement of the attorneys' fees should be awarded to further the public policy behind the Fees Act. *See Coutin*, 124 F.3d at 338. Federal fee-shifting statutes are a means of

encouraging private parties to pursue litigation that will advance important federal interests. *See, e.g., Hensley*, 461 U.S. at 429. Statutes such as the Fees Act rest on the congressional perception that prospective litigants seeking to vindicate federal interests will be unable to offer assurances of payment to the attorneys representing them and that attorneys prefer representations where payment of their fees in not an issue. *See, e.g.,* S. Rep. No. 94-1011, 94th Cong., 2d Sess. 2, 6 (1976); H.R. Rep. No. 94-1558, 94th Cong., 2d Sess. 1-3 (1976). Mr. Cerqueira's case, involving important federal interests, is the ideal case for an enhancement of attorneys' fees.

### III.   Costs

Counsel's "reasonable and necessary costs and expenses may be awarded to a prevailing party pursuant to 42 U.S.C. § 1988." *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983). This includes, among other things, expert fees, transportation, lodging, parking, and telephone expenses. *Id.*; 42 U.S.C. § 1988(c); *see also Parker*, 310 F. Supp. 2d at 400 (gas, parking, tolls, and telephone expenses recoverable). A Bill of Costs setting forth taxable costs will be filed separately.[7] The additional costs totaling $19,299.06 include expert fees, computerized research, travel, and other miscellaneous items set forth in the Godkin Declaration, ¶19.

### CONCLUSION

For the foregoing reasons, Mr. Cerqueira respectfully requests that the Court award attorneys' fees in the amount of $524,544.75, enhanced in any amount the Court deems appropriate, and costs in the amount of $19,299.06. The attorneys' fees requested are summarized as follows:

---

[7] While 28 U.S.C. § 1920 permits the taxation of certain costs enumerated in that statute, prevailing plaintiffs in civil rights cases are also entitled to recover additional costs, not just those listed in § 1920. *See Palmigiano*, 707 F.2d at 637.

| Individual | Requested Hours | Requested Rate | Total |
|---|---|---|---|
| Michael T. Kirkpatrick | 802.55 | $375 | $300,956.25 |
| David S. Godkin | 317.75 | $390 | $123,922.50 |
| Darleen Cantelo | 258.25 | $150 | $38,737.50 |
| Erica Abate Recht | 200 | $205 | $41,000.00 |
| David Becker | 42.50 | $120 | $5,100.00 |
| Jessica Edgerton | 41 | $130 | $5,330.00 |
| G. Brian Vogler | 15.50 | $100 | $1,550.00 |
| Dawn Perlman | 15 | $205 | $3,075.00 |
| Kimberly Nuzum | 6.5 | $205 | $1,332.50 |
| Philip Longo | 6 | $120 | $ 720.00 |
| Adina Rosenbaum | 4.8 | $245 | $1,176.00 |
| Allison Zieve | 2.8 | $375 | $1,050.00 |
| Brian Wolfman | 1.4 | $425 | $ 595.00 |
| **TOTAL** | 1714.05 | | $524,544.75 |

Respectfully submitted,

**JOHN D. CERQUEIRA,**

By his attorneys,

/s/ David S. Godkin
David S. Godkin (BBO #196530)
Darleen F. Cantelo (BBO#661733)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
617-307-6100

Michael T. Kirkpatrick, Esq.
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-1000

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I, Darleen F. Cantelo, Esq., hereby certify that a true and correct copy of the foregoing document was delivered to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent those indicated as non-registered participants on January 30, 2007.

/s/ Darleen F. Cantelo
   Darleen F. Cantelo