UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) CIVIL ACTION NO.: 05-11652 WGY<br>AMERICAN AIRLINES, INC., )<br>)<br>Defendant. )<br>) | |

**MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
BY THE DEFENDANT, AMERICAN AIRLINES, INC.**

The defendant, American Airlines, Inc. ("AA" or "American") hereby move that this enter judgment notwithstanding the verdict ("JNOV") in its favor pursuant to Fed.R.Civ.P. 50(b)(1)(C).

The basis of American's motion is that the jury's verdict in Mr. Cerqueira's favor is unsupported by the evidence because he failed to establish that American's employees intentionally discriminated against him on December 28, 2003. In addition, when the evidence is analyzed under the correct legal standard of "arbitrary or capricious" for judging AA's decisions and actions, the verdict would be similarly insupportable.[1] As a corollary to that issue, the Court's instructions on "intentional discrimination" were erroneous and consideration of the properly-admitted evidence warrants the granting of JNOV.

---

[1] Although not material to the outcome given the submission of the case on a general verdict form, AA renews its Rule 50(a) motion on the basis that the Airline Deregulation Act precludes plaintiff's state law claim under M.G.L. c. 272, § 98, because Congress did not intend to bestow passengers with the right to sue airlines for decisions arising out of the airlines' legitimate business interests, such as the safety of their passengers.

In the interest of brevity, American incorporates herein by reference its recitation of the evidence in its motion for judgment as a matter of law, filed at the close of Mr. Cerqueira's case and renewed at the close of all of the evidence (Document 103). Viewed in the light most favorable to Mr. Cerqueira, the evidence can be summarized as follows:

- Mr. Cerqueira testified that he "appears to be of "Middle Eastern" extraction or ancestry, and is often mistaken for such, instead of his actual ethnicity of Hispanic. Mr. Cerqueira admitted that no AA employee ever questioned him about, mentioned, or discussed with him, his ethnic background, race or ancestry.

- Flight Attendant Sally Walling gave uncontradicted testimony, corroborated by Ms. Amy Milenkovic and Ms. Lois Sargent, that based upon her encounter with Mr. Cerqueira in the gate area, she became concerned and unnerved by his behavior. Similarly, she believed that he had boarded the aircraft out of turn and spent an inordinate amount of time in the lavatory. She also received two separate complaints from other passengers about the conduct of the passengers seated in row 20, which included Mr. Cerqueira, and reported all of this to Captain Ehlers.

- Mr. Cerqueira denied engaging in any behavior that was suspicious, untoward or inappropriate when: (a) he interacted with Flight Attendant Walling in the gate area; (b) boarded Flight 2237 and immediately went to a rear lavatory for 4 minutes or so; or (c) Flight Attendant Sargent gave the first exit row briefing. Mr. Cerqueira also testified that had no memory of laughing or appearing amused when Ms. Sargent was subsequently called back to the exit row (20) after one of the other passengers activated the "call button," and then asked her what he "should do with the exit door after he opened it."

- Captain Ehlers conferred with his crew about the foregoing, and then ordered all three of the passengers in row 20 to be removed from the flight for questioning. Captain Ehlers gave uncontradicted testimony that he never saw Mr. Cerqueira before making this decision; he remained in the cockpit or near that area during the entire incident and the layout of the MD-80 aircraft prevented him from viewing a passenger in the exit row's window seat. He also testified that during the conference with his crew the physical appearance or physical characteristics of any of the row 20 passengers was never a subject of the conversation.

- The other two passengers in row 20, Mr. Ashmil and Mr. Rokah, were from Israel. Mr. Cerqueira's testimony was that they bore an appearance similar to his. This was the sole evidence on this issue. No photographs or other evidence of their appearance was offered.

- Captain Ehlers' decision was premised in part upon two encounters he had with one of the other men seated in row 20 with Mr. Cerqueira, whom Captain Ehlers described as having a ponytail. *See* Trial Exhibit ("Tr. Ex.") 20.

- The State Police decided to take Mr. Cerqueira away for interrogation, along with Messrs. Ashmil and Rokah. According to Captain Ehlers' uncontradicted testimony, one of the State Police officers who had been summoned to the jet bridge told him "these people are not going with you. It's out of your hands now."

- After two hours of interrogation, Mr. Cerqueira was released from the interrogation and he returned to the ticket counter. Based upon a decision made by Mr. Craig Marquis, the AA Systems Operations Center ("SOC") Manager on Duty in Dallas, entered into Mr. Cerqueira's Passenger Name Record ("PNR") (Tr. Ex. 9), Ms. Nicole Traer refunded the price of Mr. Cerqueira's ticket.  Ms. Traer had no role in making that decision, and merely followed Mr. Marquis' directive.

- Mr. Marquis gave uncontradicted testimony that on the day in question, when he made the decision that Mr. Cerqueira should be denied boarding that day due to security concerns reported to him, he was performing his normal duties, which involved directly supervising approximately 140 analyst personnel (*see* photos, Tr. Ex. 24) and being responsible for between 700 and 800 flights in the air.

- Mr. Marquis has no memory of what information he relied upon in making the decision and clerical entry that Ms. Traer utilized, but Captain Ehlers had previously testified that he had spoken to Mr. Marquis shortly after convening a meeting with his flight crew, and then deciding that further inquiry was warranted of the passengers in row 20.  However, Mr. Marquis testified unequivocally that his decision was not based upon any unlawful discrimination.

- In reports filed subsequent to the incident, Flight Attendant Sargent, made a reference to "foreign nationals" in her report (Tr. Ex. 18) and Flight Attendant Milenkovic testified that she noted in her report (Tr. Ex. 19) that one of the men had a "heavy accent."

- Ms. Milenkovic also acknowledged in her prior deposition testimony when asked about the accent observation that her feelings had been as follows: "No.  Those things don't make me feel uncomfortable.  My husband has an accent.  But it's just something that you pay close attention to, you know, specifically since September 11th."

Even viewed in the light most favorable to him, Mr. Cerqueira failed to prove his claims by a preponderance of the evidence, and therefore AA's motion for JNOV should be granted.  Mr. Cerqueira brought claims under 42 U.S.C. §1981, 42 U.S.C. §2000d and G.L. c. 272, §98.  Under each of the aforementioned statutes, he had the burden of proving that AA <u>intended to discriminate</u> against him on the basis of his race.

3

In further support of this motion, American relies upon its Memorandum, filed concurrently herewith in accordance with L.R. 7.1(B)(4).

Respectfully Submitted,

**AMERICAN AIRLINES, INC.**
By Its Attorneys,

 */s/ Michael A. Fitzhugh*
Michael A. Fitzhugh, (BBO #169700)
Amy Cashore Mariani, (BBO #630160)
**FITZHUGH, PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330

Dated: January 30, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 30, 2007.

 */s/ Michael A. Fitzhugh*
Michael A. Fitzhugh

4