UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>    Defendant. | CIVIL ACTION NO.: 05-11652 WGY |

**AMERICAN AIRLINES, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT**

**INTRODUCTION**

Pursuant to L.R. 7.1(B)(4), the defendant, American Airlines, Inc. ("AA" or "American") submits this memorandum in support of its motion that this Court enter judgment notwithstanding the verdict ("JNOV").

The basis of American's motion is that the jury's verdict in Mr. Cerqueira's favor is unsupported by the evidence because Mr. Cerqueira failed to establish that American's employees intentionally discriminated against him on December 28, 2003. In addition, when the evidence is analyzed under the correct legal standard of "arbitrary and capricious" for judging American's decisions and actions, the verdict would be similarly insupportable. As a corollary to that issue, the Court's instructions on "intentional discrimination" were erroneous and consideration of the properly-admitted evidence warrants the granting of JNOV.

**THE STANDARD OF REVIEW**

In reviewing renewed motions for judgment as a matter of law, courts "review the evidence in the light most favorable to the jury verdict to determine if the verdict is supported by

the evidence." *Quintana-Ruiz v. Hyundai Motor Corp.,* 303 F.3d 62, 69 (1st Cir.2002). However, this deference to the jury's verdict is *not* unlimited. Courts are expected to play an active role in reviewing verdicts. Thus, for example, while courts "draw all rational inferences from the facts in favor of [the non-moving party], *the [non-moving party] is not entitled to inferences based on speculation and conjecture." Vázquez-Valentin v. Santiago-Diaz,* 385 F.3d 23, 29-30 (1st Cir.2004), reversed on other grounds, --- U.S. ---, 126 S.Ct. 1329 (2006) (emphasis added, internal quotation marks omitted). By the same token, because Mr. Cerqueira bears the burden of proving the appropriate elements of each claim, he *"must have presented more than a mere scintilla of evidence* in [his] favor to withstand judgment as a matter of law" on the claims. *Id.* at 30 (emphasis added) (internal quotation marks omitted). Finally, and importantly, the Court need not ignore uncontradicted evidence offered by American. *Santiago-Negron v. Castro-Davila*, 865 F.2d 431, 445 (1st Cir.1989) (reversing judgment in favor of the plaintiff in civil rights action, finding no evidence that one defendant even discussed taking action against the plaintiff or participated in the decision). Alone or taken together, the evidence presented by Mr. Cerqueira leads to one conclusion – that there has been a total failure of proof of his case.

## ARGUMENT

### I. AMERICAN'S MOTION FOR JNOV SHOULD BE GRANTED.

**A.    There Was No Evidence of Unlawful Discrimination by AA In Either Removing Mr. Cerqueira for Further Questioning, or in Failing to Rebook Him on Another Flight.**

American incorporates herein by reference its recitation of the evidence rendered in its motion for JNOV, submitted herewith, and its prior motion for judgment as a matter of law, filed at the close of Mr. Cerqueira's case and renewed at the close of all of the evidence (Document 103). Even viewed in the light most favorable to Mr. Cerqueira, the evidence is insufficient to

sustain the jury's verdict, both factually and when tested by the correct legal principles. Mr. Cerqueira alleged that AA discriminated against him on the basis of his perceived race in violation of 42 U.S.C., § 1981, 42 U.S.C. § 2000d and G.L. c. 272, § 98. Under each of the aforementioned statutes, the plaintiff must establish that AA <u>intended to discriminate</u> against him on the basis of his race. *See Springer v. Seaman,* 821 F.2d 871, 880 (1st Cir.1987); *Goodman v. Bowdoin College,* 380 F.3d 33, 43 (1st Cir.2004) *cert. den.,* 543 U.S. 1055 (2005); and *Scott v. Macy's East, Inc.*, 2002 WL 31439745, *5 (D.Mass. 2002), (plaintiff's own subjective belief that he was victim of racial profiling, sole admissible "evidence" offered in support of his allegations, insufficient to prove intent to discriminate), *citing Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir.1989), overruled on other grounds, 367 F.3d 61 (1st Cir.2004). Mr. Cerqueira's case is similarly frail to the plaintiff in *Macy's East*, whose allegations of "racial profiling" had no evidentiary support, and where he sought to prove his case merely by establishing that he was in a protected class and <u>believed</u> he sustained disparate treatment. Mr. Cerqueira never proved "disparate treatment," and his case is even more frail because his claim is of being <u>mistaken</u> as a member of a protected class.

     Mr. Cerqueira did not establish that through either its policies[1] or the actions of its employees, American intended to discriminate against him on the basis of his actual or perceived race, ethnicity, national origin or color when it denied him air transport on December 28, 2003. Captain Ehlers and Craig Marquis were the two decision-makers, and lacked any knowledge about the plaintiff's ethnicity, ancestry or even his appearance when they acted. In fact, the evidence summarized in AA's motion for JNOV establishes that Captain Ehlers did not even see the plaintiff prior to deciding to have him removed for questioning, nor did he otherwise obtain

---

[1] The plaintiff never put forward a "pattern or practice" theory at trial, but rather, always premised his case upon alleged intentional discrimination by individual AA employees.

information relating to his ethnicity at any time thereafter, and neither proposition was disputed or controverted by the evidence. Similarly, Mr. Marquis had no knowledge about the plaintiff's race, color, ethnic background or national origin when he decided to deny rebooking of the plaintiff on another AA flight that day.

Thus, given that there was no evidence to link Mr. Cerqueira's perceived ethnicity[2] to the actions of the two decision-makers in denying him air transport, the jury's verdict must be set aside. As confirmed by *Scott v. Macy's East, supra,* and cases cited therein, a mere juxtaposition of the fact of one's race with an instance of arguably unfair treatment is not sufficient to prove that unlawful discrimination was a substantial motivating factor in the decision. *Vázquez-Valentin v. Santiago-Diaz, supra,* 385 F.3d at 38; *see also, Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 58 (1st Cir.1990), overruled on other grounds, 367 F.3d 61 (1st Cir.2004). Like the plaintiff in *Macy's East,* Mr. Cerqueira proved, at most, that he may have been treated "unfairly" when he was not rebooked, but he offered no proof whatsoever that any unlawful discrimination played a role in that scenario, or any of the prior events.

Coupled with the security concerns of the Flight Attendants and two passengers, this alone renders the verdict in Mr. Cerqueira's favor insupportable. An intent to discriminate cannot

---

[2] American disputes that Mr. Cerqueira's testimony that he "looked like" those seated next to him in row 20, or alternatively that he "appears to be Middle Eastern," is sufficient to enable him to establish a case of unlawful discrimination. On the former point, there was insufficient proof for the jury to evaluate this claim, and it further assumes that even if he did bear some resemblance to Messrs. Ashmil and Rokah, that: (a) there is indeed such as a thing as "appearing to be Middle Eastern;" and (b) any of AA's employees involved in this incident believed that to be the case. The entire theory of his being discriminated against has no proof beyond Mr. Cerqueira's subjective belief premised upon this slender reed of undocumented and uncorroborated testimonial evidence. In addition to these faulty premises, Mr. Cerqueira's case is based upon contentions that AA's employees believed or assumed that he was "Middle Eastern" because of his resemblance to the other passengers in the exit row, <u>and</u> that they acted on this belief, *i.e.,* that his perceived ethnicity was the motivating factor in any of their decisions or actions. However, as established by cases such as *Scott v. Macy's East, Inc., supra,* a plaintiff's subjective belief that he was victim of racial profiling is not sufficient to prove intent to discriminate. Mr. Cerqueira's subjective belief that he was a victim of intentional discrimination was unsupported by the competent trial evidence, and also premised upon a theory that was nothing more than multiple baseless assumptions layered on top of each other.

be inferred where a decision-maker has no information relevant to the plaintiff's appearance or ancestry. "A judgment as a matter of law may be granted only if the evidence, viewed from the perspective most favorable to the [non-moving party], is so one-sided that the movant is plainly entitled to judgment, for reasonable minds could not differ as to the outcome." *Baron v. Hickey,* 292 F.Supp.2d 248, 250 (1st Cir.2003), *aff'd,* 402 F.3d 225 (1st Cir.2005), quoting *Gibson v. Cranston,* 37 F.3d 731, 735 (1st Cir.1994). That is the case here.

### 1. American's Actions Were Evaluated by the Jury Using the Wrong Legal Standard.

This Court's jury instructions, rendered over American's objections, were derived from cases arising in the employment discrimination context, utilizing the so-called "cat's paw" doctrine,[3] which refers to a situation in which a biased subordinate who lacks decision-making power uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action. *EEOC v. BCI Coca-Cola Bottling Company of Los Angeles,* 450 F.3d 476, 484 (10th Cir.2006), *cert. granted*, 127 S.Ct. 852 (2007). There is no authority to support the proposition that this line of cases is even remotely relevant in the airline security arena, and AA will demonstrate that they are irreconcilable with the protection afforded AA under 49 U.S.C. § 44902(b).

First of all, the doctrinal foundation of the "cat's paw" cases bears no similarity to the factual considerations attendant to the instant action, and airline security cases in general. In employment discrimination cases, a decision-maker can avoid corporate liability for an adverse

---

[3] "[T]here is only one situation in which the prejudices of an employee ... are imputed to the employee who has formal authority of the plaintiff's job. That is where the subordinate, by concealing relevant information from the decision-making employee or feeding false information to him, is able to influence the decision. In such a case, the discriminatory motive of the other employee, not the autonomous judgment of the non-discriminating decision-maker, is the real cause of the adverse employment action." *Cariglia v. Hertz Equipment Rental Corporation,* 363 F.3d 77, 86-87 (1st Cir.2004).

5

employment action taken against an employee within a protected class by conducting an investigation, independent of the biased subordinate's representations. *EEOC v. BCI, supra,* 450 F.3d at 488. Conversely, in the airline security context, even if a captain's decision to deny air travel to a passenger is based on "an exaggerated or even false representation..., the Captain [is under no] obligation to leave the cockpit and investigate the truthfulness of the [flight attendant's] statements." *Al-Qudhai'een v. America West Airlines, Inc.,* 267 F.Supp.2d 841, 847 (S.D.Ohio 2003). For this reason alone, the "cat's paw" doctrine cannot be reconciled with the legal principles governing airline security cases. The former presumes that an independent investigation by the employer's decision-maker is <u>feasible</u>, and thus reasonable to undertake. A corporation in such circumstances can readily avoid corporate liability by probing the basis for an employee's obtaining a negative appraisal, and whether a supervisor's adoption of that appraisal is substantiated by anything other than the uncorroborated, negative report of the subordinate; conversely, Section 44902(b) vests an airplane's Captain with discretion to deny air travel to a passenger based on all of the facts known to the Captain at the time s/he makes this decision, which is often under severe time constraints.[4] Unlike the corporate setting which has no exigent circumstances militating in favor of a swift decision, a Pilot-in-Command lacks the resources that would allow for such a comprehensive investigation, and does not have the luxury of time that would allow for a deliberate and highly structured process.

For these reasons, Section 44902(b) affords decisions by airline personnel substantial deference because of these time constraints, and other important security considerations: (a) limited resources that would even enable information to be checked; (b) various versions of

---

[4] "This deference to an airline's judgment is understandable in light of the fact that the airline must often make such decisions on the spur of the moment, shortly before the plane takes off, and therefore without the benefit of complete and accurate information." *Ruta v. Delta Airlines, Inc.,* 322 F.Supp.2d 391, 397 (S.D.N.Y. 2004).

observations to be reconciled and sorted out; and (c) a Captain having to leave the cockpit and interact directly with an unruly or potentially dangerous passenger. These are merely a few examples of why a Pilot-in-Command must be allowed to rely on the representations of flight attendants without being required to conduct an independent investigation into the veracity thereof.[5] The determination of whether the decision was rational does not change if those representations are later found to have been exaggerated, inaccurate or false. *Williams,* 509 F.2d at 949. As will be discussed *infra*, the proper focus should have been upon the decision-makers' states of mind. An examination of Captain Ehlers' and Mr. Marquis' actions demonstrates that Mr. Cerqueira did not prove intentional discrimination, either with direct or circumstantial evidence.

      **B.**    **Viewed In Light of the Proper Standard of 49 U.S.C. § 44902(b), Captain Ehlers' Decision Was Not "Arbitrary and Capricious," And Must Be Upheld As a Matter of Law.**

American objected to the Court's instructions to the jury that Mr. Cerqueira could carry his burden of proof if he could establish as a matter of fact that the information passed to Captain Ehlers was tainted with unlawful discriminatory animus, and thus any decision by Captain Ehlers

---

[5] In *Williams v. Trans World Airlines,* 509 F.2d 942 (2nd Cir.1975), Mr. Williams, an African-American man, sued TWA for denying him air transport after TWA received an FBI Wanted Bulletin indicating that Mr. Williams had escaped an indictment for kidnapping, was armed and dangerous, that his arrival in America might incite a demonstration, and that he was schizophrenic. TWA's president made the decision to deny Mr. Williams air transport and he subsequently filed suit alleging that the decision was racially motivated. The district court entered judgment for TWA and Mr. Williams appealed stating that the FBI Bulletin was false and stemmed from the racial prejudice of the individuals providing the information to the FBI. Mr. Williams argued that TWA should have conducted a thorough investigation into the representations from the FBI prior to denying him air travel. The Second Circuit Court of Appeals, in upholding the district court's ruling, held that TWA was entitled to accept the representations from the FBI regarding Williams at face value. *Id.* at 948. The Court also opined that even if it was subsequently discovered that some of the FBI's statements were exaggerated or wrong, that discovery would not serve as a basis for asserting a claim against TWA, which acted properly pursuant to 49 U.S.C. § 1511 [the precursor to 49 U.S.C. § 44902(b)]. *Id.* at 949.

based thereon was tainted.[6] This Court implicitly instructed the jury that the result is the same even if Captain Ehlers himself lacked discriminatory animus. Factually and legally, this was error and the judgment should be reversed by application of the proper legal standard embodied in 49 U.S.C. § 44902(b), the Federal Aviation Act, wherein Congress granted airlines the right to refuse to transport passengers "the carrier decides is, or might be, inimical to safety."

Courts addressing this issue have consistently held that airlines are to be afforded broad discretion in deciding which passengers may be inimical to safety. *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir.1998); *Williams v. Trans World Airlines*, *supra*, 509 F.2d 942 at 948; *Adamsons v. American Airlines, Inc.*, 444 N.E.2d 21, 24 (N.Y. 1982), *cert. den.*, 463 U.S. 1209 (1983). Specifically, airlines are merely required to act rationally and reasonably under the circumstances in exercising their discretion regarding denial of service decisions. *Williams*, 509 F.2d at 948. When an airline decides to refuse air transport to a passenger it deems "inimical to safety," that decision is protected as long as it has a rational basis in safety. *Dasrath v. Continental Airlines, Inc.,* 228 F.Supp.2d 531, 538 (D.N.J. 2002) (hereafter, "*Dasrath* I" to avoid confusion). There is no case that requires perfection of an airline, nor anything approaching it.

Rather, the objective assessment of a carrier's decision must take into account all the circumstances surrounding the decision, including the (perhaps limited) facts known at the time,

---

[6] Recognizing that Section 44902 was the governing legal authority, both parties submitted instructions derived from it, but this Court erroneously refused to instruct on the issue at all. American acknowledges that under the prevailing case law, a decision by the Pilot-in-Command that was tainted by his or her own racial animus would necessarily be "arbitrary and capricious." However, no such evidence was introduced here that Captain Ehlers' or Mr. Marquis' state of mind was affected by any such racial animus. The Court's jury instructions also arguably rendered the elements of Section 44902(b) in an affirmative defense to be proven by AA, instead of a statute Mr. Cerqueira would have to show was inapposite. Thus, the legal standard for evaluating AA's conduct was further confused.

the time constraints under which the decision is made; and, not least, the general security climate in which the events unfold. *Id*. at 539. Moreover, airlines have no duty to investigate a passenger's status before making decisions regarding whether they will or will not transport them on a particular flight. *Id*. at n. 9. *See also Sedigh v. Delta Airlines, Inc.*, 850 F.Supp. 197, 201-02 (E.D.N.Y. 1994); *Zervigon v. Piedmont Aviation, Inc.*, 558 F.Supp. 1305, 1306 (S.D.N.Y. 1983), *aff'd,* 742 F.2d 1433 (2nd Cir. 1983); *Norman v. Trans World Airlines, Inc.*, 2000 WL 1480367, at *3-4 (S.D.N.Y. 2000); *Huggar v. Northwest Airlines, Inc.*, No. 98 C 594, 1999 WL 59841, at *5-6 (N.D. Ill. Jan. 27, 1999); *Rubin v. United Air Lines, Inc.*, 117 Cal. Rptr. 2d 109, 119 (Ct. App. 2002); *O'Carroll v. American Airlines, Inc.*, 863 F.2d 11, 12 (5th Cir.1989), *cert. den.* 490 U.S. 1106, (1989). As noted above, there are many valid reasons for this doctrine as it applies to the decisions of a Pilot-in-Command such as Captain Ehlers, including not putting the onus on him or her to hold a "mini trial" in order to determine if a passenger is not "inimical to safety."

In examining a captain's decision to refuse air travel to a passenger, it must be remembered that "[s]uch a refusal cannot give rise to a claim for damages under either federal or [state] law *unless* the carrier's decision was arbitrary and capricious." *Williams v. Trans World Airlines, supra,* 509 F.2d. 942 at 948 (emphasis supplied).[7] Even though the allegations involve unlawful discrimination, the arbitrary and capricious standard applies, and should have been applied in the instant case by way of properly focused jury instructions. Instructive is the *Al-*

---

[7] American acknowledges that decisions that are based on intentional discrimination are necessarily arbitrary and capricious. *See Williams*, 509 F.2d at 948. *See also, Alshrafi v. American Airlines, Inc.,* 321 F.Supp.2d 150, 162 (D.Mass. 2004); *Bayaa v. United Air Lines, Inc*., 249 F. Supp.2d 1198, 1205 (C.D. Cal. 2002)*; Dasrath* I*, supra,* 228 F.Supp.2d at 538-39, n. 12; *Newman v. American Airlines, Inc.*, 176 F.3d 1128, 1132 (9th Cir.1999); *Cordero v. Cia Mexicana de Aviacion, S.A.*, 681 F.2d 669, 670-73 (9th Cir.1982). Conversely, decisions that do not have a basis in intentional discrimination, but are instead grounded in legitimate safety concerns, must be presumed rational and reasonable. *Dasrath* I, 228 F.Supp.2d. at 538-39.

*Qudhai'een* case, *supra*, where the plaintiff alleged in his civil rights complaint that the Captain knew that he and his fellow passenger were of Arabic descent, and thus their ethnicity prompted the Captain's decision to have them removed for questioning.[8]  In granting the defendants' motion for summary judgment, the *Al-Qudhai'een* Court found that the Captain's decision to have the passengers removed for questioning was based on all of the information provided to him by the flight attendants, and that he was entitled to rely on that information, despite any exaggeration or false representations.  *Id.* at 848.  It accepted that the Captain's decision was based on the totality of the circumstances known to him at the time he made the decision to have the plaintiffs removed for questioning, including the flight attendants' report of Mr. Al-Qudhai'een's unusual behavior as described in detail in footnote 8, *supra*, but nevertheless properly found for the airline.

---

[8] The contentions in *Al-Qudhai'een* are strikingly similar to those in the case at bar and the facts in *Al-Qudhai'een* were far more favorable to Mr. Al-Qudhai'een that they are in the instant action because the pilots were aware of the Middle Eastern ethnicity of Mr. Al-Qudhai'een and Mr. Al-Shalawi.  Mr. Al-Qudhai'een and Mr. Al-Shalawi were citizens of Saudi Arabia and were doctoral students who resided in Arizona.  On November 19, 1999, the plaintiffs boarded America West Flight 90 to Washington, D.C.  Mr. Al-Qudhai'een first caught a flight attendant's attention when he asked her if Mr. Al-Shalawi could change seats and occupy the empty seat next to him, and the flight attendant told him to wait until the plane was airborne.  Mr. Al-Qudhai'een ignored this directive and got up and asked Mr. Al-Shalawi to sit next to him, which Mr. Al-Shalawi did.  It is undisputed that Mr. Al-Shalawi did nothing that the flight attendants considered unusual for the entire flight.  Mr. Al-Qudhai'een then decided to use the first class bathroom as there was a line for the coach class bathroom.  A flight attendant and a passenger observed Mr. Al-Qudhai'een approach the cockpit door and pull on its handle.  Once he returned to his seat after using the bathroom, it was searched by one of the flight attendants and nothing was found.  The area under Mr. Al-Shalawi's former seat was also searched and nothing was found.  Upon returning to his seat, Mr. Al-Qudhai'een asked a series of unusual questions about the flight's destination and whether, once they stopped in Columbus, they would be on the same plane for the trip to Washington.  Mr. Al-Qudhai'een posed these same questions to two different flight attendants.  The flight attendants decided to notify the Captain about each of Mr. Al-Qudhai'een's unusual actions.  One of the flight attendants also informed the Captain that the plaintiffs were Arab.  The plaintiffs contended that this knowledge formed the basis for the Captain's decision to have them removed for questioning.  Upon arrival in Columbus, security personnel boarded the plane, handcuffed the plaintiffs and led them off the plane for questioning.  After four hours of questioning, plaintiffs were released and America West provided them an upgrade to first class for their flight to Washington, D.C.

As will be more fully discussed below, buttressing the rationale of *Al-Qudhai'een* is a recently-decided case also involving allegations of race discrimination, and its reasoning illustrates and confirms that this Court should start from the proposition that it was Captain Ehlers' "perception that is determinative, because it was he who made the final removal decision." *Dasrath v. Continental Airlines, Inc.,* --- F.Supp.2d ----, 2006 WL 3759715, *15 (D.N.J. Dec. 22, 2006).

Thus, the sole relevant inquiry for the jury was whether Captain Ehlers or Mr. Marquis, the two decision-makers, engaged in unlawful intentional discrimination. That appraisal, however, should have been made subject to proper guidance of the "arbitrary and capricious" standard that is the well-settled law under 49 U.S.C. § 44902(b). Examining Captain Ehlers' and Mr. Marquis' decisions accordingly warrants AA's motion being granted, because Mr. Cerqueira's case proved at trial was, at best, that: (1) Captain Ehlers made a decision that ultimately led to his being denied air transport on December 28, 2003, and that the decision was based on representations of the Flight Attendants that were purportedly tainted by a racial bias; and (2) the bias of the flight attendant(s) thus "flowed through" to Captain Ehlers, tainting his decision, even though he himself had no actual, specific information relating to Mr. Cerqueira's race or ethnicity, and thus his decision was *a fortiori* devoid of discriminatory animus.  Neither contention is factually or legally accurate.[9]

The verdict has been shown insupportable as a matter of legal analysis because of the incompatibility of the "cat's paw" cases with Section 44902(b). With respect to the factual element, there was no evidentiary basis to support the proposition that any of the Flight

---

[9] In spite of plaintiff's efforts to blur the distinction, it was incontrovertibly established that Captain Ehlers merely decided to have Mr. Cerqueira subjected to further questioning - not to "deny" him transport.  The evidence has established beyond peradventure that any "denial" of transport at that juncture was the result of actions by the Massachusetts State Police.

Attendants' information was inaccurate or recounted to Captain Ehlers as a result of, or subject to the taint of, unlawful bias.[10]

### C. Captain Ehlers' Decision Was Not Driven by Any Discriminatory Animus, and Thus Was Not "Arbitrary and Capricious."

It is axiomatic that Captain Ehlers' decision must be shown to have been based upon intentional discriminatory animus for Mr. Cerqueira to recover based upon being taken off of Flight 2237 for further questioning.[11] Nothing in the evidence established that Captain Ehlers intended to discriminate against Mr. Cerqueira on the basis of his actual or perceived race, ethnicity, national origin or color on December 28, 2003. In fact, the uncontroverted evidence established that Captain Ehlers did not even see the plaintiff prior to his being escorted off the airplane, nor did he otherwise obtain information relating to Mr. Cerqueira's real or perceived ethnicity. Thus, even accepting the plaintiff's "similar to Middle Eastern appearance" theory, there is a fundamental failure of proof similar to that in *Santiago-Negron v. Castro-Davila,*

---

[10] There was no basis for the jury to draw any inference of discrimination from the remarks of Flight Attendants Milenkovic or Sargent in their respective reports or testimony. Ms. Milenkovic had no input into Captain Ehlers' decision, because all of the evidence was to the effect that she merely <u>listened</u> to what was being said by him and her colleagues, but she reported nothing. Both of their reports would be considered, at most, "stray remarks," falling within the well-settled rule that direct evidence of discrimination does not include stray remarks, particularly those made by nondecision-makers or statements made by decision-makers unrelated to the decisional process itself. *Ayala-Gerena v. Bristol Myers-Squibb Co.,* 95 F.3d 86, 96 (1st Cir.1996). *See also Price Waterhouse v. Hopkins,* 490 U.S. 228, 251-52 (1989) (plurality op.); *id.* at 277-78 (O'Connor, J., concurring); *Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413, 433 (1st Cir.1996) (concurring opinion). Such stray remarks lack the necessary link between the alleged speaker's discriminatory remark and an adverse employment decision. *Ayala Gerena, supra,* 95 F.3d at 96. Also, the Flight Attendants' reports fall within the rule that even if stray remarks are relevant for a pretext inquiry, their probative value is circumscribed if they were made in a situation temporally remote from allegedly discriminatory conduct, or if they were not related to conduct in question or were made by nondecision-makers. *McMillan v. Mass. Soc. for Prevention of Cruelty To Animals*, 140 F.3d 288, 300 (1st Cir.1998), *cert. den.*, 525 U.S. 1104 (1999). *See also, Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir.2001), *aff'd,* 250 F.3d 23 (1st Cir.2001), *citing McMillan*, 140 F.3d at 301.

[11] American vigorously denies that it can be liable for any damages caused by the State Police's actions toward Mr. Cerqueira. It is apparently Mr. Cerqueira's uncontradicted contention that all of his damages stem from his "being treated like a terrorist."

*supra*, a case wherein one plaintiff claimed a civil rights violation based upon her political affiliation, but the evidence was conclusive that the defendant never even had an opportunity to discuss it, nor acquire knowledge of it. *Id.,* 865 F.2d at 445-6.

Captain Ehlers testified that at the time he made his decision to have the passengers in row 20 removed for questioning, he had not even seen Mr. Cerqueira, and he knew nothing about his actual or perceived race or ethnicity. This was not controverted. As such, Captain Ehlers' decision cannot be deemed arbitrary and capricious for being tainted by racial animus. Thus, on this basis alone, if the evidence presented at trial is properly assessed under the controlling legal principles discussed above, AA's motion for JNOV should be granted.

The recent decision of the District Court of New Jersey in *Dasrath, supra,* is instructive here even though it involved a ruling on a motion for summary judgment. In that case, the court determined that Mr. Dasrath had established a *prima facie* case of discrimination under the familiar burden-shifting framework first articulated in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817 (1973): "[U]nquestionably, Mr. Dasrath had established a *prima facie* case under the McDonnell Douglas inquiry. He is a member of a racial minority. He was a lawful passenger on Flight 1218, and he was removed from the flight when white passengers were not removed. Continental has proffered a compelling non-race reason for the removal – a perceived threat to the security of the passengers." *Dasrath v. Continental Airlines, Inc., Ibid.* It then went on to properly reason as follows:

> The ultimate question becomes whether Mr. Dasrath has presented sufficient evidence that would permit a reasonable jury to infer that Continental's proffered reason was not the real reason and that a motivating factor in Mr. Dasrath's removal was his race. This inquiry is complicated by the fact that the inquiry is not solely about what happened; **the inquiry is what Captain Hamp reasonably believed had happened**.

*Ibid.* (emphasis supplied).

Thus, in ruling on AA's motion for JNOV, this Court should analyze the evidence by recognizing that *Dasrath* sets the correct standard for determining if Captain Ehlers' decision was motivated by unlawful racial animus of his own, and thus his state of mind was necessarily "arbitrary and capricious." Mr. Cerqueira did not prove that American's proffered reason was a pretext, because the determination is based on what Captain Ehlers reasonably believed, not what actually happened.[12] Moreover, the legislative history of 49 U.S.C. §44902(b) is consonant with requiring that decisions on denial of service be reviewed under the "arbitrary and capricious" standard. The hearings conducted before Congress in 1961 in connection with 49 U.S.C. §44902(b) demonstrate that Congress intended denial of service decisions to be reviewed under the standard of subjective good faith. *Crimes Aboard Aircraft in Air Commerce: Hearing on S. 2268, S. 2370, S. 2373 and S. 2374 Before the Senate Committee on Commerce*, 87th Cong. 48, 62-64 (1961). Thus, what is singularly germane is whether Captain Ehlers himself was acting pursuant to his subjective good faith belief when he took the actions that he did.

Captain Ehlers based his decision on all of the information he received from Flight Attendants Sargent and Walling. Again, although the *Dasrath* Court decided the case on a motion for summary judgment, that analysis, <u>not</u> the "cat's paw," is the accurate one in determining whether Mr. Cerqueira carried his burden of proof. There is no such evidence, and thus AA's motion should be granted.

---

[12] As noted in *Dasrath*, after the court acknowledged that it must accept plaintiff's testimony as true: "On the other hand, if [the captain] reasonably believed that something had taken place (even if it had not), his reasonable belief is what is critical, not what actually took place." *Id.*, 2006 WL 3759715 at *15.

      **1.**      **Even Assuming *Arguendo* Some Bias by the Flight Attendants in Reporting Their Concerns, Captain Ehlers' Decision Must Be Upheld.**

In both the *Al-Qudhai'een* and *Williams* cases, discussed *supra*, each of the plaintiffs' claims that unlawful race discrimination was the determining factor in their denial of air transport were similarly unavailing. For example, in *Dasrath*, the Captain received erroneous reports from flight attendants that three passengers exhibited unusual behavior and gave them cause for concern. Upon receiving each of the flight attendant's reports, the Captain decided to have the plaintiffs removed from the flight. The *Dasrath* Court found that in reviewing the totality of the circumstances, the Captain's actions were based solely on security concerns and that had the plaintiff been a Caucasian, he still would have been removed from the flight. *Dasrath,* 2006 WL 3759715 at *17.

That is precisely the situation here, and is borne out by Captain Ehlers' testimony and his report (Tr. Ex. 20). Captain Ehlers was himself confronted by one of the passengers eventually seated in row 20 - once in the gate area and once as that passenger boarded the aircraft. When taken in conjunction with the report from Ms. Walling about her interaction with Mr. Cerqueira, <u>and</u> reports of two passengers who expressed concerns to her about "the men in row 20," as well as the harassment received by Ms. Sargent during and after her exit row briefing of Mr. Cerqueira, Mr. Ashmil and Mr. Rokah, Captain Ehlers' decision to contact the Ground Security Coordinator and investigate these concerns was a legitimate exercise of his discretion under §44902(b).

### 2. Had the Jury Been Properly Instructed on the Discretion That Captain Ehlers' Decision Should Have Been Afforded Under Section 44902(b), The Only Reasonable Verdict Would Have Been In Favor of AA.

AA established that its actions taken on December 28, 2003 were the result of legitimate safety concerns. The plaintiff and the exit row passengers were observed by members of the flight crew to act suspiciously and these observations were shared with Captain Ehlers. The plaintiff has not offered any evidence that AA intended to discriminate against him and he failed to rebut the claim that none of the persons making the decision to deny him service had any information regarding his actual or perceived race or ethnicity. Mr. Cerqueira proved nothing beyond Captain Ehlers' failure to independently verify information reported to him by one or more of the flight attendants. This does <u>not</u> establish intent to discriminate, and thus it does not render his decision "arbitrary and capricious." Similar to *Dasrath,* other courts have routinely rejected similar assertions by a plaintiff. *See, e.g., Norman*, *supra,* at *3-4 (specifically holding that the sincerity of the flight attendant's conclusions did not matter in deciding whether the decision to remove the plaintiff in that case was arbitrary and capricious); s*ee also Christel v. AMR Corporation*, 222 F.Supp.2d 335, 340 (E.D.N.Y. 2000).

Thus, as in *Dasrath, Ruta*, *Al-Qudhai'een, Norman* and *Williams*, Captain Ehlers had a crucial security decision to make under severe time constraints and with limited information available to him, which included passengers who were clearly frightened by the behavior of the passengers in row 20 (two of whom reported their concerns to Ms. Walling), and a flight attendant crew that was itself so unnerved that it subsequently refused to complete the flight even after the row 20 passengers were removed, the remaining passengers were re-screened, all luggage was removed and re-screened and the airliner itself was searched with bomb-sniffing dogs. As was the situation in those cases, Captain Ehlers was entitled to rely upon, without

further inquiry, information provided to him by the Flight Attendants. His actions were not "arbitrary and capricious" under any rational view of the evidence.

In short, both 49 U.S.C. §44902(b) and its case law require that the plaintiff prove AA <u>intended</u> to discriminate against him, thereby acting in an arbitrary and capricious manner. The plaintiff has failed to establish that Captain Ehlers (or any other AA employee) intended to discriminate against him, but most salient is that, absent proof that Captain Ehlers' decision was motivated by some actual unlawful racial animus of <u>his</u> <u>own</u>, 49 U.S.C. §44902(b) shields AA from liability. There was no such proof whatsoever that Captain Ehlers was himself motivated by anything other than doing his duty as the Pilot-in-Command. This Court should grant AA's motion for JNOV pursuant to the protection afforded by that statute, consistent with Congress' intent and the construction it has been given consistently by courts applying it to situations such as the instant case.

### D. There is No Basis Whatsoever to Infer That Mr. Marquis' Decision Was Motivated To Any Degree At All by Any Unlawful Discriminatory Animus.

There is no basis whatsoever to infer any discriminatory motive on the part of Mr. Marquis, because there was no basis to conclude or even infer that he could have obtained any information about Mr. Cerqueira that would have even enabled him to act on any unlawful discriminatory impulse or motive. Based upon all of the evidence, it was established that all of Mr. Marquis' information about the incident came from Captain Ehlers or Ms. Rhonda Cobbs. Mr. Marquis had no memory of the conversations with either of them. His failure of memory about the incident is more than understandable given the time lapse between the event in December of 2003 and his deposition in June of 2006, as well as his trial testimony more than three years thereafter. No testimony of Ms. Cobbs was elicited, and Captain Ehlers testified that

17

he did not know the names of any of the row 20 passengers when he called Mr. Marquis, nor did he relay anything about their appearance, physical characteristics or purported ethnic origin, etc.

Mr. Marquis had no recollection of the particular phone call with Captain Ehlers,[13] nor is there any documentation or other basis to draw an inference that Mr. Marquis' decision to deny rebooking to Mr. Cerqueira was motivated by unlawful racial bias. It is apparent that Mr. Marquis' decision was premised solely upon information he obtained from Captain Ehlers, who knew nothing about Mr. Cerqueira when the call was placed. Thus, there is a fundamental failure of proof to the extent that Mr. Marquis' actions could have been motivated by unlawful racial animus. *See Vázquez-Valentin v. Santiago-Diaz, supra,* 385 F.3d at 37, citing *Gonzalez-De-Blasini v. Family Dept.,* 377 F.3d 81, 85 (1st Cir.2004) (no evidence that the defendant even knew of plaintiff's political affiliation in civil rights action based upon same, and no basis for such an inference).

Similarly, there is nothing to even remotely suggest that Mr. Marquis' action was driven by any unlawful racial bias. Given that there was no evidence to controvert the fact that Nicole Traer was merely following Mr. Marquis' directive when she refunded Mr. Cerqueira's money and denied him boarding on another AA flight that day, AA's motion for JNOV must be granted.

> E. **Plaintiff Had to Show That The Sole Basis for AA's Actions and Decisions Was Racial Bias Rather Than A Legitimate Security Concern, But He Failed to Establish Evidence Sufficient To Meet His Burden Of Proof.**

Congress afforded airlines an immunity from liability for actions taken based upon legitimate security considerations. It was Mr. Cerqueira's burden to prove that the sole basis for AA's actions and decisions was unlawful racial animus, and he failed to do so. Stated another

---

[13] American's research has disclosed no cases where a failure of memory has enabled a plaintiff to establish an inference of pretext or carry its burden of proving intentional discrimination merely because a decision-maker cannot recall a specific event. *Cf., Brennan v. GTE Government Systems Corp.,* 150 F.3d 21, 30 (1st Cir.1998) (discussing effect of a witness' failure of memory in an ADEA case).

18

way, if AA's actions or decisions taken with respect to Mr. Cerqueira were motivated in whole or in part by legitimate security concerns,[14] then such actions and decisions are necessarily not arbitrary or capricious, and thus Section 44902(b) is a complete defense for American. When trying to harmonize Section 44902(b) with Title VII and related statutes, legitimate security concerns take precedence.

Thus, while American does not contend that Section 44902(b) can be used as a pretext for discrimination, *Dasrath, William, Al-Qudhai'een* and other cases addressing the statute support this construction that allows it to take unique precedence in "mixed motive" cases.

### F. Even if It Was American's Burden to Prove That It Would Have Taken the Same Actions Irrespective of Any Racial Bias, It Established That by The Evidence.

The uncontroverted evidence demonstrates that consistent with Captain Ehlers' testimony, he would take the same actions if the situation presented itself again today. The evidence overwhelmingly supported Captain Ehlers' decision irrespective of any alleged bias that the jury may have wanted to consider. This includes Captain Ehlers having been confronted in the gate area, and then again as that same passenger came onto the aircraft, coupled with the concerns expressed to Ms. Walling in two separate reports from passengers. These events alone gave him more than adequate cause to have the three men in row 20 removed for questioning. His testimony also noted that given they were seated in an exit row, this was even more salient in his determination because of the threat to passenger safety if those seated there were unwilling or unable to perform the requisite duties in case of an emergency.

---

[14] This is consistent with that part of the Court's instructions to the jury that AA should prevail if it would have taken the same action anyway. *Price Waterhouse* v. *Hopkins,* 490 U.S. 228, 242, 109 S.Ct. 1775 (1989). However, as is treated in the Memorandum in Support of its Motion for a New Trial, AA did not get the benefit of other requested instructions concerning §44902(b) and was prejudiced thereby.

19

Thus, under all of the circumstances, and affording his decision the proper discretion under §44902(b), as a matter of law American has established that the actions taken that day had no causal link to any purported discriminatory animus by other AA employees.

## CONCLUSION

American's motion for JNOV should be granted because the verdict is not supported by any competent evidence and was rendered based upon an incorrect legal standard. An examination of AA's conduct utilizing the correct "arbitrary and capricious" standard pursuant to 49 U.S.C. §44902(b) inexorably leads to but one conclusion – that Mr. Cerqueira failed to prove that AA engaged in unlawful discrimination on December 28, 2003.

Respectfully Submitted,

**AMERICAN AIRLINES, INC.**
By Its Attorneys,

Dated: January 30, 2007

*/s/ Michael A. Fitzhugh*
Michael A. Fitzhugh, (BBO #169700)
Amy Cashore Mariani, (BBO #630160)
**FITZHUGH, PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 30, 2007.

*/s/ Michael A. Fitzhugh*
Michael A. Fitzhugh