UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|                              |   |                                  |
|------------------------------|---|----------------------------------|
| JOHN D. CERQUEIRA,           | ) |                                  |
|                              | ) |                                  |
|     Plaintiff,               | ) |                                  |
|                              | ) |                                  |
|     v.                       | ) |                                  |
|                              | ) | CIVIL ACTION NO.: 05-11652 WGY   |
| AMERICAN AIRLINES, INC.,     | ) |                                  |
|                              | ) |                                  |
|     Defendant.               | ) |                                  |

_____)

**AMERICAN AIRLINES, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE FOR *REMITTITUR***

If this Court denies American's motion for Judgment Notwithstanding the Verdict ("JNOV"), it should order a new trial under Fed.R.Civ.P. 50(b)(1)(B), and 59(a) because improper evidence was admitted over American's objections, there were prejudicial errors in the jury instructions concerning the elements of intentional discrimination, the damages awarded to Mr. Cerqueira were unreasonable and excessive, and because the verdict was against the clear weight of the evidence.

**THE STANDARD OF REVIEW**

"[T]he district court has the power and the duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice." *Kearns v. Keystone Shipping Co.,* 863 F.2d 177, 181 (1st Cir.1988) (internal quotation marks omitted). The Supreme Court has explained that a motion for a new trial may be based "on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co.*

*v. Duncan,* 311 U.S. 243, 251 (1940); *see also, e.g., Rivera Castillo v. Autokirey, Inc.,* 379 F.3d 4, 13 (1st Cir.2004) (applying *Montgomery Ward* standard; *Kearns v. Keystone, Ibid.,* reconciling cases discussing "clear weight of the evidence" standard as opposed to "great weight of the evidence" standard). As will be demonstrated below, the jury's verdict on both liability and damages would constitute an injustice if American is not granted a new trial.

## I. THE ADMISSION OF THE DOT CONSENT ORDER UNFAIRLY PREJUDICED THE JURY AGAINST AA, AND THIS COURT'S LIMITING INSTRUCTION WAS UNABLE TO OVERCOME ITS INFLAMMATORY EFFECT.

Over multiple oral objections made by counsel during trial, and despite American's Motion *in Limine* and Motion for Reconsideration of the same, the Court admitted as Trial Exhibit 26 the Consent Order agreed to by the Department of Transportation ("DOT") and American. The Consent Order, DOT Docket No. OST 2003-15046, recited allegations that AA unlawfully removed or denied boarding to passengers belonging to a protected class on eleven occasions within the three month period subsequent to September 11, 2001.

By its very terms, the Consent Order was entered into by the DOT and American to avoid the expense and uncertainty of litigation.[1] It provides that American does not admit that it violated either of 49 U.S.C., §§ 40127, 41310, 41702 and 41712. *See* Tr. Ex. 26 at 3-4. A final judgment adjudicating American's liability or lack thereof has not occurred. Most importantly, the plain language of the Consent Order provides that "[the] order makes no findings of violations with respect to any individual incident of alleged civil rights violations and the findings herein shall have no effect in any proceeding not before the Department of Transportation." *See* Tr. Ex. 26 at page 6.

---

[1] The Consent Order was issued by the DOT on February 27, 2004 and is a public record.

Parties are entitled to rely on the plain language of a consent order into which they enter. *Porrata v. Gonzalez-Rivera*, 958 F.2d 6, 8 (1st Cir.1992). Such language controls and should be enforced, and courts should limit their consideration of the significance of consent decrees based on the terms and conditions set forth therein unless ambiguities exist. *Inmates of Suffolk County Jail v. Kearney*, 928 F.2d 33, 35 (1st Cir.1991); *US v. Boston Scientific Corp.*, 167 F.Supp.2d 424, 433 (D.Mass. 2001). Despite the language of the Consent Order, and despite the supporting law of this Court and the First Circuit, the Consent Order was admitted as a trial exhibit, and was not redacted in any way to limit the jury's unfettered examination of all of the allegations contained therein. While the Court indicated to the jury[2] that the Consent Order would be admitted with the limiting instruction that it would serve as "notice to American Airlines," that instruction,[3] as will be discussed *infra*, proved insufficient to remove the inevitable perception in jurors' minds, upon their review and examination of the document, that American possessed discriminatory animus. Thus, the prejudicial nature of the admission of the Consent Order far outweighed any alleged probative value. *See* Fed.R.Evid. 403.

Although American incorporates herein the arguments made in its Motion *in Limine* and Motion for Reconsideration regarding improper admission of the Consent Order (Documents 53 and 95, respectively), it is worthy to note that in *Kinan v. City of Brockton,* 876 F.2d 1029 (1st

---

[2] *See* Trial Transcript, Day 4. Passing mention was also made of the limitations placed on the Consent Order during the Jury Charge, but the document was not referred to by name, nor by exhibit number. Transcript of Jury Charge, Jury Trial Day 5 at 6:22-7:6. Indeed, in the context of the 32 pages of text conveyed to the jury during the Jury Charge, it is unlikely that any member of the jury was able to hold this provision in their minds during the next two days of deliberations.

[3] The "notice" issue was never clarified, and was completely unnecessary for the jury. It is axiomatic that parties are charged with notice of the law. Alternatively, if meant to convey that AA was on notice of the government's investigation, this issue was not probative to Mr. Cerqueira's case, for all of the reasons set forth in AA's motion *in limine* and subsequent motion for reconsideration, discussed *infra*.

Cir.1989),[4] the First Circuit, in affirming the allowance of defendant's motion for judgment as a matter of law, ruled that the District Court's exclusion of two agreements for judgment in two lawsuits alleging similar claims was correct and opined "whatever remote relevancy the cases had on custom or practice was outweighed by the potential for prejudice. Fed.R.Evid. 403." *Id.* at 1034-1035.    In upholding the District Court's exclusion of the proposed evidence, the Court of Appeals noted that "introducing evidence of the two other cases would become inextricably intertwined with the case at bar.  The result would be confusion [of the jury]… .  The cases were decided on the basis of negotiations, not findings of fact.  The considerations leading to a settlement are many and varied; at times they have little to do with the basic facts of a case.  These two cases, therefore, cannot be used to prove custom or practice." *Id.* at 1035.

The *Kinan* ruling bears a striking similarity to the instant case, in that Mr. Cerqueira sought to utilize the Consent Order in a manner that improperly buttressed his case on the merits.  It was not offered by Mr. Cerqueira for the purpose of showing American was on "notice," but instead to establish that American condoned a pattern or practice of unlawful discrimination against passengers who belong to a protected class.  As will be discussed more fully below, the admission of the Consent Order, coupled with the suggestion of Plaintiff's counsel during closing arguments that it somehow proved punitive damages were appropriate, resulted in a prejudice to American that merits a new trial.

---

[4] In *Kinan*, the plaintiff alleging civil rights violations during his arrest and detention, sought to introduce agreements for judgment entered in two prior cases filed against one of the defendant police officers against whom he had filed claims.  These agreements for judgment were entered in cases alleging that the defendant police office used excessive force during arrests.

A.    **The Mere Fact that Punitive Damages Were Awarded Demonstrates That the Jury Considered the 11 Incidents of Alleged Discrimination Delineated in the Consent Order In Arriving at Its Verdict.**

As in *Kinan,* the prejudice of allowing the jury to examine and consider the Consent Order, even in light of the Court's limiting instruction, far outweighed any perceived relevance to the facts of the case. Such prejudice resulted in, but was not restricted to, an award of punitive damages against American.

"The words used to mark off the domain of punitive damages-words like 'maliciously,' 'wantonly,' 'oppressively,' 'spitefully'-indicate that punitive damages ··· are reserved for cases where the wrongfulness of the defendant's conduct is conspicuous, implying that its wrongfulness is apparent to the person who engages in it" and one can assume "that the defendant almost certainly knew that what [it] was doing was wrongful and subject to punishment." *Hernandez-Tirado v. Artau,* 874 F.2d 866, 870 (1st Cir.1989), *quoting Smith v. Wade* 461 U.S. 30, 41, n.8 (1983). It is clear that in this case, the jury relied upon the Consent Order to serve as evidence of a purported pattern or practice of discriminatory behavior on the part of American Airlines. Indeed, this was the intent of Plaintiff in seeking to admit the Consent Order. *See* Opposition to AA's Motion *in Limine* (Document 69).

Given the facts of this case, it is unreasonable to assume that the jury interpreted any of the actions of American's employees to have warranted punitive damages if not for the existence of the Consent Order. As is more fully described in the summary of the evidence in its motion for JNOV, every American employee called as a trial witness testified that race was not a driving or motivating factor in their individual decisions to either communicate their safety concerns, to have Mr. Cerqueira removed for questioning from Flight 2237, or to deny Mr. Cerqueira further service with American on the day in question. Furthermore, each of the flight attendants, as well

as Captain Ehlers, testified to legitimate security concerns that arose concerning all three of the men seated in the exit row, including Mr. Cerqueira.

The only evidence that Mr. Cerqueira offered in support of his claim of discrimination was his own subjective belief that his conduct should not have provoked any security concerns and that he "did nothing wrong," and therefore, absent unlawful discrimination, there was no rational explanation for his removal from Flight 2237 for questioning by the Massachusetts State Police, and subsequent denial of service with American on December 28, 2003.  In addition, Mr. Cerqueira's case relied upon vague phrases extracted from deposition testimony, such as "heavy accent," "dark hair," and "foreign nationals" as a basis for carrying his burden of proving that American's actions were motivated by discriminatory intent.

Considering this paucity of proof, it is apparent that the evidence proffered was insufficient to warrant a finding of liability.  Thus, the mere awarding of punitive damages demonstrates that the verdict cannot be reconciled with the clear weight of the evidence.[5]  The only logical conclusion is that examination of the Consent Order caused the jury to believe that one or more of American's employees engaged in malicious, wanton, and reckless discriminatory behavior, and affected their deliberations on the issue of liability.

Given Plaintiff's express intent in proposing the Consent Order as a trial exhibit and verbal communications to the jury, it is not a surprise that the jury was confused and therefore

---

[5] Given the paucity of evidence of any discrimination by AA's employees, it is evident that the jury's awarding of punitive damages was predicated upon some other basis outside of the relevant and material evidence.  The Consent Order is the only plausible explanation, and this Court's limiting instruction that the Consent Order was to be considered merely for "notice" could not cure the unfair prejudice to AA, nor quell the inflammatory effect that it had on the jury, thus causing it to award punitive damages.  The core facts of the case were simply too benign to warrant the grant of punitive damages by a reasonable and rational jury, even if liability could have been determined by resort to the properly admitted evidence (which it could not).  Thus, the mere fact that this jury awarded punitive damages demonstrates that its finding of liability was tainted by the Consent Order; no other conduct could account for this action by the jury.

swayed by the lurid allegations contained therein.  The admission of the Consent Order had precisely the effect that Mr. Cerqueira's counsel desired, in that it was being submitted to establish a "discriminatory atmosphere," or a pattern and practice of discrimination by American. *See* Opposition to AA's Motion *in Limine* (Document 69).  To further emphasize that the Consent Order suggested a pattern or practice on the part of American, Mr. Cerqueira's counsel reiterated to the jury during closing arguments that the Consent Order proved punitive damages were warranted solely because American's decision-makers, Captain Ehlers and Craig Marquis, must have known that American was investigated for discrimination subsequent to September 11, 2001, but discriminated against Mr. Cerqueira anyway.  The following excerpt from Plaintiff's closing argument to the jury illustrates the tainted message that was provided with regard to how the Consent Order should be viewed:

> Finally, you must consider punitive damages.  As Judge Young instructed you, punitive damages may be awarded if American Airlines acted with reckless disregard of Mr. Cerqueira's civil rights. Now, during the testimony we asked the decision-makers, Captain Ehlers and Mr. Marquis, whether on December 28, 2003, they were aware that if a passenger was refused service because of his race or ethnicity, would such -- that such a refusal would violate civil rights laws.  Both of them answered emphatically that they understood that.  Consider also the Department of Transportation consent order which has been entered as Exhibit 26. It *shows* that eight months before December 28, 2003, the government brought an enforcement action against American Airlines *complaining of 11 separate instances where American Airlines engaged in behavior similar to that here* and which the government alleged was unlawful discrimination; thus, American Airlines was on notice *that this kind of discrimination* is illegal. American Airlines knew this kind of behavior is illegal *but they did it anyway*.  That's reckless disregard for Mr. Cerqueira's civil rights. (emphasis added)

Closing Argument of Attorney Kirkpatrick, Jury Trial Day 5, pg. 20:9-21:8.

This language drew a direct parallel between the Consent Order and the events relating to Mr. Cerqueira's claim. While arguably not "improper closing argument" under the law of this Circuit (*Cf., Smith v. Kmart,* 177 F.3d 19, 24-28 (1st Cir.1999), as is discussed *infra,* it reinforced with the jury the unfairly prejudicial effect of the Consent Order.

The facts of the case show that Mr. Cerqueira could not carry his burden of proof in showing that American committed wanton and malicious acts of discrimination against him, and used the Consent Order as a vehicle to suggest some underlying discriminatory animus that had tainted American's employees involved with the incident on Flight 2237. The Court's admission of the Consent Order unfairly allowed Attorney Kirkpatrick the opportunity to suggest to the jury that that the DOT's enforcement action was probative of Mr. Cerqueira's claim, because it complained of similar discriminatory behavior by American Airlines.[6] Such language went beyond the limits of the Court's initial instruction, and drew a direct parallel between the language of the Consent Order and the sole evidence proffered by Plaintiff in support of his claim for punitive damages. When deliberating on the issue of punitive damages, the jury needed only to consult the Consent Order for enough unsubstantiated fodder to fuel the improper conclusion drawn at Attorney Kirkpatrick's suggestion.

The Consent Order should have been precluded pursuant to F.R.E. 408. A settlement agreement such as the Consent Order should be examined in the context in which it was admitted "to determine whether in each individual case it is more probable than not that it conveyed an impression of liability or non-liability to the jury." *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 251 (1st Cir.1985) (admission of release between plaintiff and third party was found to be prejudicial

---

[6] Conversely, testimony was entered by way of Plaintiff's medical provider, Dr. Richard Faulk, that Mr. Cerqueira's own complaint with the DOT was found to be without merit. Even Plaintiff's suggestion that the DOT enforcement action arose from the same "kind of behavior" alleged by Mr. Cerqueira is unwarranted, as the DOT was unwilling to grant Mr. Cerqueira relief for the same claims he brings here.

error, warranting new trial and reversal of judgment in favor of defendant), *citing* 2 Weinstein's Evidence, §408[06].  Given the facts of the case, the contentions made in Plaintiff's Opposition to AA's Motion *in Limine*, and Attorney Kirkpatrick's explicit closing remarks, it is clear that the Consent Order was proffered as proof of "liability for [and] invalidity of … a claim that was disputed as to validity," and therefore should have been precluded. F.R.E. 408.  As noted by the *McInnis* court, when a party uses improperly admitted evidence to obtain an unwarranted inference from the jury, the unfairly prejudicial effect warrants a new trial. *Id.,* at 248-9.

Although the Court attempted to limit the impact of the Consent Order through its instruction to the jury, such a directive was overcome by the intensity of the Consent Order's language.  The Consent Order was admitted as evidence without even the slightest redaction, leaving the jury to wrongfully conclude that the Department of Transportation considered American to have "acted in a manner inconsistent" with federal discrimination law, and that American needed to "cease and desist from future violations" of the same.  Tr. Ex. 26, at 4.  In this case, a new trial is warranted because "it is doubtful that any instructions [given by the Court], no matter how clear and comprehensive, could eradicate the prejudice engendered by the admission of the [Consent Order]."  *McInnis v. A.M.F., Inc., supra*, 765 F.2d at 252.

**B.    In Addition, the DOT's Assertion in the Consent Order That A Pilot in Command's "Failure to Inquire Independently" Into the Reasons for a Flight Crew's Concerns Is Directly Contrary to the Governing Legal Principles, and Also Made Captain Ehlers' Reliance Upon His Crew's Concerns Appear to be Unreasonable.**

For the reasons set forth in AA's JNOV Memo at Sections I A and I B, the Consent Order recited an incorrect legal standard, and its discussion of the governing legal principles demonstrates the likelihood of unfair prejudice to American, as well as causing juror confusion.

One example is the following excerpt on page 2 discussing denial of service decisions made by a

Pilot-in-Command:

> In addition, American asserts that the pilot-in-command must
> make that decision based upon the facts and circumstances
> presented to him or her at that time, taking into account the time
> constraints under which the decision must be made and the general
> security climate in which the events unfold.   According to
> American, the circumstances that play a part in the pilot-in-
> command's decision include the heightened actual dangers arising
> from increased risk of terrorist acts, the catastrophic consequences
> in the case of air travel of any failure to detect such acts in
> advance, and the necessity that pilots-in-command must make
> safety decisions on short notice without the opportunity to make an
> extensive investigation.   American opines that the pilot-in-
> command may rely without further inquiry upon the
> representations of other crew members or other responsible
> authorities with respect to safety and security.

Even though the foregoing is a substantially accurate summary of the governing legal

principles for these cases as expressed by numerous courts,[7] in response to this passage, the DOT

stated in footnote number 2 on that same page 2:

> The Enforcement Office strongly disagrees with this position. It is
> the Enforcement Office's position that a pilot-in-command's
> failure to inquire independently into the reasons for such action is
> inconsistent with carriers' legal obligations.

Thus, the very wording of the Consent Order demonstrates that the parties had vastly

differing views of the applicable law. The jury in the instant case should have received the law

only from this Court – not the conflicting view of DOT's Enforcement Division, which would

clearly cause confusion.  A corollary to this point is that the effect of a pronouncement from "the

---

[7] *Al-Qudhai'een v. America West Airlines, Inc.,* 267 F.Supp.2d 841, 847 (S.D.Ohio  2003); *Ruta v. Delta Airlines, Inc.,* 322 F.Supp.2d 391, 397 (S.D.N.Y. 2004); *Williams v. Trans World Airlines,* 509 F.2d 942, 948 (2d Cir.1975); *Dasrath v. Continental Airlines,*  2006 WL 3759715, *15 (D.N.J. Dec. 22, 2006).

government" as to what the law is (as stated in the Consent Order) likely carried undue weight and wielded excessive influence on the jury.

Equally, if not more important is that the DOT's view is contrary to the well-established legal principles that should have governed the instant case, and which should have been the substance of this Court's instructions to the jury. This Court's limiting instruction could not remedy the confusion to the jury and unfair prejudice that befell American when the Consent Order was allowed into evidence. An example is this passage from *Williams v. TWA, supra*:

> Nor did Congress intend that, before refusing passage to such an applicant, an air carrier, faced with such a problem, be required, as the appellant asserts, to make a thorough inquiry into the intelligence received, its sources and an investigation of the personal history of the applicant.

*Williams,* 509 F.2d at 948. Thus, the DOT's recitation of the law in the Consent Order is at odds with the judicial statements of the law, and served only to confuse the jury, as well as unfairly prejudice American by proffering the existence of a more onerous set of standards or procedures that someone in Captain Ehlers' position should have to utilize.

For the reasons set forth in AA's JNOV Memo at Sections I A and I B the established legal authority is that the pilot-in-command, due to time constraints and the circumstances of having to make decisions subject to them, need not make an independent inquiry of a flight crew that reports a security concern. *Al-Qudhai'een*, *supra*, 267 F.Supp.2d at 848; *Ruta v. Delta Airlines, Inc., supra,* 322 F.Supp.2d at 397. Conversely, the DOT takes the position in the Consent Order that the Pilot-in-Command must make an "independent inquiry" to determine if the information from the crew about security concerns is legitimate.[8] This is but one way that the Consent Order put a higher burden on American than is properly imposed under the

---

[8] "It is the Enforcement Office's position that the pilot-in-command's failure to inquire independently into the reasons for such action is inconsistent with carriers' legal obligations." Tr. Ex. 26 at pg. 2, FN2.

"arbitrary or capricious" standard that should have been applied to Captain Ehlers' decision. *See also, Norman v. Trans World Airlines, Inc.*, 2000 WL 1480367, at *3-4 (S.D.N.Y. 2000)

## II.    THE COURT'S FAILURE TO PROPERLY INSTRUCT UPON THE ELEMENTS OF INTENTIONAL DISCRIMINATION WAS ERROR.

As a general matter, erroneous jury instructions require reversal of a judgment when the instruction has "affected the essential fairness of the trial, or would have changed the outcome." *Elwood v. Pina,* 815 F.2d 173, 177 (1st Cir.1986), citing *McDonough Power Equipment, Inc. v. Greenwood,* 104 S.Ct. 845, 848, 464 U.S. 548, 553 (1983).

A court's refusal to give a particular instruction constitutes reversible error where the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case. *Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 8 (1st Cir.2001), quoting *White v. New Hampshire Dept. of Corrections*, 221 F.3d. 254, 263 (1st Cir.2000); *Elliott v. S.D. Warren Co.*, 134 F.3d 1, 6 (1st Cir.1998). *See also Susan Wakeen Doll Co., Inc. v. Ashton-Drake Galleries*, 272 F.3d 441, 452 (7th Cir.2001)(to win new trial based on an erroneous jury instruction, moving party must show instruction did not adequately state law of the jurisdiction, to prejudice of moving party).

An erroneous jury instruction warrants a new trial if the preserved error, based on a review of the entire record, can fairly be said to have prejudiced the objecting party. *Forgie-Buccioni v. Hannaford Bros., Inc.*, 413 F.3d 175, 179 (1st Cir.2005).  In a civil case, a party is prejudiced when tolerating the error would be "inconsistent with substantial justice," Fed.R.Civ.P. 61, or would affect "a substantial right of [a] party," Fed.R.Evid. 103(a); *Elwood v. Pina*, *supra* 815 F.2d 173 at 177 (erroneous jury instruction necessitates new trial where error could have affected outcome of jury's deliberations); *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1127 (3rd Cir.1992), *cert. dismissed*, 506 U.S. 1042 (1992), (same).  As discussed below,

this Court's instructions on "intentional discrimination" and the "cat's paw theory" were erroneous and warrant the granting of a new trial.

> **A.    The Court's Instructions Erroneously Conveyed to the Jury That They Could Find Captain Ehlers' or Mr. Marquis' Decision to be "Intentional Discrimination" if Any of the Information Passed Along to Either of Them was Tainted by Any Bias.**

For the reasons set forth in AA's JNOV Memo at Sections I A (1) and I B, American requests that this Court grant a new trial. The jury instructions given on the "cat's paw" theory of liability, and the failure of this Court to properly instruct the jury on the "arbitrary or capricious" standard of 49 U.S.C. § 44902 constituted error that warrants a new trial.[9]   American was unfairly prejudiced by the instructions to the jury, timely preserved all objections, and sustained an adverse outcome because of them.

> **B.    There Was No Evidence of Unlawful Bias in What Was Reported to Captain Ehlers, But Even If There Was, it Clearly Had No Part in His Decision, or That of Mr. Marquis.**

For the reasons set forth in AA's JNOV Memo at Sections I B, I C and I D, the evidence does not support a finding that any information passed along to Captain Ehlers was tainted by unlawful discriminatory animus. The statements in Ms. Sargent's report (Tr. Ex. 18) and Ms. Milenkovic's (Tr. Ex. 19) do not allow for any inference of any unlawful discriminatory motive. Ms. Milenkovic was not even one of the flight attendants who reported her concerns directly to Captain Ehlers. Rather, she merely listened to her colleagues and her report recited her "heavy accent" observation about the passenger who had confronted Captain Ehlers in the gate area and later when boarding the aircraft.  Ms. Walling and Ms. Sargent had legitimate bases to go to

---

[9] In addition, for the reasons set forth in its JNOV Memorandum at Sections I E and I F, American was entitled to instructions on the effect of Section 44902(b), which would have included that it was protected by the immunity granted under the statute unless Mr. Cerqueira carried his burden of proving that the sole basis AA's decisions and actions was unlawful discrimination.

Captain Ehlers, including not only their own concerns, but also those expressed independently by passengers.

### III. THIS COURT'S RULING THAT LIMITED SSI, AS WELL AS EVIDENCE OF OTHER NON-SSI PROCEDURES, WAS UNDULY RESTRICTIVE AND PREVENTED AMERICAN FROM EFFECTIVELY PRESENTING ITS DEFENSES.

This Court's ruling that prohibited American from even mentioning or referring to the existence of Sensitive Security Information ("SSI") as it is defined in 49 CFR §1520. On December 13th, this Court initially ruled on plaintiff's motion *in limine* on this issue (Docket No. 66), and thereafter on December 14th, AA sought reconsideration and modification via a motion (Docket No. 74) and a supporting memorandum (Docket No. 76).

Thereafter, on the first day of trial, American's counsel raised this issue with the Court prior to opening statements. This Court stated that American "could not, through testimony or argument, make a claim that there is a standard of procedure which it met," unless that standard "is fully revealed, and subject to complete cross-examination." This Court also ruled that the plaintiff cannot suggest that there is a standard which American Airlines did not meet, and if he did, American personnel would be allowed to fully, completely, accurately and honestly answer the questions without revealing what the standard was. Later during the same proceeding, when undersigned counsel requested clarification as whether the existence of SSI could even be mentioned, this Court denied that request, stating that "No, it cannot be mentioned," and that there would be no "pretended reality" and that AA "could not use it any way as any shield."

While the Court did allow that if any questions from plaintiff's counsel raised the SSI issue, then AA witnesses would be allowed to answer, the Court's ruling on SSI prevented American from explaining certain of its actions and procedures, even on matters that were not

14

SSI or even touched on it. At one point, for example, Captain Ehlers sought to testify concerning that certain procedures he had to follow were reflected in his flight manual, which he had taken with him to the stand. The Court prevented him from giving his answer and took his flight manual from him in front of the jury. Similarly, when American's counsel sought to elicit testimony from AA employees about training in the Company's non-discrimination policy, the Court curtailed the inquiry or prohibited responses, apparently deeming the issue not probative or material.

These are but a few examples of how the Court's overbroad ruling left the jury with the distinct impression that the actions of American on the day in question could have been arbitrary, capricious or simply done on the basis of "making it up as we go along." Given the plaintiff's allegations, and the admission of the Consent Order reciting accusations of conduct by American that was undisciplined and undertaken without regard to any established procedures or consonant with any identifiable standards, the SSI ruling was error, as was its apparent expansion to include non-SSI issues and evidence. This contributed to the inability of American to fully and fairly present its defenses to Mr. Cerqueira's claims.

## IV.    THE COURT SHOULD ORDER A NEW TRIAL ON DAMAGES, OR IN THE ALTERNATIVE, ORDER A *REMITTITUR* ON BOTH THE COMPENSATORY AND PUNITIVE DAMAGES.

A new trial on damages alone is appropriate in the instant case because the trial proceedings were tainted by appeals to prejudice and because the amount awarded by a verdict, in light of the evidence, is so unreasonable that it would be unconscionable to permit it to stand. *Smith v. Kmart Corp.*, *supra*, 177 F.3d 19 at 32-33; *Huber v. JLG Industries, Inc.*, 344 F.Supp.2d 769, 776-77 (D.Mass. 2003). Alternatively, this Court has the discretion to order a *remittitur* if the damages are excessive in light of the evidence. *Ibid.* This Court has both the duty and the

discretion to lower the jury's verdict if it determines that the size of the verdict runs contrary to the weight of the evidence. *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 65-66 (1966); *Kearns v. Keystone Shipping Co., supra,* 863 F.2d at 181. Given the evidence presented by Mr. Cerqueira, this Court should grant a *remittitur* of the $400,000 verdict, because there was no basis for such an award in the trial evidence. *Consolo v. George*, 58 F.3d 791, 795 (1st Cir.1995), *cert. denied*, 58 F.3d 791 (1995) (*remittitur* is required if jury award exceeds rational appraisal of damages based on evidence).

> **A.    As a Matter of Law, AA is Not Responsible for Any Damages Sustained by Mr. Cerqueira Because of His Interrogation by the State Police and $130,000 in Compensatory Damages is Clearly Excessive.**

Even assuming that AA could be liable for the actions of the Massachusetts State Police as being a "reasonably foreseeable consequence" of Mr. Cerqueira's being removed for question, a proposition AA firmly rejects here, the compensatory damages awarded are excessive. Mr. Cerqueira's own testimony was to the effect that his damages were due to his being removed from the flight and thus "being treated like a terrorist," and then the "abject humiliation" of AA's subsequent refusal to book him on another flight later that day.[10]   The compensatory damages represent approximately one year of his prior earnings, and is thus clearly excessive. The Court should grant American a new trial on this basis alone, given that Mr. Cerqueira's sole "injury" was getting home to Fort Lauderdale one day later on another airline. Even if liability is found, nothing more than a nominal award for Mr. Cerqueira's inconvenience is justified, particularly given the evidence which showed that he never even sought psychiatric treatment until more than a year had passed since the incident.

---

[10] There was no competent evidence that it would have been feasible for AA to allow Mr. Cerqueira to travel on Flight 2237 when it ultimately departed.

### B.    The Facts of the Case Do Not Warrant the Awarding of Punitive Damages.

This Court should order a *remittitur* on the punitive damages award.  As noted above in footnote 4, the facts of the case are too benign and the award is clearly excessive. In reviewing a punitive damages award, the court should alter it when it is "certain that the amount in question exceeds that necessary to punish and deter the alleged misconduct." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 16 (1st Cir.2005) (internal quotation omitted).  "Because of our deference to the jury's calculation of damages-particularly in cases that involve little or no economic loss-we impose a heavy burden on the defendants to prove that the damage award is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'"  *Id.* (internal quotations omitted).

In the instant case, no such deference is required. The jury's verdict is clearly excessive given Mr. Cerqueira's complete failure to prove that American acted with "reckless indifference" to his civil rights or engaged in any willful or wanton misconduct.

### V.    ON BOTH LIABILITY AND THE AWARD OF DAMAGES, THE VERDICT IS SO CONTRARY TO THE CLEAR WEIGHT OF THE EVIDENCE THAT THE JURY SHOULD HAVE PROPERLY CONSIDERED, AA'S MOTION FOR A NEW TRIAL SHOULD BE GRANTED.

Mr. Cerqueira's entire theory of the case called for a fact finder to find "intentional discrimination" based upon his mere appearance, and a theory that he "looked Middle Eastern." The theory itself was as frail as it was suspect, and also suffered from a complete failure of corroboration or extrinsic proof.  Based upon the erroneous jury instructions and the admission of the unfairly prejudicial evidence in the form of the DOT Consent Order, American should be granted a new trial on both liability and damages.

## CONCLUSION

If this Court denies American's motion for JNOV, it should order a new trial, or a *remittitur* should be granted because the verdict on liability and damages is contrary to the clear weight of the evidence and this Circuit's guidelines for rendering punitive damages. Failing to order a new trial would result in an injustice to American Airlines, and this Court should use its discretion to prevent such a result.

Respectfully Submitted,

**AMERICAN AIRLINES, INC.**
By Its Attorneys,

/s/ *Michael A. Fitzhugh*_____
Michael A. Fitzhugh, (BBO #169700)
Amy Cashore Mariani, (BBO #630160)
**FITZHUGH, PARKER & ALVARO LLP**

Dated:  January 30, 2007
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 30, 2007.

/s/ *Michael A. Fitzhugh*_____
Michael A. Fitzhugh