UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN D. CERQUEIRA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO.: 05-11652 WGY |
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**AMERICAN AIRLINES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

American Airlines, Inc. ("American"), moves this Court to decrease the award for attorneys' fees and costs sought by the plaintiff.

**INTRODUCTION**

John D. Cerqueira ("Mr. Cerqueira"), filed the instant action against American, alleging that as yet unnamed personnel violated his civil rights by denying him air travel on December 28, 2003. Mr. Cerqueira alleged violations of the following civil rights statutes: 42 U.S.C., § 1981, 42 U.S.C., § 2000d; and G.L. c. 272, § 98. On January 12, 2007, the jury returned a verdict for Mr. Cerqueira and awarded him $130,000 in compensatory damages and $270,000 in punitive damages.

On January 30, 2007, Mr. Cerqueira filed a motion pursuant to the provisions of 42 U.S.C., § 1988, G.L. c. 151B, § 9 and Fed.R.Civ.P. 54(d)(2), asking this Court to award him attorneys' fees in the amount of $524,544.75, and costs in the amount of $19,299.06 because he is the "prevailing party" as that term is defined in the aforementioned statutes. Mr. Cerqueira also seeks to have the attorneys' fee award enhanced because of the level of success he achieved.

For the reasons set forth below, American opposes the relief requested by Mr. Cerqueira.

## ARGUMENT

American moves this Court to decrease the fee award sought by Mr. Cerqueira, because his litigation team was grossly overstaffed and the hourly rates sought are not reasonable as the term is defined in 42 U.S.C., § 1988 (the "Fees Act"). American also moves the Court to deny any enhancement of the lodestar amount, because the rare circumstances that warrant such an enhancement are not present in this case.

> **A.    Any Award of Attorneys' Fees Rendered by This Court Should be Limited to Use of the Lodestar Method, Which When Applied to This Case Warrants a Substantial Reduction From the Amount Claimed by Mr. Cerqueira's Counsel.**

The Fees Act provides in pertinent part: "[i]n any action or proceeding to enforce a provision of § 1981 . . . , the court in its discretion, may allow the prevailing party, . . . , a reasonable attorneys' fee as part of the costs." 42 U.S.C., § 1988. District courts use the lodestar method to determine the amount of attorneys' fees to award to the prevailing party. District courts also utilize the lodestar method in determining the amount of the fee award to a prevailing party in a case alleging discrimination under G.L. c. 151B. *See Dixon v. International Brotherhood of Police Officers,* 434 F.Supp.2d 73, 78 (D. Mass. 2006). "Ordinarily, the trial court's starting point in fee-shifting cases is to calculate a lodestar; that is to determine the base amount of the fee to which the prevailing party is entitled by multiplying the number of hours productively expended by counsel times a reasonable hourly rate. *Lipsett v. Blanco,* 975 F.2d 934, 937 (1st Cir.1992). "To determine the number of hours reasonably spent, one must first determine the number of hours actually spent and then *subtract* from that figure hours which were *duplicative, unproductive, excessive, or otherwise unnecessary. Grendel's Den, Inc., v.*

*Larkin,* 749 F.2d 945, 950 (1st Cir.1984) (emphasis added).[1]  As will be demonstrated by the ensuing discussion, the fees sought by Mr. Cerqueira's counsel run afoul of these principles.

> **B.   Mr. Cerqueira's Legal Team is Overstaffed And The Court Should Limit The Number of Attorneys and Paralegals For Whose Time Mr. Cerqueira Is Compensated.**

Mr. Cerqueira's legal team comprised thirteen individuals: ten attorneys, two paralegals and one law clerk.  This is excessive.[2]  *See United Nuclear Corp. v. Cannon,* 564 F.Supp. 581, 590 (D.R.I. 1983) (suggesting that in [the] fee-shifting milieu, district courts must zealously guard against any propensity to overstaff litigation).  The obvious overstaffing that took place in this case must be addressed by this Court.  Overstaffing can lead to a duplication of effort.  American refers the Court to *Hart v. Bourque, supra,* 798 F.2d at 523, also discussed more fully below, where the First Circuit decried dual attendance at hearings and refused to compensate the plaintiff for this time.  The court observed "[f]urther duplication of effort is observable by dual attendance at motion hearings, no matter how inconsequential.  This may have been good experience for the onlooker, it did not advance the case." *Id.*

---

[1] In *Grendel's Den*, the plaintiff's application for a liquor license was rejected after a church within a defined radius of the establishment objected to the issuance of the license, pursuant to a state statute.  The plaintiff was successful in a subsequent civil rights claim in which the statute was declared unconstitutional under the Establishment Clause, and sought and received attorneys' fees pursuant to 42 U.S.C., § 1988.  The defendants appealed the award and asked the court to critically examine the evidence of time spent and recalculate the fee award and arguing that the district court abused its discretion in failing to do so.  The First Circuit conducted an in-depth examination and determined that it was appropriate that the fee awards for plaintiff's legal team be reduced, based upon the hourly rate being decreased and other factors.  *See* discussion at 749 F.2d 952 – 959.

[2] In *Hart v. Bourque,* 798 F.2d 519 (1st Cir.1986), the plaintiff, administratrix for her deceased son's estate, filed suit against a police officer and various municipal agents alleging that her son was shot and killed due to a police officer's use of excessive force.  The parties executed a settlement agreement which reserved the plaintiff's right to seek attorneys fees under 42 U.S.C., § 1988.  The First Circuit reviewed time records establishing that plaintiff's legal team consisted of one lead counsel, six associates and five law students.  Upon reviewing the district court's memorandum and order, the *Bourque* court held that the fee petition required special review in light of the hours claimed and because the case was settled without trial.  Ultimately, the court reversed and remanded the case for a computation of fees that entailed a detailed review of the hours expended.  As examples, the First Circuit found that time charged for new attorneys reviewing the file due to turnover in plaintiff's attorney's office was "an office defect, not chargeable to defendants." *Id.* at 523.  The Court also advised a fee reduction for dual attendance at motion hearings as such dual attendance does not advance the case. *Id.*

In response to the overstaffing in this case, American moves this Court to decrease the number of attorneys and legal staff for whose time Mr. Cerqueira is compensated to the following: Mr. Godkin; Mr. Kirkpatrick; Ms. Cantelo; and Mr. Vogler.

### C. The Hourly Rates Sought by Mr. Cerqueira's Legal Team Are Excessive.

American also moves the Court to decrease the hourly rate sought by each of these members of Mr. Cerqueira's legal team. For guidance, American directs the Court to *Wilson v. McClure,* 135 F.Supp.2d 66 (1st Cir.2001)[3] in which this Court decreased the requested hourly rate of Harvey Schwartz, described as a "highly skilled civil rights attorney with years of experience [who] is quite prominent with the Boston legal community," from $330 to $250. *Id.* at 71. This Court determined that "a fee of $250 is a reasonable hourly rate for a civil rights attorney of Schwartz's outstanding quality." *Id.*

In like fashion, American moves the Court to decrease the hourly rates of both Mr. Godkin and Mr. Kirkpatrick to $250. Also in *Wilson,* this Court decreased the proposed hourly rate of a third year associate from $190 to $120 and cited with approval cases in this circuit that have approved hourly rates of $125 - $140 for associates and rates of $60 for paralegals. Thus, American moves the Court to decrease the hourly rate of Ms. Cantelo to $125; and decrease the hourly rate of Mr. Vogler to $60. Should this Court be inclined to consider the effect of inflation, it may take judicial notice of the Consumer Price Index website (http://www.bls.gov/cpi) which calculates the present day equivalent of these hourly rates as $284.58; $142.29; and $68.30, respectively. Thus, the revised fee amounts would be as follows:

---

[3] In *Wilson v. McClure,* 135 F.Supp.2d 66 (D.Mass. 2001), the plaintiff sued four defendants for race discrimination in violation of 42 U.S.C., § 1983. The jury returned a verdict against three of the defendants and included punitive damages. This Court, in reviewing the application for attorneys' fees, decreased the hourly rates of the attorneys including a prominent civil rights attorney who at the time had 25 years of experience as a civil rights attorney.

4

| **Name** | **Rate** | **Hours** | **Total Fees** |
|---|---|---|---|
| Godkin | $284.58 | 317.75 | $90,425.30 |
| Kirkpatrick | $284.58 | 802.55 | $238,389.68 |
| Cantelo | $142.29 | 258.25 | $36,746.40 |
| Vogler | $68.30 | 15.5 | $1,058.65 |
| **Totals** | | 1,394.05 | $366,620.03 |

The above amounts would be a mere starting point prior to any reduction based upon an excessive number of hours that were billed to this matter, as is treated in the discussion below.

**D.    The Time Records Submitted by Mr. Cerqueira's Legal Team Show Significant Inefficiencies, Which Warrant the Reduction of the Number of Billable Hours That Would be the Basis for Any Fee Award.**

American also disputes the hours billed by Mr. Cerqueira's two senior attorneys. Mr. Godkin and Mr. Kirkpatrick are both seasoned attorneys and, while this case may have involved an airline, it was still, at its core a case alleging race discrimination. As such, the expenditure of 1,120.3 hours by two highly skilled senior civil rights attorneys is patently excessive. In *Wilson, supra* the hours submitted by the prevailing plaintiff's attorney, Harvey Schwartz, an attorney also highly skilled in civil rights with twenty-five years experience, totaled 194.37 hours and his associates' time billed totaled 88.1. The total hours expended in *Wilson* was 282.5, a full 837.8 hours less than those billed by Messrs. Godkin and Kirkpatrick. American moves the Court to decrease this number of hours to one commensurate with the complexity of the claims asserted in this case.

Moreover, Mr. Godkin has endured a great deal of turnover in his office with a number of his associates either relocating or taking leave for various reasons. American should not be forced to compensate Mr. Cerqueira for the time spent by each subsequent associate to become

5

conversant with the facts and the law associated with this case and this Court should limit the number of staff for whose time Mr. Cerqueira is compensated to those named above. *See Hart,* 798 F.2d at 522-523 *supra* where the First Circuit determined that the turnover in plaintiff's counsel's office that caused multiple attorneys to bill hours for reviewing the file evidenced an office defect and the time expended was not chargeable to the defendants. While the aforementioned manpower and rate reductions may seem draconian, they are an apt response to Mr. Cerqueira's gross overstaffing of his legal team with ten attorneys.

> **1. An Initial Review of The Time Charges Indicates A Duplication of Efforts And/Or A Charge for Time Not Directed Toward The Desired Outcome, Each Necessitating Close Judicial Inspection and A Reduction or Exclusion of Those Items.**

American moves the Court to conduct a comprehensive review of the time records submitted by Mr. Cerqueira's legal team, and even a cursory review of them demonstrates the necessity of a close judicial inspection.

For example, Mr. Godkin's time entries for May 14, 17 and June 9, 2004 show that he reviewed the *Alshrafi* pleadings and decision, even though Mr. Cerqueira's MCAD claim was not even filed until October of that year. The *Alshrafi* case was not a part of the instant litigation and American should not have to compensate Mr. Cerqueira's counsel for that time. Mr. Godkin spent a total of 3 hours on these tasks for a total cost of $1170. On January 11, 2005, Ms. Perlman spent 1.5 hours preparing for an investigative conference at the MCAD after having spent an hour on January 4, 2005 speaking with the MCAD investigator. She then attended the January 12, 2005 investigative conference along with Mr. Godkin and expended another 2.5 hours. Ms. Perlman's time preparing for the conference was billed at $205 per hour and cost $845.

Another instance of a poor utilization of resources occurred at the trial in this action. While Mr. Godkin and Mr. Kirkpatrick shared the tasks of direct and cross-examination of the witnesses and delivering opening and closing arguments, Ms. Cantelo, a 2004 graduate of the Northeastern University School of Law, operated the projector during the entire trial. The time spent doing this task should have been assigned to a paralegal and that time should be discounted to a reasonable paralegal billing rate. Ms. Cantelo's time entries for the hours spent at trial should be discounted accordingly. The trial lasted six days, and the first four days the trial schedule was 9:00 a.m. – 1:00 p.m. for a total of 16 hours. During the last two days, the trial schedule was 9:00 a.m. – 5:00 p.m. Some of Ms. Cantelo's time entries are insufficiently descriptive to enable the Court to determine how she actually spent her time after the trial day ended, but presumably awaiting the jury's verdict, along with Mr. Godkin and Mr. Kirkpatrick, which time should not be allowed:

|  |  |  |  | Requested Fees |  | Proposed Fees |
|---|---|---|---|---|---|---|
| 1/8/07 | Trial Day 2 | Attend to materials for trial | 8.75 | $1312.50 | | $597.63 |
| 1/11/07 | Trial Day 5 | Trial Day 5 | 8.5 | $1275 | | $580.55 |
| 1/12/07 | Trial Day 6 | Trial Day 6 | 7.25 | $1087.50 | | $495.18 |
| | | **Totals:** | 24.5 | $2675 | | $1673.36 |

The entry for Trial Day 2 explains nothing and does not separate the four hours spent operating the projector from what other substantive work she may have performed after trial in the office. This failure should be borne by Mr. Cerqueira, not American. *See Davignon v. Clemmey,* 176 F.Supp.2d 77, 96 (D.Mass. 2001) ("the absence of detailed, contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award ... .").

7

      **E.     Mr. Cerqueira's Bill of Cost Should be Decreased to Reflect Only Those Costs Properly Allowed Under 28 U.S.C., § 1920.**

Mr. Cerqueira seeks reimbursement for his costs incurred during the course of the litigation. 28 U.S.C., § 1920, provides that "fees and disbursements for printing and witnesses can be collected." Mr. Cerqueira is attempting to recoup expert witness fees in the amount of $11,192.23 for the testimony of Drs. Faulk, Blumenthal and Laird, neither of whom testified at trial; Dr. Blumenthal's and Dr. Faulk's video depositions were played at trial, but as treating physicians – not expert witnesses. Thus, these fees should be disallowed as 28 U.S.C., § 1920 does not make provision for those costs for a claim filed under 42 U.S.C., § 1983. *See Ramos Padro v. Commonwealth of Puerto Rico,* 100 F.Supp.2d 99, 109 (D.Puerto Rico 2000). Courier fees and travel expenses are also not included in costs to the prevailing party, and therefore Mr. Cerqueira's request for $183.40 in courier expenses and $5,464.48 in fees should not be part of the award for costs. *See Wilson, supra* 135 F.Supp.2d at 74. Mr. Cerqueira's Bill of Costs should be decreased in the foregoing amounts.

      **F.     Any Lodestar Amount Should Not Be Enhanced Due To the Risks Inherent In Undertaking the Instant Action.**

Mr. Cerqueira moves that the lodestar amount be enhanced to acknowledge the risk his attorneys undertook when they agreed to represent him on a *pro bono* basis. The Supreme Court disagrees with that proposition and held that "enhancement [of the lodestar amount] for contingency is not permitted under the fee-shifting statutes at issue." *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). In formulating this doctrine, the *Dague* Court noted that "an attorney operating on a contingency fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not." *Id.* 505 U.S. at 565. When this Court interprets the Fees Act, an

attorney who takes a case *pro bono* should be treated similarly to one who takes a case on a contingency basis.

The First Circuit, in interpreting the Supreme Court's holding in *Dague,* held that "when a prevailing party seeks an attorneys' fee award in a civil rights case in pursuance of the Fees Act, enhancement of the lodestar because of counsel's risk of non-payment is <u>not</u> permitted." *Lipsett,* 975 F.2d at 943 (emphasis supplied). Thus, any lodestar amount awarded to Mr. Cerqueira should not be enhanced to the extent that it is premised upon a claim of his counsel having taken a risk.

Enhancement should also not be afforded due the results of the litigation. "There exists a strong presumption, not an outright ban, against exceptional performance/results enhancement." *Id.* at 942. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 566, 106 S.Ct. 3088, 3098 (1986) ("overall performance *ordinarily* should not be used to adjust the lodestar… .") (emphasis in original). Worth noting is that American has vigorously contested the jury's verdict via a motion for JNOV and also has sought a new trial on the basis that the damages awarded were excessive. On the latter point, the jury's award of punitive damages was more than twice the $130,000 in compensatory damages and cannot be reconciled to this Court's own expression of skepticism about the appropriateness of punitive damages during the hearing on the parties' cross-motions for summary judgment. Thus, not only do the other factors above militate against any enhancement, but a reasonable award in this case does not exceed the $130,000 in compensatory damages. The relief sought, over half a million dollars in attorneys' fees and triple the amount of compensatory damages, is so disproportionate to anything reasonable that this Court should reject it outright.

## CONCLUSION

American moves that the attorneys' fees and costs sought by Mr. Cerqueira be decreased for all of the foregoing reasons.

        Respectfully submitted,
        **AMERICAN AIRLINES, INC.**
        By Its Attorneys,

        */s/ Michael A. Fitzhugh*
        Michael A. Fitzhugh, (BBO #169700)
        Amy Cashore Mariani, (BBO #630160)
        **FITZHUGH, PARKER & ALVARO LLP**
        155 Federal Street, Suite 1700
        Boston, MA 02110-1727
        (617) 695-2330

Dated: February 12, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 12, 2007.

        */s/ Michael A. Fitzhugh*
        Michael A. Fitzhugh