UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN D. CERQUEIRA,

                Plaintiff,

v.                                                                    Civil Action No. 05-11652-WGY

AMERICAN AIRLINES, INC.,

                Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR A NEW TRIAL OR IN THE ALTERNATIVE FOR *REMITTITUR***

Pursuant to Fed. R. Civ. P. 50(b)(1)(B) and 59(a) and (e), defendant American Airlines (AA) has moved for a new trial or for *remittitur*. Doc. 124. As explained below, AA has failed to establish that it is entitled to a new trial or that the Court should reduce the jury's award of compensatory and punitive damages.

**STANDARD OF REVIEW**

This Court has recognized the high standard that must be met before it will grant a new trial: "A motion for a new trial is not to be taken lightly. Such an expensive, burdensome option should be exercised only when 'an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair.'" *MacNeill Eng'g Co., Inc. v. Trisport, Ltd.*, 126 F. Supp. 2d 51, 63 (D. Mass. 2001) (citations omitted). Thus, "'[a] district court should order a new trial only when convinced that the clear weight of the evidence so requires, or that a miscarriage of justice would otherwise result.'" *Consolo v. George*, 58 F.3d 791, 795 (1st Cir. 1995) (citation omitted); *see also Foisy v. Royal Maccabees Life Ins. Co.*, 356 F.3d 141, 146 (1st Cir. 2004); *The PH Group Ltd. v. Birch*, 985 F.2d 649, 653 (1st Cir. 1993).

In reviewing a damages award, "this Court is obliged to review the evidence in the light most favorable to the prevailing party." *Cahill v. TIG Premier Ins. Co.*, 47 F. Supp. 2d 87, 89 (D. Mass. 1999) (citations omitted). The jury's assessment of appropriate damages must be afforded great deference. *Id.* If the jury verdict is consistent with the evidence, the assessment of damages cannot be disturbed unless "the damage award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit the award to stand." *Forgie-Buccioni v. Hannaford Bros.*, 413 F.3d 175, 183 (1st Cir. 2005); *see also Consolo*, 58 F.3d at 795.

## ARGUMENT

**I.   The Court Did Not Err by Admitting the DOT Consent Order for the Limited Purpose of Showing That AA Was on Notice That Discriminatory Denials of Service Violate Civil Rights Laws.**

AA asks for a new trial because it claims that the admission of the DOT Consent Order (Trial Exh. 26), with a strict limiting instruction, was error and caused unfair prejudice to AA. AA's claim is without merit.

Eight months before the incidents on which this case is based, the DOT brought an administrative enforcement action against AA based on eleven separate instances in which AA unlawfully discriminated against passengers perceived to be of Arab, Middle Eastern, or South Asian descent by either removing them from flights or denying them boarding. The enforcement action was resolved ten months later by entry of a Consent Order finding that AA acted in a manner inconsistent with the requirements of federal civil rights law. At trial, Mr. Cerqueira attempted to introduce two public documents related to the DOT enforcement action: 1) the Notice of Enforcement Proceedings and Proposed Assessment of Civil Penalties, with attached Enforcement

Complaint (marked as proposed Trial Exh. T); and 2) the Consent Order (marked as proposed Trial Exh. U).

Mr. Cerqueira sought to introduce the documents for two purposes. First, with regard to liability, Mr. Cerqueira asked that the documents be admitted to show a discriminatory atmosphere as evidence of intent and motive. Second, with regard to punitive damages, Mr. Cerqueira asked that the documents be admitted to show that AA was on notice that federal civil rights law prohibits air carriers from denying service to passengers on the basis of perceived race or ethnicity.

The Court ruled before trial that Mr. Cerqueira would be allowed to introduce *one* of the two proposed exhibits, and *only* for the limited purpose of showing notice. The Court explained:

> The fact of the enforcement action, not for the truth but for notice to American Airlines, is admissible. . . . I will give a charge that this is not for the truth of anything, it's just for the fact of the existence of the complaint and that, notice to American Airlines that the authorities made this complaint.

Transcript of Pretrial Matters (Doc. 91) at 11:5-16. The Court then allowed AA to decide which of the two proposed exhibits was less prejudicial, and AA chose to have the Consent Order admitted rather than the Enforcement Complaint. *Id.* at 11:18-21; 13:15-21. The Consent Order, originally marked as proposed Trial Exh. U, was admitted as Trial Exh. 26.

At the time it was admitted in evidence, the Court instructed the jury that the Consent Order was admitted for the limited purpose of showing that AA was on notice that the DOT alleged that AA had engaged in discrimination, and that AA was "on notice of what the requirements are under the law." Trial Transcript, Vol. IV excerpts (Doc. 128), at 4:8-21; 5:22-6:1. The Court emphasized to the jury that it was not to consider any of the recitations in the Consent Order to be true. *Id.*

3

When the Court charged the jury, it again emphasized that Exhibit 26 was admitted for a limited purpose. Transcript of Jury Charge at 6:22-7:6.

    **A.    The Consent Order was properly admitted.**

AA asserts that it was error to admit the Consent Order because, according to AA, the Consent Order's own terms prohibited its use in this case for even a limited purpose. Doc. 125 at 2-3. AA is wrong. First, the provision of the Consent Order that purports to limit its use provides that its "findings" shall have no effect in proceedings not before the DOT. Trial Exh. 26 at 5 ¶ 6. The Court in this case instructed the jury not to consider the findings, but only the fact of the proceeding. Trial Transcript, Vol. IV excerpts (Doc. 128), at 4:13-15 ("It's not be considered by you that anything in here is true because American Airlines doesn't admit it."). Second, this Court is not bound by recitations in the Consent Order, and the cases cited by AA do not hold otherwise. Indeed, the three cases cited by AA to support its claim that the terms of the Consent Order preclude its use in this case have nothing to do with the admissibility of consent orders; rather, they are cases where one party to a consent order alleged a violation of the order by another party. *See Porrata v. Gonzalez-Rivera*, 958 F.2d 6 (1st Cir. 1992); *Inmates of Suffolk County Jail v. Kearney*, 928 F.2d 33 (1st Cir. 1991); *United States v. Boston Scientific Corp.*, 167 F. Supp. 2d 424 (D. Mass. 2001).

In arguing that the Consent Order should not have been admitted, AA relies primarily on *Kinan v. City of Brockton*, 876 F.2d 1029, 1034-35 (1st Cir. 1989), in which the First Circuit held that the district court did not abuse its discretion in excluding two agreed judgments that the plaintiff sought to introduce to prove that the defendant City had a custom or practice of violating constitutional rights. The First Circuit explained:

> [W]e agree with the district court that whatever remote relevancy the cases had on custom or practice was outweighed by the potential for prejudice. Fed. R. Evid. 403. We are not faced with a series of cases making similar claims and alleging similar facts as those in the case at issue. The two cases that plaintiff sought to introduce focused on the excessive use of force. They were not relevant to the issue here, the effect of an allegedly improper broadcast.

*Id.* The decision in *Kinan* is inapposite because this Court did not admit the Consent Order to prove custom or practice. Rather, the Consent Order was admitted for the limited purpose of showing notice. Moreover, the agreed judgments that the plaintiff sought to introduce in *Kinan* did not involve "similar claims" or "similar facts." *Id.* In contrast, AA admits that the DOT enforcement action involved eleven instances of discrimination similar to Mr. Cerqueira's claim. Doc. 125 at 8 (arguing that "the DOT's enforcement action was probative of Mr. Cerqueira's claim, because it complained of similar discriminatory treatment by American Airlines").

AA also asserts that the Consent Order should have been excluded pursuant to Fed. R. Evid. 408. Doc. 125 at 8. Rule 408 provides that evidence of compromise of a disputed claim is not admissible to prove liability for the claim, but the rule does not require exclusion if the evidence is offered for other purposes. Because the Consent Order was not admitted to prove liability, but only to show notice, Rule 408 is inapposite. Further, AA's reliance on *McInnis v. A.M.F., Inc.*, 765 F.2d 240 (1st Cir. 1985), is misplaced. In *McInnis*, the First Circuit found that the trial court erred in admitting evidence of the plaintiff's settlement with a third-party joint tortfeasor. Because the settlement "was offered as relevant to the issue of causation," and "without causation there can be no liability," the settlement was inadmissible under Rule 408. *Id.* at 248. In contrast, the Consent Order at issue here was admitted to show notice, not to prove liability.

5

### B. The jury could properly consider the Consent Order in deciding whether to award punitive damages.

Mr. Cerqueira sought punitive damages under the theory that AA's actions demonstrated a reckless or callous indifference to Mr. Cerqueira's rights protected by federal and state law. Punitive damages are available in a federal civil rights case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves recklessness or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) (explaining that "'reckless indifference' pertain[s] to the [defendant]'s knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination"); *Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 25 (1st Cir. 2006) (upholding an award of punitive damages because the decisionmaker knew that the type of discrimination complained of violates the law). Similarly, under Massachusetts law, punitive damages are available to any person subjected to discrimination in a place of public accommodation. *See* M.G.L. c. 272 § 98 (providing for recovery of the damages enumerated in M.G.L. c. 151B § 9) and M.G.L. c. 151B § 9 (allowing recovery of "actual and punitive damages"). Punitive damages are authorized under Massachusetts law on the same basis as federal law. *McDonough v. City of Quincy*, 452 F.3d 8, 24 n.10 (1st Cir. 2006). Because the DOT Consent Order is evidence that AA was on notice that the type of discrimination proved by Mr. Cerqueira is illegal, the Consent Order was properly admitted for the purpose of showing that AA was aware of the risk that its actions would violate the law.

AA claims that it was unfairly prejudiced by admission of the Consent Order because the jury's consideration of the exhibit "resulted in . . . an award of punitive damages against American."

Doc. 125 at 5; *see id.* at 3 n.3. But establishing a basis for an award of punitive damages—under the theory that AA acted with reckless disregard of Mr. Cerqueira's civil rights—was the very purpose for which the exhibit was admitted and used. Indeed, the excerpt of Mr. Cerqueira's closing argument quoted on page seven of AA's memorandum confirms that the Consent Order was mentioned *only* in the context of punitive damages and *only* with regard to establishing notice as an element of reckless disregard. Doc. 125 at 7. Significantly, AA never objected to the Court's charge on punitive damages (*see* Transcript of Jury Charge at 26:14-22), nor did AA object to the Court's response to the jury's request for further explanation of "reckless disregard of civil rights." Transcript of Jury Questions, Trial Day 6, at 11:3-23.

    **C.**     **There is no indication that the jury disregarded the Court's instructions and considered the Consent Order as proof of liability.**

AA asserts that the jury must have disregarded the Court's strict limiting instruction and considered the Consent Order as proof of liability. AA claims that "[i]t is clear that in this case, the jury relied upon the Consent Order to serve as evidence of a purported pattern or practice of discriminatory behavior on the part of American Airlines," but AA offers nothing but speculation to back up its claim. Doc. 125 at 5. Thus, AA has failed to show that "an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." *MacNeill Eng'g,* 126 F. Supp. 2d at 63; *see also Pinkham v. Maine Cent. R.R. Co.*, 874 F.2d 875, 882 (1st Cir. 1989) (holding that where there is no indication that the jury was confused or misled by the court's instructions, "it must be presumed that the jurors understood the instructions, followed them correctly, and based their verdict on the instructions") (citations omitted); *accord United States v.*

*Lemmerer*, 277 F.3d 579, 593 (1st Cir. 2002) (recognizing the "longstanding presumption that jurors normally follow the instructions given them by the trial court") (citations omitted).

First, AA asserts that admission of the Consent Order must be the reason it lost this case because, according to AA, "it is apparent that the evidence proffered was insufficient to warrant a finding of liability." Doc. 125 at 6. To the contrary, and as set forth in detail in plaintiff's opposition to defendant's renewed motion for judgment as a matter of law, Mr. Cerqueira presented ample evidence of intentional discrimination, *none* of it drawn from the Consent Order. Mr. Cerqueira proved that the only passengers removed from flight 2237 and denied further service had a similar Middle Eastern appearance. He proved that the flight attendants thought the removed passengers were traveling together, looked similar, had foreign appearances, Middle Eastern passports, Arabic names, and heavy accents. Mr. Cerqueira proved that he did nothing but engage in common airline passenger behavior that does not ordinarily result in a denial of service. And he showed that AA's claim that he was removed and denied further service because of "security issues" was simply not believable, because AA's explanations for its actions were riddled with inconsistencies and a pattern of embellishment. Thus, the jury had sufficient evidence from which to conclude that but for the perception that Mr. Cerqueira was from the Middle East and traveling with the Middle Eastern men seated next to him, AA would not have removed Mr. Cerqueira from flight 2237 and refused to rebook him on any AA flight.

Second, AA claims that the jury must have disregarded the Court's instructions and considered the Consent Order as evidence of a discriminatory atmosphere or pattern of discrimination because Mr. Cerqueira had argued, outside the presence of the jury, that the Consent Order should be admitted for that purpose. But the Court did not admit the Consent Order for such

a purpose, and instead the Court gave a strict limiting instruction emphasizing that the jury could not consider any of the recitations in the Consent Order to be true, but only that the DOT enforcement action had put AA on notice regarding its responsibilities under the law. Trial Transcript, Vol. IV excerpts (Doc. 128), at 4:8-21; 5:22-6:1; *see also* Transcript of Jury Charge at 6:22-7:6. Mr. Cerqueira's closing argument adhered to the Court's instructions and did not suggest that the Consent Order was probative of liability. Indeed, AA did not object to Mr. Cerqueira's closing argument.

### D. There is no indication that the Consent Order caused jury confusion regarding the applicable law.

Finally, AA complains that the Consent Order might have confused the jury regarding the applicable law because the Consent Order included a recitation of the DOT's and AA's conflicting views of whether a pilot, to avoid corporate liability for actions motivated by the discriminatory animus of a crew member, must inquire as to the facts. AA's concern regarding potential jury confusion is unfounded. First, the jury was instructed that this Court alone is responsible for stating the applicable legal standards. Transcript of Jury Charge at 2:23 ("[Y]ou must follow the law the way I explain it."); 4:7 (same). Second, the jury was instructed that the Consent Order was not to be considered for the truth of any recitation in it, but only to establish notice. Trial Transcript, Vol. IV excerpts (Doc. 128), at 4:8-21; 5:22-6:1. Third, the Consent Order does not resolve the difference in AA's and DOT's view of the law; it merely notes that the parties to the enforcement action disagreed. *See* Trial Exh. 26 at 2 and n.2. Fourth, if AA was concerned that the jury would be "confused and therefore swayed by the lurid allegations" in the Consent Order (Doc. 125 at 6-7),

9

AA could have elected to have the Enforcement Complaint introduced instead. *See* Transcript of Pretrial Matters (Doc. 91) at 11:18-21; 13:15-21.

In any event, the disputed legal issue referenced in the Consent Order has little to do with this case. AA asserts that an airline is immune from liability for discrimination where a pilot acts on biased information from a crew member motivated by discriminatory animus, because, according to AA, ordinary agency principles regarding subordinate bias liability do not apply in the aviation context. But AA's novel theory would apply, if at all, only to situations where 1) the biased information, if true, would provide a rational safety-related justification for the pilot's decision; and 2) time constraints or security considerations prevent the pilot from investigating the veracity of, or motivation for, the biased subordinate's representations. Neither condition was met in this case. *See* Plaintiff's Opposition to Defendant's Renewed Motion for Judgment as a Matter of Law at Section V(A).

**II.     The Court Properly Instructed the Jury on the Elements of Intentional Discrimination and Corporate Liability for the Discriminatory Acts of Employees.**

AA asserts that "this Court's instructions on 'intentional discrimination' and the 'cat's paw theory' were erroneous and warrant the granting of a new trial." Doc. 125 at 13. As its basis for this assertion, AA simply repeats and references the arguments it made in its memorandum in support of its renewed motion for judgment as a matter of law. *See* Doc. 123. AA's assertion is meritless, as explained in detail in Mr. Cerqueira's opposition to defendant's renewed motion for judgment as a matter of law, and, even if an error had occurred, it was not "so grievous as to have rendered the trial unfair." *MacNeill Eng'g*, 126 F. Supp. 2d at 63. Moreover, although AA objected to the subordinate bias instruction given during the initial jury charge (Transcript of Jury Charge at 30:21-

31:3), AA failed to make a timely objection when, in response to a jury question, the Court further instructed the jury regarding subordinate bias liability. *See* Transcript of Jury Questions, Trial Day 6, at 5:15-10:19. Because AA did not preserve its objection to the more-detailed instruction given in response to the jury question, the objection has been waived. *See* Fed. R. Civ. P. 51; *see also Scarfo v. Cabeltron Sys., Inc.*, 54 F.3d 931, 939-40 (1st Cir. 1995); *Senra v. Cunningham*, 9 F.3d 168, 171 (1st Cir. 1993); *Lash v. Cutts*, 943 F.2d 147, 152 (1st Cir. 1991).

### III.  The Court Properly Excluded Any Reference to Policies, Protocols, or Training Materials That AA Refused to Produce in Discovery.

The Court granted Plaintiff's Sixth Motion in Limine (Doc. 47) and excluded any reference to policies, protocols, or training materials that had not been produced in discovery, including those withheld pending a determination of whether they contain sensitive security information. Electronic Order of Dec. 13, 2006. During discovery, Mr. Cerqueira had requested that AA identify, describe, and produce such materials, but AA refused to do so pending a determination of whether the information was "sensitive security information" subject to the provisions of 49 C.F.R. § 1520. The Court properly ruled that AA could not use information that was not equally available to Mr. Cerqueira. The Court's ruling simply put both parties on an even playing field by preventing AA from making claims that Mr. Cerqueira could not test. AA moved for clarification and reconsideration of the Order. Doc. 74. The Court denied reconsideration but clarified its ruling. Transcript of Pretrial Matters (Doc. 91) at 3:1-15.

Without citation to any authority, AA claims that the Court's ruling "was error" that "contributed to the inability of American to fully and fairly present its defenses to Mr. Cerqueira's claims." Doc. 125. This conclusory allegation is insufficient to warrant a new trial. *See Consolo*,

58 F.3d at 146 ("A district court should order a new trial only when convinced that the clear weight of the evidence so requires, or that a miscarriage of justice would otherwise result.") (citation and internal quotes omitted).

IV.  **AA Has Not Shown That it Is Entitled to a New Trial on Damages Or, in the Alternative, a *Remittitur*.**

In considering the propriety of damages awarded by a jury, the evidence must be viewed in the light most favorable to the prevailing party, and the jury's assessment of appropriate damages must be afforded great deference. *Cahill*, 47 F. Supp. 2d at 89. If the jury verdict is consistent with the evidence, the assessment of damages cannot be disturbed unless "the damage award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit the award to stand." *Forgie-Buccioni*, 413 F.3d at 183.

    A.  **Mr. Cerqueira suffered significant damages that more than justify the $130,000 compensatory damages award.**

AA asserts that the award of $130,000 in compensatory damages is excessive because, according to AA, "Mr. Cerqueira's sole 'injury' was getting home to Fort Lauderdale one day later on another airline," and "nothing more than a nominal award for Mr. Cerqueira's inconvenience is justified." Doc. 125 at 16. AA has ignored the substantial and uncontraverted evidence of the damages suffered by Mr. Cerqueira.

Mr. Cerqueira testified that, as a result of the trauma he experienced on December 28, 2003, he suffered severe emotional distress. Mr. Cerqueira testified that due to depression, anxiety, and fear, he had difficulty performing basic living activities, such as eating, bathing, and working. Mr. Cerqueira presented the testimony of a treating physician and treating psychiatrist who corroborated his claims. Less than three weeks after the incidents, Dr. Barry Blumenthal, Mr. Cerqueira's primary

care physician, diagnosed Mr. Cerqueira with Post Traumatic Stress Disorder and referred Mr. Cerqueira to a psychiatrist for treatment. Trial Exh. 23. Since January 2005, Mr. Cerqueira has been under the care of Dr. Richard Faulk, a board-certified psychiatrist. Dr. Faulk testified that he diagnosed Mr. Cerqueira with an anxiety disorder caused by the incidents of December 28, 2003. Mr. Cerqueira continues to see Dr. Faulk and to take Zoloft to treat his condition.

Mr. Cerqueira also testified that he was unable to work for the first four months of 2004 because of a deep depression and fear of air travel caused by the incidents of December 28, 2003, and he worked a reduced schedule for the remainder of 2004. This resulted in lost income of about $111,748, as shown by comparing Mr. Cerqueira's average earnings for 2002, 2003, and 2005 with his income for 2004. Trial Exhs. 11-14. Thus, there was ample evidence to support the jury's award of $130,000 in compensatory damages.

### B. AA did not object to the Court's punitive damages instruction; thus, AA has waived its claim that there was an insufficient evidentiary basis for the award.

AA's argument in favor of a *remittitur* of the punitive damages award is made in a single, conclusory sentence, devoid of any citation: "The jury's verdict is clearly excessive given Mr. Cerqueira's complete failure to prove that American acted with 'reckless indifference' to his civil rights or engaged in any willful or wanton misconduct." Doc. 125 at 17. To the extent AA is arguing that the jury lacked a sufficient evidentiary basis to award punitive damages in any amount, AA waived this argument by failing to object to the Court's punitive damages instruction. *See* Fed. R. Civ. P. 51; *see also Scarfo*, 54 F.3d at 939-40; *Senra*, 9 F.3d at 171; *Lash*, 943 F.2d at 152.

**C.    The jury's punitive damages award is justified and reasonable.**

Regardless of whether AA objects to punitive damages in general or just to the amount awarded by the jury, AA's argument ignores the evidence presented at trial. The jury found that AA intentionally discriminated against Mr. Cerqueira because of his perceived race or ethnicity when Capt. Ehlers had Mr. Cerqueira removed from flight 2237 and when Mr. Marquis decided that Mr. Cerqueira would be denied rebooking on any AA flight even though Mr. Cerqueira had been cleared for travel by the Massachusetts State Police. Having found such intentional discrimination, the jury was justified in awarding punitive damages on the basis of *additional* evidence that AA acted with reckless indifference to whether its treatment of Mr. Cerqueira would violate his civil rights.

First, both of AA's decisionmakers—Capt. Ehlers and Mr. Marquis—testified that, on December 28, 2003, they were aware that if a passenger was refused service because of his perceived race or ethnicity, such a refusal of service would violate civil rights laws. Second, the DOT Consent Order demonstrates that AA was on notice that discrimination of the type proved by Mr. Cerqueira is unlawful. *See* Trial Exh. 26. Third, Mr. Marquis testified that he is aware of situations in which AA pilots sought to refuse service to certain passengers because of the passengers' ethnicity, but in an interrogatory response read to the jury, AA admitted that, during the last five years, it has not disciplined any employee for engaging in such discrimination.

The evidence described above was *in addition* to the evidence necessary to establish liability. Thus, it provided the "something more" that Mr. Cerqueira was required to prove to justify an award of punitive damages. Transcript of Jury Charge at 25:22 (explaining that an award of punitive damages "requires Mr. Cerqueira to prove something more"). Without objection from AA, the Court instructed the jury that

> punitive damages are appropriate if you come to believe that Mr. Cerqueira has proved that American acted in reckless disregard of Mr. Cerqueira's civil rights. And to act in reckless disregard is not to care about his civil rights, not to care what civil rights he has, to intentionally discriminate against him on the basis of perceived race or ethnicity with reckless disregard of the fact that, in fact, he has civil rights.

*Id.* at 26:14-22; *see also* Transcript of Jury Questions, Trial Day 6, at 11:16-20 ("It's more than just that American discriminated against him, it's that did they do so not caring about his civil rights; going ahead, recklessly, without reflection or care of what civil rights he may have had."); *See Bisbal-Ramos*, 467 F.3d at 25 (upholding an award of punitive damages because the decisionmaker knew that the type of discrimination complained of violates the law); *McDonough*, 452 F.3d at 24 (holding that "malice and reckless indifference concern, not the [defendant]'s awareness that it is discriminating, but the [defendant]'s knowledge that it is acting in violation of federal law").

## CONCLUSION

The Court should deny AA's motion for a new trial or for *remittitur*.

                                                          **JOHN D. CERQUEIRA**
By his attorneys,

*/s/ Michael T. Kirkpatrick*
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC  20009
(202) 588-1000
mkirkpatrick@citizen.org

David S. Godkin (BBO #196530)
Darleen F. Cantelo (BBO #661733)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA  02210
Dated: February 13, 2007        617-307-6100

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 13, 2007.

            */s/ Michael T. Kirkpatrick*
            Michael T. Kirkpatrick