UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO.: 05-11652 WGY<br>)<br>)<br>)<br>) |

**AMERICAN AIRLINES, INC.'S REPLY MEMORANDUM TO PLAINTIFF'S
OPPOSITIONS TO MOTION FOR JNOV AND NEW TRIAL**

American Airlines, Inc. ("American"), submits the instant Reply Memorandum in response to the plaintiff's oppositions to American's post trial motions for JNOV and alternatively for a new trial.

**A.   American Did Not Waive the Issue of the "Cat's Paw" Jury Instruction that Was Given In Response to a Question From the Venire.**

Attached as "Exhibit A" is a portion of the transcript from day 6 of the trial of the instant action. It reflects this Court's response to the jury's request for clarification on the meaning of "intentional discrimination." The question is actually answered by the fourth page of the transcript, but this Court went on to thereafter reiterate the "Cat's Paw" instruction that American had repeatedly resisted by way of prior objections. As page 10 of the attached transcript excerpt demonstrates, this Court sought to dismiss the jury at 9:47 a.m. immediately after giving the instruction, and American's counsel objected immediately. The time stamps (both of which are 9:47 according to the Official Court Reporter's designations), demonstrate that American's counsel objected as soon as it was feasible and upon realizing that this Court

was going to dismiss the jury. American did not waive any objection to this instruction, and its counsel acted consistent with the dictates of Rule 51(c)(2)(B), and any such contention is contradicted by the record.

>   **B.  Mr. Cerqueira Proffered an Inaccurate Recitation of the Evidence that He Contends Supports the Verdict, and American's Motion for JNOV Should be Allowed.**

Mr. Cerqueira completely distorts or simply mischaracterizes much of the so-called evidence he claims supports a claim of discrimination. He neglects to mention that the Flight Attendants' reports were generated after the incident and are, at most, "stray remarks" of nondecision-makers that are not actionable. *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96 (1st Cir.1996). Also, the Flight Attendants' reports fall within the rule that even if stray remarks are relevant for a pretext inquiry, their probative value is circumscribed if they were made in a situation temporally remote from allegedly discriminatory conduct, or if they were not related to conduct in question or were made by nondecision-makers. *McMillan v. Mass. Soc. for Prevention of Cruelty To Animals*, 140 F.3d 288, 300 (1st Cir.1998), *cert. den.*, 525 U.S. 1104 (1999). *See also, Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir.2001), *aff'd*, 250 F.3d 23 (1st Cir.2001), *citing McMillan*, 140 F.3d at 301.

In addition, the attack on Captain Ehlers' credibility due to purported testimonial "inconsistencies" is baseless. First of all, he never denied that he made the decision to have Messrs. Cerqueira, Ashmil and Rokah removed from the flight for further questioning. He has steadfastly contended, however, that it was the Massachusetts State Police who told him that "these people are not going with you – it's out of your hands now." Mr. Cerqueira tries to purposefully blur this distinction in his Oppositions, and it is a calculated effort to distort the evidence. Similarly, Captain Ehlers testified that the configuration of the MD-80 aircraft did not

allow him to see Mr. Cerqueira (who was seated near the window) when he looked toward the rear of the aircraft at one point, and he saw the pony-tailed passenger in the aisle seat. Captain Ehlers could see that gentleman, but not Mr. Cerqueira and his testimony was never contradicted on the point that when he made his decision to have the three of them removed for further questioning, he had never previously seen Mr. Cerqueira nor had any other basis to learn of his appearance, or otherwise determine his race or ethnic origin.

Finally, as Ms. Sargent testified, she thought that the three gentlemen were indeed traveling together because of Mr. Cerqueira's reaction to the "what should I do with the door after I open it" remark made by Mr. Ashmil or Mr. Rokah. As she explained, the fact that this remark didn't make Mr. Cerqueira appear concerned caused her to believe that they were friends or traveling together. Her testimony, as one of the people relied upon by a decision-maker (Captain Ehlers),[1] when taken in conjunction with that of Ms. Walling that recited her own concerns, <u>and those of other passengers</u>, make the jury's finding one that cannot be affirmed here.

American directs this Court's attention to *Alvarez-Fonseca v. Pepsi Cola of Puerto Rico,* 152 F.3d 17 (1st Cir.1998), wherein the court discusses the proposition that under some circumstances in discrimination cases, a jury's choosing to disbelieve a proffered reason and consider it a pretext is simply so irrational and irreconcilable with the overwhelming evidence that judgment as a matter of law is warranted for the defendant. In *Pepsi Cola*, the First Circuit upheld a JNOV for the defendant employer after a jury verdict in favor of a former employee who claimed that Pepsi's decision to terminate the plaintiff for fighting was a pretext for age discrimination. In its analysis of the evidence, the First Circuit noted that even if a reasonable

---

[1] As opposed to the remarks of Ms. Milenkovic, whose observations were not relied upon by any decision-maker.

3

jury could have questioned Pepsi's credibility due to some minor inconsistencies in its case, this alone was not sufficient to enable the jury to infer pretext, nor was it sufficient to enable the plaintiff to carry his burden of proving intentional discrimination.[2] *Id.,* 152 F.3d at 25-27.

> C. **The Court's Jury Instructions That Failed to Mention American's Rights and Duties Under Section 44902(b) Were Unfairly Prejudicial.**

Mr. Cerqueira's claim that the jury instructions afforded American the substantial equivalent of the correct governing legal principles is insupportable. Aside from the fact that the "Cats' Paw" doctrine is simply irreconcilable with Section 44902(b), Mr. Cerqueira's argument suffers from another fatal flaw. If he is correct, then every case where a plaintiff in a protected class who is denied service for security concerns will demand that Section 44902(b) be jettisoned as irrelevant. Judges and juries will necessarily have to excise this statute from any analysis of a case's facts. Cases will ultimately be segregated into two classes with two sets of standards: (1) for those who are members of a protected class who bring discrimination-based claims, where Section 44902(b) will not even be mentioned or considered; and (2) other passengers who are not in a protected class and bring breach of contract and tort-based claims, and will have to show that an airline's actions were not protected by the immunity granted by Section 44902(b).

For those cases in the first category, *Dasrath v. Continental Airlines, Inc.,* -- F.Supp.2d --, 2006 WL 3759715, *15 (D.N.J. Dec. 22, 2006) and all of the cases preceding it will be relegated to the status of insignificant peccadilloes. The Captain's actual state of mind will become irrelevant. The effect upon airline operations may likely cause flight crews and Captains to make decisions that will be subject to two different standards, depending upon whether the passenger in question is in a protected class or not. In the case of those passengers who are, a Pilot in

---

[2] "The fact that Pepsi's proffered explanation was not entirely consistent does not give a jury license to disbelieve all of the uncontradicted evidence indicating that Alvarez was discharged as a result of the fight." *Id.,* 152 F.3d at 25.

4

Command will be tempted to consider not whether the person is inimical to safety, but instead if she or he will be sued personally along with the airline, and whether the outcome of the litigation is likely to be favorable. There is a potential for decision-makers to be influenced, if not intimidated, into making such decisions based not upon their training and the discretion afforded to them by Section 44902(b), but rather, predicated on the specter of litigation. This is not the manner in which the industry should function.

## CONCLUSION

For all of the foregoing reasons, American requests that this Court grant its Motion for JNOV or in the alternative, for a new trial.

>Respectfully submitted,
>**AMERICAN AIRLINES, INC.**
>By Its Attorneys,
>
>*/s/ Michael A. Fitzhugh* _____
>Michael A. Fitzhugh, (BBO #169700)
>Amy Cashore Mariani, (BBO #630160)
>**FITZHUGH, PARKER & ALVARO LLP**
>155 Federal Street, Suite 1700
>Boston, MA 02110-1727
>(617) 695-2330

Dated: February 20, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 20, 2007.

>*/s/ Michael A. Fitzhugh* _____
>Michael A. Fitzhugh

Case 1:05-cv-11652-WGY    Document 132-2    Filed 02/20/2007    Page 1 of 12
CERQUEIRA v. AMERICAN AIRLINES
Transcript of Jury Questions - Day 6

```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS

                    Civil Action No. 05-11652-WGY

JOHN D. CERQUEIRA,     )
                       )
     Plaintiff,        )
                       )
                       ) TRANSCRIPT of JURY QUESTIONS
v.                     )
                       )     Jury Trial - Day 6
AMERICAN AIRLINES, INC.,)
                       )
     Defendant.        )

BEFORE:  The Honorable William G. Young, District Judge,
                     and a Jury

APPEARANCES:

     BIRNBAUM & GODKIN, LLP
     By: David S. Godkin, Esq.
         Darleen F. Cantelo, Esq.
     280 Summer Street
     Boston, Massachusetts  02210
     - and -
     PUBLIC CITIZEN LITIGATION GROUP
     By: Michael T. Kirkpatrick, Esq.
     1600 20th Street, N.W.
     Washington, D.C.  20009
     On behalf of John D. Cerqueira

     FITZHUGH, PARKER & ALVARO LLP
     By: Michael A. Fitzhugh, Esq.
     155 Federal Street - Suite 1700
     Boston, Massachusetts  02110-1727
     - and -
     AMERICAN AIRLINES
     By: Alec Bramlett, Senior Attorney
     MD 5675 - P.O. Box 61916
     Dallas/Ft. Worth Airport, Texas  75261-9616
     On behalf of American Airlines
ALSO PRESENT: Melissa M. Wangenheim, Paralegal
                          One Courthouse Way
                          Boston, Massachusetts
                          January 12, 2007
```

Page 2

```
 1            THE CLERK:  All rise for the jury.
 2            (Jury in at 9:31 a.m.)
 3            THE CLERK:  Court is in session.  Please be
 4  seated.
 5            THE COURT:  I've received the following
 6  question, and I'll read it.
 7            "Dear Judge Young:  Please clarify the use of
 8  and define 'intentional' in the context of Question 3
 9  that we are deliberating.  Thank you."
10            Is that the question, Madam Forelady?
11            THE FOREPERSON:  Yes.
12            THE COURT:  Is that the question, ladies and
13  gentlemen of the jury?
14            THE JURORS:  Yes.
15            THE COURT:  To that question I make this answer:
16  Now, I use that word in a phrase, and the phrase is
17  this:  Intentionally discriminating by virtue of or by
18  reason of or because of perceived race or ethnic
19  background.  So there's really three things that --
20  since you want the context, I have to again explain
21  three things.
22            To discriminate means to treat differently.  To
23  treat different than other people.  I gave you a
24  completely innocuous, a completely appropriate example
25  of what someone could say was discrimination:  my grading
```

1   papers in my exam.  I do it for the appropriate reasons,
2   but I have to do it because some people wrote better
3   exams than other people wrote.  You could say that's
4   discrimination, but there's nothing wrong with that; it
5   happens all the time.
6           In this case, if you believe that Mr. Cerqueira
7   was treated differently, taken off the plane, denied
8   rebooking, that may be perfectly all right because the
9   airline, as I've already told you, has every right; has
10  the duty to ensure the safety of the flying public and
11  its own ground and air crews.  But it may not be.
12          The first part of the phrase, the phrase that
13  you asked about, is "intentional discrimination."  Now,
14  to intend something simply means that you know what
15  you're doing and you go ahead and do it.  An example
16  I've used in other cases, if I were to take this carafe
17  of water and fill this cup, then hold it out and crush
18  the cup, from -- and you believe those are the facts,
19  from those facts standing alone you could infer I
20  intended that the water would run out because that's a
21  natural consequence of crushing the cup.  So
22  "intentional" simply means to know what you're doing and
23  go ahead and do it.
24          Another example: I have the light switches up
25  here.  It's in my mind.  Ms. Smith has some there.  And

1  we can dim them if we're presenting something on a
2  screen.  Now, when I go ahead and press them, I'm
3  intentionally dimming the lights.  I also -- as I get
4  carried away explaining things to the jury, I've been
5  known to go like this (indicating) and all the lights go
6  out.  Now, it happens, but I didn't intend it.  It's
7  careless.  I forgot that the switches are right here.
8  So we're talking about intentional discrimination.
9           But then there's the third part:  Why?  By
10 reason of perceived racial or ethnic background.  Even
11 if there were acts that could be characterized as
12 discriminatory, and even if those acts were intentional,
13 and a person with authority gives direction: "Clear the
14 plane; take them off the plane; don't rebook Mr.
15 Cerqueira," or gives directions, and you were to find
16 that person knows what they're doing and they do it,
17 why?  Why did they do it?  There may be an appropriate
18 motivation: safety, security of the flight; there may be
19 an inappropriate, indeed illegal motivation because
20 there's the perception that -- of the person's race or
21 ethnic background.
22          That's how I -- and then I went on to say:
23 Suppose -- and I'll give you the whole picture again.
24 When you look at the "why" point, you think of a couple
25 of things: well, who's making the decision?  Because

Case 1:05-cv-11652-WGY   Document 132-2   Filed 02/20/2007   Page 5 of 12
CERQUEIRA v. AMERICAN AIRLINES
Transcript of Jury Questions - Day 6

Page 5

1   American -- there's evidence that American is, as
2   companies are, they're a bureaucracy; they're a
3   hierarchy.  And, indeed, on a plane there would be a
4   more formalized hierarchy.  There are lower-level
5   people, there are higher people leading up to the
6   captain who, like a captain of a ship -- he's not
7   military -- but he's the person in charge of flying,
8   taking off, landing the plane.  Again, I'm not to talk
9   about evidence, but you could find that.  And that
10  person -- the way we've heard the testimony, that
11  person, he coordinates with various people - and given
12  today's communications, they can be way off in Texas -
13  and they have whatever authority they have, and they
14  coordinate back and forth.
15          So the actions of each level of person, so long
16  as they're employed by American, those are American's
17  actions.  So one, you want to say is: at each level was
18  that person -- why was that person motivated to make the
19  recommendations to say the things that that person said
20  or ordered?  You ask yourself whether they had a proper
21  motivation or an improper motivation.  Then the one
22  other strain on this - and keep in mind my original
23  charge, but I'm touching on it again - suppose you were
24  to think - and I'm not suggesting anything, I simply
25  want to fully answer your question - that at some level

Page 6

1  one or more of these people, the reason they were
2  saying -- or the reason they were doing something was at
3  least in part an improper reason; that one of the things
4  they had in mind was how they perceived Mr. Cerqueira's
5  race or ethnic background.
6      Then you ask yourself -- well, then, for one
7  thing, the burden of proof shifts, and that makes a
8  difference, who has to convince you here.  Mr. Cerqueira
9  has to do the convincing throughout and on this Question
10 3.  He's got to prove by a fair preponderance of the
11 evidence that he was intentionally discriminated against
12 because of perceived race or ethnic background.
13     And let's say he persuades you enough that you
14 come to think that one of these people -- or more than
15 one at some level, but a person employed by American,
16 that one of the things that they had in mind was an
17 improper motivation: Mr. Cerqueira's perceived race or
18 ethnic background.  So then you ask yourself: Would that
19 person have acted that way?
20     And we'll start at the lowest level.  The flight
21 attendant level.  Would that person have acted the way
22 they acted, said the things they said even without
23 taking into account the perception of that person that
24 one of the things they were thinking about was perceived
25 race or ethnic background?  American Airlines bears the

```
 1   burden, again, by a fair preponderance of the evidence,
 2   of persuading you: well, yes, they would.  Yes, they
 3   would.  And if they would have acted just the same way,
 4   notwithstanding the perception of race or ethnic
 5   background, then Mr. Cerqueira hasn't proved intentional
 6   discrimination for an improper purpose.
 7            Let's say they wouldn't.  Let's say what's
 8   tipped the balance, what made the -- and I'm using
 9   flight attendants as an example -- what made them say
10   the things or do the things that they did was the
11   improper motivation.  Well, then you go up the ladder.
12   And so that person, then -- that person is violating the
13   law.  But is American violating the law?  So American
14   has to have checks and balances in its operations so
15   that improper motivation doesn't drive a corporate
16   decision, because at least on the evidence we've heard -
17   it's not for me now, you're the judge of the evidence -
18   it doesn't look like a flight attendant could demand or
19   require the removal of people from the plane and failure
20   or direction not to rebook Mr. Cerqueira.
21            So that goes up the ladder.  And then the higher
22   person, the captain here, the question then becomes:
23   Did the captain act the way he did because of what he
24   was told on account of someone below him acting with
25   improper motivation?  Now, if that was not the only
```

1   thing that persuaded him, if other people who were not
2   acting from improper motivation, if they also gave him
3   information and he had a bunch of information, some of
4   it tainted, I will assume, and improper, but some of it
5   all right, then the question is -- once you've got that
6   taint in there, it's American Airlines that has to do
7   the proving by a fair preponderance of the evidence,
8   would he have acted that way anyway even if he didn't
9   have the tainted or improper piece.
10          If he would have, Mr. Cerqueira hasn't borne his
11  burden of proof, but if that tainted piece is the
12  but-for, that's why at that level orders were given and
13  things were done which were intentional.  I mean, if you
14  believe he said: "Call ground control; I want those
15  people removed from the plane," you could find that's
16  intentional.  He knew what he was doing.  He was -- if
17  you believe this; he was giving those directions.  And
18  then the people who have to respond to him, they move
19  into action and they do what they're told.
20          Now, let's go to -- I may have not had the name
21  right, but we've got people in Texas, or a person in
22  Texas, and he's doing a lot of things.  He's got a lot
23  of flights.  And what you've got to figure out: who was
24  really calling the shots?  So was he calling the shots
25  there in Texas and did -- was he -- was the thing that

1  drove him, the thing that made the difference, was it
2  based on this tainted -- I'm assuming there's taint, I'm
3  not suggesting there was -- tainted improper data that's
4  come up through the levels?  And if that improper data,
5  that illegal belief, if that's what causes the decisions
6  to be made, American Airlines is responsible for it;
7  American Airlines is liable for that.
8          Just remember that once there's taint, once
9  there's improper motivation in the system, I will say,
10 American Airlines bears the burden of proof just by a
11 fair preponderance of the evidence - just like Mr.
12 Cerqueira - the burden of proof by a fair preponderance
13 of the evidence that they would have done the same
14 things in the same way notwithstanding, or but for the
15 tainted information.
16         Now, I think that's a full answer to your
17 question.  The phrase I used having to do here with this
18 Question 3 is: Mr. Cerqueira bears the burden of proof
19 initially of showing intentional discrimination because
20 of or based on perceived racial or ethnic heritage.  If
21 he does convince you that at some level, or more than
22 one level there was an illegal motivation, then the
23 burden of proof shifts to American to show that they
24 would have acted the same way for proper motivations
25 notwithstanding the improper motivation that was in the

```
 1    system.
 2              That's my answer to the question.  You may
 3    retire and continue your deliberations.
 4              THE CLERK:  All rise for the jury.
 5              (Jury out at 9:47 a.m.)
 6              MR. FITZHUGH:  Your Honor, may I be heard for a
 7    moment --
 8              THE COURT:  Yes.
 9              MR. FITZHUGH:  -- to preserve American Airlines'
10    objections to the parts of the charge that we objected
11    to before, to the extent that the taint goes up the
12    ladder?
13              THE COURT:  Of course you may place that on the
14    record.  But again, I can't correct that, even if I were
15    of a mind to --
16              MR. FITZHUGH:  I understand, your Honor.
17              THE COURT:  -- now, because the jury is out.  So
18    the argument can now be made that objection is not
19    timely.
20              But it's on the record.  We'll recess.
21              THE CLERK:  Court is in recess.
22              (The proceedings adjourned at 9:47 a.m.)
23              (Jury in at 1:55 p.m.)
24              THE COURT:  On the record.  Let the record show
25    the ten deliberating jurors are present in the
```

1  courtroom. I've received the following question which I
2  read:
3      "Dear Judge Young: Please explain 'reckless
4  disregard of civil rights.' Thank you."
5      Is that the question, Madam Forelady?
6      THE FOREPERSON: Yes.
7      THE COURT: Is that the question, members of the
8  jury?
9      THE JURORS: Yes.
10     THE COURT: To that question I make this answer:
11 Now, that concept pertains to only the last issue, the
12 issue of whether there will be punitive damages. And as
13 I said before, this is what it means: If you're at that
14 question, you found discrimination, so the question is:
15 was the discrimination by American a wanton, a heedless
16 disregard of Mr. Cerqueira's civil rights? It's more
17 than just that American discriminated against him, it's
18 that did they do so not caring about his civil rights;
19 going ahead, recklessly, without reflection or care of
20 what civil rights he may have had. And, as many other
21 parts of the case, the burden of who has to prove that
22 is on Mr. Cerqueira, again, by a fair preponderance of
23 the evidence.
24     That's my answer to the question. You may
25 retire and continue your deliberations.

Page 12

1        THE CLERK:  All rise for the jury.
2        (The jury was excused, and the proceedings
3   adjourned at 1:58 p.m.)
4                        * * *
5
6              C E R T I F I C A T E
7
8        I, Marcia G. Patrisso, RPR, CRR, Official
9   Reporter of the United States District Court, do hereby
10  certify that the foregoing transcript constitutes, to
11  the best of my skill and ability, a true and accurate
12  transcription of my stenotype notes taken in the matter
13  of Civil Action No. 05-11652-WGY, Cerqueira v. American
14  Airlines.
15
16
                    MARCIA G. PATRISSO, RPR, CRR
17                  Official Court Reporter
18
19
20
21
22
23
24
25