UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN D. CERQUEIRA,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>　　　　　　　　Defendant. | Civil Action No: 05-11652-WGY<br>**Leave to file granted on 2/21/07** |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF
JOHN D. CERQUEIRA'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff John D. Cerqueira respectfully submits this Reply Memorandum in Support of his Motion for Attorneys' Fees and Costs.

**INTRODUCTION**

After achieving a total victory at trial against American Airlines (AA), Mr. Cerqueira submitted a Motion for Attorneys' Fees and Costs that is measured, reasonable, and squarely within the text and spirit of 42 U.S.C. § 1988 and attorneys' fees jurisprudence in the First Circuit.  AA asks the Court to deny Mr. Cerqueira's counsel a reasonable attorneys' fee for successfully litigating the first post-September 11th racial profiling case against an airline to go to trial.  AA asserts that the case was overstaffed and inefficiently litigated, that the hourly rates sought are not reasonable, and that the Court should not enhance the lodestar figure.  As explained below, AA's largely unsubstantiated criticisms of Mr. Cerqueira's fee request are without basis, and the reasonable fees and costs requested by Mr. Cerqueira should be awarded.

**ARGUMENT**

    **A.    Mr. Cerqueira's Legal Team Was Not Overstaffed, And The Hours Requested Are Reasonable And Efficient.**

Mr. Cerqueira's legal team was headed by two senior attorneys, Mr. Godkin and Mr. Kirkpatrick. In addition, to be as cost effective as possible, Mr. Godkin assigned one senior associate to manage the case on a day-to-day basis. Only one senior associate worked on the case at a time, and there was no duplication of effort and no time charged for attorneys joining the case team to become familiar with the facts and the law. For Public Citizen Litigation Group, Mr. Kirkpatrick did by far most of the work, but was assisted from time to time by other PCLG staff.[1] AA asks the Court to eliminate all of the time spent by all but three of the attorneys and one paralegal who worked on the case.

AA asks the Court to award no compensation for any of the senior associates for whom compensation is requested. One of the senior associates, Erica Abate Recht, was responsible for day-to-day management of the litigation from the filing of the complaint until she left on parental leave at the end of September, 2006. Ms. Recht actively managed all written discovery and took seven of eleven depositions taken of AA's employees. Her role in the case was substantial, and Mr. Cerqueira is requesting compensation for 200 hours of her time. Yet AA asserts that the Court should deny compensation entirely for Ms. Recht's requested hours, as well as the two other senior associates (Ms. Nuzum and Ms. Perlman) who managed the case from its outset

---

[1] AA requests that the Court eliminate all time spent by any PCLG staff other than Mr. Kirkpatrick, but AA provides no specific reason to justify its request. As demonstrated by the PCLG fee chart submitted as Exhibit 1 to Mr. Kirkpatrick's Declaration (Doc. 114), there was no duplication of effort by PCLG staff. For example, PCLG staff attorneys Allison Zieve and Adina Rosenbaum, and PCLG summer law clerk David Becker, assisted Mr. Kirkpatrick by performing research on discrete legal issues. PCLG paralegal Phil Longo assisted by compiling, summarizing, and Bates stamping voluminous records produced by Mr. Cerqueira in response to AA's discovery requests. PCLG Director Brian Wolfman reviewed and edited various pleadings, but in an exercise of billing judgment, PCLG does not seek compensation for most of Mr. Wolfman's work. See Wolfman Declaration (Doc. 118).

through the MCAD probable cause finding.  AA has identified no actual time charges of any of these attorneys that it claims to be objectionable.

AA's suggested elimination of hours solely based on its argument that too many people worked on the case is unreasonable, completely arbitrary, and as AA concedes, "draconian."  AA Opp. at 6.  AA was obligated to review the time records and articulate specific objections to the reasonableness of the time recorded.  For the attorneys for whom AA would not compensate at all, AA failed to provide specific objections to any specific charge.  Having failed to do this, its objection based on "overstaffing" should be disregarded.  AA's suggestion that no compensation should be awarded for Ms. Abate Recht's time is particularly egregious, given her role in the case.

With respect to Mr. Godkin and Ms. Perlman, AA identifies only a few time charges about which it specifically objects.  Mr. Godkin spent three hours reviewing the *Alshrafi* pleadings and decision on May 14, 17 and June 9, 2004.  The *Alshrafi* case was filed as a result of conduct by AA that was similar to AA's treatment of Mr. Cerqueira.  It was therefore reasonable and prudent as part of planning litigation strategy for this case for Mr. Godkin to study the *Alshrafi* case, including the legal claims asserted, the defenses mounted by AA, and this Court's decision.  Ms. Perlman's four hours spent on the MCAD investigation on January 4, 11 and 12, 2005 were also reasonable.  As the senior associate working on the case when it was pending at the MCAD, it was appropriate for Ms. Perlman to interact with the MCAD investigator and attend the investigative conference.

AA also complains about the time spent by Ms. Cantelo during the days of the trial, asserting insultingly that all she did was "operate the projector."  Ms. Cantelo ably assisted Messrs. Godkin and Kirkpatrick throughout the weeks before and during the trial.  As her time

3

records reveal in ample detail, she was heavily involved in trial preparation and the trial, including preparing oppositions to AA's numerous motions *in limine*, cross-examination outlines, jury instructions, voir dire questions, performing research regarding evidentiary issues and jury instructions. She was primarily responsible for managing the trial exhibits. Her attendance at the trial was mandatory – it is impossible to imagine trying the case without her present. At the conclusion of each trial day, Ms. Cantelo returned to the office and, along with Messrs. Godkin and Kirkpatrick, spent the rest of the day preparing for the next day.[2]

AA asserts that Ms. Cantelo's time charges for January 8, 2007 are not sufficiently described, and claims that her time entry "explains nothing and does not separate the four hours spent operating the projector from what other substantive work she may have performed after trial in the office." AA is simply wrong. Ms. Cantelo's time description for January 8, 2007 ("Trial Day 2; trial preparation; draft JMOL; strategy meeting with D. Godkin and M. Kirkpatrick; research regarding punitive damages") is amply descriptive. Her time charges are reasonable and compensable.

Finally, AA asserts that the number of hours requested for Messrs. Godkin and Kirkpatrick collectively is excessive. AA does not point to any particular time entries that it contends were unnecessary or duplicative, as Messrs. Godkin and Kirkpatrick were careful not to duplicate efforts and to divide responsibilities in a sensible, efficient manner.[3] Instead, AA cites this Court's decision in *Wilson v. McClure,* 135 F. Supp. 2d 66 (D. Mass. 2001), although AA does not articulate why the number of hours determined to be reasonable in that case has any bearing on the number of hours that were reasonably spent in this case. We submit that AA's

---

[2] Notably, AA had at least four persons sitting at counsel table throughout the trial.

[3] *See* Godkin Declaration (Doc. 113); Kirkpatrick Declaration (Doc. 114); Sellers Declaration (Doc. 115); Libman Declaration (Doc. 116); Blustein Declaration (Doc. 117); Wolfman Declaration (Doc. 118); Friedman Declaration (Doc. 119); Lewis Declaration (Doc. 120); Savage Declaration (Doc. 121).

citation to other cases on the question of reasonableness of the number of hours misses the mark, as the Court must determine the number of hours reasonable expended in this case, not an imaginary "ordinary civil rights case." Notably, in a much more recent case, this Court determined that 1,587 hours was reasonable. *See Dixon v. Int'l Brot. Of Police Officers,* 434 F. Supp. 2d 73, 84 (D. Mass. 2006).

  **B.  The Hourly Rates Requested Are Reasonable.**

  In his moving papers, Mr. Cerqueira set forth ample evidence that the hourly rates requested are reasonable and based on "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984). Rather than submitting contrary evidence, or even recent cases awarding fees to plaintiffs' counsel in civil rights cases, AA directs the Court to its decision six years ago in *Wilson v. McClure,* 135 F. Supp. 2d 66 (D. Mass. 2001) for the proposition that an hourly rate of $250 awarded to Harvey Schwartz, adjusted for inflation, is reasonable today. AA's requested reduction in hourly rates does not comport with the legal standards governing the determination of reasonable hourly rates in 2007. Notably, the Superior Court determined in November 2006 that a reasonable hourly rate for Mr. Schwartz's partner, Kevin G. Powers, handling a civil rights case is $400 per hour. *See Pellegrino v. National Association of Government Employees,* Norfolk Superior Court No. 03-00438 (attached to the Affidavit of David S. Godkin (Doc. 134), Exhibit A).

  The rates suggested by AA are well below the customary hourly rates charged by the attorneys who handled this case, and well below those awarded by other courts to civil rights attorneys in recent cases. Given the credentials of Mr. Cerqueira's counsel, the uniqueness and complexity of this case, the superior quality of representation, and the result achieved, the hourly

5

rates requested by Mr. Cerqueira are reasonable and should be awarded. *See* Godkin Declaration (Doc. 113); Kirkpatrick Declaration (Doc. 114); Sellers Declaration (Doc. 115); Libman Declaration (Doc. 116); Blustein Declaration (Doc. 117); Wolfman Declaration (Doc. 118); Friedman Declaration (Doc. 119); Lewis Declaration (Doc. 120); Savage Declaration (Doc. 121).

**C.     The Court Should Enhance the Lodestar.**

AA objects to any enhancement of the lodestar in reliance on a Supreme Court case standing for the proposition that enhancing the lodestar for contingency is not permitted. *See City of Burlington v. Dague,* 505 U.S. 557 (1992) (Court refused to enhance fees in contingent fee cases because it would increase the risk of frivolous litigation and encourage attorneys to take any case, regardless of the merits). But Mr. Cerqueira's counsel did not take this case on a contingent fee basis. They agreed to represent Mr. Cerqueira *pro bono.* AA cites no case to support its claim that attorneys who take cases *pro bono* should be treated similarly to those who take cases on a contingency. Unlike attorneys who take cases on contingency, *pro bono* counsel do not pool the risks presented by numerous cases, with the successful cases paying for those that do not succeed.

This is a civil rights case of substantial societal importance. It was essentially a case of first impression, and counsel accepted substantial risk by taking the case and seeing it through trial. If ever there was a case in which enhancement of the lodestar was appropriate, this is the case. *See* Godkin Declaration (Doc. 113); Kirkpatrick Declaration (Doc. 114).

**D.     Costs**

AA does not raise any objection to Mr. Cerqueira's Bill of Costs (Doc. 126). It objects to certain nontaxable costs sought by Mr. Cerqueira, including expert witness fees, courier fees and travel expenses. As the prevailing party, Mr. Cerqueira is entitled to recover these reasonable

6

and necessary nontaxable costs pursuant to 42 U.S.C. § 1988. *See Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983). 42 U.S.C. § 1988(c) expressly permits the Court to award expert fees as part of the attorney's fee.

## CONCLUSION

For the foregoing reasons, Mr. Cerqueira respectfully requests that the Court award attorneys' fees in the amount of $524,544.75, enhanced in any amount the Court deems appropriate, and costs in the amount of $19,299.06.

Dated: February 20, 2007

Respectfully submitted,

**JOHN D. CERQUEIRA**,

By his attorneys,

/s/ David S. Godkin
David S. Godkin (BBO #196530)
Darleen F. Cantelo (BBO#661733)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA  02210
617-307-6100

Michael T. Kirkpatrick, Esq.
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC  20009
(202) 588-1000

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I, Darleen F. Cantelo, Esq., hereby certify that a true and correct copy of the foregoing document was delivered to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent those indicated as non-registered participants on February 21, 2007.

/s/ Darleen F. Cantelo
Darleen F. Cantelo