UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
JOHN D. CERQUEIRA,            )
                              )
          Plaintiff,          )
                              )
          v.                  )   CIVIL ACTION
                              )   NO. 05-11652-WGY
AMERICAN AIRLINES, INC.,      )
                              )
          Defendant.          )
                              )
```

MEMORANDUM AND ORDER

YOUNG, J.                                    April 9, 2007

        This case arose from allegations by John D. Cerqueira
("Cerqueira") -- an American citizen of Portuguese descent --
that American Airlines ("American") intentionally discriminated
against him due to his perceived race when American removed him
from a flight and subsequently denied him further service. These
allegations were tried before a jury beginning on January 3,
2007. On January 12, 2007, the jury returned a verdict for
Cerqueira and assessed $130,000 in compensatory damages and
$270,000 in punitive damages. Jury Verdict [Doc. No. 100].

        On January 30, 2007, American filed two post-judgment
motions. The first motion was for judgment notwithstanding the
verdict ("JNOV") that alleged the absence of sufficient evidence
of intentional discrimination when analyzed under an "arbitrary
and capricious" standard. Def.'s Mot. for JNOV [Doc. No. 122] at

1.  The second motion sought a new trial on the same basis as the JNOV and argued that the introduction for a limited purpose of a consent order between the Department of Transportation ("DOT") and American constituted unfair prejudice.  Def.'s Mot. for New Trial and Remittitur [Doc. No. 124] at 1-2.  This motion also sought the remittitur of a portion of the damages awarded to Cerqueira.  Id. at 1.

On February 27, 2007, this Court held oral argument on both of American's motions.  The Court denied American's motion for JNOV, but it took the second motion under advisement to consider and address in writing the following three issues: (1) whether the Court erred in preventing American from referencing conformity with non-public regulations issued by the DOT; (2) whether American suffered unfair prejudice from the introduction in evidence of the consent order between American and the DOT; and (3) whether new Supreme Court precedent on the issue of punitive damages requires remittitur of the judgment.  This Memorandum and Order explains the denial of American's motion for JNOV and then proceeds through the three issues taken under advisement.

**I.   DISCUSSION**

   **A.   The Required Evidentiary Standard**

Both American's motion for JNOV and its motion for a new trial challenge this Court's jury instructions for failing to

instruct that evidence of intentional discrimination must satisfy an "arbitrary and capricious" standard.  Def.'s Mem. in Supp. of Mot. for JNOV [Doc. No. 123] at 9-11; Def.'s Mot. for New Trial and Remittitur at 1.  American argues that a provision of the Federal Aviation Act, 49 U.S.C. § 44902(b), requires a jury to consider the evidence in light of that standard.  American Mem. in Supp. of Mot. for JNOV at 7-8.

The Federal Aviation Act provides that "an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety."  49 U.S.C. § 44902(b).  The provision makes no explicit mention of the standard that a plaintiff must satisfy in order to overcome this statute and claim damages for a refusal to transport.  See id.  Further, no controlling law mandates the application of an arbitrary and capricious standard.

Despite the lack of explicit statutory or controlling legal guidance, this Court is convinced by the weight of persuasive authority that the "arbitrary and capricious" standard does in fact apply.  See Williams v. Trans World Airlines, 509 F.2d 942, 946-48 (2d Cir. 1975) (stating that the test is whether the airline's determination was "rational and reasonable and not capricious or arbitrary" under the circumstances); Dasrath v. Continental Airlines, Inc.[Dasrath II], 467 F. Supp. 2d 431, 443-

44 (D.N.J. 2006) (addressing a motion for summary judgment); Alshrafi v. American Airlines, Inc., 321 F. Supp. 2d 150, 164 (D. Mass. 2004); Schaeffer v. Cavallero, 54 F. Supp. 2d 350, 351 (S.D.N.Y. 1999); Adamsons v. American Airlines, Inc., 58 N.Y.2d 42, 48 (N.Y. 1982); MacIntosh v. Interface Group Massachusetts-Com, Inc., No. 96-01321, 1999 WL 26914, at *6-*7 (Mass. Super. Jan. 15, 1999) (Doerfer, J.).  In addition, this standard likely comports with the policy behind the statutory regime that provides airlines with much discretion when they must engage in the difficult decision whether to refuse service to passengers. See Williams, 509 F.2d at 948.

Nevertheless, despite the applicability of the "arbitrary and capricious" standard to claims that seek to overcome section 44902(b), the failure here to give an explicit jury instruction respecting this standard was, on the trial record before the Court, not prejudicial error.  In Alshrafi, this Court recognized that "actions motivated by racial or religious animus are necessarily arbitrary and capricious, and therefore beyond the scope of the discretion granted by Section 44902."  321 F. Supp. 2d at 162.  The District Court of New Jersey reached a similar result on a motion to dismiss in Dasrath [Dasrath I], where it held that when the removal from an airline was the alleged product of "intentional racial discrimination, not of a rational determination that [the passengers'] presence was 'inimical to

safety[,]'" the "[p]laintiffs ha[d] . . . pleaded sufficiently
that the removal was not the sort of rational safety measure
shielded by § 44902."  228 F. Supp. 2d 531, 539-40 (D. N.J.
2002).

As a result, since this Court did instruct the jury that
American's liability depended upon a finding of intentional
discrimination on account of race, Trial Tr. Vol. V [excerpt 3]
at 16:16-17:23, the jury verdict necessarily satisfied the
standard of "arbitrary and capricious."  For this reason, the
Court denied American's motion for JNOV.  The Court further
rejects American's argument to the extent that American advances
it in its motion for a new trial.

**B.    Exclusion of Possible Sensitive Source Information**

In its motion for a new trial, American argues that the
Court's ruling barring American from making any reference to
Sensitive Source Information ("SSI") in non-public regulations
issued by the Department of Transportation prevented American
from effectively presenting its defense.  Def.'s Mem. in Supp. of
Mot. for New Trial and Remittitur [Doc. No. 125] at 14-15; Trial
Tr. Vol. Pre-Trial 3:1-15.

This issue first came before this Court through a motion *in
limine* by Cerqueira.  Pl.'s Sixth Mot. *In Limine* [Doc. No. 47] at
1.  Cerqueira moved to exclude any evidence that American's
employees acted in conformity with standing policies or training

5

-- the substance of which American refused or was unable to provide in discovery.  Id.  American opposed the motion on the ground that it could not disclose that information due to its potential status as sensitive source information pursuant to 49 C.F.R. § 1520.9.  Def.'s Opp'n to Pl.'s Sixth Mot. *In Limine* [Doc. No. 66].

On the surface, this motion appeared to raise the complicated and charged issues of what constitutes sensitive source information and when it may be permissibly withheld.  See Gordon v. Federal Bureau of Investigation, 390 F. Supp. 2d 897, 900-01 (N.D. Cal. 2004) (exemplifying the careful consideration required of an SSI determination); Judicial Watch, Inc. v. United States Dep't of Transp., No. Civ. 02-566-SBC, 2005 WL 1606915, at *10-*11 (D.D.C. July 7, 2005) (same).  On reflection, however, this Court determined that such an inquiry would be proper only if faced with a motion to compel discovery pursuant to Federal Rule of Civil Procedure 37(a).  Instead, when raised in a motion *in limine* that did not challenge the classification status but only sought to exclude non-disclosed evidence, no such searching analysis is required.

It ought first be noted that this Court finds no bad faith in American's failure to produce the requested information. American raised a genuine issue as to whether its security policies and training met the definition of sensitive source

6

information contained in 49 C.F.R. § 1520.5.  <u>See</u> Def.'s Opp'n to Pl.'s Sixth Mot. <i>In Limine</i> at 1-2.  The Court holds that American demonstrated good faith in its concern that it must comply with the disclosure requirements of 49 C.F.R. § 1520.9.  Those regulations required American to obtain the permission of the applicable governing agency (e.g., Department of Homeland Security or Department of Transportation) before releasing such information to Cerqueira and to this Court.  <u>See id.</u>

Despite American's good faith compliance with these requirements, the duty to receive such permission rests with American.  While the Court sympathizes with the bureaucratic morass that American apparently entered when it sought permission to disclose, this Court must also discharge its duty to effectuate the imperatives of efficiency and broad discovery. <u>See generally</u> Fed. R. Civ. P. 26, advisory committee's notes.  In addition, this is not a case where the governing agency advised the Court that more time was required to balance security issues with proper discovery disclosure.  <u>See</u> <u>In re September 11 Litigation</u>, 431 F. Supp. 2d 405, 408 (S.D.N.Y. 2006).

As a result of these considerations, this Court treated the motion <i>in limine</i> as conceptually analogous to a motion for failure to disclose discoverable material under Federal Rule of Civil Procedure 37.  The Court imposed the appropriate sanction of denying the use of such undisclosed information at trial.  <u>See</u>

7

Fed. R. Civ. P. 37(c)(1); Trial Tr. Vol. Pre-Trial 3:1-5 (barring reference by American to a standard of procedure unless that standard was fully revealed and subject to complete cross-examination). The Court is unpersuaded by American that the fashioned sanction constituted too broad a remedy or caused undue prejudice. As the Court explained to American at the Pre-Trial hearing, "[t]his is a case, a quintessential jury case where the jury can decide . . . what happened, and more importantly, why it happened. If there was racial profiling no set of standards will save American Airlines. If there was not, we're not interested in what other standards American Airlines met or did not meet." Trial Tr. Vol. Pre-trial 4:2-7. The exclusion of any reference to Sensitive Source Information was properly ordered by this Court.

### C. Introduction of Consent Order

American also contends that the Court erred by admitting in evidence a Consent Order agreed to by DOT and American. American objects to this admission despite the attending instruction to the jury that limited the consideration of the document to the issue of American's notice that its employees were being complained about for racial profiling. Def.'s Mem. in Supp. of Mot. for New Trial and Remittitur at 2. American first contested the admission of this Consent Order in a motion *in limine* on

November 20, 2006.  Def.'s Mot. *In Limine* to Exclude Consent
Order [Doc. No. 53].

On February 27, 2004, American and DOT agreed to a Consent
Order closing an enforcement proceeding against American for
eleven claims of racial discrimination under various federal
statutes.  Pl.'s Opp'n to Def.'s Mot. *In Limine* to Exclude
Consent Order [Doc. No. 69], Ex. B at 1-2.  The Consent Order
directed American to cease and desist from such activities and to
provide civil rights training for its employees.  Id. at 1.  The
order contained a three-page preamble followed by six provisions.
In the preamble, American asserted that no violation of federal
law occurred and that the removals of individuals from the
airplanes were the result of reasonable security precautions.
Id. at 2-3.  In contrast, the enforcement officer of DOT
contended that at least some of the passengers were removed
principally because of their ethnic backgrounds.  Id. at 3.

The preamble is followed by six enumerated clauses.  Id. at
4-5.  They are described in pithy fashion as follows: (1) DOT's
approval of the "settlement"; (2) DOT's finding that American
acted contrary to federal law; (3) a cease and desist clause; (4)
DOT's requirement for civil rights training; (5) an enforcement
clause; and (6) a recitation that the order makes no findings of
violations for any individual incident. Id.

In addition to the Consent Order, Cerqueira attached two other documents to his motion in opposition to American's motion *in limine*: (1) the Notice of Enforcement Proceeding and Proposed Assessment of Civil Penalties; and (2) the Enforcement Complaint, which included affidavits from other alleged victims of American's discrimination.  Pl.'s Opp'n to Def.'s Mot. *In Limine* to Exclude Consent Order, Ex. A.

### 1.    Application of Federal Rules of Evidence 408 and 404(b)

In addressing this motion *in limine*, the Court considered whether the Federal Rules of Evidence would, absent an exception, bar the introduction of the Consent Order into evidence.  The first question was whether a consent order qualified as a settlement agreement under Federal Rule of Evidence 408.  Rule 408 bars the admission of settlement agreements to prove liability for the underlying claim.  Fed. R. Evid. 408(a).  Exclusion is not required, however, where the settlement agreement is used for a purpose other than proving the truth of liability, such as proof of bias or prejudice.  Fed. R. Evid. 408(b).  The policy justifications behind such an exclusion are two-fold.  First, it illustrates Congress's desire to encourage settlement.  Second, it seeks to exclude evidence that is of questionable relevance as to liability since settlement talks may well be a result of a desire not to continue with litigation. McInnis v. A.M.F., Inc., 765 F.2d 240, 247 (1st Cir. 1985).

American did not raise the issue of Rule 408 directly, but did so indirectly by substituting the term "settlement agreement" for "consent order" in its motion *in limine*.  Def.'s Mot. *In Limine* to Exclude Consent Order at 1.  Cerqueira attacked this characterization on the ground that "[a] consent order is not a settlement agreement for purposes of Fed. R. Evid. 408."  Pl.'s Opp'n to Def. Mot. *In Limine* to Exclude Consent Order at 4.  The Court found little merit to Cerqueira's argument.

There is little reason to draw a distinction between consent orders and settlement agreements.  See McInnis, 765 F.2d at 247 (noting that Rule 408 is commonly used to bar the "admission of agreements between a defendant and a third party to compromise a claim arising out of the same transaction as the one being litigated").  Support for the treatment of consent orders and settlement agreements as the same under Rule 408 may be found in the cases cited by Cerqueira.  See Pl. Opp'n to Def. Mot. *In Limine* to Exclude Consent Order at 4.  Cerqueira cites United States v. Warren, No. Civ.A.7:04 CR 00021, 2005 WL 1164195 (W.D. Va. May 17, 2005), as his primary citation for his proposition that Rule 408 does not apply.  Pl. Opp'n to Def. Mot. *In Limine* to Exclude Consent Order at 4.  Warren, however, proves the opposite proposition because the district court held that Rule 408 *did* apply to the Consent Order at issue.  Warren, 2005 WL 1164195, at *3.  There, the district court simply ruled that the

11

document was being admitted for a purpose other than proof of liability, thus meeting an exception to the general rule.  Id. The Fourth Circuit, in the oft-cited case, Johnson v. Hugo's Skateway, 974 F.2d 1408, 1413 (4th Cir. 1992), applied the same logic as the district court in Warren and held Rule 408 applicable to a Consent Order, which it stated could be admitted for the limited purpose of showing motive and intent.  Id. Similarly, in United States v. Gilbert, 668 F.2d 94, 97 (2d Cir. 1981), the Second Circuit held admissible an SEC consent decree to show that the defendant was aware of SEC reporting requirements.  Since Cerqueira sought to admit the Consent Order to show motive, intent, and notice, Pl.'s Opp'n to Def. Mot. *In Limine* to Exclude Consent Order at 1, the Consent Order was properly admitted for a purpose other than proof of liability, falling within the Rule 408(b) exception.

In addition to the application of Rule 408, this Court also considered whether the introduction of the Consent Order would fall under the prohibition from using prior bad acts to prove propensity under Rule 404(b).  In the case of this Consent Order, the distinction between the application of Rule 408 and Rule 404(b) is more academic than practical.  Still, an analysis seeking an exception to Rule 408 ought center on the use of the settlement agreement itself for an alternate purpose such as bias or prejudice, see McInnis, 765 F.2d at 248 (holding the evidence

12

inadmissible under Rule 408 because the purported purpose of impeachment was merely camouflaged causation evidence), while an analysis under Rule 404(b) is proper where the party seeks to enter evidence of prior acts encapsulated in the agreement for an alternative purpose, see United States v. Landrau-Lopez, 444 F.3d 19, 23 (1st Cir. 2006).

Federal Rule of Evidence 404(b) bars evidence of prior bad acts where they are admitted to show action in conformity with those previous acts. Fed. R. Evid. 404(b). Under this general rule, the Consent Order and the related documents that Cerqueira sought to admit would be inadmissible because American's previous acts of racial discrimination could not be used to show that it likely committed an act of racial discrimination in the instant case.

Prior bad act evidence may, however, be admitted for other purposes in a manner similar to Rule 408. Id. The limited purposes must be "specially probative of an issue in the case . . . without including bad character or propensity as a necessary link in the inferential chain." United States v. Washington, 434 F.3d 7, 12 (1st Cir. 2006) (quotation marks omitted). The admissibility of evidence under Rule 404(b) is conducted in two steps: "first, a court must determine whether the evidence in question has any special relevance exclusive of defendant's

character or propensity; and second, notwithstanding its special relevance, whether the evidence meets the standard set forth in Fed. R. Evid. 403." Landrau-Lopez, 444 F.3d at 23 (quotation marks omitted).

In considering whether the evidence proffered presents "special relevance" of other bad act evidence, the First Circuit generally looks to two factors: "the remoteness in time of the other act and the degree of resemblance to the crime charged." United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996). Here, the prior acts contained in the Consent Order occurred within the past five years and are factually similar to the alleged discrimination. Under the First Circuit's test for special relevance, these prior acts present significant probative value. See id.

In addition, Cerqueira did not seek to admit the evidence as propensity or character evidence. See Pl. Opp'n to Def. Mot. *In Limine* to Exclude Consent Order at 1. Instead, he sought to admit the evidence to show motive, intent, and notice. See id. Intent and knowledge are recognized as valid limited purposes under Rule 404(b). See United States v. Tse, 375 F.3d 148, 155 (1st Cir. 2004). "Further, where, as here, the other bad act evidence is introduced to show knowledge, motive, or intent, the Rule 404(b) exceptions to the prohibition against character evidence have been construed broadly." United States v. Flores

14

Perez, 849 F.2d 1, 4 (1st Cir. 1988).  As a result, the Court held that the introduction of the Consent Order for the limited purpose was valid under Rule 404(b) because it demonstrated that American had notice of alleged discriminatory practices prior to the case at hand.

### 2.    No Undue Prejudice under Federal Rule of Evidence 403

The inquiry, though, did not stop there.  Even where evidence is admissible for an alternative purpose under Rule 404(b), it may still be excluded if it constitutes overly prejudicial evidence under Federal Rule of Evidence 403. Landrau-Lopez, 444 F.3d at 23.  The evidence that Cerqueira sought to admit raised the possibility of undue prejudice since, even with a limiting instruction, a jury could infer racial discrimination in the current instance from the admission of a consent order settling a dispute over eleven similar complaints. The Consent Order itself mitigated some of these concerns, however, by providing a detailed discussion of the positions of both the DOT and American with respect to the discrimination complaints.  Thus, the Consent Order included American's arguments against a finding of liability for those alleged instances of racial discrimination.  The existence of arguments on both sides of this issue counseled against redaction of the document for fear that redaction would itself cause the prejudice it sought to prevent.

The Court addressed the concerns of undue prejudice through a careful consideration of the content of the Consent Order and the accompanying documents.  The Court resolved to admit evidence of the underlying DOT enforcement proceeding for the limited purpose of notice.  Trial Tr. Vol. Pre-trial at 11:5-7; Trial Tr. Vol. IV [excerpt] at 2:7-13 (rejecting Cerqueira's request for the limiting instruction to characterize the document as being admitted to "show a discriminatory atmosphere as evidence of intent and motive").  The Court refused to allow Cerqueira to admit all three documents as he had sought -- namely the Consent Order, Notice of Enforcement Proceeding, and the Enforcement Complaint.  Since the limited purpose of notice would be served through either the Consent Order or the Enforcement Complaint, the Court provided American the choice of whether it preferred the former or the latter.  Trial Tr. Vol. Pre-trial at 11:11-22. American chose the Consent Order.  Id. at 13:15-21.  Further, the Court provided a strong limiting instruction to the jury when the Consent Order was admitted in evidence.  Trial Tr. Vol. IV [excerpt] at 2:21-6:1.

As a result of the careful consideration of American's motion in limine, the need faithfully to apply the exceptions to the general prohibition of prior bad act evidence in Federal Rule of Evidence 404(b), American's choice to admit the Consent Order instead of the Enforcement Complaint, and the limiting

16

instruction to the jury, this Court holds that no error occurred by allowing the Consent Order in evidence for the limited purpose of notice.

**D.    Remittitur of Punitive Damages**

Finally, American argues for a remittitur of the jury's award of $130,000 in compensatory damages and $270,000 in punitive damages by alleging that their size exceeded the rational appraisal of the evidence.  Def.'s Mem. in Supp. of Mot. for New Trial and Remittitur at 15-17.  American supplemented this motion to argue that the recent Supreme Court decision in <u>Philip Morris USA</u> v. <u>Williams</u>, -- U.S. -- , 127 S. Ct. 1057 (2007), undermined the award of punitive damages.  Def. Supplemental Mem. in Supp. of Mot. for JNOV [Doc. No. 137] at 1-2.  After brief oral argument on this issue, the Court took the matter under advisement to consider the effect, if any, of the <u>Philip Morris USA</u> holding.

In <u>Philip Morris USA</u>, the plaintiff's attorney appealed in closing arguments for the jury to consider the harm Philip Morris's alleged negligence did to other parties not before the court.  127 S. Ct. at 1061.  The Supreme Court held that punitive damages may not be used to punish a defendant for harm done to nonparties.  <u>Id.</u> at 1063.  Punitive damages may, however, include damages awarded "in light of <u>potential</u> harm" when the potential harm at issue was harm to the plaintiff.  <u>Id.</u> (emphasis in

original).  Additionally, the Supreme Court recognized that harm to nonparties may be relevant to a determination of "reprehensibility."  Id. at 1063-64.  Such evidence may "help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public."  Id. at 1064.  A jury simply must not go further and punish the defendant for the harm done to those nonparties.  See id.  This necessarily presents a difficult inquiry that must consider the ratio of the punitive award to actual harm.  See id. at 1062-63, 1065.  It also must scrutinize the challenged conduct for indications that it created a risk that juries would incorrectly feel empowered to punish for harms done to nonparties.  See id.

The Court notes that even a high ratio of the punitive damages to the compensatory damages does not imply that the jury included harms done to others in the calculation of its award. The jury assessed compensatory damages for the actual harm done to Cerqueira at $130,000.  The punitive award of $270,000 is only slightly larger than twice the compensatory damages.  Though courts are hesitant to apply a fixed ratio when considering whether a punitive award is excessive, State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 424-25 (2003), a two-to-one ratio does not raise excessiveness concerns.  See generally Elizabeth Cabraser, The Effect of State Farm v. Campbell on Punitive Damages in Mass Torts and Class Action Litigation: What Does the

Immediate Post-State Farm Jurisprudence Reveal?, in Civil
Practice and Litigation Techniques in Federal and State Courts
1725 (ALI-ABA 2005); John J. Bartko, John S. Lottier & David M.
Ross, Punitive Damages: Reaction by Federal and State Courts to
Developing U.S. Supreme Court Guidelines, in Civil Practice and
Litigation Techniques in Federal and State Courts 1871 (ALI-ABA
2007).  Likewise, it does not raise concerns that punitive
damages exceeded compensatory damages in this instance.  This is
especially so in light of the deference that this Court must give
to the jury's calculation of damages.  Whitfield v. Melendez-
Rivera, 431 F.3d 1, 15 (1st Cir. 2005).

American challenges Cerqueira's reference to the Consent
Order in closing arguments, raising the possibility of juror
confusion on the issue of punishing American for harm done to
persons other than Cerqueira.  Def.'s Supplemental Mem. in Supp.
of Mot. for JNOV at 2-3.  Counsel for Cerqueira referenced the
Consent Order in his closing in this manner:

> Consider also the Department of Transportation consent
> order. . . .  It shows that eight months before
> December 28, 2003, the government brought an
> enforcement action against American Airlines
> complaining of 11 separate instances where American
> Airlines engaged in behavior similar to that here and
> which the government alleged was unlawful
> discrimination; thus, American Airlines was on notice
> that this kind of discrimination is illegal.  American
> Airlines knew this kind of behavior is illegal but they
> did it anyway.

Trial Tr. Vol. V [excerpt 4] at 20:20-21:7.  American suggests
that a juror could infer from this reference that he or she ought
punish American for the eleven prior instances of alleged racial
discrimination.  See Def.'s Supplemental Mem. in Supp. of Mot.
for JNOV at 2-3.

Contrary to American's assertion, Cerqueira's use of the
Consent Order in his closing was properly within the scope of the
limiting instruction discussed above relative to the admission of
that document.  The paragraph in the transcript preceding the
challenged reference to the Consent Order addressed whether
employees of American knew that removing Cerqueira from the plane
based on his perceived race would constitute a violation of his
civil rights.  Id. at 20:13-19.  The Consent Order was then
referenced to demonstrate that the employees ought have had that
knowledge due to the previous enforcement action.  Id. at 20:20-
21:7.  As discussed above, the Court properly admitted the
Consent Order for the limited purpose of notice.  Cerqueira's use
of it within that limiting instruction does not raise the
concerns addressed in Philip Morris USA, where counsel
specifically referenced the fact that other people would likely
die from Philip Morris's cigarettes.  127 S. Ct. at 1061.  As a
result, the Court does not find that the punitive damages awarded
indicates that the jury sought to punish American for the alleged
discrimination against nonparties.

## II.  CONCLUSION

This was a quintessential jury trial.  Cerqueira and American were both ably represented by vigorous advocates and our system gave, as it ought, the final judgment on a difficult issue of racial discrimination to the trusted institution of collective wisdom -- the jury.  The jury spoke in favor of Cerqueira. Absent prejudicial error by the Court, this judgment ought stand. The Court finds no error in this case and so orders that American's Motion for a New Trial and Remittitur [Doc. No. 124] be DENIED.

SO ORDERED.

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE