UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
———————————————————————
                            )
JOHN D. CERQUEIRA,          )
                            )
        Plaintiff,          )
                            )
        v.                  )  CIVIL ACTION
                            )  NO. 05-11652-WGY
AMERICAN AIRLINES, INC.,    )
                            )
        Defendant.          )
———————————————————————)
```

MEMORANDUM AND ORDER

YOUNG, J.                                    April 12, 2007

        This motion for attorneys' fees follows a trial between the
plaintiff John D. Cerqueira ("Cerqueira") and American Airlines
("American").  Pl. Mot. for Atty's Fees and Costs [Doc. No. 111].
A jury having returned a verdict in his favor, Cerqueira now
seeks an award of $593,792.25 in fees, plus any enhancements
awarded by this Court, and $20,517.56 in costs.  Pl. Mem. in
Supp. of Atty's Fees [Doc. No. 112] ("Pl. Mem."); Pl. Supp. Mem.
in Supp. of Atty's Fees [Doc. No. 141] ("Pl. Supp. Mem.").
Cerqueira also moves separately for taxable costs set forth in a
Bill of Costs totaling $10,526.32.  Pl. Amend. Bill of Costs
[Doc. No. 138].

        In response, American asks this Court to reduce that amount
substantially, arguing that the requested amount results from

overstaffing, inflated hourly rates, and duplicative, unnecessary, or insufficiently detailed billable hours. Def. Opp'n to Pl. Mot. for Atty's Fees and Costs [Doc. No. 129] ("Def. Opp'n Mem.").

## I.   INTRODUCTION

This action arose from Cerqueira's allegations of racial discrimination stemming from his removal from an American Airlines flight and his subsequent denial of service. Pl. Amended Complaint [Doc. No. 3] ("Compl."). Cerqueira initiated his complaint in this Court on August 9, 2005 and, after amending his complaint on September 20, 2005, asserted violations of law under three counts: (1) 42 U.S.C. § 1981; (2) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; and (3) Massachusetts General Laws chapter 272, section 98. Prior to initiating this federal action, Cerqueira filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") alleging racial discrimination in a place of public accommodation. Am. Compl. ¶ 46. The MCAD found that Cerqueira had established a prima facie case of discrimination. Id.

After this Court denied a motion for summary judgment by American, this case went to a trial before a jury. The trial commenced on January 3, 2007 -- less than 17 months after the filing of the complaint. On January 12, 2007, the jury returned a verdict for Cerqueira both on the section 1981 claim and the

2

Massachusetts General Laws chapter 272, section 98 claim.[1]  The jury assessed $130,000 in compensatory damages and $270,000 in punitive damages.  Cerqueira now seeks attorneys' fees and costs related to this litigation pursuant to 42 U.S.C. § 1988, Massachusetts General Laws chapter 151B, section 9, and Federal Rule of Civil Procedure 54(d)(2).

## II. DISCUSSION

Parties who prevail under claims that include 42 U.S.C. § 1981 and Massachusetts General Laws, chapter 272, section 98 are expressly authorized to seek reasonable attorneys' fees and costs pursuant to 21 U.S.C. § 1988 and Massachusetts General Laws chapter 151B, section 9 respectively.  Because it is undisputed that Cerqueira constitutes a "prevailing party"[2] with respect to both the federal and state claims, Cerqueira properly moves for this Court to determine the amount of fees and costs that ought be awarded.  See 42 U.S.C. § 1988(b); Mass. Gen. Laws ch. 151B, § 9.

The standard that this Court must apply to make such a determination is much the same whether analyzed under the federal

---

[1] The claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d was not sent to the jury.

[2] A plaintiff is deemed to have "prevailed" when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).  The jury verdict in favor of Cerqueira easily satisfies this standard.  See id.

or state statute.  <u>Fontaine</u> v. <u>Ebtec Corp.</u>, 415 Mass. 309, 325
(1993); <u>see also</u> <u>Freeman</u> v. <u>Package Machinery Co.</u>, 865 F.2d 1331,
1349-50 (1st Cir. 1988); <u>Dixon</u> v. <u>International Bhd. of Police
Officers</u>, 434 F. Supp. 2d 73, 77-78 (D. Mass. 2006) (appeal
pending).  Where the law of the Commonwealth of Massachusetts
provides a greater recovery under its vindication of civil rights
statute, the plaintiff is entitled to seek recovery under the
state law.  <u>Fontaine</u>, 415 Mass. at 324 n.13.

To determine the proper amount of attorneys' fees under
these fee-shifting statutes, a trial judge must first apply the
"lodestar approach."  <u>Gay Officers Action League</u> v. <u>Commonwealth
of Puerto Rico</u>, 247 F.3d 288, 295 (1st Cir. 2001).  Under the
lodestar approach, the trial judge calculates the total number of
hours that counsel spent on the case and subtracts "duplicative,
unproductive, or excessive hours . . . ."  <u>Id.</u>  This total number
of reasonable hours spent on the case is then multiplied by the
"prevailing [hourly billable] rates in the community (taking into
account the qualifications, experience, and specialized
competence of the attorneys involved)."  <u>Id.</u>

In reaching this lodestar, the trial judge has broad
discretion.[3]  <u>See</u> <u>Photosomphone</u> v. <u>Allison Reed Group, Inc.</u>, 984

---

[3] Discretion, in this context, must be properly understood.
Though 42 U.S.C. § 1988 "is couched in permissive terminology,
awards in favor of prevailing civil rights plaintiffs are
virtually obligatory."  <u>Gay Officers Action League</u>, 247 F.3d at
293 (collecting cases).  Thus, this Court has little discretion

F.2d 4, 6 (1st Cir. 1993) (reviewing a district court's
determination of attorneys' fees under the analogous Title VII
standard).  The Court may exercise such discretion to find that
the "absence of detailed contemporaneous time records, except in
extraordinary circumstances, will call for a substantial
reduction in any award or, in egregious cases, disallowance."
Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984);
see also Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992).
Such general entries fail to allow the party on whom the fees are
to be shifted sufficient detail to challenge the calculations.
See Lipsett, 975 F.2d at 938.  Discretion is also properly
applied to challenges of overstaffing.  "[T]he time for two or
three lawyers in a courtroom or conference, when one would do,
'may obviously be discounted.'"  Hart v. Bourque, 798 F.2d 519,
523 (1st Cir. 1986) (quoting King v. Greenblatt, 560 F.2d 1024,
1027 (1st Cir. 1977)).  Discretion in such cases is guided by the
purpose behind fee-shifting statutes, which are designed to
"ensure effective access to the judicial process for persons with
civil rights grievances," Hensley v. Eckerhart, 461 U.S. 424, 429
(1983) (internal citation omitted), and are "not to serve as full
employment or continuing education programs for lawyers and

---

as to whether this case merits an award of attorneys' fees.  See
id.  The range of discretion is more applicable to findings as to
which individual fees are reasonably calculated.  See id. at 296.

paralegals," <u>Lipsett</u>, 975 F.2d at 938; <u>see also</u> <u>Pearson</u> v. <u>Fair</u>, 980 F.2d 37, 47 (1st Cir. 1992).

Finally, the prevailing party is permitted to recover for hours reasonably expended in the preparation of fee petitions. <u>McDonald</u> v. <u>Secretary of Health and Human Servs.</u>, 884 F.2d 1468, 1480 (1st Cir. 1989). The inclusion of billable hours accrued to recover such fees is consistent with the general purpose behind fee-shifting statutes that seek to vindicate a plaintiff's rights and to ease the path to such vindication. <u>See</u> <u>id.</u>; <u>Bercovitch</u> v. <u>Baldwin Sch., Inc.</u>, 191 F.3d 8, 12 (1st Cir. 1999) (warning that recovery of attorneys' fees ought not rehash the grounds for litigation).

Once the lodestar amount is determined, the trial judge will consider whether an enhancement or departure from this determination is warranted based on the special circumstances of the instant case. <u>Hensley</u>, 461 U.S. at 434. Factors that may influence an enhancement or departure from the lodestar determination include whether the "plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded," <u>id.</u>, whether the plaintiff achieved a level of success sufficient to justify a large fee award, <u>see</u> <u>id.</u>, and the "societal importance of the right which has been vindicated," <u>Coutin</u> v. <u>Young & Rubicam Puerto Rico, Inc.</u>, 124 F.3d 331, 338 (1st Cir. 1997).

## A.    Cerqueira's Claim Calculation

Cerqueira summarizes its request for attorneys' fees with the following chart delineated by attorney or legal professional, requested hours, requested billable rate, and total fee.

| Individual | Requested hours | Requested rate | Total |
|---|---|---|---|
| Michael T. Kirkpatrick | 889.55 | $375 | $333,581.25 |
| David S. Godkin | 384 | $390 | $149,760.00 |
| Darleen Cantelo | 314.25 | $150 | $47,137.50 |
| Erica Abate Recht | 200 | $205 | $41,000.00 |
| David Becker | 42.50 | $120 | $5,100.00 |
| Jessica Edgerton | 41 | $130 | $5,330.00 |
| G. Brian Vogler | 21.50 | $100 | $2,150.00 |
| Dawn Perlman | 15 | $205 | $3,075.00 |
| Kimberly Nuzum | 6.5 | $205 | $1,332.50 |
| Philip Longo | 6 | $120 | $720.00 |
| Adina Rosenbaum | 4.8 | $245 | $1,176.00 |
| Allison Zieve | 2.8 | $375 | $1,050.00 |
| Brian Wolfman | 5.6 | $425 | $2,380.00 |
| **TOTAL** | 1,933.50 | | **$593,792.25** |

In support of this request and these calculations, Cerqueira submitted the billable fee charts that were maintained by Godkin's former law firm of Testa, Hurwitz & Thibeault, LLP and his current law firm Birnbaum & Godkin, LLP, as well as Kirkpatrick's employer, the Public Citizen Litigation Group ("PCLG").  The Testa, Hurwitz & Thibeault, LLP fee chart is referred to as "Testa Fees."  Godkin Affidavit [Doc. No. 113] ("Godkin Aff."), Ex. A.  The first fee chart for Birnbaum &

Godkin, LLP, is referred to as "Birnbaum Fees." Id., Ex. B. The supplemental fee chart for the firm will be referenced as "Birnbaum Supp. Fees." Godkin Supplemental Affidavit [Doc. No. 142] ("Godkin Supp. Aff."), Ex. A. The PCLG fee chart will be referred to as "PCLG Fees." Kirkpatrick Affidavit [Doc. No. 114] ("Kirkpatrick Aff."), Ex. 1. The supplemental fee chart for PCLG will be referenced as "PCLG Supp. Fees." Kirkpatrick Supplemental Affidavit [Doc. No. 143] ("Kirkpatrick Supp. Aff."), Ex. 1.

In addition to the fee charts, Cerqueira filed affidavits and declarations by Godkin, Kirkpatrick, Joseph M. Sellers [Doc. No. 115], Robert Libman [Doc. No. 116], Benjamin Blustein [Doc. No. 117], Brian Wolfman [Doc. No. 118], and Howard Friedman [Doc. No. 119]. Cerqueira also filed two affidavits in support of the requested billable rates. Affidavit of Scott P. Lewis [Doc. No. 120]; Affidavit of Joseph F. Savage, Jr. [Doc. No. 121].

Cerqueira subsequently supplemented his original motion for fees and costs. Pl. Supp. Mot. for Atty's Fees and Costs [Doc. No. 140]. Cerqueira filed a memorandum in support of this supplemental motion. Pl. Supp. Mem. As verification and documentation of the supplemental request and calculations, Cerqueira filed additional declarations and fee charts by Godkin and Kirkpatrick.

**B.    Hours Reasonably Expended**

8

The determination of reasonableness of attorneys' fees under the lodestar approach is a factual determination that requires a line-item scrutiny, even if the court ends up addressing the fees in aggregate.

As a threshold matter, Cerqueira requests fees associated with the initial filing of a claim with the MCAD.  See Testa Fees at 1; Birnbaum Fees at 1; PCLG Fees at 1-2.  Massachusetts General Laws 151B provides damages for those discriminated against in violation of Massachusetts General Laws chapter 272, section 98.  Mass. Gen. Laws ch. 272, § 98.  Before a claimant may file for damages pursuant to Massachusetts General Laws chapter 151B, section 9, a claimant must file a charged with the MCAD.  Smith v. Bell Atlantic, 829 N.E.2d 228, 245 (Mass. App. Ct. 2005).  A court may award attorneys' fees for administrative proceedings that precede a federal action when there is an exhaustion requirement.  Dixon, 434 F. Supp. 2d at 79.  This Court will exercise its discretion to allow fees associated with the MCAD action, but will not so extend coverage to time billed prior to actual representation of Cerqueira.  For this latter purpose, the Court finds from reviewing the Testa Fees and the PCLG Fees charts that actual representation began on or about May 10, 2004.  See Testa Fees at 1; PCLG Fees at 1.  This Court excludes any billable hours requested prior to that date.

Proceeding to a line-item analysis of the fee charts, this Court will address only those individual fees that must be discounted or reduced. The remainder, which this Court has examined and considered, are reasonable and require no further discussion.

This Court begins first by scrutinizing the individual fees for the contemporaneousness and sufficient detail required to justify the charge. The following fees in the Testa Fees chart fail in this regard: 5/21/04 (Nuzum); 6/3/04 (Nuzum) (reduced to 1.5 hours); 9/7/04 (undetermined)[4] and 1/11/05 (Perlman).

The following fees in the Birnbaum Fees chart fail in this regard: 2/1/05 (Godkin); 8/9/05 (Vogler); 8/18/05 (Godkin)[5]; 8/31/05 (Abate Recht)[6]; 9/1/05 (Abate Recht); 9/6/05 (Abate Recht); 9/14/05 (Abate Recht); 11/15/05 (Abate Recht); 11/22/05 (Abate Recht); 11/28/05 (Abate Recht) (reduced to .75 hours);

---

[4] This entry fails to attribute the work claimed to any lawyer or legal professional.

[5] The description "Review DOT pleadings" fails both for lack of detail since Cerqueira did not participate in such proceedings making it unclear to what pleadings Godkin is referring and fails for duplicative costs in regards to Testa Fees chart, entry 10/8/04.

[6] The term "Attention to" lacks sufficient detail to understand what action was taken regarding the entry. As a result, all entries so labeled are excluded. In addition, with reference to the amended complaint, these entries are excluded in view of Birnbaum entry 9/14/05 (Godkin) that remains since the Court reads the term "Amended" as a verb in fashion favorable to Cerqueira. If this term were not interpreted as a verb, it would fail for lack of sufficient detail.

12/1/05 (Abate Recht); 12/6/05 (Abate Recht); 12/8/05 (Abate
Recht); 12/9/05 (Godkin); 12/19/05 (Abate Recht) (reduced to .75
hours)[7]; 12/20/05 (Abate Recht); 12/21/05 (Abate Recht) (reduced
to 1.00 hours); 1/3/06 (Godkin); 1/5/06 (Godkin); 1/5/06 (Abate
Recht); 1/10/06 (Abate Recht); 1/24/06 (Abate Recht); 1/31/06
(Abate Recht) (reduced to .75 hours); 2/1/06 (Abate Recht)
(reduced to 1.00 hours); 2/6/06 (Abate Recht) (reduced to .25
hours); 2/8/06 (Abate Recht); 2/13/06 (Abate Recht) (reduced to
.25 hours); 2/14/06 (Abate Recht); 2/15/06 (Abate Recht); 2/21/06
(Abate Recht); 2/22/05 (Abate Recht); 3/9/06 (Godkin) (reduced to
.25 hours)[8]; 3/13/06 (Godkin); 3/20/06 (Abate Recht) (reduced to
.50 hours); 3/20/06 (Abate Recht) (reduced to 1.25 hours);
3/21/06 (Abate Recht) (reduced to .25 hours)[9]; 3/21/06 (Godkin);
3/24/06 (Abate Recht); 3/29/06 (Abate Recht) (reduced to .25
hours); 3/31/06 (Edgerton); 4/5/06 (Edgerton) (reduced to .50
hours); 4/6/06 (Godkin); 4/12/06 (Vogler); 4/18/06 (Abate Recht)
(reduced to .50 hours); 4/18/06 (Edgerton); 4/25/06 (Vogler);

---

[7] The reduction also reflects the striking of Abate Recht's
time spent at the initial scheduling conference as duplicative of
Godkin's time reflected on Birnbaum Fees chart 12/19/05 (Godkin).

[8] This reduction is the result of vagueness surrounding the
reference to "regarding research."

[9] The vague reference to "Prepare for depositions" fails to
provide sufficient detail as to the depositions for which
preparations were being prepared.  If this refers to the Walling,
Sargent, and Milenkovic deposition, this fee request fails as
duplicative to the well-detailed reference on 3/22/06.

11

4/28/06 (Edgerton); 5/8/06 (Vogler); 5/23/06 (Abate Recht);
5/24/06 (Abate Recht); 5/26/06 (Godkin); 5/31/06 (Godkin);
6/20/06 (Abate Recht); 6/21/06 (Abate Recht) (reduced to 1.00
hours)[10]; 6/26/06 (Abate Recht) (reduced to 1.00 hours); 6/26/06
(Godkin); 6/30/06 (Godkin) (reduced to .25 hours); 7/11/06 (Abate
Recht); 7/19/06 (Cantelo); 7/25/06 (Abate Recht); 8/10/06
(Vogler); 8/14/06 (Abate Recht); 8/16/06 (Abate Recht); 8/22/06
(Vogler); 8/24/06 (Godkin); 8/29/06 (Abate Recht); 9/22/06
(Vogler); 10/5/06 (Vogler); 10/5/06 (Cantelo); 10/18/06 (Vogler);
10/30/06 (Godkin) (reduced to 1.50 hours); 11/2/06 (Godkin);
11/3/06 (Godkin) (reduced to 1.00 hours); 11/3/06 (Cantelo);
12/4/06 (Cantelo); 12/5/06 (Vogler); 12/11/06 (Vogler); 12/11/06
(Cantelo); 12/13/06 (Vogler); 12/29/06 (Vogler)[11]; 1/2/07
(Vogler); 1/3/07 (Vogler); and 1/8/07 (Vogler).

   None of the entries in the Birnbaum Supp. Fees fail in this
regard.

   While the calculation of fees in the PCLG Fees and the PCLG
Supp. Fees chart require substantial adjustment, as described
below, none of the entries fail for lack of definiteness.

---

   [10] This Court finds "research regarding evidence" lacking
sufficient detail.

   [11] The fee description "Trial preparation" lacks sufficient
detail.  Despite this, this Court has allowed calculation and
inclusion of fees so described where they were entered by the
primary litigators in this case (e.g., Godkin, Cantelo).  Here,
however, this Court finds more detail required due to Vogler's
minor role in the litigation.

Once the entries that lack contemporaneousness or sufficient detail are excised, the list is then reviewed for unnecessary, excessive, or duplicative fees.  This Court will exclude entries pursuant to this inquiry for overstaffing of the case due to its close correlation with duplicative fees.  Where such exclusions occur as a result of overstaffing, they will be so noted.  On this issue, the Court believes that to give substance to the guidance on overstaffing described above in Hart, 798 F.2d at 523, and Lipsett, 975 F.2d at 938, Cerqueira is not entitled to recover fees for time attributed to two lawyers or legal professionals, where one was sufficient to perform the task. This Court will allow, however, recovery for the time spent on trial by both Kirkpatrick and Godkin.  The purpose of section 1988 is not to subsidize the full operation of a litigated case, but to vindicate such a case by shifting fees and, as a result, to increase the potential for a civil rights victim to retain representation.  See Hensley, 461 U.S. at 429.

The Testa Fees are again scrutinized first for such entries. The following entries fail for the expressed reason: 6/9/04 (Godkin) (reduced to .25 hours)[excessive due to the Alshrafi opinion only containing twelve pages of legal reasoning]; 12/27/04 (Perlman) [duplicative of Godkin's subsequent entry]; 1/3/05 (Perlman) (reduced to 1.00 hours) [duplicative of 1/3/05

13

(Godkin)]; 1/4/05 (Perlman) (reduced to .25 hours) [excessive]; and 1/12/05 (Perlman) [duplicative of 1/12/05 (Godkin)].

The following entries in the Burnbaum Fees chart fail in this regard: 5/17/05 (Abate Recht) [duplicative of 5/17/05 (Godkin)]; 10/6/05 (Abate Recht) [duplicative of 9/30/05 (Godkin)]; 12/13/05 (Abate Recht) [duplicative of 11/30/05 (Godkin)]; 2/7/06 (Abate Recht) [duplicative of 2/8/06 (Godkin)][12]; 3/6/06 (Abate Recht) (reduced to .25 hours) [excessive]; 3/14/06 (Edgerton) [duplicative of 3/14/06 (Abate Recht)]; 3/15/06 (Abate Recht) [duplicative of 3/15/06 (Godkin)]; 3/22/06 (Edgerton) (reduced to 3.00 hours) [excessive in light of 3/15/06 (Edgerton)]; 3/23/06 (Edgerton) (reduced to 1.00 hours) [duplicative in relation to the creation of deposition outlines in 3/22/06 (Abate Recht)]; 3/29/06 (Edgerton) (reduced to 1.00 hours) [unnecessary with regards to reviewing deposition testimony][13]; 3/30/06 (Edgerton) [same]; 4/4/06 (Abate Recht) (reduced to 1.75 hours) [duplicative of Godkin's subsequent entry; 1.50 hours were deducted as a result of Godkin's billable hours reference]; 4/5/06 (Abate Recht) (reduced to 3.75 hours) [duplicative of Godkin's subsequent entry; 1.00 hours deducted];

---

[12] If this entry does not refer to the draft answers to interrogatories, it fails for lack of definiteness.

[13] Edgerton performed a minor role in this litigation, and there is no indication that she reviewed the depositions for any substantive purpose.

14

4/10/06 (Abate Recht) (reduced to 2.00 hours) [excessive];

4/19/06 (Edgerton) [duplicative of 4/19/06 (Abate Recht)];

4/24/06 (Abate Recht) (reduced to 1.00 hours) [excessive in light

of 4/20/06 (Abate Recht)]; 6/12/06 (Abate Rech) (reduced to .75

hours) [duplicative of Godkin's subsequent entry]; 7/5/06 (Abate

Recht) [duplicative of 6/30/06 (Godkin)]; 7/10/06 (Godkin)

[excessive][14]; 7/12/06 (Godkin) (reduced to .25 hours) [excessive

in relation to the description provided]; 7/13/06 (Godkin)

(reduced to .25 hours) [same]; 7/18/06 (Abate Recht) (reduced to

2.25 hours) [duplicative of Godkin's subsequent entry and 7/19/06

(Godkin)]; 7/20/06 (Abate Recht) [duplicative of Godkin's

subsequent entry][15]; 7/24/06 (Abate Recht) (reduced to .50 hours)

[duplicative of Godkin's subsequent entry and 7/25/06 (Godkin)];

8/15/06 (Abate Recht) (reduced to 2.50 hours) [excessive due to

the simplicity of the basic torts doctrine referenced]; 9/11/06

(Abate Recht) (reduced to 1.25 hours) [duplicative of Godkin's

subsequent entry]; 9/12/06 (Abate Recht) [duplicative of 9/12/06

---

[14] Though it is becoming more and more prevalent in the
legal community, this Court is critical of billing practices that
round to quarter-hour increments. Such criticism is especially
appropriate in fee-shifting cases where there is no paying client
that demands fiscal accountability. Though it is not for this
Court to require a change in such a practice, it will scrutinize
such minimal billing rates for adequate justification. Fee
descriptions that fail to justify a minimum billable charge will
simply fail for excessiveness.

[15] If the subject of this telephone call is not duplicative,
then it fails adequately to describe the legal service conducted.

(Godkin)]; 9/12/06 & 9/13/06 & 9/14/06 & 9/15/06 (Cantelo)
(reduced in aggregate from 13.75 hours to 8 hours) [excessive due
to the simplicity of the summary judgment motion]; 9/20/06 (Abate
Recht) (reduced to 1.00 hours) [duplicative of 9/20/06 (Godkin);
9/27/06 (Abate Recht) [duplicative of Godkin's subsequent entry];
9/27/06 & 9/28/06 & 9/29/06 & 10/2/06 and 10/3/06 (Cantelo)
(reduced in aggregate from 10.75 hours to 5 hours) [excessive due
to simplicity of research issue]; 10/3/06 (Cantelo) (reduced to
1.00 hours) [duplicative of 10/3/06 (Godkin)]; 10/17/06 (Cantelo)
[duplicative of 10/17/06 (Godkin)]; 10/18/06 (Godkin) [excessive
in light of .25 hours billed]; 11/1/06 (Cantelo) (reduced to 2.00
hours) [duplicative of 11/1/06 (Godkin) and excessive in light of
description provided]; 11/6/06 (Cantelo) [duplicative of 11/6/06
(Godkin)]; 11/14/06 (Edgerton) [duplicative of 11/13/06
(Cantelo)]; 11/16/06 (Cantelo) [duplicative of 11/16/06
(Godkin)]; 11/28/06 (Cantelo) (both entries are excluded) [the
first entry is excluded as a duplicate of the second entry; the
second entry is excluded as duplicative of Godkin's subsequent
entry]; 12/5/06 (Cantelo) (reduced to .50 hour) [duplicative of
12/5/06 (Godkin)]; 12/12/06 (Cantelo) [duplicative of 12/12/06
(Godkin)]; and 1/3/07 & 1/8/07 & 1/9/07 & 1/10/07 & 1/11/07 &

1/12/07 (Cantelo) (reduced in aggregate from 50.50 hours to 20.50 hours) [overstaffing].[16]

The following entries in the Birnbaum Supp. Fees fail in this regard: 1/17/07 & 1/19/07 & 1/22/07 & 1/24/07 & 1/25/07 & 1/28/07 (Cantelo) (reduced in aggregate from 21.75 hours to 10 hours) [excessive]; 1/18/07 (Cantelo) (reduced to 3.00 hours) [excessive]; 1/19/07 (Volger) [excessive and duplicative in light of both Cantelo's and Godkin's work on same petition]; 1/30/07 (Cantelo) (reduced to 1.00 hours) [excessive]; 1/31/07 (Cantelo) [duplicative]; 2/16/07 (Cantelo) [duplicative in relation to 2/14/07 & 2/15/07 (Godkin)]; 2/23/07 (Godkin) (reduced to .50 hour) [excessive]; and 2/28/07 (Cantelo) (reduced to 4.00 hours) [excessive and duplicative of 2/28/07 (Godkin)].

The PCLG entries, dominated almost exclusively by charges by Kirkpatrick, purport to total an extraordinary sum of nearly 900 billable hours.  PCLG Fees at 14; Pl. Supp. Mem. at 5.  There are significant problems with the accounting of the PCLG fees. First, the majority of the entries are rounded to the full hour, and it is the rare charge that falls below a single hour.

---

[16] Though this Court provides greater latitude for billable hours for "trial preparation" in the weeks leading up to trial and will allow for the inclusion of both Godkin and Kirkpatrick's hours spent on trial, this Court notes that Cantelo's role during the trial was minor.  As a result, five hours of trial time is excluded for each day of trial that Cantelo claims.  The remainder of Cantelo's time is included to account for trial preparation.

Second, there is significant duplication of effort when these
entries are compared with those charged in the Testa Fees and the
Burnbaum Fees.  Third, though Kirkpatrick holds himself out as a
partner-equivalent for billable rate, see Kirkpatrick Aff. ¶ 12,
Kirkpatrick performed nearly all of claimed legal work himself,
even though he had the resources through Birnbaum & Godkin, LLP
to delegate legal work to lower billing associates and
paralegals.  Finally, a close scrutiny of the specific entries
demonstrates patently excessive charges, including 21 hours to
produce a draft answer to interrogatories and 25 hours of
research by Becker on the elemental question of a defendant's
burden of production on summary judgment.  PCLG Fees at 5, 7-8.
In sum, the hours claimed by Kirkpatrick are so patently
excessive and duplicative that nearly all of the charges require
adjustment.  This counsels in favor of an aggregate reduction of
the claimed billable hours.  As such, this Court reduces the
total hours claimed by Kirkpatrick in the PCLG Fees and PCLG
Supp. Fees by one-half for a total of 444.75 hours.  This Court
excludes the hours billed by persons other that Kirkpatrick as
either unnecessary or excessive.

    **C.    Reasonable Billable Rates**

    To the calculation of the hours reasonably spent on this
case, this Court will apply an hourly rate based on the
"prevailing rates in the community (taking into account the

qualifications, experience, and specialized competence of the attorneys involved).” <u>Gay Officers Action League</u>, 247 F.3d at 295. The party seeking attorneys’ fees bears the burden of justifying the reasonableness of the requested rates by submitting evidence of the prevailing market rate. <u>See</u> <u>Blum</u> v. <u>Stenson</u>, 465 U.S. 886, 895 n.11 (1984). In this case, this Court must find what constitutes a reasonable hourly rate for civil rights practitioners[17] in Boston.[18]

This Court first finds, based on the evidence submitted by Cerqueira and the relevant case law, that the prevailing rate for lead civil rights attorneys in the Boston area ranges between $200 and $350 per hour. <u>Porter</u> v. <u>Cabral</u>, 04-11935-DPW, 2007 WL 602605, at *12 (D. Mass. Feb. 21, 2007) (Woodlock, J.) (finding a range of $200 and $350 per hour for lead civil rights attorneys in the Boston area); <u>Dixon</u>, 434 F. Supp. 2d at 86 (finding $250 a reasonable hourly rate for an attorney with ten years of experience in employment law); <u>Bogan</u> v. <u>City of Boston</u>, 432 F. Supp. 2d 222, 230 (D. Mass. 2006) (Bowler, M.J.) (finding $300 per hour reasonable for a lead attorney and $200 per hour for junior associates); <u>LaPlante</u>, 307 F. Supp. 2d at 224 (accepting

---

[17] A reasonable hourly fee for civil rights practitioners will, of course, be different from the fee that may be charged in general commercial civil litigation. <u>See</u> <u>LaPlante</u> v. <u>Pepe</u>, 307 F. Supp. 2d 219, 224 (D. Mass. 2004) (Gertner, J.).

[18] See the preceding chart for the billable rates requested by Cerqueira.

proposed rates of $300 per hour for a litigation partner, $275 per hour for a senior litigation associate).

With respect to assisting counsel, a reasonable hourly rate falls between $100 and $200 per hour. Porter, 2007 WL 602605, at *13 (finding such a range as between $100 and $175, but awarding above that range for extensive experience); Dixon, 434 F. Supp. 2d at 86-87 (finding reasonable hourly rates of $175 and $100 based on the level of experience with legal field at issue).

Finally, paralegals and law students may reasonably bill at $65 per hour. Porter, 2007 WL 602605, at *14 (finding $65 per hour reasonable); Dixon 434 F. Supp. 2d at 88 (finding $60 per hour reasonable).

These general ranges of reasonable rates are then applied to the specific qualification of the attorneys at issue in this case. Beginning with Godkin, this Court recognizes his role as lead attorney of this case. See Godkin Aff. ¶ 3. This Court credits his more than 25 years of litigation experience, his experience in at least two high-profile civil rights case, and his participation in the Boston Bar Association on behalf of civil rights issues. Id. ¶¶ 4, 7-8. This Court finds that Godkin's general legal experience and specific civil rights experience warrants an hourly fee at the high end of the reasonable hourly range, which this Court finds equal to $325 per hour.

Kirkpatrick served as co-lead counsel in this case. <u>See</u> Kirkpatrick Aff. ¶ 3. He has over fifteen years of legal experience. <u>Id.</u> ¶ 4. Though Kirkpatrick has substantially less overall legal experience than Godkin, he had dedicated a significant percentage of his legal career to civil rights issues, including nine years with the Civil Rights Division of the United States Department of Justice. <u>Id.</u> ¶¶ 4, 7-8, 9. In the calculation of hours reasonably billed, this Court criticized Kirkpatrick's billing methods as broadly excessive and duplicative. Additionally, Kirkpatrick failed to delegate legal tasks that fell below his legal experience while retaining the legal resources -- through his co-counsel -- to do so. In leveling such criticism, this Court properly treated Kirkpatrick in accordance with his substantial legal experience. In so treating Kirkpatrick, this Court must stay consistent and treat him in accordance with that experience where it applies in his favor. As a result, this Court finds that Kirkpatrick warrants the reasonable hourly rate of $275 per hour.[19]

Nuzum is a 1998 graduate of Boston University School of Law and had six years of legal experience during the years she billed in relation to this case. Godkin Aff. ¶ 11. Perlman is a 2001 graduate from Northeastern School of Law and had three to four

---

[19] No calculation of the hourly rate of the other PGLC staff is required due to this Court's finding that the hours billed must not be included in the lodestar calculation.

years of legal experience during the years she billed in relation to this case.  Id.  Abate Recht graduated from Boston University School of Law in 1998, and had seven to eight years of legal experience during the years applicable to this case.  Id.  Abate Recht performed many of the substantive tasks delegated from Godkin.  This Court finds that these attorneys are properly characterized as mid-level to senior associates, and the following billable rates are reasonable: Nuzum, $150 per hour; Perlman, $125 per hour; Abate Recht, $150 per hour.

Edgerton and Cantelo both graduated from law school in 2004. Id.  They performed the role of junior associates in this litigation.  As a result, they warrant a reasonable billable rate of $100.  Finally, Vogler was a paralegal assigned to this case. Id.  This Court finds the reasonable billable rate for a paralegal involved in a civil rights case in Boston is $65 per hour.

### D.    Total Lodestar Calculation

The lodestar calculation is as follows:

| Individual | Reasonable Hours | Reasonable Rates | Total |
|---|---|---|---|
| Michael T. Kirkpatrick | 444.75 | $275 | $122,306.25 |
| David S. Godkin | 369 | $325 | $119,925.00 |
| Darleen Cantelo | 252 | $100 | $25,200.00 |
| Erica Abate Recht | 121.75 | $150 | $18,262.50 |
| Jessica Edgerton | 26.5 | $100 | $2,650.00 |
| G. Brian Vogler | 2.25 | $65 | $146.25 |
| Dawn Perlman | 5.5 | $125 | $687.50 |
| Kimberly Nuzum | 3.0 | $150 | $450.00 |
| **TOTAL** | 1224.75 | | $289,627.50 |

**E.    Consideration of Enhancement or Departure**

On rare occasion, a court may determine that an enhancement of or downward departure from the lodestar figure is appropriate. Coutin, 124 F.3d at 337-38. As state above, special circumstances such as extraordinary success on the merits or the societal importance of the case at issue are required before such an action will be taken. See id.; Hensley, 461 U.S. at 434.

This is not such a case. Cerqueira brought a relatively narrow claim of racial profiling against American. Though the case had three counts, all three counts addressed the same core claim of racial discrimination. This is not a case where American engaged in egregious or outrageous conduct. The jury did assess punitive damages, but just as this Court rebuffed

23

American's claim on motion for a Judgment Notwithstanding the
Verdict and New Trial that the punitive damages were excessive by
stating that they represented only slightly more than two times
the compensatory damages, so too does this Court apply that
conclusion consistently to this fee petition.  The punitive
damages were not remarkable, and do not support a contention of
"extraordinary success."  Finally, curbing the practice of racial
profiling is of great societal interest.  This factor, however,
must apply to situations that exceed remedial action under
general civil rights statutes.  This Court does not find the
facts surrounding Cerqueira's removal and failure to be rebooked
as warranting this extraordinary remedy.

    **F.    Costs**

In addition to attorneys' fees, Cerqueira seeks cost-
shifting under section 1988 and, presumably, under 28 U.S.C. §
1920[20] in the amounts detailed in the Bill of Costs for
$10,526.32 and for non-taxable recoverable costs as detailed by
the following chart:

---

[20] Cerqueira does not explicitly root its argument for costs
in 28 U.S.C. § 1920, but implies that in civil rights cases
section 1988 provides prevailing plaintiffs a broader recovery of
costs.  See Pl. Mem. at 17 n.7.  Though this issue is not before
this Court, it is not clear that Cerqueira's assertion is
correct.

| Non-Taxable Costs (requested) | Cost |
|---|---|
| Expert witness fees | $11,192.23 |
| Travel | $5,936.39 |
| Computerized research (Westlaw) | $2,955.71 |
| Courier | $327.28 |
| FedEx | $47.24 |
| Postage | $42.71 |
| Fax | $16.00 |
| TOTAL | $20,517.56 |

In support of these requests and calculations, Cerqueira filed an original Bill of Costs [Doc. No. 126] and an amended Bill of Costs [Doc. No. 138] ("Amend. Bill of Costs"), and two affidavits by Godkin. [Doc. No. 127] ("Godkin Cost Aff."); [Doc. No. 139] ("Godkin Amend. Cost Aff.").

This Court finds the costs set out in the Bill of Costs and Amended Bill of Costs appropriate, well-documented, and reasonable. American does not challenge recovery of these enumerated costs.

American does challenge, however, Cerqueira's request for the various non-taxable fees. See Def. Opp'n Mem. at 8. Specifically, American challenges the inclusion of fees for Drs. Faulk, Blumenthal, and Laird because they did not testify as expert witnesses and for courier fees and travel expenses as not recoverable. Id.

American erroneously cites <u>Ramos Padro</u> v. <u>Commonwealth of Puerto Rico</u>, 100 F. Supp. 2d 99 (D.P.R. 2000), to support its position that the expert witness fees ought be excluded.  Def. Opp'n Mem. at 8.  In <u>Ramos Padro</u>, the district court excluded expert fees from a fee and costs award because section 1988(c) limits the award of expert fees to cases brought to enforce 42 U.S.C. §§ 1981 and 1981a.  <u>Ramos Padro</u>, 100 F. Supp. 2d at 109 (holding section 1988(c) not applicable to a section 1983 claim). Cerqueira, however, brought this case pursuant to section 1981 and, therefore, falls squarely within section 1988(c).

The more relevant question as to Cerqueira's request for expert fees is whether Drs. Faulk, Blumenthal, and Laird meet the definition of "expert."  42 U.S.C. § 1988(c).  American suggests that this definition does not include fees for doctors who testify not as experts, but as treating physicians.  <u>See</u> Def. Opp'n Mem. at 8.  Additionally, the definition does not cover persons who fail to testify in person at trial.  <u>Id.</u>

As a threshold matter, it ought be noted that American objected to the deposition testimony of Drs. Faulk and Blumenthal under Federal Rule of Evidence 702 in numerous places in the joint pre-trial memorandum.  <u>See</u> Joint Pre-Trial Mem. [Doc. No. 57] at 43-50.  American thus considered this testimony "expert testimony" at this stage, at least for a limited purpose.  In addition, this Court finds persuasive the treatment of this exact

26

issue in <u>Baker</u> v. <u>John Morrell & Co.</u>, 263 F. Supp. 2d 1161 (N.D. Iowa 2003), <u>aff'd</u> 382 F.3d 816 (8th Cir. 2004), where the district court held that fees of a treating physician fall within the meaning of "attorney's fee[s]" in section 1988. <u>Id.</u> at 1204-07. In light of this reasoning, this Court holds that all three doctors' testimonies meets this definition. In addition, American, by seeking to exclude these fees based on the doctors not appearing in person at trial, appears to confuse the section 1988 standard with the standard under 28 U.S.C. § 1920. <u>See</u> <u>Sarsfield</u> v. <u>City of Marlborough</u>, No. 03-10319-RWZ, 2007 WL 424450, at *1 (D. Mass. Feb. 8, 2007) (Zobel, J.); <u>Neles-Jamesbury, Inc.</u> v. <u>Fisher Controls Intern., Inc.</u>, 140 F. Supp. 2d 104, 106 (D. Mass. 2001) (Gorton, J.). This limitation does not apply to determinations under section 1988. Instead, this Court will allow expert fees where necessary to the preparation of the case. <u>See</u> <u>McLaughlin by McLaughlin</u> v. <u>Boston Sch. Comm.</u>, 976 F. Supp. 53, 69 (D. Mass. 1997) (Garrity, J.) (distinguishing the section 1983 action at issue from a section 1981 action where a court may exercise the discretion under section 1988 to include expert fees).

Here, however, Cerqueira provides little to no information regarding the fees it claims in regards to expert witnesses. <u>See</u> Godkin Aff. at 8. Cerqueira simply claims, in a footnote, $2,445 charged by Faulk, $1,200 charged by Blumenthal, and $7,547.23

charged by Laird.  Id. at 8 n.3.  This Court finds, based on the little information provided but in light of typical charges for deposition testimony, that the charges claimed for the Faulk and Blumenthal are reasonable and must be included in the awarded costs.  The charges for Laird, however, reach a level that greatly exceeds the other two claimed experts.  Cerqueira fails to provide information sufficient enough for this Court to determine the reasonableness of this fee.  The vague reference to the use of his expertise for "security issues" does not suffice. Id.  As a result, the fee allowed for this expert will be reduced to the reasonable amount of $2,000.

American also contends that Cerqueira may not recover for the $5,936.39 in travel expenses and $327.28 in courier fees. American's argument that travel expenses and courier fees are excluded from coverage under section 1988 is contrary to the First Circuit's interpretation of what constitutes attorneys' fees.  See Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983).  Though these amounts are recoverable, they, too, are subject to a reasonableness review.  This Court finds the courier fees reasonable.  Cerqueira fails, however, to detail the specifics of its claim for $5,936.39 in travel expenses.  The only explanation is in a footnote that states this amount is the result of Godkin's travel to Ft. Lauderdale for depositions, Kirkpatrick's travel to Reno for a deposition, and Kirkpatrick's

28

travel to Boston for Cerquiera's deposition, mediation with Magistrate Judge Dein, the hearing on the motions for summary judgment, the final pre-trial conference, trial, and the post-judgment hearing on the motion for judgment notwithstanding the verdict and a new trial.  Godkin Supp. Aff. at 3 n.2.  This Court finds the total expenses claimed unreasonable on two points. First, this Court will not allow Kirkpatrick to recover fees for travel to defend Cerqueira's deposition in Boston.  Such travel was unnecessary and redundant given Godkin's presence in Boston. Second, the total amount appears excessive on its face given the limited number of flights included and the limited number of days on trial.  In addition, this amount reflects an increase of nearly $500 from the previously filed request due to one subsequent flight from Washington, D.C. to Boston for the one post-judgment hearing.  Without documentation reflecting these costs, this Court finds the travel charges excessive on their face.  As a result, the requested amount will be reduced by $500 for the excluded appearance for the defense of the Cerqueira deposition and further reduced by $900 to reflect this Court's judgment as to what constitutes reasonable expenses.

Based on this reasoning, the Court reduces the awards for "expert witness fees" to $5,645.00 and for "Travel" to $4,536.39. The resulting total of claimed non-taxable costs equals

$13,570.33.  This is in addition to the Amended Bill of Costs total of $10,526.32.

**III. CONCLUSION**

As a result of the foregoing analysis and discussion, Cerqueira's Motion for Attorneys' Fees and Costs [Doc. No. 111] and Supplemental Motion for Attorney's Fees and Costs [Doc. No. 140] are ALLOWED in accordance with the following awards: $289,627.50 in attorneys' fees, $10,526.32 in taxable costs, and $13,570.33 in non-taxable costs.  The total award for fees and costs equals $313,724.15.

SO ORDERED.

/s/ William G. Young

_____
WILLIAM G. YOUNG
DISTRICT JUDGE