UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN D. CERQUEIRA,

           Plaintiff,

v.

AMERICAN AIRLINES, INC.,

           Defendant.

Civil Action No. 05-11652-WGY

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR ATTORNEY'S FEES AND COSTS**

A jury found that American Airlines unlawfully discriminated against John D. Cerqueira due to his perceived race when American removed him from a flight and subsequently denied him further service. Doc. 100. This Court denied American's motion for judgment as a matter of law and motion for a new trial. *Cerqueira v. American Airlines, Inc.*, 484 F. Supp. 2d 232, 233 (D. Mass. 2007). A panel of the Court of Appeals for the First Circuit, noting that "[t]he issues raised are of first impression[,]" vacated the jury verdict and ordered that judgment be entered for American. *Cerqueira v. American Airlines, Inc.*, No. 07-1824, 2008 WL 104105, at *1 (1st Cir. Jan. 10, 2008). Cerqueira's petition for rehearing en banc was denied by a three-to-two vote of the active judges of the First Circuit. *Cerqueira v. American Airlines, Inc.*, No. 07-1824, 2008 WL 541642, at *1 (1st Cir. Feb. 29, 2008). The dissenting judges voiced strong disagreement with the panel's opinion. *Id.* at *1-*4 (Torruella, J., and Lipez, J., dissenting). Against this backdrop, American has filed a motion pursuant to Fed. R. Civ. P. 54(d)(2)(A) asserting that, as a prevailing defendant in a civil

rights action, it may recover attorney's fees and non-taxable expenses under 42 U.S.C. § 1988(b).[1] Doc. 164. As explained in detail below, American's motion should be denied because this case does not present the rare circumstances that justify awarding fees to a prevailing civil rights defendant under the standard established by the Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (allowing an award of attorney's fees to a prevailing civil rights defendant only if the plaintiff's claim was "frivolous, unreasonable, or groundless").[2]

## I.   A PREVAILING CIVIL RIGHTS DEFENDANT MAY RECOVER ATTORNEY'S FEES ONLY IF THE PLAINTIFF'S CASE WAS FRIVOLOUS, UNREASONABLE, OR WITHOUT FOUNDATION.

The Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988(b), provides that in cases brought under certain federal civil rights statutes, including 42 U.S.C. § 1981, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]" The standard for awarding § 1988 attorney's fees depends on whether the prevailing party is plaintiff or defendant.

In *Christiansburg*, the Supreme Court noted that under various civil rights statutes "a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances[,]" 434 U.S. at 417 (emphasis in original) (citing *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968) and *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975)), but rejected the argument that a prevailing defendant is entitled to an award of attorney's fees on the same basis as a prevailing

---

[1] American has submitted a separate bill of costs pursuant to Fed. R. Civ. P. 54(d)(1). Docs. 167 & 168. Cerqueira will respond separately to American's request for taxable costs.

[2] Indeed, given that Cerqueira prevailed in the district court at every stage of this litigation, American's motion for attorney's fees and non-taxable expenses is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and, thus, it was filed in violation of Fed. R. Civ. P. 11(b)(2). Cerqueira has advised American of his intention to seek sanctions if American's motion is not withdrawn. *See* Fed. R. Civ. P. 11(c)(2).

plaintiff. *Id.* at 418. The Court noted "two strong equitable considerations counseling an attorney's fee award to a prevailing [civil rights] plaintiff that are wholly absent in the case of a prevailing [civil rights] defendant."[3] First, a successful civil rights plaintiff vindicates a congressional policy "'of the highest priority.'" *Id.* (quoting *Piggie Park*, 390 U.S. at 402). Second, a prevailing plaintiff is awarded fees "against a violator of federal law." *Id.* Thus, the Supreme Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant" in a civil rights case only if the district court "finds that [plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* at 421-22. The First Circuit has recognized that the *Christiansburg* standard is so stringent that it can rarely be met. *Tang v. Rhode Island Dep't of Elderly Affairs*, 163 F.3d 7, 13 (1st Cir. 1998) ("[D]ecisions to grant defendants their fees are, and should be, rare."); *see also Bercovitch v. Baldwin Sch., Inc.*, 191 F.3d 8, 10 (1st Cir. 1999) ("Prevailing defendants, under this heightened standard, have a more difficult showing to make to obtain attorney's fees than do successful plaintiffs."); *Casa Marie Hogar Geriatrico, Inc. v. Rivera-Santos*, 38 F.3d 615, 618 (1st Cir. 1994) ("In civil rights cases, fee-shifting in favor of a prevailing plaintiff is the rule, whereas fee-shifting in favor of a prevailing defendant is the exception."). Indeed, the First Circuit has emphasized that a prevailing defendant may recover attorney's fees "only if she can establish that the plaintiffs' suit was *totally* unfounded, frivolous, or otherwise unreasonable." *Bercovitch*, 191 F.3d at 10 (emphasis added) (quoting *Casa Marie*, 38 F.3d at 618).

---

[3]*Christiansburg* addressed the attorney's fees provision of Title VII of the Civil Rights Act of 1964. In *Hughes v. Rowe*, 449 U.S. 5, 14 (1980), the Court held that the *Christiansburg* standard applies to a prevailing defendant seeking fees under § 1988.

In *Christiansburg* and its progeny, the courts have repeatedly emphasized that defendant's status as the prevailing party does not establish that plaintiff's case was frivolous when brought. *Christiansburg*, 434 U.S. at 421-22 ("[I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."); *Hughes*, 449 U.S. at 14 ("The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees."). "The law may change or clarify in the midst of litigation" and "[e]ven when the law or the facts appear questionable or unfavorable at the outset," the case may not be unreasonable or groundless. *Christiansburg*, 434 U.S. at 422. Indeed, a prevailing defendant may not be eligible for an award of attorney's fees even where the plaintiff's complaint cannot survive a motion to dismiss. *Hughes*, 449 U.S. at 15-16 ("Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*."). In particular, when a plaintiff loses on an issue of first impression, "no serious argument can be made that the [plaintiff's] action was frivolous, unreasonable, or without foundation at the time suit was brought or continued." *Bercovitch*, 191 F.3d at 11-12; *see also Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1192 (1st Cir. 1996) ("For a claim to be 'frivolous' under § 1988, it must be frivolous when originally raised in the district court."). Finally, even where a defendant succeeds in meeting the *Christiansburg* standard, the district court is not required to award attorney's fees to the prevailing defendant. Rather, even if a plaintiff's lawsuit was "groundless when brought or continued, the district court 'still retains discretion to deny or reduce fee requests after considering all the nuances of a particular case.'" *Id.* at 12 (quoting *Tang*, 163 F.3d at 15).

## II. AMERICAN CANNOT ESTABLISH THAT CERQUEIRA'S CASE WAS UNFOUNDED, FRIVOLOUS, OR OTHERWISE UNREASONABLE.

### A. The Course of this Litigation Demonstrates That Cerqueira's Case Was Not Frivolous.

A case that presents "fairly debatable questions" cannot be frivolous, *Casa Marie*, 38 F.3d at 619 n.3, and the procedural history of this case shows that Cerqueira's case was more than "fairly debatable." This Court denied American's motion for summary judgment (Doc. 56), motion for judgment as a matter of law at the close of Cerqueira's case in chief (Doc. 103), and renewed motion at the close of all the evidence (Trial Tr. Vol. 4 at 150). The jury found for Cerqueira (Doc. 100), and this Court denied both of American's post-trial motions. 484 F. Supp. 2d at 233, 240. These facts alone demonstrate that Cerqueira's case was not groundless or meritless. Indeed, American has not cited a single case where a prevailing defendant was awarded § 1988 fees after losing in the district court. Moreover, although Cerqueira lost on appeal, the panel of the First Circuit that reversed this Court gave no indication that Cerqueira's case was frivolous. To the contrary, the panel issued a 41-page slip opinion that recognized that "[t]he issues raised are of first impression in this circuit," 2008 WL 104105, at *1, and two of the five active judges of the First Circuit dissented from denial of rehearing en banc and issued opinions highly critical of the panel's conclusions. 2008 WL 541642, at *1.

### B. The First Circuit's Decision Cannot Provide a Basis to Award § 1988 Fees to American.

American argues that "[t]he First Circuit's reversal of the jury verdict supports the assessment of attorney's fees against Mr. Cerqueira because that court's opinion establishes that his 'claims were frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after

5

it clearly became so.'" Am. Mem. (Doc. 165) at 11 (quoting *Christiansburg*, 434 U.S. at 422). American's argument is based on precisely the "hindsight logic" that the Supreme Court rejected when it cautioned district courts to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22. It is clear that this Court did not believe that Cerqueira's case was frivolous because it rejected every argument raised by American in its post-trial motions and concluded that the "judgment ought stand." 484 F. Supp. 2d at 240. Further, to the extent American is arguing that Cerqueira has engaged in frivolous litigation since losing at the First Circuit, American's argument makes no sense because the only such proceedings in this Court have involved motions brought by American.

      **C.**    **American Cannot Recover § 1988 Fees Because Cerqueira Lost on Issues of First Impression.**

Even if American's argument was not based on the "hindsight logic" rejected by the Supreme Court in *Christiansburg*, it would fail for another reason. A plaintiff's suit cannot be "characterized as unreasonable or meritless" if the defendant prevailed on "an issue of first impression requiring judicial resolution." *Christiansburg*, 434 U.S. at 423-24 (internal quotation marks omitted). Thus, the First Circuit's decision cannot support an award of fees to American because the decision was based on issues of first impression in the First Circuit and directly conflicts with the weight of authority from other courts.

The First Circuit held that the statutory discretion granted to airlines, in 49 U.S.C. § 44902(b), to refuse to transport a passenger "the carrier decides is, or might be, inimical to safety," is so broad that it immunizes an airline from liability for discrimination absent direct evidence of

discriminatory animus by the ultimate decisionmaker. The First Circuit's decision is based on its determination that 1) there is a conflict between safety and civil rights; 2) indirect evidence may not be used to prove discrimination in areas other than employment; and 3) the doctrine of respondeat superior is not available in denial-of-service cases. The First Circuit's adoption of these principles puts it at odds with other courts that have addressed these issues.

For example, although the First Circuit acknowledged that § 44902(b) does not protect an airline from liability for denial-of-service decisions that are arbitrary or capricious, it held that § 1981's ban on discrimination does not limit an air carrier's discretion under § 44902(b). 2008 WL 104105, at *10. This holding was driven by the First Circuit's conclusion that there is a conflict between aviation safety and civil rights, and that Congress has assigned a higher priority to aviation safety. *Id.* at *8, *12. But every other court to address that issue has held that one goal need not be prioritized over the other because intentional discrimination is necessarily arbitrary or capricious and, therefore, beyond the protection of § 44902(b). *See Shqeirat v. U.S. Airways, Inc.*, 515 F. Supp. 2d 984, 1004 (D. Minn. 2007) ("[A] refusal to board a passenger that is motivated by a passenger's race is inherently arbitrary and capricious."); *Dasrath v. Continental Airlines, Inc.*, 467 F. Supp. 2d 431, 434 (D.N.J. 2006) ("A decision based on race would be arbitrary and capricious."); *Alshrafi v. American Airlines, Inc.*, 321 F. Supp. 2d 150, 162 (D. Mass. 2004) ("[A]ctions motivated by racial or religious animus are necessarily arbitrary and capricious, and therefore beyond the scope of the discretion granted by Section 44902."); *Bayaa v. United Airlines, Inc.*, 249 F. Supp. 2d 1198, 1205 (C.D. Cal. 2002) (finding "no merit" to airline's argument that civil rights laws conflict with § 44902(b) and holding that § 44902(b) "does not grant [the airline] a license to discriminate"); *Chowdhury v. Northwest Airlines Corp.*, 238 F. Supp. 2d 1153, 1154 (N.D. Cal. 2002) ("[T]here is

no apparent conflict between the federal statutes prohibiting racial discrimination and the federal law giving air carriers the discretion to refuse to carry passengers for safety reasons.").

Similarly, the First Circuit's conclusion that indirect evidence may not be used to prove discrimination outside the employment context is contrary to the decisions of other courts. Indeed, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), has been used in airline denial-of-service cases, *see, e.g., Simmons v. American Airlines*, 34 Fed. Appx. 573, 575-76 (9th Cir. 2002); *Dasrath*, 467 F. Supp. 2d at 445; *Thompson v. Southwest Airlines Co.*, 2006 WL 287850, at *5 (D.N.H. Feb. 6, 2006); *Huggar v. Northwest Airlines, Inc.*, 1999 WL 59841, at *3-*4 (N.D. Ill. Jan. 27, 1999); and the First Circuit has applied the *McDonnell Douglas* framework in a non-employment § 1981 case. *See T & S Serv. Assocs., Inc. v. Crenson*, 666 F.2d 722, 724 (1st Cir. 1981) ("Though developed in the context of Title VII . . . , this procedural technique 'is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'") (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)); *see also Loeb v. Textron, Inc.*, 600 F.2d 1003, 1015 (1st Cir. 1979) (noting that "*McDonnell Douglas* meets a problem of proof that may be present in any case where motivation is in issue"). Several other Circuits have done the same. *See, e.g., Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101-05 (2d Cir. 2001); *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001); *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1107-08 (10th Cir. 2001).

Finally, by rejecting *respondeat superior* and holding that an airline is immune from liability even if its decisionmakers act without further inquiry on information tainted by a subordinate's discriminatory animus, 2008 WL 104105, at *15, the First Circuit's decision directly conflicts with

the Ninth Circuit's decision in *Cordero v. CIA Mexicana de Aviacion, S.A.*, 681 F.2d 669, 672 (9th Cir. 1982). In *Cordero*, a pilot excluded a passenger based on a flight attendant's report that, if true, would have justified removal. The airline was held liable because even though the pilot had "no duty to conduct an in-depth investigation," it was unreasonable to exclude the passenger "without even the most cursory inquiry into the complaint against him." *Id.* More generally, the First Circuit's decision conflicts with the principle that "corporate liability can attach if neutral decisionmakers . . . rely on information that is inaccurate, misleading, or incomplete because of another employee's discriminatory animus." *Cariglia v. Hertz Equip. Rental Corp.*, 363 F.3d 77, 83 (1st Cir. 2004); *accord EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484-88 (10th Cir. 2006) (explaining that a defendant may be liable even though the decisionmaker lacked discriminatory intent, if the decisionmaker acted on information supplied by a biased subordinate); *Zades v. Lowe's Home Ctrs., Inc.*, 446 F. Supp. 2d 29, 40 (D. Mass. 2006) (holding that discriminatory motive may be shown where a neutral decisionmaker acts on biased information); *Harlow v. Potter*, 353 F. Supp. 2d 109, 116-18 (D. Me. 2005) (explaining that a defendant is liable for discrimination if the decisionmaker who took the adverse action relied on information tainted by another's discriminatory animus "even if the decisionmaker lacked discriminatory intent").

Although Cerqueira of course accepts the First Circuit's ruling, because it is based on issues of first impression in the that Circuit and is at odds with the decisions of many other courts, it cannot support American's claim that Cerqueira's case was frivolous when brought.

    **D.    American's Claim that Cerqueira Never Established a Prima Facie Case of Discrimination is Unsupported by the Record.**

The jury in this case was asked to determine why American removed Cerqueira from his flight and refused to rebook him after he was cleared by the police. The jury rejected as pretext American's claim that its decisions were based on security concerns and found that but for Cerqueira's Middle Eastern appearance American would not have denied him service. As explained above, Cerqueira lost on appeal based on legal issues of first impression in the First Circuit. But in support of its motion for fees, American asserts repeatedly that Cerqueira lacked the factual support necessary to establish a prima facie case of discrimination. *See* Am. Mem. (Doc. 165) at 7 ("Mr. Cerqueira's claim that he was denied air travel because he was perceived to be Middle Eastern was based solely on conjecture."); *id.* at 9 ("Mr. Cerqueira failed to provide any factual support for his claim that he was a victim of discrimination because the flight crew perceived him to be 'Middle Eastern.'"); *id.* at 10 ("[Mr. Cerqueira] could never establish a prima facie case of discrimination."); *id.* at 11 ("[Mr. Cerqueira] had no chance of establishing a prima facie case of discrimination."). Neither this Court nor the First Circuit has ever so held.

In any event, the record contains undisputed evidence sufficient to establish a prima facie case of discrimination. The only passengers American removed from Flight 2237 and refused to rebook (Cerqueira, Asmil, and Rokah) had a Middle Eastern appearance. The jury observed Cerqueira, and he testified that he is often perceived as Middle Eastern on account of his color and physical characteristics. Cerqueira testified that Ashmil and Rokah, who are from the Middle East and were speaking loudly to each other in a foreign language, looked like him because they had dark hair and olive complexions. Nothing linked the three men other than their protected characteristics,

10

and there was substantial evidence that the flight attendants became concerned because of the passengers' Middle Eastern appearance. Flight Attendant Walling thought the three men looked similar because they were "dark" and, in her written report of the incident, she referred to the three passengers collectively as "them" and "they." Trial Tr. Vol. 4 at 89-90; Trial Exh. 17. Similarly, Flight Attendant Sargent grouped the three men together in her reports and wrote that they "seemed to be foreign nationals (later confirmed/Middle East passports)," and noted (incorrectly) that "these 3 passengers had Israeli passports but Arabic names." Trial Exh. 18 & 25. Flight Attendant Milenkovic testified that all three men had dark hair, and she thought that Ashmil or Rokah might be Middle Eastern. Trial Tr. Vol. 4 at 113-14. Her report noted that Ashmil or Rokah spoke with a "heavy accent," and she testified that since the terrorist attacks of September 11th, she has paid close attention to whether a passenger has an accent. *Id.* at 105-08; Trial Exh. 19. Thus, Cerqueira presented sufficient evidence to establish a prima facie case.

**III.     AMERICAN SEEKS FEES THAT ARE UNREASONABLE OR UNSUPPORTED.**

As explained above, American cannot establish eligibility for attorney's fees and nontaxable expenses under the *Christiansburg* standard. Thus, there is no reason to address the amount sought by American. However, should this Court determine that American has met the *Christiansburg* standard, Cerqueira respectfully requests an opportunity to address in detail the reasonableness of American's fee request and the reasons why this Court, in its discretion, should deny the request. *Fidelity Guarantee Mortgage Corp. v. Reben*, 809 F.2d 931, 937 (1st Cir. 1987) ("Where the entitlement to any attorney's fees is hotly contested, the district court may, as it did here, determine that question before reaching the computation of the award."); *id.* at 938 ("[I]n cases where the judge

determined [] that no attorney's fees would be appropriate . . . , this [two-step] approach would eliminate the vain effort that would otherwise be spent in determining their amount.").

In addition to serving judicial economy, a two-step approach is appropriate here because American did not submit its time records until seven days after it submitted its motion for attorney's fees. American filed its motion on April 15, 2008, the deadline set by this Court's order of April 1, 2008, but instead of submitting its time records, American sought leave to file its records under seal (Doc. 169). This Court denied the motion on April 17, 2008, and American submitted its records on April 22, 2008 (Doc. 170) but redacted multiple entries. *See* Invoice of Sept. 7, 2005 at 2, Mar. 7, 2006 at 1 & 3, Oct. 4, 2006 at 5, Mar. 9, 2007 at 10.

In any event, American's request for $330,839.75 in attorney's fees is unreasonable. First, American claims that it should be compensated for all 1,406.35 hours it devoted to the case because Cerqueira's counsel devoted a greater number of hours, but American fails to acknowledge that Cerqueira was awarded fees for only 1,224.75 hours of work, or about two-thirds of the hours actually expended. 484 F. Supp. 2d at 245 & 251. Second, American seeks compensation for 182.80 hours of time spent by three attorneys (Skinner, Horan, and Novins) who never entered an appearance in the case and whose role American explains in only general terms. Third, American's time records show evidence of hours that were duplicative, excessive, or otherwise unnecessary. For example, American seeks $6,467.50 for 19.9 hours that Mr. Fitzhugh spent preparing for the Cerqueira deposition that lasted only 5.7 hours (Invoice of May 3, 2006 at 1-2); $8,157.50 for 25.1 hours that Mr. Fitzhugh spent preparing for and defending the Marquis and Cobbs depositions that lasted less than three hours combined (Invoice of July 11, 2006 at 3-4); $1,777.50 for 7.9 hours spent by Ms. Mariani on September 12, 2006, for the "continued deposition of plaintiff" even though

Cerqueira's deposition was taken by Mr. Fitzhugh on April 4, 2006 (Invoice of Oct. 4, 2006 at 1); and $5,827.50 for 25.9 hours spent by Ms. Mariani traveling for and taking the Laird deposition (Invoice of Nov. 8, 2006 at 4). Fourth, American seeks compensation for 306.8 hours of paralegal time at a rate of $95.00 per hour, even though this Court found that "the reasonable billable rate for a paralegal involved in a civil rights case in Boston is $65 per hour." 484 F. Supp. 2d at 252.

American's request for $5,125.64 in nontaxable expenses is also unreasonable. For example, although American is in the business of providing airline services and could have issued tickets to its counsel for little or no cost, American's counsel purchased first-class tickets for travel to Reno for the Laird deposition at a cost of $1,699.20 (Doc. 166-3). American now seeks reimbursement for $741.00 for air travel between Boston and Reno based on an internet search for an economy class ticket for travel on April 17, 2008 (Doc. 166-4), but American has offered no evidence of how much the trip would have cost when it was taken in October 2006. Similarly, American's counsel purchased first-class tickets for travel to Dallas for the Marquis and Cobbs depositions at a cost of $1,418.60 (Doc. 166-6). American now seeks reimbursement for $730.00 for air travel between Boston and Dallas based on an internet search for an economy class ticket for travel on May 1, 2008 (Doc. 166-7). American has offered no evidence of how much the trip would have cost when it was taken in June 2006. Further, American seeks $2,375.56 for expenses related to Alec Bramlett's travel to Boston to attend mediation in the district court ($438.16), observe the trial ($1,664.11), and attend mediation in the First Circuit ($272.59). These expenses should be denied because although an attorney's reasonable and necessary travel expenses may be recovered under § 1988, Mr. Bramlett attended these events as a party representative rather than as a practicing attorney. Lastly, American seeks reimbursement in the amount of $566.83 for Federal Express, but American has not explained

why overnight delivery services were necessary or even identified the documents that were shipped. *See* Fitzhugh Affidavit (Doc. 166) ¶ 24 & Doc. 166-10.

Finally, the Court should consider Cerqueira's financial condition in determining whether to award attorney's fees and in what amount. *Andrade*, 82 F.3d at 1193 ("[A]n award of attorney's fees to a prevailing defendant must not subject the plaintiff to financial ruin."). As shown by Cerqueira's tax returns that were admitted in evidence as Trial Exhibits 11-14, American is seeking to recover attorney's fees in an amount equal to about three times Cerqueira's average annual income for 2002-2005.

## CONCLUSION

The Court should deny American's motion for attorney's fees and costs.

**JOHN D. CERQUEIRA**
By his attorneys,

*/s/ Michael T. Kirkpatrick*
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC  20009
(202) 588-1000
mkirkpatrick@citizen.org

David S. Godkin (BBO #196530)
Darleen F. Cantelo (BBO #661733)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA  02210

Dated: April 29, 2008          617-307-6100

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 29, 2008.

                                                           */s/ Michael T. Kirkpatrick*
                                                           Michael T. Kirkpatrick